# Exhibit 3

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**5/31/2023 4:45 PM**

**TIANA P. GARNER, CLERK**

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON )
      )
    Plaintiff, )    CIVIL ACTION FILE
      )
v. )    NO. _____23-C-03730-S2_____
      )
AUDI OF AMERICA, LLC; VOLKSWAGEN )
GROUP OF AMERICA, INC. d/b/a AUDI OF )
AMERICA, INC.; AUDI AG; VOLKSWAGEN )
AG; and ASBURY AUTOMOTIVE GROUP, INC; )
      )    **JURY TRIAL DEMANDED**
    Defendants. )

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

COMES NOW Plaintiff Douglas Grant Morton and files this Complaint for Damages and

Demand for Jury Trial against Defendants Audi of America, LLC, Volkswagen Group of America,

Inc. d/b/a Audi of America, Inc., Audi AG, Volkswagen AG, and Asbury Automotive Group, Inc.,

respectfully showing the Court the following:

## INTRODUCTION

### 1.

This is a civil tort action seeking recovery for personal injuries suffered by Douglas Grant

Morton ("Douglas Morton") arising from a motor vehicle collision that occurred on September 25,

2021, in Marshall, North Carolina. On that day, Scottie Dale Proffitt drove a 1999 Dodge Ram

truck into the back of a 2020 Audi A6 (the "Subject Vehicle") being driven by Douglas Morton.

The driver seat occupant restraint system of the Subject Vehicle failed to contain and protect Mr.

Morton – in particular, the driver seat head restraint broke and failed in the incident, proximately

causing him to suffer a catastrophic spinal cord injury that has left him permanently paralyzed.

2.

Plaintiff reserves the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault or that any presently unnamed entity is believed to be at fault after further facts are shown in discovery.

## II.      PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS

3.

Plaintiff Douglas Morton ("Plaintiff" or "Mr. Morton" herein) is a resident of the State of California. By filing this action, he avails himself of this Court's jurisdiction.

4.

Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. (hereinafter "Audi, Inc." when separately referenced) is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in Herndon, Virginia. At all relevant times, Audi, Inc. (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, Inc. knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia.  Audi, Inc. also maintains a registered agent in this State – Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, where Audi, Inc. may be served with legal process in

2

this case. At all relevant times, Audi, Inc. promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, maintains a registered agent to transact business in this State and County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, Inc.

5.

*Personal Jurisdiction over Audi, Inc.: Georgia's Long-Arm Statute*. Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Audi, Inc. also maintains a registered agent to transact business in this State and County. Under Georgia law, a foreign corporation that is authorized to transact business in Georgia is a resident of this State and subject to direct personal jurisdiction in this State.[1] Thus, this Court has direct personal jurisdiction over Defendant Audi, Inc. as a resident

---

[1] *See* O.C.G.A. § 9-10-90 (Georgia's long-arm statute defines "nonresident" to include a corporation that "is not authorized to do or transact business in this state at the time a claim or cause of action under [Georgia's long-arm statute] arises"); *see also Cooper Tire & Rubber Company v. McCall*, 312 Ga. 422 (2021); *Allstate Inc. Co. v. Klein*, 262 Ga. 599, 601 (1992) (The Supreme Court of Georgia held that a foreign corporation authorized to transact business in

3

of this State in addition to long-arm personal jurisdiction over Audi, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

6.

*Personal Jurisdiction over Audi, Inc.: Due Process.*   Audi, Inc. (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market.  It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, it maintains a registered agent to transact business in this State and County, and there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia).  Audi, Inc.'s actions in marketing and selling its vehicles to locations throughout Georgia and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being hailed into Court here.  In short, Audi, Inc. has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.  Exercising personal jurisdiction over Audi, Inc. in this Court comports with due process.

---

Georgia was a resident for purposes of personal jurisdiction because it did not meet the definition of "nonresident" in O.C.G.A. § 9-10-90 and could, thus, "sue or be sued to the same extent as a domestic corporation").

4

7.

Upon information and belief, Defendant Audi of America, LLC (hereinafter "Audi, LLC" when separately referenced) is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Herndon, Virginia. At all relevant times, Audi, LLC (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at a authorized Audi dealership in Georgia. Audi, LLC knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, LLC may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808. At all relevant times, Audi, LLC promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, LLC.

8.

*Personal Jurisdiction over Audi, LLC: Georgia's Long-Arm Statute*. Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of

5

Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi, LLC under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

9.

*Personal Jurisdiction over Audi, LLC: Due Process.* Audi, LLC (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, LLC's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, Audi, LLC has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions

of fair play and substantial justice. Exercising personal jurisdiction over Audi, LLC in this Court comports with due process.

<div align="center">10.</div>

Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Upon information and belief, Audi AG is a wholly-owned subsidiary of Defendant Volkswagen AG, and Audi AG is a sister company with its U.S. distributor, Defendant Audi, Inc. At all relevant times, Audi AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Audi AG may be served with process by having a German-translated copy of this Complaint served upon Audi AG at the Germany Federal Central Authority through the channels authorized by the Hague Convention. At all relevant times, Audi AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and

<div align="center">7</div>

is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi AG.

<center>11.</center>

*Personal Jurisdiction over Audi AG: Georgia's Long-Arm Statute*. Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

<center>12.</center>

*Personal Jurisdiction over Audi AG: Due Process.* Audi AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected

<center>8</center>

by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, Audi AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi AG in this Court comports with due process based upon the contacts detailed above and those additional contacts detailed below:

- Audi AG exercises direct control over the marketing activities of the numerous authorized Audi dealers in Georgia – including specifically the authorized Audi dealer where the Subject Vehicle was first shipped a purchased by a consumer (Plaintiff in Georgia)

- Those authorized Audi dealers in Georgia are only allowed to use the Audi trademarked name, trademarked Audi emblem, and advertise and sell Audi vehicles with the express permission of Audi AG, and by following Audi AG's specific rules for how Audi vehicles can and cannot be marketed

- Audi AG has registered and owns numerous "Audi" trademarks with the U.S. Patent and Trademark Office

- Audi AG works directly with its sister company Audi Inc. (which maintains a registered agent in Georgia) to distribute hundreds of thousands of Audi vehicles all over the United States, and specifically in Georgia

- Audi AG and Audi Inc. regularly refer to themselves collectively as "Audi" and have represented that Audi AG is Audi Inc.'s "parent company." In fact, Audi AG

9

has admitted that because the purpose of Audi Inc. is to sell Audi-brand vehicles, there is an economic benefit for Audi AG if Audi Inc.'s operations are successful.

- In 2019, over 224,000 Audi vehicles were shipped to the U.S., and in 2020 (the year the Subject Vehicle was first sold by an authorized Audi dealer in Georgia to Plaintiff), over 186,000 Audi vehicles were shipped to the U.S.

- Audi AG describes the U.S. as a "core market" for its vehicles and actively monitors and forecasts business and market trends in the U.S., including impacts on its authorized Audi dealers

- Audi AG actively participates in U.S. rulemaking for vehicle safety standards, including making direct requests to the National Highway Traffic Safety Administration for exceptions

- Audi AG on its own and collectively with Audi Inc. has spent millions of dollars and expended significant effort in advertising, promoting, and developing the Audi trademarks throughout the world—including the U.S. and Georgia specifically

- Audi AG's revenue in 2020 (the year the Subject Vehicle was first sold to a consumer by and through an authorized Audi dealer in Georgia) was approximately $55 Billion.

13.

Defendant Volkswagen AG (hereinafter "VW AG" when separately referenced) is a German corporation with its principal place of business in Wolfsburg, Germany. Upon information and belief, VW AG is the parent company of Defendants Audi AG and Audi Inc., and exercises control over the business activities of the two entities. At all relevant times, VW AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers,

10

retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at a authorized Audi dealership in Georgia. VW AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant VW AG may be served with process by having a German-translated copy of this Complaint served upon VW AG at the Germany Federal Central Authority through the channels authorized by the Hague Convention. At all relevant times, VW AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because VW AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to VW AG.

14.

*Personal Jurisdiction over VW AG: Georgia's Long-Arm Statute*. VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising,

11

promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over VW AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

15.

*Personal Jurisdiction over VW AG: Due Process.* VW AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). VW AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, VW AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over VW AG in this Court comports with due process. Hereinafter, Defendants Audi, LLC, Audi, Inc., Audi AG, and VW AG shall be collectively referred to as "the Audi Defendants" or "Audi."

12

16.

Defendant Asbury Automotive Group, Inc. ("Asbury") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Duluth, Georgia.[2] Upon information and belief, at all relevant times, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, was and is in the business of maintaining, repairing, inspecting, servicing, marketing, promoting, advertising, assembling, distributing, leasing, and/or selling motor vehicles, including the Subject Vehicle that was first sold to Plaintiff at Asbury's authorized Audi dealer in Georgia (referred to as "Audi North Atlanta") and that performed service, repair and/or maintenance on the Subject Vehicle numerous times before the subject incident. Defendant Asbury transacts business in the State of Georgia, derives substantial revenue from business in this State, maintains its principal place of business in this state, and maintains a registered agent to transact business in this State. Defendant Asbury may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Because Defendant Asbury transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from business in this State, maintains its principal place of business in Gwinnett County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Defendant Asbury.

---

[2] The Georgia Secretary of State business search database lists Asbury's principal office address in Duluth, Georgia, and Asbury's 2022 Form 10-K filed with the U.S. Securities and Exchange Commission also lists its corporate headquarters and principal executive offices at the same address in Duluth.

13

17.

*Personal Jurisdiction over Defendant Asbury*.    Because Defendant Asbury actively maintains its principal place of business in the State of Georgia (and specifically in Gwinnett County) and maintains a registered agent to transact business in this State, there can be no dispute that this Court may properly exercise personal jurisdiction over Defendant Asbury.

18.

Jurisdiction and venue are not proper in any United States District Court because complete diversity of citizenship of the parties is lacking, there is no federal question giving rise to these claims, and pursuant to U.S.C. § 1441(b)(2) the "resident defendant" exception applies as Defendant Asbury is headquartered in Georgia and, thus, a resident of Georgia.

19.

This is an action related to tortious acts or omissions committed in and producing injury in the State of North Carolina. Therefore, the procedural and remedial laws of Georgia and the substantive laws of North Carolina that do not contravene Georgia public policy apply to the claims asserted herein.

20.

Venue is proper in this County because Defendants Asbury and Audi, Inc. maintain a registered agent for service of process in Gwinnett County. Further, venue is proper in this County as to Defendants Audi, LLC, Audi AG, and VW AG because they are joint tortfeasors with the Defendants Asbury and Audi, Inc., and where defendants reside in different counties, venue may be maintained in any county in which one of the defendants resides.

### III. OPERATIVE FACTS

*A. The Subject Motor Vehicle Collision*

21.

The motor vehicle collision giving rise to this action occurred on September 25, 2021 at approximately 1:20 p.m. on U.S. Highway 25 in Marshall, North Carolina. At that time, Douglas Morton was travelling northbound on U.S. 25 and stopped for traffic. He was at all relevant times properly seat belted and acting prudently and with reasonable care.

22.

Scottie Dale Proffitt was traveling northbound on U.S. 25 behind Mr. Morton. Mr. Proffitt failed to maintain a proper lookout and, as a result, drove his 1999 Dodge Ram truck into the back of the Subject Vehicle Mr. Morton was operating.

23.

Though Mr. Morton was properly wearing a seatbelt, the 2020 Audi A6's driver occupant restraint system failed to properly contain Mr. Morton's body during the collision, and in particular, the driver seat head restraint broke, allowing Mr. Morton's head and body to move back and over the seat. When an ambulance arrived at the scene, Mr. Morton alerted paramedics that he could not feel his legs.

24.

Mr. Morton was transported to Mission Memorial Hospital and immediately presented to the emergency room. Mr. Morton sustained numerous injuries, including a catastrophic thoracic spinal fracture and complete paraplegic spinal paralysis.

25.

Mr. Morton remained at Mission Memorial Hospital for 35 days.

15

26.

Mr. Morton was thereafter admitted to CarePartners Rehabilitation Hospital, where he underwent significant rehabilitation for approximately four months due to the severe nature of his spinal injuries and complications caused by extensive infections and ulcerations.

27.

Despite his extensive efforts towards rehabilitation, Mr. Morton is permanently paralyzed from his chest down.

28.

Mr. Morton's severe and catastrophic injuries were proximately caused by the Subject Vehicle's defective driver seat occupant restraint system and head restraint, which failed to provide adequate neck, head and body containment and protection, allowing Mr. Morton's head and body to move back and over the driver seat – injurious contact which should not and would not have occurred if the Subject Vehicle had adequately contained Mr. Morton's body during the collision.

B. *The Subject 2020 Audi A6*

29.

The 2020 Audi A6, VIN No. WAUE8AF26LN002921, a four-door sedan, was designed, manufactured, assembled, imported and/or distributed, and placed into the stream of commerce as a complete product by the Audi Defendants and Defendant Asbury.

30.

The Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta

16

and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021.

31.

As with any of its vehicles, the Audi Defendants, as the designer and manufacturer of the Subject Vehicle, designed and obtained components for the Subject Vehicle from a variety of suppliers which the Audi Defendants selected and contracted with to provide parts or components made to the Audi Defendants' design and/or manufacturing specifications. Those parts and components were then assembled, and the completed vehicle was manufactured and sold by the Audi Defendants and Defendant Asbury, as an Audi product sold under its Audi brand.

32.

The Audi Defendants, as the designer and manufacturer of the completed vehicle, and Defendant Asbury, as the seller and distributor of the completed vehicle, placed it into the stream of commerce and are both legally responsible for failures of components, whether designed by Audi or obtained from component suppliers, that make up the completed vehicle.

33.

Upon information and belief, the Subject Vehicle had not been materially altered or modified from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by the Audi Defendants. In particular, to Plaintiff's knowledge, no one modified or altered in any way the driver seat occupant restraint system, including the driver seat head restraint, or assembly of any of its component or sub-component parts – which parts and components were specified, obtained, assembled and placed into the

17

completed vehicle by the Audi Defendants, and as designed and manufactured by Audi and its employees and engineers.

34.

Plaintiff alleges this case against the Audi Defendants and Defendant Asbury as a "crashworthiness" case, i.e., that the Subject Vehicle and in particular its front driver seat occupant restraint system was not adequately designed, manufactured, marketed, and sold in a condition to provide sufficient or "crashworthy" protection, containment, and restraint to Douglas Morton in what was a foreseeable level of crash forces.

35.

It was, at all relevant times, known to the Audi Defendants that Audi vehicles needed to be crashworthy during use on the public highways and that it is essential that all component parts of the vehicle perform without failure so that occupants involved in collisions are properly protected from grievous injury.

36.

Further, at all relevant times, the Audi Defendants knew that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint systems and fully functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

37.

Despite this knowledge, the Audi Defendants either designed the Subject Vehicle in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured

18

the Subject Vehicle such that its occupant restraint system and head restraints were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

38.

As a result of the negligence, breaches of warranty, acts, and/or omissions of the Defendants and the defective and/or negligently designed vehicle described herein, the Audi A6 failed to provide appropriate and necessary crash protection to Douglas Morton in his driver seat position even though he was property seated in the driver seat and properly wearing the seat belt system provided in the vehicle by the Audi Defendants and Defendant Asbury. Specifically, the Subject Vehicle's driver seat occupant restraint system and head restraint failed to provide reasonably necessary containment and protection in this incident.

39.

A rear collision producing rear impact forces such as this one was at all times foreseeable to Defendants. Manufacturers and retailers of vehicles like the Audi Defendants and Defendant Asbury know that their products will encounter crashes, and they have a duty to take reasonable steps to include adequate safety systems to restrain, contain, and protect vehicle occupants.

40.

In short, while Douglas Morton may have suffered some injuries from the crash itself, his injuries were more severe, exacerbated and lead to permanent paralysis as a proximate result of the defective, negligently designed, and inadequately crashworthy condition of the driver seat occupant restraint system and driver head restraint which was designed, manufactured, and placed into the stream of commerce by the Audi Defendants and Defendant Asbury.

41.

As outlined below, all Defendants are joint tortfeasors for the Douglas Morton's injuries and damages in an amount to be determined by the enlightened conscience of the jury, but under any scenario, in an amount exponentially in excess of the minimum amount necessary to confer jurisdiction in this Court.

## IV.   **LEGAL CLAIMS**

### COUNT ONE
### (The Audi Defendants—Negligence and/or Strict Products Liability)

42.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

43.

As a product designer and manufacturer of consumer vehicles, Audi owed and owes legal duties to Plaintiff and the public in general to design and manufacture vehicles that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

44.

When Audi designed and/or manufactured the Subject Vehicle, it knew, or should have known through its own testing, studies, and other real-world incidents, that the front driver seat and occupant restraint system failed to contain and protect occupants from injury in rear-end collisions.

45.

Audi failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front driver seat of the 2020 Audi A6 without sufficient strength and

structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Audi chose a front-seat design, and/or manufactured a front seat, that lacks adequate crashworthiness in foreseeable collisions.

<div align="center">46.</div>

When it designed the 2020 Audi A6, the Audi Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Audi designed and/or manufactured the 2020 Audi A6 with defective front seats so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The A6's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

<div align="center">47.</div>

Plaintiff's claims are based on characteristics of the 2020 Audi A6 that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the A6 that Plaintiff's claims are based on as inherent characteristics of the A6 that cannot be eliminated without substantially compromising its usefulness or desirability.

<div align="center">48.</div>

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle by the Audi Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

<div align="center">21</div>

49.

The Audi Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Audi breached its duty by failing to warn of those dangers.

50.

The Audi Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Audi never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

51.

The risks to which Audi exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

52.

Audi's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

53.

The Audi Defendants are liable for the Subject Vehicle's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the

22

enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT TWO
### (Defendant Asbury—Negligence)

54.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

55.

Defendant Asbury operates as a dealer of motor vehicles, including but not limited to motor vehicles designed, manufactured, assembled, produced, advertised, sold, and supplied by the Audi Defendants.

56.

Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, advertised, marketed, listed, and/or sold the subject Audi A6 that Douglas Morton was driving at the time of the subject incident. Specifically, the Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021

57.

Defendant Asbury owed a legal duty to those occupying the vehicles that they advertised, promoted, warranted, sold, leased, maintained, inspected, serviced, and/or supplied to the general

public, including, but not limited to Mr. Morton, to advertise, promote, warrant, maintain, inspect, lease, sell, service, and supply such vehicles, in a reasonably safe and lawful manner.

58.

When Defendant Asbury sold the Subject Vehicle and/or during any of the numerous subsequent inspections of the Subject Vehicle, it knew, or should have known through the exercise of ordinary care, that the front driver seat and occupant restraint system failed to contain and protect occupants from foreseeable injury in rear-end collisions.

59.

Defendant Asbury failed to exercise ordinary care and breached its duties of care by selling and distributing the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision.

60.

Defendant Asbury further failed to exercise ordinary care in that it negligently, grossly negligently, recklessly, willfully, and wantonly failed to warn of the unreasonably dangerous condition of the Subject Vehicle, when they knew or should have known that the Subject Vehicle contained those defects in the supplemental restraint system and seat identified and described in this Complaint that could result in serious injury or death of an occupant, and did in fact result in those serious, permanent, and catastrophic injuries to Mr. Morton complained of in this Action.

61.

Pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8, Defendant Asbury also failed to exercise ordinary care and breached its duties of care by negligently inspecting the

24

subject vehicle after the date of first sale and failing to identify the defects detailed above, and/or Defendant Asbury failed to exercise ordinary care and breached its duties of care by negligently performing maintenance or repairs that may have also contributed to the defects with the occupant restraint system as detailed above.

<div align="center">62.</div>

Defendant Asbury also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Defendant Asbury breached its duty by failing to warn of those dangers.

<div align="center">63.</div>

Defendant Asbury acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Defendant Asbury never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

<div align="center">64.</div>

The risks to which Defendant Asbury exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge to a lay person like Mr. Morton who lacked the knowledge about vehicle restraint systems that the Audi Defendants and Defendant Asbury possessed.

<div align="center">25</div>

65.

Defendant Asbury's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

66.

Further, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, conducted several subsequent service inspections of the Subject Vehicle after it was purchased from Defendant Asbury.

67.

Defendant Asbury owed Douglas Morton and the general public a duty to non-negligently service, inspect, maintain and/or repair the Subject Vehicle for dangerous conditions and inform or warn such consumers of foreseeable dangers, latent defects, and other dangerous conditions that they knew, or should have known of, and communicate adequate warnings about those dangers to foreseeable users of the Subject Vehicle.

68.

Yet, Defendant Asbury breached its duties of care by negligently failing to properly inspect the Subject Vehicle and by negligently failing to warn of the dangers, latent defects, and other dangerous conditions described herein.

69.

Upon information and belief, Plaintiff claims and alleges herein that, by and through its negligent acts and/or omission, Defendants Asbury's negligent failure to properly inspect the Subject Vehicle and/or negligent failure to adequately warn consumers about the defects and/or dangerous conditions present in the same were a proximate cause of and/or contributing factor to

26

Douglas Morton's severe injuries and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**COUNT THREE**
**(Defendant Asbury – Breach of Express and Implied Warranties under North Carolina Law)**

70.

Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, in order to induce the purchase of the products which it sold, or marketed and sold, including the Audi A6 which is the subject of this litigation, advertised to the public the availability and safety of their products.

71.

Through the use of such advertising, Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, for the benefit of ultimate consumers and users, including Mr. Morton, directed the attention of the public and particularly ultimate consumers and users, specifically including Mr. Morton, and others similarly situated, by means of express representations and warranties, to their vehicles by representing that the public and ultimate consumers and users, including Mr. Morton, could occupy and operate the vehicles and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by Defendant Asbury.

72.

In occupying and operating the Subject Vehicle, Mr. Morton relied upon the skill and judgment of Defendant Asbury, by and through its officers, managers, agents, suppliers,

27

contractors, subcontractors, representatives, and others for whom it is legally responsible, and upon the express warranty of Defendant Asbury, created under Georgia and North Carolina Law, and which is described above.

73.

The Subject Vehicle was defective in design and/or manufacture, and such defect breached the express and implied warranties given by Defendant Asbury, by and through their officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom they are legally responsible.

74.

As a direct and proximate result of the breach of express and implied warranties given for the benefit of ultimate consumers and users, including Mr. Morton, by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, as described previously, Mr. Morton suffered devastating and permanent injuries, which injuries have been described in this Amended Complaint.

75.

As a direct and proximate result of the breach of implied warranties by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and which warranties specifically include the breach of the implied warranty of merchantability and breach of implied warranty of fitness for particular purpose, Mr. Morton received those injuries and damages as are previously described in this Amended Complaint.

28

76.

Such breaches of warranties include the failure by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, to provide necessary and proper warnings.

77.

Such warranties were in full force and effect on the date of the subject wreck.

## V.     DAMAGES SOUGHT BY PLAINTIFF

78.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

79.

Douglas Grant Morton seeks recovery of damages from Defendants for past, present, and future medical bills and expenses, life care needs, and other necessary expenses incurred that are incident-related, in amounts to be shown by the evidence at trial.

80.

Douglas Grant Morton seeks damages from all Defendants for all past, present, and future pain and suffering resulting from his incident-related injuries, in an amount to be determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from his incident-related injuries.

81.

Douglas Grant Morton seeks recovery from all Defendants for any diminished future income and earning capacity proximately caused by the subject incident and the defective condition of the Subject Vehicle, as to be shown more fully by the evidence at trial.

29

82.

Douglas Grant Morton seeks a recovery from all Defendants for the loss of full enjoyment of life and disfigurement he has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury.

## VI.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

(a) That Summons issue requiring the presently-named Defendants to appear and Answer this Complaint as provided by law;

(b) That Plaintiff has a trial by jury;

(c) That Plaintiff recovers from Defendants all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under North Carolina law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

(d) That all costs be taxed against Defendants; and

(e) For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted, this _____ day of May, 2023.

**CONLEY GRIGGS PARTIN LLP**


*/s/ Cale Conley* _____
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530

30

ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
kip@conleygriggs.com

*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

  /s/ *Noah B. Abrams*

Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:     (919) 755-9166
NAbrams@abramslawfirm.com

**EDWARDS KIRBY, L.L.P.**

  /s/ *Winston S. Kirby*
Winston S. Kirby
State Bar Number 49316
Andrew C. Avram
State Bar Number 51106
3201 Glenwood Avenue, Suite 100
Raleigh, NC  27619
Telephone:     (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

31

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
5/31/2023 4:45 PM
**TIANA P. GARNER, CLERK**

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior** or ☒ **State Court of** Gwinnett State Court **County**

| **For Clerk Use Only** | |
|---|---|
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | **23-C-03730-S2** |

**Plaintiff(s)**
Morton, Douglas G

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**
Audi of America, LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
Volkswagen Group of America, Inc. d/b/a Audi of America, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
Audi AG

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
Volkswagen AG

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** Cale H. Conley **State Bar Number** 181080 **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☒ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                        **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☒ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
Plaintiff is paralyzed and requires use of his wheelchair

Version 1.1.20

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
5/31/2023 4:45 PM
TIANA P. GARNER, CLERK

## First STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. _____ 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF DOUGLAS GRANT MORTON'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS AUDI OF AMERICA, LLC, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AG, AND VOLKSWAGEN AG

COMES NOW Plaintiff Douglas Grant Morton, pursuant to O.C.G.A. § 9-11-33, 9-11-34, and other applicable law, requests that Defendants Audi of America, LLC, Volkswagen Group of America, Inc. d/b/a Audi of America, Inc., Audi AG, and Volkswagen AG respond, under oath, to the following Interrogatories and Requests for Production within the time period required by law.

### INTERROGATORY INSTRUCTIONS

1.       These interrogatories are continuing, so please supplement or amend any response if you ascertain any change, different or added fact, or any other witnesses or evidence.

2.       Each interrogatory is addressed to the personal knowledge of the Audi Defendants as well as to the knowledge and information of its attorneys, investigators, agents, employees, and other representatives.

3.       If you are unable to answer an interrogatory completely, please answer interrogatory as fully as possible, and state that your answer is incomplete.

4.    Please include both the interrogatory and your response in the same document to promote efficiency and to facilitate meaningful discussions about the Audi Defendants' responses. If a Word version of this document will assist in this request, please ask for one.

5.    Please do not respond to interrogatories by referring to the responses to other interrogatories or by adoption, since some of the interrogatories may be introduced into evidence.

6.    If you make any general objections, please specify in each specific response why the general objections apply to that response.

## REQUESTS FOR PRODUCTION INSTRUCTIONS

1.    If no such information exists to comply with a particular request, please state that fact.

2.    These requests are made for production of the documents by mail, at the offices of CONLEY GRIGGS PARTIN LLP, 4200 Northside Parkway, N.W., Building One, Suite 300, Atlanta, GA 30327, within thirty days of the date of service of these requests.  If documents are voluminous, please contact Plaintiffs' counsel to arrange an alternative production.

3.    Please include both the request and response in the same document to promote efficiency and to facilitate meaningful discussions about the Audi Defendants' responses.  If a Word version of this document will assist in this request, please ask for one.

4.    Please Bates number the documents produced and include the corresponding Bates numbers in your response so that there is no dispute about what the Audi Defendants produced in response to a specific request.  If no information responsive to a particular request exists, please state that fact.

5.    If you withhold any document claiming some privilege or other protection from discovery applies, please provide a privilege log stating the subject matter of the document, its

authors, date, addressees and recipients, and the basis for the claim of privilege or other protection from discovery.

6.     If you make any general objections, please specify in each specific response why the general objections apply to that response.

## DEFINITIONS

1.     "Defendant," "the Audi Defendants," "Audi," "you," and "your" refers individually and collectively to Defendant Audi of America, LLC, Defendant Volkswagen Group of America, Inc. d/b/a Audi of America, Inc., Defendant Audi AG, and Defendant Volkswagen AG and their agents, attorneys, and representatives. These interrogatories seek responsive information from all entities in possession of responsive documents, regardless of corporate hierarchy or structure.

2.     "Document" means every writing or record of every type and description—original and non-identical version or draft—that is or has been your possession, custody, or control.   A "document" includes, but is not limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, microfilms, e-mail, recordings, reports, filings, records, notices, minutes, photographs, videos, imaging, or information maintained on computer databases or any other electronic media.   The term "document" is to be given the broadest meaning allowed by the Georgia of Civil Procedure.

3.     "Entity" and "person" mean any natural person, corporation, partnership, limited liability company, joint venture, proprietorship, association, organization, group of persons, and all other organizations of any type.

4.     The terms "driver seat components" and "subject driver seat components" means the front driver side seat and seat assemblies that were integrated into the subject vehicle and subject vehicle model series (defined below), all of the component parts or subparts integrated into

3

or associated with the seats and seat assemblies, and all internal structural components or subcomponents of the seats and seat assemblies—including specifically, but not limited to, the seat frame, the seat cushion, the seat pan, headrest, and any components serving as anchorage points for the seat with the vehicle.

5. The "driver occupant restraint system" and "subject driver occupant restraint system" means the front driver side seatbelt and seatbelt assemblies that were integrated into the subject vehicle and subject vehicle model series (defined below), and all of the component parts or subparts integrated into or associated with the seatbelts and seatbelt assemblies—including specifically, but not limited to, the seatbelt pretensioners, the seatbelt retractors, the seatbelt load limiters, and any components serving as anchorage points for the seatbelts with the vehicle.

6. "Identify," in the context of documents, means to list the author, title, and date of the document. "Identify," in the context of natural persons, means to list their full legal name, their address, their employer, and their last known telephone number. "Identify," in the context of entities, means to list their full legal name, the address of their principal place of business, and the identity of their registered agent.

7. The "subject incident" means the September 25, 2021 incident described in the Complaint.

8. The "subject vehicle" or the "subject Audi" refers to 2020 Audi A6 vehicle bearing VIN No. WAUE8AF26LN002921, that was being driven by Mr. Douglas Morton and that was involved in the subject incident, as defined above and described more fully in Plaintiff's Complaint.

4

9. The "subject vehicle model series" means all vehicles that were designed and/or manufactured as part of the same or substantially similar platform as the Subject 2020 Audi A6 (defined above and described more fully in Plaintiff's Complaint).

10. The terms "and" as well as "or" shall each be construed conjunctively and disjunctively as necessary to bring within the scope of each interrogatory all information that might otherwise be construed to be outside its scope.

11. Whenever necessary to bring within the scope of an interrogatory any information or document that might otherwise be construed to be outside its scope, the use of a verb in any tense shall be construed as the use of the verb in all other tenses; the use of the singular shall be construed as the use of the plural and vice versa; "any" includes "all," and "all" includes "any"; and any variation of a word shall be defined as set out in these Definitions.

## INTERROGATORIES

1. Please identify the name(s) of the component supplier(s) from whom Audi contracted or otherwise interacted with to purchase or obtain the subject driver seat or seating system, as well as the seat or seating system components (including specifically but not limited to the subject driver seat's headrest), and the subject driver seatbelt or front occupant restraint system, as well as the seatbelt or front occupant restraint system components.

2. Do you contend that there are any factual or legal bases upon which this matter should be dismissed as a matter of law, including but not limited to any contention that service of process was insufficient, or any procedural aspect of the Complaint is deficient? Please state "Yes" or "No." If your answer is in any way in the affirmative, please identify each and every reason why this matter should be dismissed as a matter of law, describing with specificity all factual and legal bases supporting each of those contentions.

5

3.     Do you contend that Douglas Morton committed any comparatively negligent acts or omissions or assumed any risks that caused or contributed to causing the subject wreck or his injuries?  Please state "Yes" or "No."  If your answer is in any way in the affirmative, please describe in detail how you contend that Mr. Morton caused or contributed to causing his injuries, separately stating all facts that form the bases for each of your contentions and separately identifying, for each contention, all documents that support of your contentions.

4.     Do you contend that anyone, not a defendant in this action, caused or contributed to cause the subject incident or the injuries or damages complained of by Plaintiff, or that anyone, not a defendant in this action, should be named as a defendant or added as a necessary party in this action?  Please state "Yes" or "No."   If your answer is in any way in the affirmative, please state the name, present or last known residence or business address, and business and home telephone numbers of said person(s) or entity(ies) you contend caused or contributed to cause the subject incident or the injuries or damages complained of by Plaintiff, specify what act(s) and/or omission(s) of each such person(s) you contend caused or contributed to cause the subject incident or the injuries or damages complained of by Plaintiff, and state the factual and legal bases of each such contention(s).

## REQUESTS FOR PRODUCTION

1.     Please produce any and all documents reflecting the relationship between the Audi Defendants and any component suppliers identified in response to Interrogatory No. 1, including but not limited to any contracts, agreements, licenses, memoranda, emails, letters, messages, meeting minutes, presentations or other documents reflecting or describing any and all individual or shared roles or responsibilities with respect to the design, testing, manufacturing, or assembling of the subject driver seat or seating system, as well as the seat or seating system components

(including specifically but not limited to the subject driver seat's headrest), and the subject driver seatbelt or front occupant restraint system, as well as the seatbelt or front occupant restraint system components.

2.     Please produce true, accurate and complete copies of the declaration page(s) of any insurance policy of any type, whether it be a liability, umbrella or excess policy or known by any other name, which does or <u>may</u> provide coverage to you to settle this lawsuit or satisfy any judgment against you in this lawsuit.

Respectfully submitted, this 31st day of May, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Cale Conley*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

*/s/     Noah B. Abrams*
Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:     (919) 755-9166

7

**EDWARDS KIRBY, LLP**

 /s/ *Winston S. Kirby*_____

Winston Kirby
State Bar Number 49316
Andrew Avram
Stare Bar Number 84419
3201 Glenwood Avenue
Suite 100
Raleigh, NC  27612
Telephone:     (919) 780-5400

8

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**5/31/2023 4:45 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

**Douglas Grant Morton**

PLAINTIFF

CIVIL ACTION
NUMBER:_____

23-C-03730-S2

VS.

**Asbury Automotive**

**Group, Inc.**

c/o Registered Agent :Corporation Service Company
2 Sun Court, Suite 400              DEFENDANT
Peachtree Corners, GA 30092

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

    **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW,
Building One, Suite 300
Atlanta, Georgia 30027

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**
                    1st day of June, 2023
**This** _____ **day of** _____,  **20**_____.

                         Tiana P. Garner
                         **Clerk of State Court**

                         By_____
                              **Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**5/31/2023 4:45 PM**
**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**Douglas Grant Morton**

|                          | CIVIL ACTION |
|                          | NUMBER:_____ |

PLAINTIFF

23-C-03730-S2

VS.

**Audi AG**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW,
Building One, Suite 300
Atlanta, Georgia 30027

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of ___1st day of June, 2023_____, 20_____.

Tiana P. Garner
**Clerk of State Court**

By _____
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**5/31/2023 4:45 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

_____

_____

PLAINTIFF

CIVIL ACTION
NUMBER:_____

23-C-03730-S2

VS.

**Audi of America LLC**

_____

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW,
Building One, Suite 300
Atlanta, Georgia 30027

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

This _____ day of __1st day of June, 2023_____, 20_____.

**Tiana P. Garner**
**Clerk of State Court**

By _____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**5/31/2023 4:45 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

PLAINTIFF

CIVIL ACTION
NUMBER:_____
23-C-03730-S2

VS.

**Volkswagen AG**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW,
Building One, Suite 300
Atlanta, Georgia 30027

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of ___1st day of June, 2023_____, 20_____.

Tiana P. Garner
**Clerk of State Court**

By _____
**Deputy Clerk**

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**5/31/2023 4:45 PM**

**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

PLAINTIFF

CIVIL ACTION
NUMBER:_____

23-C-03730-S2

VS.

**Volkswagen Group of**

**America, Inc.**

c/o Registered Agent :Corporation Service Company
2 Sun Court, Suite 400          DEFENDANT
Peachtree Corners, GA 30092

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

    **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW,
Building One, Suite 300
Atlanta, Georgia 30027

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** ____1st day of June, 2023_____ , **20_____.**

**Tiana P. Garner**
**Clerk of State Court**

By_____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**6/2/2023 1:55 PM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| DOUGLAS GRANT MORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. __23-C-03730-S2__ |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF PROCESS SERVER

STATE OF DELAWARE    *
                        * SS.
NEW CASTLE COUNTY    *

   _Jeffrey L. Butler_, the affiant declares: that affiant is over the age of eighteen years, is not

a party to this action, and that within the boundaries of the state where service was effected, I was

authorized by law to perform said service.

     **SERVICE:** I served the corporate defendant __Audi Of America LLC__ with a copy of the

within   __Summons, Complaint For Damages And Jury Trial Demand, Plaintiff Douglas Grant

Morton's First Interrogatories And Requests For Production To Defendants Audi Of America, LLC,

Volkswagen Group Of America, Inc., Audi AG, and Volkswagen AG__    by serving it's registered

agent _Corporation Service Company_ at __251 Little Falls Drive, Wilmington, Delaware 19808__

on __Thursday, June 1, 2023__ at __1:22__ A.M./P.M.

     **MANNER OF SERVICE:** By leaving, during office hours, copies at the office of the

Page 1 of 2

registered agent for the corporate defendant being served, leaving same with __Service Of Process Bin - specifically designated as such and located at the front reception desk in the main lobby of Corporation Service Company (the service documents were placed in this service of process bin in compliance with Corporation Service Company's service of process policy/procedure)__.

I declare under penalty of perjury that the information contained herein is true and correct and that this affidavit was executed on _____June 1, 2023_____.

_____
*Signature of Process Server*

**SWORN TO AND SUBSCRIBED** before me this date _____June 1, 2023_____.

**LEGAL BEAGLES, INC.**
**P.O. Box 886**
**New Castle, Delaware 19720-0886**
telephone    302/478-2693
email        info@legalbeaglesinc.com

_____
*Notary Public*

NANCY BUTLER
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires MAY 17, 2026

Page 2 of 2

# AFFIDAVIT OF SERVICE

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

23-C-03730-S2

6/5/2023 4:03 PM

TIANA P. GARNER, CLERK

| Case:<br>23-C-03730-S2 | Court:<br>IN THE STATE COURT OF GWINNETT COUNTY | County:<br>GWINNETT | Job:<br>8963696 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>DOUGLAS GRANT MORTON | | Defendant / Respondent:<br>Asbury Automotive Group, Inc. | |
| Received by:<br>RMG - SERVICES, LLC | | For:<br>Conley, Griggs, Partin LLP | |
| To be served upon:<br>ASBURY AUTOMOTIVE GROUP, INC. | | | |

I, HOLLIS HILL, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** ASBURY AUTOMOTIVE GROUP, INC., c/o Corporation Service Company by leaving a copy with Alisha Smith who is authorized to accept legal documents. , Company: 2 Sun Court Suite 400,, Peachtree Corners, GA 30092

**Manner of Service:** Registered Agent, Jun 2, 2023, 11:47 am EDT

**Documents:** SUMMONS; COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND; PLAINTIFF DOUGLAS GRANT MORTON'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS AUDI OF AMERICA, LLC, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AG, AND VOLKSWAGEN AG

**Additional Comments:**
1) Successful Attempt: Jun 2, 2023, 11:47 am EDT at Company: 2 Sun Court Suite 400,, Peachtree Corners, GA 30092 received by ASBURY AUTOMOTIVE GROUP, INC., c/o Corporation Service Company by leaving a copy with Alisha Smith who is authorized to accept legal documents. . Age: 35+; Ethnicity: African American; Gender: Female; Weight: 150; Height: 5'5"; Hair: Black;

Subscribed and sworn to before me by the affiant who is personally known to me.

_____    6/5/2023
HOLLIS HILL                          Date
Certified Process Server CPS #195

Notary Public

RMG - SERVICES, LLC              6-5-23          4-30-25
4024 Lawrenceville Hwy. Suite (17) #452    Date          Commission Expires
Lilburn, GA 30047
470-831-0292

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA



IN THE STATE COURT OF GWINNETT COUNTY 2022 NOV -3 PM 1: 53

STATE OF GEORGIA

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:

## 22 C-06218-4

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order up to and including January 4, 2024.

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___3rd___ day of ___November___, 20 22.

_____
Ronda Colvin Leary (Nov 3, 2022 11:19 EDT)
Presiding Judge
Gwinnett County State Court

Applicant:

Name ___Hollis Jerome Hill___

Address ___1223 Saxony Drive, SE.___
___Conyers, GA 30013___
___470-831-0292___

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**6/5/2023 4:03 PM**
TIANA P. GARNER, CLERK

# AFFIDAVIT OF SERVICE

| Case: 23-C-03730-S2 | Court: IN THE STATE COURT OF GWINNETT COUNTY | County: GWINNETT | Job: 8963691 |
|---|---|---|---|
| **Plaintiff / Petitioner:** DOUGLAS GRANT MORTON | | **Defendant / Respondent:** VOLKSWAGEN GROUP OF AMERICA, INC. | |
| **Received by:** RMG - SERVICES, LLC | | **For:** Conley, Griggs, Partin LLP | |
| **To be served upon:** VOLKSWAGEN GROUP OF AMERICA, INC. | | | |

I, HOLLIS HILL, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  VOLKSWAGEN GROUP OF AMERICA, INC., c/o Corporation Service Company by leaving a copy with Alisha Smith who is authorized to accept legal documents. , Company: 2 Sun Court Suite 400,, Peachtree Corners, GA 30092

**Manner of Service:**  Registered Agent, Jun 2, 2023, 11:49 am EDT

**Documents:**  SUMMONS; COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND; PLAINTIFF DOUGLAS GRANT MORTON'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANTS AUDI OF AMERICA, LLC, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AG, AND VOLKSWAGEN AG

**Additional Comments:**
1) Successful Attempt: Jun 2, 2023, 11:49 am EDT at Company: 2 Sun Court Suite 400,, Peachtree Corners, GA 30092 received by VOLKSWAGEN GROUP OF AMERICA, INC., c/o Corporation Service Company by leaving a copy with Alisha Smith who is authorized to accept legal documents. . Age: 35+; Ethnicity: African American; Gender: Female; Weight: 150; Height: 5'5"; Hair: Black;

HOLLIS HILL                                     6/5/2023
HOLLIS HILL                                     Date
Certified Process Server CPS #195

RMG - SERVICES, LLC
4024 Lawrenceville Hwy. Suite (17) #452
Lilburn, GA 30047
470-831-0292

Subscribed and sworn to before me by the affiant who is personally known to me.

Gregory Starr
Notary Public
6-5-23                  4-30-25
Date                   Commission Expires



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA



IN THE STATE COURT OF GWINNETT COUNTY 2022 NOV -3 PM 1: 53

STATE OF GEORGIA

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers
Case Number:

**2 2  C - 0 6 2 1 8 - 4**

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order up to and including January 4, 2024.

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this _____3rd_____ day of _____November_____, 20 22.

Ronda Colvin Leary (Nov 3, 2022 11:19 EDT)

Presiding Judge
Gwinnett County State Court

Applicant:

Name _____Hollis Jerome Hill_____

Address _____1223 Saxony Drive, SE._____

_____Conyers, GA 30013_____

_____470- 831 - 0242_____

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**6/7/2023 4:29 PM**
TIANA P. GARNER, CLERK

23-C-03730-S2

## <u>NOTICE OF LEAVE OF ABSENCE</u>

To:        All Judges, Clerks of Court and Counsel of Record

From:     Cale Conley

Re:        Notice of Leave of Absence

Date:     June 07, 2023

      COMES NOW Cale Conley and respectfully notifies all Judges before whom he has cases pending, all affected Clerks of Court, and all opposing counsel that he will be on leave pursuant to Uniform Court Rule 16.

      The period of leave during which time I will be away from the practice of law is July 17, 2023 to July 21, 2023 and December 18, 2023 to December 22, 2023. The purpose for this leave is for family vacations.

      All affected Judges and opposing counsel shall have 10 days from the date of this Notice to make objections. If no objections are filed, then leave shall be granted.

      This 7th day of June, 2023.

                        **CONLEY GRIGGS PARTIN LLP**

                        /s/ *Cale Conley*
                        Cale Conley
                        Georgia Bar No. 181080

                        4200 Northside Parkway, N.W.
                        Building One, Suite 300
                        Atlanta, Georgia 30327
                        T | (404) 467-1155
                        F | (404) 467-1166
                        cale@conleygriggs.com

# EXHIBIT "A"

| Name of Case/ Court/CAFN | Counsel of Record |
|---|---|
| *Rebekah Youngers and Leonard Greene, as Co-Guardians and Co-Conservators for Brenda Elaine Greene, and Leonard Greene, individually v. Ford Motor Company, Johnson Controls, Inc., Adient US LLC, and Alexander Chase Wilson*<br><br>State Court of Gwinnett Co.<br><br>Civil Action File No.: 22-C-0917-S4 | WATSON SPENCE, LLC<br>Michael R. Boorman, Esq.<br>Philip A. Henderson, Esq.<br>999 Peachtree Street, N.E., Suite 1130<br>Atlanta, GA 30309<br>mboorman@watsonspence.com<br>tandrews@watsonspence.com<br>phenderson@watsonspence.com<br><br><br>DONOHUE BROWN MATHEWSON & SMYTH LLC<br>Mark H. Boyle<br>140 S. Dearborn, Suite 800<br>Chicago, Illinois 60603<br>boyle@dbmslaw.com<br>*Attorneys for Defendant Ford Motor Company*<br><br>CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP<br>Timothy L. Mitchell, Esq.<br>Meridian II, Suite 2000<br>275 Scientific Drive<br>Peachtree Corners, GA  30092<br>tmitchell@cmlawfirm.com<br>*Attorneys for Defendant, Wilson*<br><br>GREENBERG TRAURIG, LLP<br>Sara K. Thompson, Esq.<br>Brady Herman, Esq.<br>3333 Piedmont Rd. NE, Suite 2500<br>Atlanta, Georgia 30305<br>thompsons@gtlaw.com<br>hermanb@gtlaw.com<br><br>Jeffrey B. Whitt, Esq.<br>Elizabeth C. Christen, Esq.<br>Tracy G. Ferak, Esq. |

2

| | Faegre Drinker Biddle & Reath LLP |
|---|---|
| | 191 N Upper Wacker Dr. |
| | Suite 3700 |
| | Chicago, Illinois 60606 |
| | |
| | jeffrey.whitt@faegredrinker.com |
| | elizabeth.christen@faegredrinker.com |
| | tracy.ferak@faegredrinker.com |
| | *Attorneys for Defendants Johnson Controls, Inc. and Adient US LLC* |
| *Isabella Morris, Steve Morris, and Ingrid Krein v. Amita Shroff, MD, and Gwinnett Emergency Specialists, PC*<br><br>State Court of DeKalb County<br><br>Civil Action File No.: 18-A-71517 | Laura D. Eschleman<br>Molly C. McCall<br>Nall & Miller, LLP<br>235 Peachtree Street, N.E.<br>North Tower, Suite 1500<br>Atlanta, Georgia 30303-1418<br>*Attorneys For Defendant Amita Shroff, M.D. And Gwinnett Emergency Specialists, P.C.* |
| *Douglas Grant Morton v. Audi of America, LLC, Volkswagen Group of America, Inc. d/b/a Audi of America, Inc., Audi AG, Volkswagen AG, and Asbury Automotive Group, Inc.*<br><br>State Court of Gwinnett County<br><br>Civil Action File No.: 23-C-03730-S2 | |
| *Yanet Ortiz Castro, as Surviving Spouse of Roberto Chavarria-Salaices, deceased v. Discount Truck Tires & Towing LLC*<br><br>Superior Court of Bartow County<br><br>Civil Action File No.: SUCV2022001265 | Jeffrey P. Raasch<br>Vernis & Bowling of Atlanta, LLC<br>30 Perimeter Park Drive<br>Suite 200<br>Atlanta, GA 30341<br>jraasch@georgia-law.com |

3

| | |
|---|---|
| *Jack Ross Fee, Jr. and Tonya Fee v. Volvo Group North America, LLC, Penske Truck Leasing Co., LP, Richard J. Bernard, III, Jonathan Dalrymple, Trenton Hammontree, and John Doe 1*<br><br>State Court of Gwinnett County<br><br>Civil Action File No.: 20-CV-03285-S5 | Michael Hostetter<br>Patrick N. Arndt<br>NALL & MILLER LLP<br>235 Peachtree Street, N.E.<br>Suite 1500 - North Tower<br>Atlanta, Georgia 30303-1401<br>mhostetter@nallmiller.com<br>parndt@nallmiller.com<br><br>Warner S. Fox<br>C Shane Keith<br>HAWKINS PARNELL & YOUNG<br>303 Peachtree Street, N.E.<br>Suite 4000<br>Atlanta, Georgia 30308-3243<br>wfox@hpylaw.com<br>skeith@hpylaw.com<br><br>Thomas K. Wingfield<br>HALL BOOTH SMITH PC<br>191 Peachtree Street, NE<br>Suite 2900<br>Atlanta, Georgia 30303<br>twingfield@hallboothsmith.com |
| *Neal L. Williams; and Sarah R. Williams, as Natural Parents, Guardians, and Next Friends of E.A.W., a minor child v. Robert Coates; Ellen Angel Cordle, and their minor son, C.C.*<br><br>State Court of Cobb County<br><br>Civil Action File No.: 22-A-3340 | Nicole Wolfe Stout<br>Strawinski & Stout, PC<br>3340 Peachtree Street, NE<br>Suite 1445, Tower Place 100<br>Atlanta, Georgia 30326<br>nws@strawinski.com |
| *Jane Doe v. Greer Hardesty; Kappa Alpha Order; Kappa Alpha Order, Sigma Chapter; Alpha Sigma Properties, Inc.*<br><br>State Court of Fulton County<br><br>Civil Action File No. 22EV005236 | Lee Clayton<br>Leah F. Parker<br>Swift Currie McGhee & Hiers LLP<br>1420 Peachtree Street, NE<br>Suite 800<br>Atlanta, Georgia 30309<br>Lee.clayton@swiftcurrie.com<br>Leah.parker@swiftcurrie.com<br><br>David Ladner |

4

| | |
|---|---|
| | Kathleen D. Broyles<br>Bendin Sumrall & Ladner, LLC<br>One Midtown Plaza, Suite 800<br>1360 Peachtree Stree, NE<br>Atlanta, Georgia 30309<br>DLadner@bsllaw.net<br>KBroyles@bsllaw.net |
| *Quinn Buczek v. Sterigenics U.S, LLC;*<br>*Sotera Health, LLC; Prologis First U.S.*<br>*Properties, LP; Daryl Mosby; Donnie*<br>*Wright; Elbert Sabb; and John Does No.*<br>*1-10*<br><br><br>State Court of Gwinnett County<br><br>Civil Action File No. *20-C-05918-S1* | Milton F. Eisenberg, II<br>Dan Chapman & Associates, PC<br>P.O. Box 1343<br>Conyers, Georgia 30012<br>milton@danchapmanlaw.com<br><br>Darren W. Penn<br>Kevin M. Ketner<br>John D. Hadden<br>Penn Law LLC<br>4200 Northside Parkway, N.W.<br>Building One, Suite 100<br>Atlanta, Georgia 30327-3007<br>darren@pennlawgroup.com<br>kevin@pennlawgroup.com<br>john@pennlawgroup.com<br><br>W. Clay Massey<br>Christina Hull Eikhoff<br>Lee Ann Anand<br>Camille McMakin<br>Reagan Drake<br>Taylor Lin<br>Alston & Bird LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 4900<br>Atlanta, Georgia 30309-3424<br>clay.massey@alston.com<br>Christy.eikhoff@alston.com<br>Leeann.anand@alston.com<br>Camille.mcmakin@alston.com<br>Reagan.drake@alston.com<br>Taylor.lin@alston.com<br><br>Warner S. Fox<br>David C. Marshall |

5

Elliott C. Ream
Hawkins Parnell & Young, LLP
303 Peachtree Street NE
Suite 4000
Atlanta, Georgia 30308-3243
wfox@hpylaw.com
dmarshall@hpylaw.com
eream@hyplaw.com

John Heyde, Esq.
Karen McCall, Esq.
Sidley Austin, LLLP
One South Dearborn Street
Chicago, IL 60603
jheyde@sidley.com
kmccall@sidley.com

Eric Lasker, Esq.
Hollingsworth LLP
1350 I Street NW
Washington, DC 20005
elasker@hollingsworthllp.com

Alvina M. Oelhafen
Alston & Bird LLP
555 Fayetteville Street
Suite 600
Raleigh, NC 27601
Allie.oelhafen@alston.com

Michael L. Lisak, Esq.
Sidley Austin, LLLP
One South Dearborn Street
Chicago, IL 60603
mlisak@sidley.com

R. Scott Masterson
Michael P. DiOrio
Victoria Munian
Lewis Brisbois Bisgaard & Smith, LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 4700
Atlanta, Georgia 30308
Scott.Masterson@lewisbrisbois.com
Mike.DiOrio@lewisbrisbois.com

| | |
|---|---|
| | Victoria.Munian@lewisbrisbois.com<br><br>Geoffrey M. Drake<br>Douglas A. Henderson<br>Nicholas H. Howell<br>King & Spalding LLP<br>1180 Peachtree Street NW<br>Suite 1600<br>Atlanta, Georgia 30309<br>gdrake@kslaw.com<br>dhenderson@kslaw.com<br>nhowell@kslaw.com |
| *Benjamin Preparatory School v.*<br>*Sterigenics U.S., LLC, Sotera Health,*<br>*LLC, Prologis First U.S. Properties, LP,*<br>*Daryl Mosby, Donnie Wright, Elbert*<br>*Sabb, John Does (1-10)*<br><br>State Court of Gwinnett County<br><br>Civil Action File No. 21-C-00408-S5 | James I. Seifter<br>Penn Law LLC<br>4200 Northside Parkway, N.W.<br>Building One, Suite 100<br>Atlanta, Georgia 30327<br>jim@pennlawgroup.com<br><br>W. Clay Massey<br>Dan Diffley<br>Christina Hull Eikhoff<br>Thomas Grantham<br>Alston & Bird, LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 4900<br>Atlanta, Georgia 30309-3424<br>clay.massey@alston.com<br>dan.diffley@alston.com<br>christina.eikhoff@alston.com<br>thomas.grantham@alston.com<br><br>Warner S. Fox<br>David C. Marshall<br>Elliot C. Ream<br>Hawkins Parnell & Young, LLC<br>303 Peachtree Street NE<br>Suite 4000<br>Atlanta, Georgia 30308-3243<br>wfox@hpylaw.com<br>dmarshall@hpylaw.com<br>eream@hpylaw.com<br><br>R. Scott Masterson |

7

| | Michael P. DiOrio<br>Victoria E. Munian<br>Lewis, Brisbois, Bisgaard & Smith, LLP<br>Bank of America Plaza<br>600 Peachtree Street NE, Suite 4700<br>Atlanta, Georgia 30308<br>Scott.mastersone@lewisbrisbois.com<br>Mike.diorio@lewisbrisbois.com<br>Victoria.munian@lewisbrisbois.com |
|---|---|
| *Davina Brewer v. Sterigenics U.S., LLC;*<br>*Sotera Health, LLC; Prologis First U.S.*<br>*Properties, LP; Daryl Mosby; Donnie*<br>*Wright; Elbert Sabb; and John Does No.*<br>*1-10*<br><br>State Court of Cobb County<br><br>Civil Action File No. 20-A-2978-4 | Milton F. Eisenberg, II<br>Dan Chapman & Associates, PC<br>P.O. Box 1343<br>Conyers, Georgia 30012<br>milton@danchapmanlaw.com<br><br>W. Clay Massey<br>Lee Ann Anand<br>Sara Warren<br>Christina Hull Eikhoff<br>Kathryn Klorfein<br>Alston & Bird, LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 4900<br>Atlanta, Georgia 30309-3424<br>clay.massey@alston.com<br>leeann.anand@alston.com<br>sara.warren@alston.com<br>christina.eikhoff@alston.com<br>Kathryn.klorfein@alston.com<br><br>Warner S. Fox<br>David C. Marshall<br>Elliot C. Ream<br>Hawkins Parnell & Young, LLC<br>303 Peachtree Street NE<br>Suite 4000<br>Atlanta, Georgia 30308-3243<br>wfox@hpylaw.com<br>dmarshall@hpylaw.com<br>eream@hpylaw.com |
| *Chuck Martin and Jennifer Martin*<br>*Individually and as Natural Father,* | Darren W. Penn<br>James I. Seifter |

8

| | |
|---|---|
| *Natural Mother and Guardians for Emma Joey Martin, a Minor v. Sterigenics U.S., LLC; Sotera Health, LLC; Prologis First U.S. Properties, LP; Daryl Mosby; Donnie Wright; Elbert Sabb; and John Does No. 1-10*<br><br>State Court of Cobb County<br><br>Civil Action File No. 21-A-2406-4 | William L. Ballard<br>Alexandra "Sachi" Cole<br>Kevin M. Ketner<br>Penn Law LLC<br>4200 Northside Pkwy. NW<br>Bldg. One, Suite 100<br>Atlanta, Georgia 30327<br>darren@pennlawgroup.com<br>jim@pennlawgroup.com<br>sachi@pennlawgroup.com<br>kevin@pennlawgroup.com<br><br>W. Clay Massey<br>Lee Ann Anand<br>Sara Warren<br>Christina Hull Eikhoff<br>Kathryn Klorfein<br>Alston & Bird, LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 4900<br>Atlanta, Georgia 30309-3424<br>clay.massey@alston.com<br>leeann.anand@alston.com<br>sara.warren@alston.com<br>christina.eikhoff@alston.com<br>Kathryn.klorfein@alston.com<br><br>Warner S. Fox<br>David C. Marshall<br>Elliot C. Ream<br>Hawkins Parnell & Young, LLC<br>303 Peachtree Street NE<br>Suite 4000<br>Atlanta, Georgia 30308-3243<br>wfox@hpylaw.com<br>dmarshall@hpylaw.com<br>eream@hpylaw.com |

9

| | |
|---|---|
| *Rayann Champagnie v. Grace JP, Inc. d/b/a Duluth Auto & Body Repair v. Jermaine Gray*<br><br>State Court of Gwinnett County<br><br>Civil Action File No. 21-C-07296-S5 | Joseph L. Wilson<br>Joseph Wilson Injury Lawyers, LLC<br>9 Dunwoody Park<br>Suite 111<br>Dunwoody, Georgia 30338<br>joe@jlwilsoninjurylawyers.com<br><br>Ashley D. Alfonso<br>Alice B. Hollaway<br>Swift, Currie, McGhee & Hiers, LLP<br>1420 Peachtree Street, N.E.<br>Suite 800<br>Atlanta, Georgia 30309<br>ashley.alfonso@swiftcurrie.com<br>alice.hollaway@swiftcurrie.com |
| *Wiletra Holt v. YES Valley Brook, LLC; YES Companies Exp2 Fred, LLC; YES Homesales Exp, LLC; YES Management, LLC; YES Investors Exp, LLC; YES Communities, LLC*<br><br>State Court of Gwinnett County<br><br>Civil Action File No.: 20-C-03407-S3 | Jan P. Cohen<br>Matthew C. Richardson<br>Kenneth S. Nugent, P.C.<br>4227 Pleasant Hill Road<br>Building 11, Suite 300<br>Duluth, Georgia 30096<br>mrichardson@attorneykennugent.com<br>jcohen@attorneykennugent.com<br><br>Michael H. Schroder, Esq.<br>Gillian S. Crowl, Esq.<br>Swift, Currie, McGhee & Hiers<br>1355 Peachtree Street<br>Suite 300<br>Atlanta, Georgia 30309<br>michael.schroder@swiftcurrie.com<br>gillian.crowl@swiftcurrie.com |
| *Thomas E. Reese, as Surviving Father of Thomas Reese, Jr. and Shirley Reese, deceased minors; and Mark A. Robinson, as Administrator of the Estates of Thomas Reese, Jr., Shirley Reese, India Gregory and Jacob Seabrum, deceased minors v. Razor USA, LLC; Wal-Mart Inc.; Wal-Mart Stores East, LP; and Dynacraft BSC, Inc.*<br><br>State Court of DeKalb County | Ashley C. Webber<br>Hallie E. Richards<br>Swift, Currie, McGhee & Hiers, LLP<br>1420 Peachtree Street NE<br>Suite 800<br>Atlanta, GA 30309<br>ashley.webber@swiftcurrie.com<br>Hallie.richards.@swiftcurrie.com<br><br>Jonathan T. Barton<br>Megan M. Oliver<br>Stanton Barton LLC |

| | |
|---|---|
| Civil Action File No. 22A02742 | 8000 Maryland Ave.<br>Suite 450<br>Saint Louis, MO 63105<br>jbarton@stantonbarton.com<br>moliver@stantonbarton.com<br><br>Leslie P. Becknell<br>Ann H. Searcy<br>Drew, Eckl & Farnham, LLP<br>777 Gloucester Street<br>Suite 305<br>Brunswick, GA 31520<br>lbecknell@deflaw.com<br>searcya@deflaw.com<br><br><br>Duane L. Cochenour<br>Nneka A. Egwuatu Anunobi<br>Nolan Hendricks<br>Hall Booth Smith, P.C.<br>191 Peachtree Street NE<br>Suite 2900<br>Atlanta, GA 30303<br>dcochenour@hallboothsmith.com<br>negwuatu@hallboothsmith.com<br>nhendricks@hallboothsmith.com |
| *Michelle Rollinson, Individually, and as Natural Mother and Guardian of Matthias Rollinson, a Minor v. FPACP3 Ashford, LLC; Trinity Property Consultants, LLC; Jacquelyn Boyd; and Tenekia N. Harrell v. ABC Corporations 1-5 and John and Jane Does 1-5*<br><br>State Court of DeKalb County<br><br>Civil Action File No. 22A00481 | Joseph L. Wilson<br>Joseph Wilson Injury Lawyers, LLC<br>9 Dunwoody Park<br>Suite 111<br>Dunwoody, Georgia 30338<br>joe@jlwilsoninjurylawyers.com<br><br>Scott Masterson<br>Paul Borr<br>Matthew G. Richards<br>Lewis Brisbois Bisgaard & Smith, LLP<br>600 Peachtree Street NE<br>Suite 4700<br>Atlanta, GA 30308<br>Scott.Masterson@lewisbrisbois.com<br>Paul.Borr@lewisbrisbois.com<br>Matthew.richards@lewisbrisbois.com |

| | |
|---|---|
| *Elizabeth "Liz" Tomlin, as Surviving Mother of Charles E. Tomlin, and as Administrator of the Estate of Charles E. Tomlin v. Jerry Reed, individually and as an agent, Servant, and employee of John N. Williams, and/or Newberry-Williams Farms, Inc. & John N. Williams a/k/a John N. Williams, Sr., individually, & d/b/a Newberry-Williams Farms, Inc. & John N. Williams Jr., d/b/a John N. Williams, Jr. Cattle Farms, & d/b/a Josuli Farms & Newberry-Williams Farms, Inc.*<br><br>Superior Court of Decatur County<br><br>Civil Action File No. *20CV00300* | Robert R. McLendon IV<br>Robert R. McLendon IV, P.C.<br>214 Court Square<br>2nd Floor<br>Blakely, Georgia 39823<br>rob@themclendonlawfirm.com<br><br>John C. Spurlin<br>Spurlin & Spurlin, LLC<br>Post Office Box 7566<br>Tifton, Georgia 31793<br>johnspurlin@spurlinlaw.com<br><br>James Garland<br>Alexander & Vann, LLP<br>411 Gordon Avenue<br>Thomasville, Georgia 31792<br>jgarland@alexandervann.com |
| *Georgia Farm Bureau Mutual Insurance Company v. Jerry Reed and Elizabeth Tomlin*<br><br>Superior Court of Decatur County<br><br>Civil Action File No. 21CV00425 | W. Thomas Lacy, Jr.<br>Lindsey & Lacy, PC<br>200 Westpark Drive<br>Suite 280<br>Peachtree City, Georgia 30269<br>tlacy@llptc.com<br><br>Robert R. McLendon IV<br>Robert R. McLendon IV, P.C.<br>214 Court Square<br>2nd Floor<br>Blakely, Georgia 39823<br>rob@themclendonlawfirm.com<br><br>William Justin Purvis<br>Jared Keobble<br>Young, Thagard, Hoffman, LLP<br>2841 North Patterson Street<br>P.O. Box 3007<br>Valdosta, Georgia 31604<br>Justinpurvis@youngthagard.com<br>jaredkeobble@youngthagard.com |

| *William Bridges and Lisa Bridges v. C. Drew Salisbury, M.D. and Eye Consultants of Atlanta, P.C.*<br><br>State Court of Fulton County<br><br>Civil Action File No. *20EV005829* | M. Scott Bailey<br>Lindsey L. Cassimus<br>Huff, Powell & Bailey, LLC<br>999 Peachtree Street NE<br>Suite 950<br>Atlanta, GA 30309<br>sbailey@huffpowellbailey.com<br>lcassimus@huffpowellbailey.com<br><br>Robert Monyak<br>Peters & Monyak, LLP<br>Blackstone Center<br>Suite 100<br>1777 Northeast Expressway, N.E.<br>Atlanta, GA 30329<br>rmonyak@petersmonyak.com |
| --- | --- |
| *Bobby Lashley & Rebecca Lashley v. Langboard, Inc.*<br><br>State Court of Lowndes County<br>Civil Action File No. 2022SCV0225 | Jeanne M. Harrison<br>Smith, Currie & Hancock, LLP<br>245 Peachtree Center Avenue NE<br>Suite 2700, Marquis One Tower<br>Atlanta, Georgia 30303-1227<br>jmharrison@smithcurrie.com<br><br>Eric A. Collins<br>Coleman Talley LLP<br>109 S. Ashley Street<br>Valdosta, Georgia 31601<br>eric.collins@colemantalley.com |
| *John Lester Delgobbo. Individually as Surviving Husband of Valerie Joy Delgobbo, and as Personal Representative of the Estate of Valerie Joy Delgobbo v. Avanos Medical, Inc.*<br><br>State Court of Gwinnett County<br><br>Civil Action File No. 22-C-01333-S5 | Matthew Fleishman (*pro hac vice pending*)<br>Rosensteel Fleishman<br>132 N. McDowell Street<br>Charlotte, North Carolina 28204<br>mfleishman@rflaw.net<br><br>Thomas J. Mazziotti<br>Huff, Powell & Bailey, LLC<br>999 Peachtree Street NE<br>Suite 950<br>Atlanta, Georgia 30309<br>tmazziotti@huffpowellbailey.com<br><br>Peter Strelitz<br>Matthew D. Kelly<br>Segal McCambridge |

13

| | 233 S. Wacker Drive<br>Suite 500<br>Chicago, Illinois 60606<br>pstrelitz@smsm.com<br>mkelly@smsm.com |
|---|---|
| *Jonathan K. Christianson, Individually and as Administrator of the Estate of Cynthia Aehwa Christianson v. American Honda Motor Co. Inc., et al*<br><br>Superior Court of Clayton County<br><br>Civil Action File No.: 2018CV02040 | L'Erin Barnes Wiggins, Esq.<br>P.O. Box 250464<br>Atlanta, GA 30325<br><br>J. Randolph Bibb, Esq.<br>Lewis, Thompson, King, Krieg & Waldrop<br>424 Church Street<br>Suite 2500<br>Nashville, TN 37219<br><br>H. Lanier Brown, Esq.<br>Watkins & Eager, P.C.<br>2204 Lakeshore Drive, Suite 114<br>Birmingham, AL 35209<br>*Counsel for American Honda Motor Co., Inc.* |
| *Gregory Scott Armstrong and Rita Armstrong v. FCA US LLC; Stellantis N.V.; Five Star Automotive Group, LLC; and Five Star Dodge, Inc.*<br><br>State Court of Bibb County<br><br>Civil Action File No.: 22-SCCV-095205 | Brent Hyde, Esq.<br>Hall Booth Smith<br>1564 King Road<br>Tifton, GA 31793<br><br>J. Bart Cannon, Esq.<br>Huie, Fernambucq & Stewart, LLP<br>3291 U.S. Highway 280<br>Suite 200<br>Birmingham, AL 35243 |
| *Brian Quanstrum and Lisa Quanstrum v. Flint Electric Membership Corporation; Flint Energies, Inc.; and Novinium, Inc.*<br><br>State Court of Houston County<br><br>Civil Action File No.: 2023-V-54868 | Jim Manley, Esq.<br>Troutman Pepper Hamilton Sanders LLP<br>600 Peachtree Street NE, Suite 3000<br>Atlanta, GA 30308<br><br>Hugh Peterson, Esq.<br>Balch & Bingham LLP<br>30Ivan Allen Jr. Blvd. N.W.<br>Suite 700<br>Atlanta, GA 30308 |

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing Notice of Leave of Absence upon all Judges, Clerks and opposing counsel listed on the attached Exhibit "A" electronically via Odyssey e-file & serve, or Peach Court.

This 7th day of June, 2023.

**CONLEY GRIGGS PARTIN LLP**

/s/ *Cale Conley*
Cale Conley
Georgia Bar No. 181080

4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327
(404) 467-1155
cale@conleygriggs.com

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**6/16/2023 11:17 AM**

TIANA P. GARNER, CLERK

## NOTICE OF LEAVE OF ABSENCE

To:        All Judges, Clerks of Court and Counsel of Record

From:    Davis S. Popper

Re:       Notice of Leave of Absence

Date:    June 16, 2023

COMES NOW Davis S. Popper and respectfully notifies all Judges before whom he has cases pending, all affected Clerks of Court, and all opposing counsel that he will be on leave pursuant to Uniform Court Rule 16.

The period of leave during which time I will be away from the practice of law is August 21 through August 25, 2023. The purpose for this leave is for family vacation.

All affected Judges and opposing counsel shall have 10 days from the date of this Notice to make objections. If no objections are filed, then leave shall be granted.

This 16th day of June, 2023.

**CONLEY GRIGGS PARTIN LLP**

/s/ *Davis S. Popper*
DAVIS S. POPPER
Georgia Bar No. 863530

4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327
T | (404) 467-1155
davis@conleygriggs.com

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that I have this date served a copy of the foregoing Notice of Leave of Absence upon all Judges, Clerks and opposing counsel listed on the attached Exhibit "A" electronically via Odyssey e-file & serve, or Peach Court.

       This 16th day of June, 2023.

                                    **CONLEY GRIGGS PARTIN LLP**

                                    */s/ Davis S. Popper*
                                    DAVIS S. POPPER
                                    Georgia Bar No. 863530

                                    4200 Northside Parkway, N.W.
                                    Building One, Suite 300
                                    Atlanta, Georgia 30327
                                    T | (404) 467-1155
                                    davis@conleygriggs.com

**EXHIBIT "A"**

Name of Case/ Court/CAFN                    Counsel of Record

*Janee Chapman v. All Star Enterprises*     Michael D. Deming, Esq.
*10, LLC (d/b/a All Star-Scooters)*         Deming, Parker, Hoffman, Campbell & Daly, LLC
                                            4851 Jimmy Carter Boulevard
Bibb County State Court                     Norcross, Georgia 30093
Civil Action File No.: 19-SCCV-089603       demingmd@deminglaw.com

                                            Dan Bullard, IV, Esq.
                                            Kevin A. Wangerin, Esq.
                                            Bullard, Wangerin & Corbett, LLP
                                            4077 Forsyth Road, 2nd Floor
                                            P. O. Box 18107
                                            Macon, GA 31209-8107
                                            wangerink@aol.com
                                            dbullard@bgwlawfirm.com

*Douglas Grant Morton v. Audi of*
*America, LLC; Volkswagen Group of*
*America, Inc. d/b/a Audi of America, Inc.;*
*Audi AG; Volkswagen AG; and Asbury*
*Automotive Group, Inc.*

Gwinnett County State Court
Civil Action File No.: 23-C-03730-S2

3

| | |
|---|---|
| *Michelle Rollinson, Individually, and as Natural Mother and Guardian of Matthias Rollinson, a Minor v. FPACP3 Ashford, LLC; Trinity Property Consultants, LLC; Jacquelyn Boyd; and Teneka N. Harrell* | Joseph Wilson, Esq. Joseph Wilson Injury Lawyers 9 Dunwoody Park S. Building 9, Suite 111 Atlanta, Georgia 30338 joe@jlwilsoninjurylawyers.com |
| DeKalb County State Court Civil Action File No.: 22-A-00481 | Scott Masterson Paul Borr Matthew G. Richards Lewis Brisbois Bisgaard & Smith, LLP 600 Peachtree Street NE Suite 4700 Atlanta, GA 30308 Scott.Masterson@lewisbrisbois.com Paul.Borr@lewisbrisbois.com Matthew.richards@lewisbrisbois.com |
| *John Lester Delgobbo, Individually as Surviving Husband of Valerie Joy Delgobbo, and as Personal Representative of the Estate of Valerie Joy Delgobbo v. Avanos Medical, Inc.* | Matthew Fleishman, Esq. (*pro hac vice pending*) Rosenthal Fleishman 132 N. McDowell Street Charlotte, NC 28204 mfleishman@rflaw.net |
| Gwinnett County State Court Civil Action File No.: 22-C-01333-S5 | Thomas Mazziotti Huff, Powell & Bailey, LLC 999 Peachtree Street NE Suite 950 Atlanta, GA 30309 tmazziotti@huffpowellbailey.com |
| | Peter Strelitz Matthew Kelley Segal McCambridge Singer & Mahoney, LTD 233 S. Wacker Drive Suite 5500 Chicago, IL 60606 pstrelitz@smsm.com mkelly@smsm.com |

4

*Thomas E. Reese, as Surviving Father of*
*Thomas Reese, Jr. and Shirley Reese,*
*deceased minors; and Mark A. Robinson,*
*as Administrator of the Estates of Thomas*
*Reese, Jr., Shirley Reese, India Gregory*
*and Jacob Seabrum, deceased minors v.*
*Razor USA, LLC; Wal-Mart Inc.; Wal-*
*Mart Stores East, LP; and Dynacraft*
*BSC, Inc.*

DeKalb County State Court
Civil Action File No. 22A02742

Ashley C. Webber
Hallie E. Richards
Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
ashley.webber@swiftcurrie.com
Hallie.richards.@swiftcurrie.com

Jonathan T. Barton
Megan M. Oliver
Stanton Barton LLC
8000 Maryland Ave.
Suite 450
Saint Louis, MO 63105
jbarton@stantonbarton.com
moliver@stantonbarton.com

Leslie P. Becknell
Ann H. Searcy
Drew, Eckl & Farnham, LLP
777 Gloucester Street
Suite 305
Brunswick, GA 31520
lbecknell@deflaw.com
searcya@deflaw.com

Duane L. Cochenour
Nneka A. Egwuatu Anunobi
Nolan Hendricks
Hall Booth Smith, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
dcochenour@hallboothsmith.com
negwuatu@hallboothsmith.com
nhendricks@hallboothsmith.com

*Jonathan K. Christianson, Individually and as Administrator of the Estate of Cynthia Aehwa Christianson v. American Honda Motor Co. Inc., et al*

Clayton County State Court
Civil Action File No.: 2018CV02040

L'Erin Barnes Wiggins, Esq.
P.O. Box 250464
Atlanta, GA 30325
lerin@lfbarneslaw.com

J. Randolph Bibb, Esq.
Lewis, Thompson, King, Krieg & Waldrop
424 Church Street
Suite 2500
Nashville, TN 37219

H. Lanier Brown, Esq.
Watkins & Eager, P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, AL 35209
hbrown@watkinseager.com

*Gregory Scott Armstrong and Rita Armstrong v. FCA US LLC, Stellantis N.V., Five Star Automotive Group, LLC and Five Star Dodge, Inc.*

Bibb County State Court
Civil Action File No. 22-SCCV-095205

J. Bart Cannon
Huie, Fernambucq & Stewart, LLP
3291 U.S. Highway 280
Birmingham, AL 35242
bcannon@huielaw.com

Robert E. Cabe, III
Cabe Law, LLC
P.O. Box 6278
Macon, GA 31208
robert@cabe.law

W. Brent Hyde
Hall Booth Smith, P.C.
1564 King Road
Tifton, GA 31793
bhyde@hallboothsmith.com

6

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**6/28/2023 12:17 PM**
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DOUGLAS GRANT MORTON,

      Plaintiff,

v.

AUDI OF AMERICA, LLC; VOLKSWAGEN
GROUP OF AMERICA, INC. d/b/a AUDI OF
AMERICA, INC.; AUDI AG;
VOLKSWAGEN AG; and ASBURY
AUTOMOTIVE GROUP, INC.,

      Defendants.

Civil Action File No: 23-C-03730-S2

## STIPULATION EXTENDING TIME TO RESPOND
## PURSUANT TO O.C.G.A. § 9-11-6(b)

Pursuant to O.C.G.A. § 9-11-6(b), Plaintiff hereby stipulates, pursuant to counsel, to

extend the time in which **Defendant Asbury Automotive Group, Inc.** may answer, object or

otherwise respond to Plaintiff's *Complaint* through and including **Friday, July 28, 2023.**

SO STIPULATED this 28th day of June, 2023.

### CONSENTED TO AND AGREED UPON BY:

*/s/ Gwendolyn D. Havlik*
Gwendolyn D. Havlik
**Georgia Bar No. 574891**
303 Peachtree St. NE, Suite 3500
Atlanta, Georgia 30308
Telephone: (404) 885-1400
E-mail: havlikg@deflaw.com
***Attorneys for Defendant Asbury Automotive***
***Group, Inc.***

*/s/ Cole Conley*
Cole Conley
**Georgia Bar No. 181080**
Davis Popper
**Georgia Bar No. 863530**
Alex S. Edmonds
**Georgia Bar No. 564605**
Conley Griggs Partin, LLP
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
E-mail: cale@conleygriggs.com
E-mail: davis@conleygriggs.com
E-mail: kip@conleygriggs.com
***Attorneys for Plaintiffs***

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DOUGLAS GRANT MORTON,

     Plaintiff,

     v.

AUDI OF AMERICA, LLC; VOLKSWAGEN
GROUP OF AMERICA, INC. d/b/a AUDI OF
AMERICA, INC.; AUDI AG;
VOLKSWAGEN AG; and ASBURY
AUTOMOTIVE GROUP, INC.,

     Defendants.

Civil Action File No: 23-C-03730-S2

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am counsel for Defendant, and that I have this day served a true and correct copy of the foregoing *Stipulation Extending Time to Respond Pursuant to O.C.G.A. § 9-11-6(b)* on all parties by Odyssey EFileGA, which will deliver electronic notification of same to all counsel of record.

Cole Conley
Davis Popper
Alex S. Edmonds
Conley Griggs Partin, LLP
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327

Noah B. Abrams
ABRAMS & ABRAMS, P.A.
1526 Glenwood Avenue
Raleigh, NC 27608

Winston S. Kirby
Andrew C. Avram
EDWARDS KIRBY, L.L.P.
3201 Glenwood Avenue, Suite 100
Raleigh, NC 27619

This 28th day of June, 2023.

/s/ Gwendolyn D. Havlik
Gwendolyn D. Havlik
**Georgia Bar No. 574891**

303 Peachtree St. NE, Suite 3500
Atlanta, Georgia 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992
E-mail: havlikg@deflaw.com
**Attorneys for Defendant Asbury Automotive Group, Inc.**

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**7/14/2023 10:55 AM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| DOUGLAS GRANT MORTON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN | ) | Civil Action File No.: |
| GROUP OF AMERICA, INC. D/B/A AUDI | ) | 23-C-03730-S2 |
| OF AMERICA, INC.; AUDI AG; | ) | |
| VOLKSWAGEN | ) | |
| AG; AND ASBURY AUTOMOTIVE | ) | |
| GROUP ,INC., | ) | |
| | | |
|     Defendants. | | |

### JOINT STIPULATION EXTENDING TIME FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. TO RESPOND TO PLAINTIFF'S COMPLAINT

COME NOW Defendant Volkswagen Group of America, Inc., ("VWGoA") along with Plaintiff (collectively referred to as the "Parties"), by and through their counsel of record, and hereby stipulate that the time for VWGoA to answer or otherwise respond to Plaintiff's Complaint is hereby extended through and including August 2, 2023.

In filing this stipulation, VWGoA does not waive any defenses other than insufficient process and improper service of process.

This 14th day of July, 2023.

Respectfully Submitted,

| | |
|---|---|
| **SHOOK HARDY & BACON, LLP** | **CONLEY GRIGGS PARTIN, LLP** |
| | |
| */s/ Caroline M. Gieser* | /s/ Cale Conley |
| Caroline M. Gieser | Cale Conley |
| Georgia Bar No. 167916 | Georgia Bar No. 181080 |
| cgieser@shb.com | Davis Popper |
| Colin K. Kelly | Georgia Bar No. 863530 |

1

Georgia Bar No. 781072
ckelly@shb.com
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591
(470) 867-6012 (direct CKK)
 (470) 867-6013 (direct CMG)

*Counsel for Defendant Volkswagen*
*Group of America, Inc.*

Alex S. Edmonds
Georgia Bar No. 564605
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
E-mail: cale@conleygriggs.com
E-mail: davis@conleygriggs.com
E-mail: kip@conleygriggs.com

*Counsel for Plaintiffs*

2

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

DOUGLAS GRANT MORTON, )
    Plaintiff, )
   )
v. )
   )
AUDI OF AMERICA, LLC; )
VOLKSWAGEN )
GROUP OF AMERICA, INC. D/B/A AUDI )    Civil Action File No.:
OF AMERICA, INC.; AUDI AG; )    23-C-03730-S2
VOLKSWAGEN )
AG; AND ASBURY AUTOMOTIVE )
GROUP ,INC., )
   )
    Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2023, I served a copy of the foregoing **JOINT STIPULATION EXTENDING TIME FOR DEFENDANT VOLKWAGEN GROUP OF AMERICA, INC. TO RESPOND TO PLAINTIFF'S COMPLAINT** upon all parties of record in this matter using the Odyssey E-File system and via electronic mail as follows:

CONLEY GRIGGS PARTIN, LLP
Cale Conley
Davis Popper
Alex S. Edmonds
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
E-mail: cale@conleygriggs.com
E-mail: davis@conleygriggs.com
E-mail: kip@conleygriggs.com

*Counsel for Plaintiffs*

*/s/ Caroline M. Gieser*
Caroline M. Gieser

3

Georgia Bar No. 167916

4

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**7/28/2023 9:31 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,     )
         )
    Plaintiff,     )
         )
v.         )
         )
AUDI OF AMERICA, LLC;     )
VOLKSWAGEN     )     Civil Action File No.:
GROUP OF AMERICA, INC. D/B/A AUDI     )     23-C-03730-S2
OF AMERICA, INC.; AUDI AG;     )
VOLKSWAGEN     )
AG; AND ASBURY AUTOMOTIVE     )
GROUP ,INC.,     )

    Defendants.

## DEFENDANT ASBURY AUTOMOTIVE GROUP, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Asbury Automotive Group, Inc. ("Asbury") as its answer to Plaintiff's Complaint states and alleges as follows:

### INTRODUCTION

1.    This is a civil tort action seeking recovery for personal injuries suffered by Douglas Grant Morton ("Douglas Morton") arising from a motor vehicle collision that occurred on September 25, 2021, in Marshall, North Carolina. On that day, Scottie Dale Proffitt drove a 1999 Dodge Ram truck into the back of a 2020 Audi A6 (the "Subject Vehicle") being driven by Douglas Morton. The driver seat occupant restraint system of the Subject Vehicle failed to contain and protect Mr. Morton — in particular, the driver seat head restraint broke and failed in the incident, proximately causing him to suffer a catastrophic spinal cord injury that has left him permanently paralyzed.

**ANSWER: Asbury admits that Plaintiff asserts a personal injury action for alleged injuries arising out of a motor vehicle collision in which Douglas Morton was driving the Subject Vehicle with the permission of the original purchaser/owner, Lynn Love. Asbury is without information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 1 and therefore denies same.**

2.     Plaintiff reserves the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault or that any presently unnamed entity is believed to be at fault after further facts are shown in discovery.

**ANSWER: Denied.**

## II. PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS

3.     Plaintiff Douglas Morton ("Plaintiff" or "Mr. Morton" herein) is a resident of the State of California. By filing this action, he avails himself of this Court's jurisdiction.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 3 and therefore denies same.**

4.     Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. (hereinafter "Audi, Inc." when separately referenced) is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in Herndon, Virginia. At all relevant times, Audi, Inc. (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, Inc. knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, Inc. also maintains a registered agent in this State — Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, where Audi, Inc. may be served with legal process in this case. At all relevant times, Audi, Inc. promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, maintains a registered agent to transact business in this State and County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, Inc.

**ANSWER: Paragraph 4 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 4.**

5.     Personal Jurisdiction over Audi, Inc.: Georgia's Long-Arm Statute. Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or

omission in Georgia. Namely, Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Audi, Inc. also maintains a registered agent to transact business in this State and County. Under Georgia law, a foreign corporation that is authorized to transact business in Georgia is a resident of this State and subject to direct personal jurisdiction in this State.' Thus, this Court has direct personal jurisdiction over Defendant Audi, Inc. as a resident of this State in addition to long-arm personal jurisdiction over Audi, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER: Paragraph 5 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 5.**

6. Personal Jurisdiction over Audi, Inc.: Due Process. Audi, Inc. (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, it maintains a registered agent to transact business in this State and County, and there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, Inc.'s actions in marketing and selling its vehicles to locations throughout Georgia and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being hailed into Court here. In short, Audi, Inc. has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi, Inc. in this Court comports with due process.

**ANSWER: Paragraph 5 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 5.**

7. Upon information and belief; Defendant Audi of America, LLC (hereinafter "Audi, LLC" when separately referenced) is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Herndon, Virginia. At all relevant times, Audi, LLC (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of

Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at a authorized Audi dealership in Georgia. Audi, LLC knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, LLC may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808. At all relevant times, Audi, LLC promoted via television, interne, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, LLC.

**ANSWER: Paragraph 7 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 7.**

8.      Personal Jurisdiction over Audi, LLC: Georgia's Long-Arm Statute. Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi, LLC under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER: Paragraph 8 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 8.**

9.      Personal Jurisdiction over Audi, LLC: Due Process. Audi, LLC (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business

4

is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, LLC's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, Audi, LLC has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi, LLC in this Court comports with due process.

**ANSWER: Paragraph 9 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 9.**

10. Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Upon information and belief, Audi AG is a wholly-owned subsidiary of Defendant Volkswagen AG, and Audi AG is a sister company with its U.S. distributor, Defendant Audi, Inc. At all relevant times, Audi AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Audi AG may be served with process by having a German-translated copy of this Complaint served upon Audi AG at the Germany Federal Central Authority through the channels authorized by the Hague Convention. At all relevant times, Audi AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi AG.

**ANSWER: Paragraph 10 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 10.**

11. Personal Jurisdiction over Audi AG: Georgia's Long-Arm Statute. Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission

5

in Georgia. Namely, Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER: Paragraph 11 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 11.**

12.     Personal Jurisdiction over Audi AG: Due Process. Audi AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, Audi AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi AG in this Court comports with due process based upon the contacts detailed above and those additional contacts detailed below:

a.      Audi AG exercises direct control over the marketing activities of the numerous authorized Audi dealers in Georgia — including specifically the authorized Audi dealer where the Subject Vehicle was first shipped a purchased by a consumer (Plaintiff in Georgia)

b.      Those authorized Audi dealers in Georgia are only allowed to use the Audi trademarked name, trademarked Audi emblem, and advertise and sell Audi vehicles with the express permission of Audi AG, and by following Audi AG's specific rules for how Audi vehicles can and cannot be marketed

c.      Audi AG has registered and owns numerous "Audi" trademarks with the U.S. Patent and Trademark Office

6

d.  Audi AG works directly with its sister company Audi Inc. (which maintains a registered agent in Georgia) to distribute hundreds of thousands of Audi vehicles all over the United States, and specifically in Georgia

e.  Audi AG and Audi Inc. regularly refer to themselves collectively as "Audi" and have represented that Audi AG is Audi Inc.'s "parent company." In fact, Audi AG has admitted that because the purpose of Audi Inc. is to sell Audi-brand vehicles, there is an economic benefit for Audi AG if Audi Inc.'s operations are successful.

f.  In 2019, over 224,000 Audi vehicles were shipped to the U.S., and in 2020 (the year the Subject Vehicle was first sold by an authorized Audi dealer in Georgia to Plaintiff), over 186,000 Audi vehicles were shipped to the U.S.

g.  Audi AG describes the U.S. as a "core market" for its vehicles and actively monitors and forecasts business and market trends in the U.S., including impacts on its authorized Audi dealers

h.  Audi AG actively participates in U.S. rulemaking for vehicle safety standards, including making direct requests to the National Highway Traffic Safety Administration for exceptions

i.  Audi AG on its own and collectively with Audi Inc. has spent millions of dollars and expended significant effort in advertising, promoting, and developing the Audi trademarks throughout the world—including the U.S. and Georgia specifically

j.  Audi AG's revenue in 2020 (the year the Subject Vehicle was first sold to a consumer by and through an authorized Audi dealer in Georgia) was approximately $55 Billion.

**ANSWER: Paragraph 12 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 12.**

13.  Defendant Volkswagen AG (hereinafter "VW AG" when separately referenced) is a German corporation with its principal place of business in Wolfsburg, Germany. Upon information and belief, VW AG is the parent company of Defendants Audi AG and Audi Inc., and exercises control over the business activities of the two entities. At all relevant times, VW AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at a authorized Audi dealership in Georgia. VW AG knew at all relevant

times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant VW AG may be served with process by having a German-translated copy of this Complaint served upon VW AG at the Germany Federal Central Authority through the channels authorized by the Hague Convention. At all relevant times, VW AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because VW AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to VW AG.

**ANSWER**: **Paragraph 13 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 13.**

14. Personal Jurisdiction over VW AG: Georgia's Long-Arm Statute. VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over VW AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER**: **Paragraph 14 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 14.**

15. Personal Jurisdiction over VW AG: Due Process. VW AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). VW AG' s actions in marketing

and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, VW AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over VW AG in this Court comports with due process. Hereinafter, Defendants Audi, LLC, Audi, Inc., Audi AG, and VW AG shall be collectively referred to as "the Audi Defendants" or "Audi."

**ANSWER: Paragraph 15 contains no allegations directed toward Asbury and therefore no response from Asbury is required. To the extent a response is required, Asbury denies the allegations contained in Paragraph 15.**

16.    Defendant Asbury Automotive Group, Inc. ("Asbury") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Duluth, Georgia.' Upon information and belief, at all relevant times, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, was and is in the business of maintaining, repairing, inspecting, servicing, marketing, promoting, advertising, assembling, distributing, leasing, and/or selling motor vehicles, including the Subject Vehicle that was first sold to Plaintiff at Asbury's authorized Audi dealer in Georgia (referred to as "Audi North Atlanta") and that performed service, repair and/or maintenance on the Subject Vehicle numerous times before the subject incident. Defendant Asbury transacts business in the State of Georgia, derives substantial revenue from business in this State, maintains its principal place of business in this state, and maintains a registered agent to transact business in this State. Defendant Asbury may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Because Defendant Asbury transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from business in this State, maintains its principal place of business in Gwinnett County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Defendant Asbury.

**ANSWER: Asbury admits it is a Delaware corporation with its principal place of business in Duluth, Georgia and registered agent in Gwinnett County, Georgia. Asbury admits it sells motor vehicles via various dealerships throughout the United States. Asbury admits that the Subject Vehicle was purchased from Audi North Atlanta at 11505 Alpharetta Highway Roswell, GA 30078. *See* Exhibit A, Vehicle Buyer's Order. The allegations regarding jurisdiction, venue, and service call for a legal conclusion to which no response from Asbury is required. To the extent a response is required, Asbury denies those allegations. Asbury denies the remaining allegations contained in Paragraph 16.**

9

17. Personal Jurisdiction over Defendant Asbury. Because Defendant Asbury actively maintains its principal place of business in the State of Georgia (and specifically in Gwinnett County) and maintains a registered agent to transact business in this State, there can be no dispute that this Court may properly exercise personal jurisdiction over Defendant Asbury.

**ANSWER: Paragraph 17 calls for a legal conclusion to which no response from Asbury is required. To the extent a response is required, Asbury denies the allegations in Paragraph 17.**

18. Jurisdiction and venue are not proper in any United States District Court because complete diversity of citizenship of the parties is lacking, there is no federal question giving rise to these claims, and pursuant to U.S.C. § 1441(b)(2) the "resident defendant" exception applies as Defendant Asbury is headquartered in Georgia and, thus, a resident of Georgia.

**ANSWER: Denied.**

19. This is an action related to tortious acts or omissions committed in and producing injury in the State of North Carolina. Therefore, the procedural and remedial laws of Georgia and the substantive laws of North Carolina that do not contravene Georgia public policy apply to the claims asserted herein.

**ANSWER: The allegations of Paragraph 19 call for a legal conclusion to which no response from Asbury is required. To the extent a response is required, Asbury denies the allegation in Paragraph 19.**

20. Venue is proper in this County because Defendants Asbury and Audi, Inc. maintain a registered agent for service of process in Gwinnett County. Further, venue is proper in this County as to Defendants Audi, LLC, Audi AG, and VW AG because they are joint tortfeasors with the Defendants Asbury and Audi, Inc., and where defendants reside in different counties, venue may be maintained in any county in which one of the defendants resides.

**ANSWER: Denied.**

### III. OPERATIVE FACTS

*A. The Subject Motor Vehicle Collision*

21. The motor vehicle collision giving rise to this action occurred on September 25, 2021 at approximately 1:20 p.m. on U.S. Highway 25 in Marshall, North Carolina. At that time, Douglas Morton was travelling northbound on U.S. 25 and stopped for traffic. He was at all relevant times properly seat belted and acting prudently and with reasonable care.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 21 and therefore denies same.**

22.     Scottie Dale Proffitt was traveling northbound on U.S. 25 behind Mr. Morton. Mr. Proffitt failed to maintain a proper lookout and, as a result, drove his 1999 Dodge Ram truck into the back of the Subject Vehicle Mr. Morton was operating.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 22 and therefore denies same.**

23.     Though Mr. Morton was properly wearing a seatbelt, the 2020 Audi A6's driver occupant restraint system failed to properly contain Mr. Morton's body during the collision, and in particular, the driver seat head restraint broke, allowing Mr. Morton's head and body to move back and over the seat. When an ambulance arrived at the scene, Mr. Morton alerted paramedics that he could not feel his legs.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 23 and therefore denies same.**

24.     Mr. Morton was transported to Mission Memorial Hospital and immediately presented to the emergency room. Mr. Morton sustained numerous injuries, including a catastrophic thoracic spinal fracture and complete paraplegic spinal paralysis.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 24 and therefore denies same.**

25.     Mr. Morton remained at Mission Memorial Hospital for 35 days.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 25 and therefore denies same.**

26.     Mr. Morton was thereafter admitted to CarePartners Rehabilitation Hospital, where he underwent significant rehabilitation for approximately four months due to the severe nature of his spinal injuries and complications caused by extensive infections and ulcerations.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 26 and therefore denies same.**

27.     Despite his extensive efforts towards rehabilitation, Mr. Morton is permanently paralyzed from his chest down.

11

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny the allegations in Paragraph 27 and therefore denies same.**

28.     Mr. Morton's severe and catastrophic injuries were proximately caused by the Subject Vehicle's defective driver seat occupant restraint system and head restraint, which failed to provide adequate neck, head and body containment and protection, allowing Mr. Morton's head and body to move back and over the driver seat — injurious contact which should not and would not have occurred if the Subject Vehicle had adequately contained Mr. Morton's body during the collision.

**ANSWER:  Denied.**

*B. The Subject 2020 Audi A6*

29.     The 2020 Audi A6, VIN No. WAUE8AF26LN002921, a four-door sedan, was designed, manufactured, assembled, imported and/or distributed, and placed into the stream of commerce as a complete product by the Audi Defendants and Defendant Asbury.

**ANSWER:  Denied.**

30.     The Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021.

**ANSWER: Asbury admits that the Subject Vehicle was purchased from Audi North Atlanta located in Roswell, Georgia and that the Subject Vehicle was serviced at Audi North Atlanta. Asbury denies the remaining allegations in Paragraph 30.**

31.     As with any of its vehicles, the Audi Defendants, as the designer and manufacturer of the Subject Vehicle, designed and obtained components for the Subject Vehicle from a variety of suppliers which the Audi Defendants selected and contracted with to provide parts or components made to the Audi Defendants' design and/or manufacturing specifications. Those parts and components were then assembled, and the completed vehicle was manufactured and sold by the Audi Defendants and Defendant Asbury, as an Audi product sold under its Audi brand.

**ANSWER: Asbury denies that it designed or manufactured the Subject Vehicle. Asbury admits that a variety of suppliers contribute to the parts used to manufacture certain Audi vehicles. Asbury admits that it sold the Subject Vehicle at Audi North Atlanta. Asbury**

lacks knowledge or information sufficient to from a belief about the truth of the remaining

allegations contained in Paragraph 31 and therefore denies same.

32.     The Audi Defendants, as the designer and manufacturer of the completed vehicle, and Defendant Asbury, as the seller and distributor of the completed vehicle, placed it into the stream of commerce and are both legally responsible for failures of components, whether designed by Audi or obtained from component suppliers, that make up the completed vehicle.

**ANSWER: Denied.**

33.     Upon information and belief, the Subject Vehicle had not been materially altered or modified from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by the Audi Defendants. In particular, to Plaintiff's knowledge, no one modified or altered in any way the driver seat occupant restraint system, including the driver seat head restraint, or assembly of any of its component or sub-component parts — which parts and components were specified, obtained, assembled and placed into the completed vehicle by the Audi Defendants, and as designed and manufactured by Audi and its employees and engineers.

**ANSWER: Asbury is without information or knowledge sufficient to admit or deny**

**the allegations in Paragraph 33 and therefore denies same.**

34.     Plaintiff alleges this case against the Audi Defendants and Defendant Asbury as a "crashworthiness" case, i.e., that the Subject Vehicle and in particular its front driver seat occupant restraint system was not adequately designed, manufactured, marketed, and sold in a condition to provide sufficient or "crashworthy" protection, containment, and restraint to Douglas Morton in what was a foreseeable level of crash forces.

**ANSWER: Asbury admits only that Plaintiff alleges that this case is a**

**crashworthiness case in Paragraph 34 of Plaintiff's Complaint. Asbury denies the remaining**

**allegations contained in Paragraph 34.**

35.     It was, at all relevant times, known to the Audi Defendants that Audi vehicles needed to be crashworthy during use on the public highways and that it is essential that all component parts of the vehicle perform without failure so that occupants involved in collisions are properly protected from grievous injury.

**ANSWER: Denied.**

36.     Further, at all relevant times, the Audi Defendants knew that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint systems and fully

functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

**ANSWER: Denied.**

37.    Despite this knowledge, the Audi Defendants either designed the Subject Vehicle in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured the Subject Vehicle such that its occupant restraint system and head restraints were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

**ANSWER: Denied.**

38.    As a result of the negligence, breaches of warranty, acts, and/or omissions of the Defendants and the defective and/or negligently designed vehicle described herein, the Audi A6 failed to provide appropriate and necessary crash protection to Douglas Morton in his driver seat position even though he was property seated in the driver seat and properly wearing the seat belt system provided in the vehicle by the Audi Defendants and Defendant Asbury. Specifically, the Subject Vehicle's driver seat occupant restraint system and head restraint failed to provide reasonably necessary containment and protection in this incident.

**ANSWER: Denied.**

39.    A rear collision producing rear impact forces such as this one was at all times foreseeable to Defendants. Manufacturers and retailers of vehicles like the Audi Defendants and Defendant Asbury know that their products will encounter crashes, and they have a duty to take reasonable steps to include adequate safety systems to restrain, contain, and protect vehicle occupants.

**ANSWER: Denied.**

40.    In short, while Douglas Morton may have suffered some injuries from the crash itself, his injuries were more severe, exacerbated and lead to permanent paralysis as a proximate result of the defective, negligently designed, and inadequately crashworthy condition of the driver seat occupant restraint system and driver head restraint which was designed, manufactured, and placed into the stream of commerce by the Audi Defendants and Defendant Asbury.

**ANSWER: Denied.**

41.    As outlined below, all Defendants are joint tortfeasors for the Douglas Morton's injuries and damages in an amount to be determined by the enlightened conscience of the jury, but under any scenario, in an amount exponentially in excess of the minimum amount necessary to confer jurisdiction in this Court.

**ANSWER: Denied.**

# IV. LEGAL CLAIMS

## COUNT ONE
### (The Audi Defendants—Negligence and/or Strict Products Liability)

42.     Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

**ANSWER: Asbury incorporates its responses to Paragraphs 1-41 of the Complaint as it stated fully herein.**

43.     As a product designer and manufacturer of consumer vehicles, Audi owed and owes legal duties to Plaintiff and the public in general to design and manufacture vehicles that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

**ANSWER: Asbury denies that it designed or manufactured vehicles at any relevant times. The allegations in Paragraph 43 call for a legal conclusion to which no response from Asbury is required. To the extent a response is required, Asbury denies the remaining allegations in Paragraph 43.**

44.     When Audi designed and/or manufactured the Subject Vehicle, it knew, or should have known through its own testing, studies, and other real-world incidents, that the front driver seat and occupant restraint system failed to contain and protect occupants from injury in rear-end collisions.

**ANSWER: Denied.**

45.     Audi failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front driver seat of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Audi chose a front-seat design, and/or manufactured a front seat, that lacks adequate crashworthiness in foreseeable collisions.

**ANSWER: Denied.**

46.     When it designed the 2020 Audi A6, the Audi Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Audi designed and/or manufactured the 2020 Audi A6 with defective front seats so lacking in crashworthiness that Mr.

Morton suffered severe and traumatic spinal cord injuries because of those defects. The A6's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

**ANSWER: Denied.**

47. Plaintiff's claims are based on characteristics of the 2020 Audi A6 that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the A6 that Plaintiff's claims are based on as inherent characteristics of the A6 that cannot be eliminated without substantially compromising its usefulness or desirability.

**ANSWER: Denied.**

48. As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle by the Audi Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

**ANSWER: Denied.**

49. The Audi Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Audi breached its duty by failing to warn of those dangers.

**ANSWER: Denied.**

50. The Audi Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Audi never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

**ANSWER: Denied.**

51. The risks to which Audi exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

**ANSWER: Denied.**

52. Audi's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

**ANSWER: Denied.**

53.     The Audi Defendants are liable for the Subject Vehicle's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**ANSWER: Denied.**

## COUNT TWO
### (Defendant Asbury—Negligence)

54.     Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

**ANSWER: Asbury incorporates its responses to Paragraphs 1-53 of the Complaint as it stated fully herein.**

55.     Defendant Asbury operates as a dealer of motor vehicles, including but not limited to motor vehicles designed, manufactured, assembled, produced, advertised, sold, and supplied by the Audi Defendants.

**ANSWER: Asbury admits that it is a dealer of motor vehicles, including Audi vehicles. Asbury denies the remaining allegations contained in Paragraph 55.**

56.     Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, advertised, marketed, listed, and/or sold the subject Audi A6 that Douglas Morton was driving at the time of the subject incident. Specifically, the Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021

**ANSWER: Asbury admits that it sold the Subject Vehicle at Audi North Atlanta located in Roswell, Georgia. Asbury denies the remaining allegations contained in Paragraph 56.**

57.     Defendant Asbury owed a legal duty to those occupying the vehicles that they advertised, promoted, warranted, sold, leased, maintained, inspected, serviced, and/or supplied to the general public, including, but not limited to Mr. Morton, to advertise, promote, warrant,

maintain, inspect, lease, sell, service, and supply such vehicles, in a reasonably safe and lawful manner.

**ANSWER: Denied.**

58.    When Defendant Asbury sold the Subject Vehicle and/or during any of the numerous subsequent inspections of the Subject Vehicle, it knew, or should have known through the exercise of ordinary care, that the front driver seat and occupant restraint system failed to contain and protect occupants from foreseeable injury in rear-end collisions.

**ANSWER: Denied.**

59.    Defendant Asbury failed to exercise ordinary care and breached its duties of care by selling and distributing the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision.

**ANSWER: Denied.**

60.    Defendant Asbury further failed to exercise ordinary care in that it negligently, grossly negligently, recklessly, willfully, and wantonly failed to warn of the unreasonably dangerous condition of the Subject Vehicle, when they knew or should have known that the Subject Vehicle contained those defects in the supplemental restraint system and seat identified and described in this Complaint that could result in serious injury or death of an occupant, and did in fact result in those serious, permanent, and catastrophic injuries to Mr. Morton complained of in this Action.

**ANSWER: Denied.**

61.    Pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8, Defendant Asbury also failed to exercise ordinary care and breached its duties of care by negligently inspecting the subject vehicle after the date of first sale and failing to identify the defects detailed above, and/or Defendant Asbury failed to exercise ordinary care and breached its duties of care by negligently performing maintenance or repairs that may have also contributed to the defects with the occupant restraint system as detailed above.

**ANSWER: Denied.**

62.    Defendant Asbury also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Defendant Asbury breached its duty by failing to warn of those dangers.

**ANSWER: Denied.**

63.    Defendant Asbury acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately

warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Defendant Asbury never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

**ANSWER: Denied.**

64.     The risks to which Defendant Asbury exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge to a lay person like Mr. Morton who lacked the knowledge about vehicle restraint systems that the Audi Defendants and Defendant Asbury possessed.

**ANSWER: Denied.**

65.     Defendant Asbury's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

**ANSWER: Denied.**

66.     Further, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, conducted several subsequent service inspections of the Subject Vehicle after it was purchased from Defendant Asbury.

**ANSWER: Denied.**

67.     Defendant Asbury owed Douglas Morton and the general public a duty to non-negligently service, inspect, maintain and/or repair the Subject Vehicle for dangerous conditions and inform or warn such consumers of foreseeable dangers, latent defects, and other dangerous conditions that they knew, or should have known of, and communicate adequate warnings about those dangers to foreseeable users of the Subject Vehicle.

**ANSWER: Denied.**

68.     Yet, Defendant Asbury breached its duties of care by negligently failing to properly inspect the Subject Vehicle and by negligently failing to warn of the dangers, latent defects, and other dangerous conditions described herein.

**ANSWER: Denied.**

69.     Upon information and belief, Plaintiff claims and alleges herein that, by and through its negligent acts and/or omission, Defendants Asbury's negligent failure to properly inspect the Subject Vehicle and/or negligent failure to adequately warn consumers about the defects and/or dangerous conditions present in the same were a proximate cause of and/or contributing factor to Douglas Morton's severe injuries and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened

conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**ANSWER**: **Denied.**

## COUNT THREE
### (Defendant Asbury — Breach of Express and Implied Warranties under North Carolina Law)

70.     Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, in order to induce the purchase of the products which it sold, or marketed and sold, including the Audi A6 which is the subject of this litigation, advertised to the public the availability and safety of their products.

**ANSWER**: **Denied.**

71.     Through the use of such advertising, Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, for the benefit of ultimate consumers and users, including Mr. Morton, directed the attention of the public and particularly ultimate consumers and users, specifically including Mr. Morton, and others similarly situated, by means of express representations and warranties, to their vehicles by representing that the public and ultimate consumers and users, including Mr. Morton, could occupy and operate the vehicles and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by Defendant Asbury.

**ANSWER**: **Denied.**

72.     In occupying and operating the Subject Vehicle, Mr. Morton relied upon the skill and judgment of Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and upon the express warranty of Defendant Asbury, created under Georgia and North Carolina Law, and which is described above.

**ANSWER**: **Denied.**

73.     The Subject Vehicle was defective in design and/or manufacture, and such defect breached the express and implied warranties given by Defendant Asbury, by and through their officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom they are legally responsible.

**ANSWER**: **Denied.**

74.     As a direct and proximate result of the breach of express and implied warranties given for the benefit of ultimate consumers and users, including Mr. Morton, by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, as described previously, Mr. Morton

suffered devastating and permanent injuries, which injuries have been described in this Amended Complaint.

**ANSWER: Denied.**

75.     As a direct and proximate result of the breach of implied warranties by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and which warranties specifically include the breach of the implied warranty of merchantability and breach of implied warranty of fitness for particular purpose, Mr. Morton received those injuries and damages as are previously described in this Amended Complaint.

**ANSWER: Denied.**

76.     Such breaches of warranties include the failure by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, to provide necessary and proper warnings.

**ANSWER: Denied.**

77.     Such warranties were in full force and effect on the date of the subject wreck.

**ANSWER: Denied.**

## V. DAMAGES SOUGHT BY PLAINTIFF

78.     Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

**ANSWER: Asbury incorporates its responses to Paragraphs 1-77 of the Complaint as it stated fully herein.**

79.     Douglas Grant Morton seeks recovery of damages from Defendants for past, present, and future medical bills and expenses, life care needs, and other necessary expenses incurred that are incident-related, in amounts to be shown by the evidence at trial.

**ANSWER: Asbury denies that any act or omission of Asbury caused any injury to Plaintiff. Accordingly, Asbury denies the allegations contained in Paragraph 79.**

80.     Douglas Grant Morton seeks damages from all Defendants for all past, present, and future pain and suffering resulting from his incident-related injuries, in an amount to be determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from his incident-related injuries.

**ANSWER: Asbury denies that any act or omission of Asbury caused any injury to Plaintiff. Accordingly, Asbury denies the allegations contained in Paragraph 80.**

81.     Douglas Grant Morton seeks recovery from all Defendants for any diminished future income and earning capacity proximately caused by the subject incident and the defective condition of the Subject Vehicle, as to be shown more fully by the evidence at trial.

**ANSWER: Asbury denies that any act or omission of Asbury caused any injury to Plaintiff. Accordingly, Asbury denies the allegations contained in Paragraph 81.**

82.     Douglas Grant Morton seeks a recovery from all Defendants for the loss of full enjoyment of life and disfigurement he has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury.

**ANSWER: Asbury denies that any act or omission of Asbury caused any injury to Plaintiff. Accordingly, Asbury denies the allegations contained in Paragraph 82.**

## VI. PRAYER FOR RELIEF

Responding to the WHEREFORE paragraph following Paragraph 82 of Plaintiff's Complaint, including sub-parts (a)-(e), Asbury denies Plaintiff is entitled to any of the relief set forth in this paragraph. Asbury denies all allegations contained in Plaintiff's Complaint that are not admitted or denied, or neither admitted or denied, based on a lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

## AFFIRMATIVE DEFENSES

At the time of the preparation of this Answer, Asbury is unaware of all the facts and circumstances giving rise to the claims set forth in the Complaint. Asbury reserves the right to assert additional affirmative defenses if discovery shows such defenses are applicable, or to rely on any defenses that may arise during discovery which Asbury is not required to list as an affirmative defense.

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff's claims against Asbury are subject to arbitration pursuant to the binding arbitration provision contained in the Vehicle Buyer's Order, attached hereto as **Exhibit A**.

3.      This Court lacks jurisdiction due to the presence of a mandatory and binding arbitration agreement.

4.      Plaintiff's claims are barred, in whole or in part, because Asbury has not breached any obligation or duty owed to Plaintiff.

5.      Asbury is not a proper defendant to this action.

6.      Any damages sustained by Plaintiff was proximately caused by the intervening and superseding acts of persons or entities other than Asbury, over whom Asbury had no control or duty to control.

7.      The sole and proximate cause of Plaintiff's damages were the acts or omissions of a third-party and/or other person for which Asbury is not responsible or liable.

8.      Asbury has no contractual, statutory, or other duty or obligation to Plaintiff.

9.      Asbury did not proximately cause Plaintiff's alleged injuries.

10.     Plaintiff's alleged injuries were not foreseeable.

11.     The current venue for this matter is improper, or alternatively, more convenient in another forum. Asbury reserves the right to move to this Court to dismiss this action on the basis of forum non conveniens.

12.     Plaintiff has failed to state a claim for strict liability upon which relief can be granted.

13.     Asbury avers that the subject vehicle may have been substantially altered and/or modified while not in Asbury's control and before it was used by Plaintiff.

14. The accident was caused by danger of which Plaintiff was or should have been reasonably aware.

15. Plaintiff's claims may be barred by the doctrine of spoliation and/or the failure to preserve critical evidence.

16. Asbury may show that the subject vehicle was not used for its intended purpose at the time of the accident.

17. Plaintiff's alleged damages, if any, may be barred, in whole or in part, by Plaintiff's failure to mitigate damages.

18. Plaintiff's alleged damages, if any, are barred by the doctrine of set off.

19. Upon information and belief, each alleged item of the Plaintiff's economic loss, or with reasonable certainty will replaced or indemnified, in whole or in part by collateral sources.

20. Plaintiff's claims are barred in whole, or in part, because of the lack of a feasible, practical alternative design at the time the subject vehicle was designed, manufactured, sold, and distributed.

21. Plaintiff's damages, if any, are barred by or reduced by the doctrine of avoidable consequences.

22. Asbury has complied with all provisions of the statutes cited in the Complaint.

23. Asbury has complied with all of its contractual obligations to Plaintiff.

24. Asbury has acted in good faith at all times with respect to the allegations in the Complaint.

25. Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel or waiver.

26. Plaintiff may have failed to join indispensable parties to this action.

27.     Any judgment rendered against Asbury in this action should be limited to the fault, if any, attributable to this Asbury although Asbury denies it is responsible for any damages alleged by Plaintiff. Asbury is entitled to apportion its fault, if any, to the fault of all other persons who are or could be responsible for any of Plaintiff's damages regardless of whether such persons are parties to this action, and regardless of whether it is ultimately shown that Plaintiff was negligent. Asbury right to apportionment applies regardless of whether Plaintiff's claims sound in negligence or in strict liability.

28.     Plaintiff's claims should be dismissed, reduced, offset, or barred in accordance with any and all applicable principles of comparative negligence.

29.     Plaintiff's claims and/or alleged damages are barred and/or limited by the provisions of the tort reform acts and/or statutes enacted in the State of Georgia

30.     The product which is the subject of this action met or exceeded the state of the art at the time it was designed and manufactured.

31.     The Plaintiff's claims are barred in whole or in part by the lack of defect, as the subject Audi A6 was properly designed and manufactured in accordance with the applicable standard of care and in compliance with all standards for design, inspection, testing, manufacturing, labeling, warning or instructions for use in and applicable to the subject vehicle.

32.     The subject Audi A6 met or exceeded all Federal Motor Vehicle Safety Standards in effect at the time of its sale. The act of exceeding the appropriate Federal Motor Vehicle Safety Standard should in and of itself be prima facie evidence of the non-defectiveness of the vehicle in question. Further, Plaintiff has not identified a safer alternative design which is feasible from both a technical and economic standpoint that does not present additional risks of harm not seen in the incorporated components about which Plaintiff is complaining of.

33.     All or a portion of the Plaintiff's claims are preempted by applicable federal and/or state statutes, rules, standards or regulations, including but not limited to the Federal Motor Vehicle Safety Act.

34.     Asbury denies it is liable for exemplary/punitive damages. However, in the event any such damages are awarded against Asbury, then, in the alternative, without any admission of misconduct or liability, the imposition of exemplary/punitive damages on these facts would be denial of the due process clause which prohibits the imposition of grossly excessive or arbitration punishments on a tortfeasor. *State Farm Mut. Auto. Insurance Co. v. Campbell*, 538 U.S. 408, 426, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003); *Cooper Indus. V. Leatherman Tool Group, Inc*., 532 U.S. 424, 434-36, 149 L. Ed. 2d 674, 121 S. Ct. 1678 (2001); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996).

35.     There is no basis in law or fact for the imposition of punitive damages with respect to Plaintiff's claims against Asbury. There is no clear and convincing evidence Defendant was guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to the consequences and, accordingly, Plaintiff is not entitled to recover punitive damages in any sum whatsoever.

## DEMAND FOR JURY TRIAL

Asbury specifically requests and demands a trial by jury of all counts against it in Plaintiff's Complaint.

WHEREFORE, having fully addressed the allegations in Plaintiff's Complaint, Asbury prays the Court:

1.  Dismiss Plaintiff's Complaint with prejudice; and

2.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of July, 2023.

**SHOOK, HARDY & BACON LLP**

*/s/ Colin K. Kelly*
Colin K. Kelly, Esq.
Georgia Bar No. 781072
ckelly@shb.com
(470) 867-6012 (direct)
Caroline M. Gieser, Esq.
Georgia Bar No. 167916
cgieser@shb.com
(470) 867-6013 (direct)
Timia A. Skelton, Esq.
Georgia Bar No. 667099
tskelton@shb.com
(470) 867-6006 (direct)
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591

***Attorneys for Defendant Asbury Automotive Group, Inc.***

27

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,                       )
                                            )
      Plaintiff,                         )
                                            )
v.                                          )
                                            )
AUDI OF AMERICA, LLC;                       )
VOLKSWAGEN                                  )          Civil Action File No.:
GROUP OF AMERICA, INC. D/B/A AUDI           )          23-C-03730-S2
OF AMERICA, INC.; AUDI AG;                  )
VOLKSWAGEN                                  )
AG; AND ASBURY AUTOMOTIVE                   )
GROUP ,INC.,                                )

      Defendants.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all counsel of record in the foregoing matter

with a copy of **ASBURY AUTOMOTIVE GROUP, INC.'S ANSWER AND AFFIRMATIVE**

**DEFENSES** to Plaintiff's Complaint via Odyssey E-File GA, addressed as follows:

Cale Conley
Davis Popper
Alex S. Edmonds
**Conley Griggs Partin LLP**
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, GA  30327
Telephone:  (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Attorneys for Plaintiff*

Noah B. Abrams
**Abrams & Abrams, P.A.**
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:  (919) 755-9166
nabrams@abramslawfirm.com

*Attorneys for Plaintiff*

Winston S. Kirby
Andrew Avram
**Edwards Kirby, LLP.**
3201 Glenwood Avenue
Suite 100
Raleigh, NC  27612
Telephone:  (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

*Attorneys for Plaintiff*

Dated this 28th day of July, 2023.

*/s/ Caroline M. Gieser*
Caroline M. Gieser, Esq.

# EXHIBIT A

**VEHICLE BUYER'S ORDER**

STK# LN002921   DEAL# 121745
CUST# 931867

## IT HAS TO BE
# NALLEY
AUTOMOTIVE
**AUDI NORTH ATLANTA**
11505 ALPHARETTA HIGHWAY
ROSWELL, GA 30076  678 795 2900

THIS VEHICLE ORDER FORM IS FOR THE FOLLOWING
[X] NEW   [ ] USED

| YEAR | MAKE | SERIES |
|------|------|--------|
| 2020 | AUDI | A6 2.0T QUATTRO |

| MILEAGE | COLOR | TRIM |
|---------|-------|------|
| 3988 | 2Y2Y/White | |

| STOCK NO. | VIN # |
|-----------|-------|
| LN002921 | WAUE8AF26LN002921 |

| DEAL # | CUSTOMER # |
|--------|-----------|
| 121745 | 931867 |

| DATE | SALESPERSON 1 | SALESPERSON 2 |
|------|---------------|---------------|
| 09/16/2120 | Nicholas Watterson | |

CUSTOMER'S NAME
**LYNN LEE LOVE**

CO-CUSTOMER'S NAME
**N/A**

STREET ADDRESS
**2660 PEACHTREE RD NW APT 36D**

| CITY | COUNTY | STATE | ZIP |
|------|--------|-------|-----|
| ATLANTA | FULTON | GA | 30305 |

| RESIDENCE PHONE | BUSINESS PHONE |
|-----------------|----------------|
| 954-254-5220 | |

| E-MAIL ADDRESS | MOBILE PHONE |
|----------------|--------------|
| Thebil@bellsouth.net | 954-254-5220 |

| PRICE OF VEHICLE | $ 58158.00 |
|------------------|------------|
| ACCESSORIES: | |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| WE OWE | 499.00 |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| RESISTALL | 650.00 |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| DEALER SERVICE CHARGE* | 599.00 |
| TITLE SERVICE FEE** | 98.00 |
| N/A | N/A |
| N/A | N/A |
| TOTAL DELIVERED PRICE | 60004.00 |
| TRADE-IN ALLOWANCE(S) | N/A |
| CASH PRICE OR TRADE DIFFERENCE | 60004.00 |
| N/A | N/A |
| TAXT RATE ( N/A%) | 3696.26 |
| PLUS: TAG, TITLE, LEMON LAW AND EMISSION TESTING FEES | 46.00 |
| PLUS: PAYOFF ON TRADE VEHICLE(S) | N/A |
| N/A | N/A |
| N/A | N/A |
| | N/A |
| TOTAL BALANCE | 63746.26 |
| LESS INITIAL PAYMENT/CASH DOWN | N/A |
| LESS REBATE/FACTORY INCENTIVE | 4000.00 |
| BALANCE DUE | $ 59746.26 |

### TRADE-IN RECORD

| YEAR | MAKE | MODEL | TYPE | COLOR |
|------|------|-------|------|-------|
| N/A | N/A | N/A | N/A | N/A |

| VIN # | | MILEAGE |
|-------|--|---------|
| N/A | | N/A |

ALLOWANCE $   N/A   ESTIMATED PAYOFF $   N/A

| TRADE 2 | YR | MAKE | MODEL |
|---------|----|----|------|
| | N/A | N/A | N/A |

| VIN # | | MILEAGE |
|-------|--|---------|
| N/A | | N/A |

ALLOWANCE $   N/A   ESTIMATED PAYOFF $   N/A

**TRADE-IN DISCLOSURE**
You acknowledge all of your rights, title and interest in such Trade-In vehicle(s). You represent that you are the sole owner of the vehicle and have the right to sell or otherwise transfer ownership of the Vehicle. Except as disclosed in writing to us you further acknowledge the representations and responsibilities on the back of this Order relating to Trade-In Vehicles, and on the Authorization to Release Payoff Information executed with this Order, if any.

Negative Equity: If the pay-off for your Trade-In(s) exceeds the Trade-In Allowance, the difference will be added to balance due.

Customer Initials _____

Co-Customer Initials _____

*Dealer Service Charge: This charge covers Dealer services related to this Vehicle and its sale and may result in profit to the Dealer for the services. This charge does not include payment for the preparation and/or completion of legal documents and is not an official charge.
**Title Service Fee: This fee covers dealer services relating to the processing of this vehicle's title and may result in profit to the Dealer. This is not an official fee.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, this vehicle is sold "AS IS" and "WITH ALL FAULTS." The Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Oral statements should not be construed as a warranty or promise of any kind.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

Buyer acknowledges receipt of any warranty information prior to the sale of the vehicle.

Conditional Delivery Agreement/Dealer's Right to Cancel: If buyer and co-buyer sign here, then the provisions of the Conditional Delivery Agreement/Dealer's Right to Cancel apply.

Buyer _____ (signature)

Co-Buyer _____ N/A

| CREDIT LIFE | N/A |
|-------------|-----|
| ACCIDENT & HEALTH | N/A |
| N/A | N/A |
| TOTAL ADDITIONAL COVERAGE | N/A |

| AMOUNT FINANCED | 59746.26 |
|-----------------|----------|
| APR % | N/A |
| FINANCE CHARGE | N/A |
| MONTHS | 59746.26 |
| TOTAL TIME BALANCE | 59746.26 |

For your protection, request a receipt for all payments you make.

This Order and Agreement represents the final agreement between the parties related to the sale of the vehicle and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

Buyer Signs: X _____   Co-Buyer Signs: X _____ N/A

You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms. You have received a completely filled in copy of this Order and Agreement. You acknowledge that you are 18 years or older.

Buyer Signs: X _____   Co-Buyer Signs: X _____ N/A

Accepted by Seller: X _____   By: F&I MANAGER

FORM NO. A8B-BO-GA_a (Rev. 9/13)
© 2017 The Reynolds and Reynolds Company
89337*1*ABG105-11
Page 1 of 2

09/16/2020 04:52 pm
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

These definitions apply to this Agreement:

*"You"* means the buyer or buyers executing this Agreement as such.
*"Dealer", "Us"* and *"We"* means the authorized Dealer named on the face of this Agreement.
*"Manufacturer"* means the manufacturer of the Vehicle.
*"Vehicle"* is the vehicle or chassis that is the subject of this Agreement.
*"Trade-in"* is the used vehicle that You intend to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

1. **Modifications or Cancellation Due to the Manufacturer or Other Events:** If the Manufacturer modifies, discontinues, or fails to deliver the Vehicle or changes the price, or if we cannot deliver the Vehicle due to accident, fire, act of nature, or cause beyond our control, then either you or we may terminate this Order without liability to the other party, and Dealer shall refund your deposits and return your Trade-in, if applicable.

2. **Trade-in Vehicle Title and Appraisal and Return upon Cancellation for Any Reason:** You will immediately provide Certificate of Title to the Trade-in. If you cannot, then you agree to reimburse the Dealer for all costs incurred for the issuance of duplicate title. If there is a lien or other encumbrance, you agree to take all necessary steps to enable us to obtain a Certificate of Title in accordance with applicable state law. You agree to cooperate immediately with the Dealer to provide all documents necessary to accomplish this.

   If you have not yet delivered your Trade-in to us, we will reappraise it at the time it is delivered to us. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown on this Order, you may cancel this Order. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us.

   In the event this transaction is cancelled for any reason, and we have paid some or all of the balance owed to the lienholder on the Trade-in, you shall immediately reimburse us for the amount paid to the lienholder. Otherwise, we may place a lien on the Trade-in without any further action or agreement by you

   If we have sold the Trade-in prior to cancellation of this Buyer's Order, we will pay you the agreed upon Trade-in Allowance and you will reimburse us for any amount we paid to the lienholder on the Trade-in.

3. **Taxes:** The Vehicle price doesn't include sales, use, ad valorem, highway, property or occupational taxes (federal, state or local) unless expressly stated. You agree to pay all taxes that apply to this transaction. If the amount of taxes owed exceeds the amount reflected in this Order, you are responsible for paying the difference.

4. **Other Products and Financing:** The Dealer offers goods and services from various suppliers. The amounts charged to customers for such goods or services may be greater than our cost, and/or we may receive a commission or other payment in connection with such sale. You are not required to purchase any other goods or services from us. You may also arrange financing through the finance source of your choice. If we assist you in obtaining financing, we may receive a fee, commission or other compensation from the Finance Source.

5. **ORAL STATEMENTS AND VEHICLE HISTORY REPORTS:** ORAL PROMISES AND REPRESENTATIONS ABOUT THE VEHICLE WILL NOT BE RECOGNIZED AND ARE NOT A WARRANTY OF ANY KIND. YOU MAY NOT RELY UPON VERBAL REPRESENTATIONS MADE BY DEALER, DEALER'S EMPLOYEES OR AGENTS ABOUT THE VEHICLE, INCLUDING, BUT NOT LIMITED TO, STATEMENTS REGARDING THE VEHICLE'S PRIOR HISTORY. WE HAVE NOT INDEPENDENTLY VERIFIED INFORMATION ON THIRD PARTY VEHICLE HISTORY REPORTS AND CANNOT REPRESENT OR WARRANT THE ACCURACY OF ANY SUCH REPORTS. RELIANCE UPON ANY SUCH REPORTS WILL BE AT YOUR PERIL. NEITHER DEALER, DEALER'S EMPLOYEES NOR AGENTS CAN ACCURATELY CONFIRM THE PRIOR HISTORY OF THE VEHICLE. YOU MAY HAVE THE VEHICLE INSPECTED BY AN INDEPENDENT MECHANIC PRIOR TO CONSUMMATING THIS PURCHASE.

6. **Notice Regarding Legal Documents:** Certain documents in this transaction affect your legal rights and impose certain duties and obligations. IF YOU HAVE ANY QUESTIONS OR CONCERNS ABOUT THESE DOCUMENTS OR ABOUT ANY OTHER MATTERS LEGAL IN NATURE, CONSULT WITH AN ATTORNEY OF YOUR CHOOSING PRIOR TO SIGNING ANY DOCUMENT OR COMPLETING THIS TRANSACTION. This transaction is an arms-length business transaction. No fiduciary duty or other similar duty or confidential relationship exists between you and the Dealer.

7. **Your Representations to Us:** (a) New vehicles only: YOU ARE NOT PURCHASING THE VEHICLE FOR RESALE OR EXPORT within the next 12 months from the date of this Order; (b) the Cash Down, and any other amounts due to us have been paid in full, any payment given to us will be promptly honored by the institution upon which it was drawn, and you have not borrowed any part of the Cash Down; (c) all statements made by you in this transaction are correct; and (d) you are who you have represented yourself to be. If you have purchased the Vehicle for use by anyone other than yourself, you must disclose this to us in writing.

8. **Buyer's Default and Dealer's Remedies:** In the event of any failure by you to perform your obligations under this Order or any breach by you of a representation or warranty made by you to us; we shall be permitted to the choice of remedies which may be used separately or together, including: (1) cancel this Buyer's Order; (2) repossess the Vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; (5) cancel any ancillary products you have purchased; (6) retain any Deposit made by you; and/or (7) in the event that you have delivered a Trade-in as part of the consideration for your purchase of the Vehicle from us, sell it and reimburse the Dealer out of the proceeds for any actual damages suffered by us as a result of your default, or place a security interest on the Trade-in if we return it to you. We shall further be entitled to recover from you for an event of default any costs incurred by us for repossession/collection, reasonable interest, plus reasonable attorney's fees. If the actual amount you owe to us is greater than the amount of the Deposit and/or proceeds from the sale of your Trade-in you agree to pay the difference to us upon demand and if the actual amount you owe is less, then we will pay the difference to you.

9. **Security Agreement:** In the event that we are not paid in full, this document grants us a security interest in the Vehicle being purchased. This security interest is separate and apart from, but subordinate to, any interest granted to a third party lender if the Vehicle is being purchased on credit.

10. **GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS ORDER AND ANY SALE/LEASE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF GEORGIA.

11. **VEHICLE DATA COLLECTION AND PRIVACY:** Vehicles collect and use different types of information for a wide range of purposes. If you have any questions or concerns, familiarize yourself with the data collection and opt out procedures of the vehicle manufacturer, and any third party applications with access to your vehicle's data, prior to buying, leasing or trading a vehicle.

12. **DAMAGES LIMITATION:** YOU ARE NOT ENTITLED TO RECOVER FROM THE DEALER ANY CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

13. **USED CAR BUYERS GUIDE: THE INFORMATION ON THE VEHICLE WINDOW IS PART OF THIS AGREEMENT AND OVERRIDES ANY CONTRARY PROVISIONS IN THIS AGREEMENT.**

    GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE ACUERDO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL ACUERDO DE VENTA.

**Conditional Delivery Agreement/ Dealer's Right to Cancel:** We are not a lender, and this transaction is conditioned upon our being paid in full on the terms agreed upon in this Buyer's Order, and the Retail Installment Sales Contract (the Contract), if any. You understand that we have not been paid in full until your payment has been honored by the institution upon which it was drawn, or, if financing is arranged through a lender, "paid in full" means that the lender accepted assignment of the Contract, and the Dealer has received payment. You agree to cooperate and promptly provide accurate and complete information in response to requests by the lender regarding your credit worthiness. You are responsible for any payments which come due on your Trade-in until we have been paid in full.

**Our Obligations:** We will notify you in person, by phone or written notice if we are not paid in full and if we elect to cancel the purchase of the Vehicle. Once you have received notice, you must comply with "Your Obligations" described below and we must give back to you all consideration we have received from you under the terms of the Buyer's Order. If your Trade-in has already been sold, we will refund the trade allowance as described in Paragraph 2 above.

**Your Obligations:** If we cancel as provided above, you must return the Vehicle immediately in the same condition as when delivered to you, reasonable wear and tear excepted. You agree to pay us the cost of repairing damage or excessive use and to hold us harmless from any expenses pertaining to the Vehicle while it is in your possession. If you do not return the Vehicle immediately, you will be liable for all expenses incurred by us in taking the Vehicle from you. If you fail to return the Vehicle, we may use any legal means to take it back. You agree to reimburse us for payment made on your behalf to any lienholder of the Trade-in. If you owe money under this section, we can offset our refund of any down payment or trade allowance or other consideration paid by you, and/or obtain a security interest against your Trade-in until all sums due have been paid.

**Terms of Use of the Vehicle upon Delivery and until the Dealer Is Paid in Full:** You agree to provide full liability, collision and comprehensive insurance coverage on the Vehicle. You agree that only validly licensed drivers will operate the Vehicle.

In the event that the Dealer elects to cancel pursuant to this Agreement, you and we may agree to a new Contract with different financing terms, or agree to payment with alternate funds. Such renegotiated terms are voluntary, and neither you nor we are required to accept different financing terms or alternate funds.

Nothing in this Agreement gives you the right to cancel the purchase for any reasons except identified in this Agreement.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district where the Dealer is located. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act. Nothing in this Agreement limits or precludes the arbitrator(s) from awarding monetary damages or other relief provided by law.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

**FORM NO. ASB-BO-GA_B** (Rev. 6/18)
© 2017 The Reynolds and Reynolds Company

THESE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Case 1:24-cv-06922-MLB-WCM   Document 1-3   Filed 09/28/23   Page 112 of 568

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**7/28/2023 9:41 PM**
**TIANA P. GARNER, CLERK**

**TOIN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | Civil Action File No.: |
| VOLKSWAGEN | ) | 23-C-03730-S2 |
| GROUP OF AMERICA, INC. D/B/A AUDI | ) | |
| OF AMERICA, INC.; AUDI AG; | ) | |
| VOLKSWAGEN | ) | |
| AG; AND ASBURY AUTOMOTIVE | ) | |
| GROUP ,INC., | ) | |
| | | |
| Defendants. | | |

## DEFENDANT ASBURY AUTOMOTIVE GROUP, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

COMES NOW Defendant Asbury Automotive Group, Inc. ("Asbury"), by and through its undersigned counsel of record, and files this Motion to Compel Arbitration and Stay Proceedings, pursuant to O.C.G.A. § 9-9-6. Plaintiff Douglas Morton's claims against Asbury are subject to a binding arbitration provision that requires this dispute to be resolved exclusively through arbitration. Therefore, in accordance with the arbitration provision, Asbury hereby requests that this matter be submitted to arbitration and this action be stayed.

Dated: This 28th day of July, 2023.

**SHOOK, HARDY & BACON LLP**

*/s/ Colin K. Kelly*
Colin K. Kelly, Esq.
Georgia Bar No. 781072
ckelly@shb.com
(470) 867-6012 (direct)
Caroline M. Gieser, Esq.
Georgia Bar No. 167916
cgieser@shb.com

1

(470) 867-6013 (direct)
Timia A. Skelton, Esq.
Georgia Bar No. 667099
tskelton@shb.com
(470) 867-6006 (direct)
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591

***Counsel for Defendant***
***Asbury Automotive Group, Inc.***

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,     )
                               )
       Plaintiff,         )
                               )
v.                            )
                               )
AUDI OF AMERICA, LLC;     )
VOLKSWAGEN              )
GROUP OF AMERICA, INC. D/B/A AUDI   )
OF AMERICA, INC.; AUDI AG;    )
VOLKSWAGEN              )
AG; AND ASBURY AUTOMOTIVE   )
GROUP ,INC.,               )

       Defendants.

Civil Action File No.:
23-C-03730-S2

## CERTIFICATE OF SERVICE

This is to certify that I have on July 28, 2023, electronically filed the foregoing **Defendant Asbury Automotive Group, Inc.'s Motion to Compel Arbitration and Stay Proceedings** with the Clerk of Court using the Odyssey E-File system which will send notification of such filing to the following counsel of record:

<div align="center">

Cale Conley
Davis Popper
Alex S. Edmonds
**Conley Griggs Partin LLP**
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, GA  30327
Telephone:  (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Attorneys for Plaintiff*

Noah B. Abrams
**Abrams & Abrams, P.A.**
1526 Glenwood Avenue
Raleigh, NC  27608

</div>

3

Telephone: (919) 755-9166
nabrams@abramslawfirm.com

*Attorneys for Plaintiff*

Winston S. Kirby
Andrew Avram
**Edwards Kirby, LLP.**
3201 Glenwood Avenue
Suite 100
Raleigh, NC 27612
Telephone: (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

*Attorneys for Plaintiff*

/s/ Colin K. Kelly
Colin K. Kelly, Esq.
Georgia Bar No. 781072
**Attorney for Asbury Automotive Group, Inc.**

4

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**7/28/2023 9:43 PM**
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| DOUGLAS GRANT MORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AUDI OF AMERICA, LLC; | ) |
| VOLKSWAGEN | ) |
| GROUP OF AMERICA, INC. D/B/A AUDI | ) |
| OF AMERICA, INC.; AUDI AG; | ) |
| VOLKSWAGEN | ) |
| AG; AND ASBURY AUTOMOTIVE | ) |
| GROUP, INC., | ) |
| | |
| Defendants. | |

Civil Action File No.:
23-C-03730-S2

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**ASBURY AUTOMOTIVE GROUP, INC.'S MOTION TO COMPEL ARBITRATION**</u>
<u>**AND STAY PROCEEDINGS**</u>

This dispute arises out of a motor vehicle accident involving a 2020 Audi A6 vehicle purchased from Defendant Asbury Automotive Group ("Asbury") and driven by Plaintiff. (Compl. ¶ 30). Asbury submits that Plaintiff's claims against Asbury are governed by the arbitration clause contained in the Buyer's Order **(attached hereto as Exhibit A)**[1], which requires the Parties to arbitrate "any claim or dispute...which arises out of or relates to…purchase or condition of this vehicle…" *See* Exhibit A. This Court should compel arbitration under this binding arbitration clause for three reasons. First, the arbitration provision is valid and enforceable. Second, Plaintiff is bound by the arbitration agreement. Third, Plaintiff's alleged claims against Asbury fall within the types of claims covered by the arbitration clause. Finally, Asbury has not taken any actions during the course of this litigation that constitute a waiver of its right to seek arbitration.

---

[1] The Buyer's Order is also attached to Asbury's Answer as **Exhibit A**.

# I.     FACTUAL BACKGROUND

On May 31, 2023, Plaintiff filed a Complaint against Defendants Audi of America, LLC; Volkswagen Group of America, Inc., Audi AG, Volkswagen AG, and Asbury. Plaintiff asserts claims against Asbury for his personal injuries arising out of a September 25, 2021 motor vehicle accident that occurred in Marshall, North Carolina (Compl. ¶¶ 1, 21.)  On the day of the motor vehicle accident, Plaintiff was driving the subject vehicle with the permission of the original purchaser/owner, Lynn Love. Plaintiff asserts the following causes of action against Asbury: negligence, breach of express warranty, and breach of implied warranty. (*See* generally Compl.) Specifically, Plaintiff alleges that while he was driving the subject vehicle on the day of the incident, the driver seat occupant restraint system in the subject vehicle failed to contain and protect Plaintiff. (Compl. ¶ 1.) Plaintiff claims that the driver seat head restraint broke and failed in the accident, causing him to suffer catastrophic injuries. (*Id.*)

On September 16, 2020, Lynn Love entered into a Vehicle Buyer's Order with Audi North Atlanta[2] for the purchase of the subject vehicle, which states:

> **Any claim or dispute, whether in contract tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) between you and us our employees, agents, successors…which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall…be resolved by neutral, binding arbitration and not by court action.**

*See* **Exhibit A.** The Parties' agreement to arbitrate is broad and includes any and all claims in tort or otherwise, which encompasses the claims at issue here.

---

[2] Asbury Automotive Group, Inc. is a Delaware Corporation, which operates auto dealerships in various parts of the United States, including, Audi North Atlanta located at 11505 Alpharetta Highway Roswell, GA 30076.

- 2 -

4880-4048-1393 v4

## I. ARGUMENT

### A. Legal Standard

Asbury's motion is governed by Georgia procedural law, which states that this Court "***shall*** order the parties to arbitrate" if "there is no substantial issue concerning the validity of the agreement." O.C.G.A. § 9-9-6 (emphasis added). The question of arbitrability, whether an agreement creates a duty for the parties to arbitrate the particular grievance, "is undeniably an issue for judicial determination." *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 333 (2009).

### B. The Court Should Compel Arbitration Because the Buyer's Order Contains a Valid and Enforceable Arbitration Clause That Binds Plaintiff.

Whether a valid and enforceable arbitration agreement exists is a question of law for the court. *Hunter v. Lowndes County Health Servs., LLC*, 355 Ga. App. 367, 369 (2020). The validity of an arbitration agreement is governed by state law principles of contract formation. *McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 509 (2014). To constitute a valid contract, there must be parties able to contract, consideration moving the party to contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. O.C.G.A. § 13-3-1; *see e.g., Kindred Nursing Centers Limited Partnership v. Chrzanowski*, 338 Ga. App. 708, 713-714 (2016) (holding that nursing home's production of a signed ADR agreement established a prima facie case with regarding to whether an enforceable agreement to arbitrate was entered); *Roach v. Asbury Automotive Group*, No. 1:16-cv-04215-CC-RGV, 2017 WL 3525439, at *5 (N.D. Ga. Apr. 14, 2017) (granting Asbury's motion to compel arbitration where plaintiff signed enforceable Vehicle Buyer's Order wherein she agreed that any dispute between her and Asbury Automotive would be resolved through binding arbitration).

- 3 -

4880-4048-1393 v4

Here, it is clear from the Buyer's Order that Lynn Love entered into the agreement and initialed at the bottom of the Arbitration Provision, indicating his agreement to the terms therein. See below:



**ARBITRATION PROVISION**
PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Buyer Initials [initials]     Co-Buyer Initials N/A     69337*1*ABG105-FI     09/16/2020   04:52 pm

FORM NO. ASB-BO-GA_B (Rev. 8/18)     Page 2 of 2
© 2017 The Reynolds and Reynolds Company.

**Exhibit A**.

## 1. Plaintiff is a Third-Party Beneficiary of the Agreement and is Therefore Bound by the Arbitration Clause Therein.

Plaintiff may argue that the arbitration agreement at issue is unenforceable because *Plaintiff* did not sign the agreement. However, traditional principles of state law provide that a non-signatory plaintiff can be compelled to arbitrate through assumption and third-party beneficiary theories just as in any contract case. *Branch v. Ottinger*, 477 F. App'x. 718, 720 (11th Cir. 2012); *Lankford v. Orkin Exterminating Co., Inc*., 266 Ga. App. 228, 231 (2004) (holding that non-signatories to an arbitration agreement can be compelled to arbitrate their claims).

Whether a third party is an intended beneficiary may be determined by examining both the writing itself as well as the surrounding circumstances known to the parties. *Collins v.*

- 4 -

4880-4048-1393 v4

*International Dairy Queen, Inc.*, 2 F. Supp. 2d. 1465, 1476 (M.D. Ga. 1998). A person becomes a third-party beneficiary to the contract "when one party to the contract promised another party to the contract to render some performance to the nonparty to the contract…[and] both parties to the contract intended that the contract benefit the nonparty." *Vaughan, Coltrane & Assoc. v. Van Horn Constr.*, 254 Ga. App. 693, 694 (2002). The arbitration provision in the relevant Buyer's Order states it applies to any claim or dispute arising out of or relating to "your credit application, purchase or condition of this vehicle, this contract, or any resulting transaction or relationship **(including any such relationship with third parties who do not sign this contract)**…" Exhibit A. This clause expresses the parties' intent to convey contractual obligations to arbitrate upon those who were not signatories to the Buyer's Order, such as Plaintiff.[3]

Plaintiff is seeking the benefits of the warranties contained in the Buyer's Order as a third-party beneficiary of the warranties contained therein—otherwise Plaintiff would not have standing to pursue his asserted causes of action. Therefore, Plaintiff as a third-party beneficiary seeking to enforce warranty claims against Asbury, is obligated to abide by the arbitration provision included therein. *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 229 (2004); *see also Camp v.*

---

[3] Under the same third-party beneficiary principles, Defendants Audi of America, LLC; Volkswagen Group of America, Inc., Audi AG, and Volkswagen AG also have standing to enforce the binding arbitration provision in the Vehicle Buyer's Order. *See Heath v. Carson Smithfield, LLC*, No. 3:17-cv-129-TCB, 2018 WL 4846532, at *2 (N.D. Ga. Jan. 3, 2018) (stating "[a] non-party can enforce an arbitration agreement if the language of the agreement is broad enough to allow the non-party to invoke it."). The arbitration provision states "any claim or dispute…between you and us our employees, agents, successors or assigns…" Exhibit A. The arbitration provision also states that it covers any dispute related to the purchaser's "credit application, purchase or condition of this vehicle, this contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)…" Exhibit A. Thus, the intention to benefit the aforementioned third parties is apparent from the face of the contract. *See Donnalley v. Sterling*, 274 Ga. App. 683, 684 (2005) (stating although the third party beneficiary does not need to be specifically named in the contract, "the contracting parties' intention to benefit the third party must be shown on the face of the contract.") (internal quotations omitted).

- 5 -

*TNT Logistics Corp.*, No. 04-CV-1358, 2005 WL 8116051, at *5 (C.D. Ill. Sept. 28, 2005) (holding that non-signatory plaintiff sought benefits of Masters Services Agreement as a third-party beneficiary and plaintiff could not assert the benefits of the agreement while remaining free of its obligations).

### 2. Plaintiff is Estopped From Avoiding the Applicable Arbitration Provision.

Plaintiff is also bound by the arbitration provision pursuant to the equitable doctrine of estoppel. In *LaSonde v. Citi Financial Mortgage Company., Inc.*, 272 Ga. App. 113 (2005), a husband and wife sued their mortgage company for wrongfully commencing foreclosure proceedings against their property. The trial court ordered the claims to arbitration even though the plaintiff wife did not sign the promissory note containing the arbitration agreement. *Id.* at 114. The Georgia Court of Appeals reasoned that the wife's claims were dependent on the contract containing the arbitration clause, and that she was thus estopped from avoiding arbitration. *Id.* at 115. Similarly here, Plaintiff asserts breach of express warranty and breach of implied warranty claims against Asbury, and those allegations are directly related to the contractual provisions contained in the Buyer's Order.

Further, courts in other jurisdictions have held that non-signatory plaintiffs can even be compelled to arbitrate claims asserted against non-signatory defendants "when the claim itself is based on, or inextricably intertwined with, the contract containing the arbitration clause." *See JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1242 (2011). Such is the case here. It would be unfair for Plaintiff to accept the benefits of the provisions contained in the Buyer's Order (to which he was not a signatory) while at the same time avoiding its limitations. For these reasons, Plaintiff should be estopped from avoiding the applicable arbitration clause.

- 6 -

## C. Plaintiff's Claims Against Asbury Fall Within the Scope of the Contract's Arbitration Clause.

This Court should apply the binding arbitration clause to all of Plaintiff's claims against Asbury. In determining whether the arbitration agreement applies to these claims, the Court "must focus on the complaint's factual allegations rather than the legal causes of action asserted." *Langfitt v. Jackson*, 284 Ga. App. 628, 636 (2007). Plaintiff's negligence, breach of express warranty, and breach of implied warranty claims against Asbury are grounded in Asbury's failure to adequately inspect the subject vehicle and failing to identify alleged defects in the vehicle's occupant restraint system and seat. (Compl. ¶¶ 60-61.) The arbitration clause in the Contract covers "any claim or dispute, whether in contract, tort, statute or otherwise…which arises out of or relates to your…purchase or condition of this vehicle, this contract, or any resulting transaction or relationship…." *See* Exhibit A. Accordingly, Plaintiff's claims fall within the scope of the Agreement's arbitration provision.

## D. Asbury Has Not Waived Its Right to Arbitrate This Dispute Because it Has Not Taken Any Action Inconsistent With That Right

There is a strong presumption against the waiver of a right to arbitrate. *SunTrust Bank v. Lilliston*, 302 Ga. 840, 840 (2018). A right to arbitrate may be waived by a party who acts inconsistently with that right, and in doing so, prejudices the other party to the contract. *Id.* No conduct consistent with a waiver has occurred. Asbury has merely filed its Answer and Affirmative Defenses in response to Plaintiff's Complaint contemporaneously with this Motion to Compel Arbitration. Thus, Asbury's conduct to date is not consistent with a finding of waiver. *Cf. Schinazi v. Eden*, 351 Ga. App. 151, 159 (2019) (party's failure to invoke right to arbitrate and instead participating in almost five years of costly litigation was conduct consistent with waiver); *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 674-675 (2003) (party who chose not to immediately invoke its right to arbitrate and instead proceeded with litigation up to actual trial, waived right to

- 7 -

arbitrate). The Parties have not engaged in discovery as this case is in the very early stages. Accordingly, Plaintiff can claim no prejudice as result of the timing of this Motion to Compel Arbitration.

## II.     CONCLUSION

For these reasons, Asbury respectfully requests the Court stay these proceedings and grant its motion to compel Plaintiff's claims to arbitration.

Respectfully submitted,

This 28th day of July, 2022.

**SHOOK, HARDY & BACON LLP**

*/s/ Colin K. Kelly*
Colin K. Kelly, Esq.
Georgia Bar No. 781072
ckelly@shb.com
(470) 867-6012 (direct)
Caroline M. Gieser, Esq.
Georgia Bar No. 167916
cgieser@shb.com
(470) 867-6013 (direct)
Timia A. Skelton, Esq.
Georgia Bar No. 667099
tskelton@shb.com
(470) 867-6006 (direct)
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591

***Attorneys for Defendant Asbury Automotive Group, Inc.***

- 8 -

4880-4048-1393 v4

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

DOUGLAS GRANT MORTON,     )
                                  )
       Plaintiff,             )
                                  )
v.                                    )
                                  )
AUDI OF AMERICA, LLC;       )
VOLKSWAGEN                 )        Civil Action File No.:
GROUP OF AMERICA, INC. D/B/A AUDI   )        23-C-03730-S2
OF AMERICA, INC.; AUDI AG;      )
VOLKSWAGEN                 )
AG; AND ASBURY AUTOMOTIVE    )
GROUP, INC.,                  )

       Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2023, I served a copy of **Defendant Asbury Automotive Group, Inc.'s Memorandum of Law in Support of Its Motion to Compel Arbitration and Stay Proceedings** upon the following counsel of record in this matter using the Odyssey E-File system:

<div align="center">

Cale Conley
Davis Popper
Alex S. Edmonds
**Conley Griggs Partin LLP**
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, GA 30327
Telephone: (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Attorneys for Plaintiff*

Noah B. Abrams
**Abrams & Abrams, P.A.**
1526 Glenwood Avenue

</div>

- 9 -

Raleigh, NC  27608
Telephone:  (919) 755-9166
nabrams@abramslawfirm.com

*Attorneys for Plaintiff*

Winston S. Kirby
Andrew Avram
**Edwards Kirby, LLP.**
3201 Glenwood Avenue
Suite 100
Raleigh, NC  27612
Telephone:  (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

*Attorneys for Plaintiff*

/s/ *Colin K. Kelly*
Colin K. Kelly, Esq.

***Attorney for Defendant Asbury
Automotive Group, Inc.***

- 10 -

# EXHIBIT A

F&I MGR: SCOTT SIEBOLD
CONT#: 000000

VEHICLE BUYER'S ORDER

STK# LN002921
DEAL# 121745
CUST# 931867

**IT HAS TO BE**

# NALLEY

**AUDI NORTH ATLANTA**
**AUTOMOTIVE**
11505 ALPHARETTA HIGHWAY
ROSWELL, GA 30076 678 795 2800

THIS VEHICLE ORDER FORM IS FOR THE FOLLOWING
[X] NEW  [ ] USED

| YEAR | MAKE | SERIES |
| --- | --- | --- |
| 2020 | AUDI | A6 2.0T QUATTRO |

| MILEAGE | COLOR | TRIM |
| --- | --- | --- |
| 3988 | 2Y2Y/White | |

| STOCK NO. | VIN # |
| --- | --- |
| LN002921 | WAUE8AF26LN002921 |

| PRICE OF VEHICLE | $ | 58158 | 00 |
| --- | --- | --- | --- |

| ACCESSORIES: | | |
| --- | --- | --- |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| WE OWE | 499 | 00 |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| RESISTALL | 650 | 00 |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |

| DEALER SERVICE CHARGE* | 599 | 00 |
| --- | --- | --- |
| TITLE SERVICE FEE** | 98 | 00 |
| N/A | N/A | |
| N/A | N/A | |

| TOTAL DELIVERED PRICE | 60004 | 00 |
| --- | --- | --- |
| TRADE-IN ALLOWANCE(S) | N/A | |
| CASH PRICE OR TRADE DIFFERENCE | 60004 | 00 |
| N/A | N/A | |
| TAVT RATE ( N/A%) | 3696 | 26 |
| PLUS: TAG, TITLE, LEMON LAW AND EMISSION TESTING FEES | 46 | 00 |
| PLUS: PAYOFF ON TRADE VEHICLE(S) | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| | N/A | |
| TOTAL BALANCE | 63746 | 26 |
| LESS INITIAL PAYMENT/CASH DOWN | N/A | |
| LESS REBATE/FACTORY INCENTIVE | 4000 | 00 |
| BALANCE DUE | $ | 59746 | 26 |

| DEAL # | | CUSTOMER # | |
| --- | --- | --- | --- |
| 121745 | | 931867 | |
| DATE | SALESPERSON 1 | | SALESPERSON 2 |
| 09/16/2120 | Nicholas Watterson | | |

| CUSTOMER'S NAME |
| --- |
| LYNN LEE LOVE |

| CO-CUSTOMER'S NAME |
| --- |
| N/A |

| STREET ADDRESS |
| --- |
| 2660 PEACHTREE RD NW APT 36D |

| CITY | COUNTY | STATE | ZIP |
| --- | --- | --- | --- |
| ATLANTA | FULTON | GA | 30305 |

| RESIDENCE PHONE | BUSINESS PHONE |
| --- | --- |
| 954-254-5220 | |

| E-MAIL ADDRESS | MOBILE PHONE |
| --- | --- |
| Thebil@bellsouth.net | 954-254-5220 |

**TRADE-IN RECORD**

| YEAR | MAKE | MODEL | TYPE | COLOR |
| --- | --- | --- | --- | --- |
| N/A | N/A | N/A | N/A | N/A |

| VIN # | | | MILEAGE |
| --- | --- | --- | --- |
| N/A | | | N/A |

| ALLOWANCE $ | N/A | ESTIMATED PAYOFF $ | N/A |
| --- | --- | --- | --- |

| TRADE 2 | YR | MAKE | MODEL |
| --- | --- | --- | --- |
| | N/A | N/A | N/A |

| VIN # | | | MILEAGE |
| --- | --- | --- | --- |
| N/A | | | N/A |

| ALLOWANCE $ | N/A | ESTIMATED PAYOFF $ | N/A |
| --- | --- | --- | --- |

**TRADE-IN DISCLOSURE**

You acknowledge us all of your rights, title and interest in such Trade-in vehicle(s). You represent that you are the sole owner of the vehicle and have the right to sell or otherwise transfer ownership of the Vehicle. Except as disclosed in writing to us you further acknowledge the representations and responsibilities on the back of this Order relating to Trade-in Vehicles, and on the Authorization to Release Payoff Information executed with this Order, if any.

Negative Equity: If the pay-off for your Trade-in(s) exceeds the Trade-in Allowance, the difference will be added to balance due.

Customer initials _____

Co-Customer initials _____

*Dealer Service Charge: This charge covers Dealer services related to this Vehicle and its sale and may result in profit to the Dealer for the services. This charge does not include payment for the preparation and/or completion of legal documents and is not an official charge.

**Title Service Fee: This fee covers dealer services relating to the processing of this vehicle's title and may result in profit to the Dealer. This is not an official fee.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, this vehicle is sold "AS IS" and "WITH ALL FAULTS." The Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Oral statements should not be construed as a warranty or promise of any kind.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

Buyer acknowledges receipt of any warranty information prior to the sale of the vehicle.

Conditional Delivery Agreement/Dealer's Right to Cancel: If buyer and co-buyer sign here, then the provisions of the Conditional Delivery Agreement/Dealer's Right to Cancel apply.

Buyer _____

Co-Buyer _____ N/A

| CREDIT LIFE | | N/A |
| --- | --- | --- |
| ACCIDENT & HEALTH | | N/A |
| N/A | | N/A |
| TOTAL ADDITIONAL COVERAGE | | N/A |

| AMOUNT FINANCED | 59746 | 26 |
| --- | --- | --- |
| APR % | | N/A |
| FINANCE CHARGE | | N/A |
| MONTHS | 59746 | 26 |
| TOTAL TIME BALANCE | 59746 | 26 |

For your protection, request a receipt for all payments you make.

This Order and Agreement represents the final agreement between the parties related to the sale of the vehicle and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

Buyer Signs: X _____  Co-Buyer Signs: X _____ N/A

You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms. You have received a completely filled in copy of this Order and Agreement. You acknowledge that you are 18 years or older.

Buyer Signs: X _____  Co-Buyer Signs: X _____ N/A

Accepted by Seller: X _____  By: F&I MANAGER

FORM NO. ABB-BO-GA_s (Rev. 9/13)
© 2017 The Reynolds and Reynolds Company

99337*1*ABG105-11
Page 1 of 2

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

09/16/2020  04:52 pm

These definitions apply to this Agreement:

"*You*" means the buyer or buyers executing this Agreement as such.

"*Dealer*", "*Us*" and "*We*" means the authorized Dealer named on the face of this Agreement.

"*Manufacturer*" means the manufacturer of the Vehicle.

"*Vehicle*" is the vehicle or chassis that is the subject of this Agreement.

"*Trade-In*" is the used vehicle that You intend to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

1. **Modifications or Cancellation Due to the Manufacturer or Other Events:** If the Manufacturer modifies, discontinues, or fails to deliver the Vehicle or changes the price, or if we cannot deliver the Vehicle due to accident, fire, act of nature, or cause beyond our control, then either you or we may terminate this Order without liability to the other party, and Dealer shall refund your deposits and return your Trade-in, if applicable.

2. **Trade-in Vehicle Title and Appraisal and Return upon Cancellation for Any Reason:** You will immediately provide Certificate of Title to the Trade-in. If you cannot, then you agree to reimburse the Dealer for all costs incurred for the issuance of duplicate title. If there is a lien or other encumbrance, you agree to take all necessary steps to enable us to obtain a Certificate of Title in accordance with applicable state law. You agree to cooperate immediately with the Dealer to provide all documents necessary to accomplish this.

If you have not yet delivered your Trade-in to us, we will reappraise it at the time it is delivered to us. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown on this Order, you may cancel this Order. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us.

In the event this transaction is cancelled for any reason, and we have paid some or all of the balance owed to the lienholder on the Trade-in, you shall immediately reimburse us for the amount paid to the lienholder. Otherwise, we may place a lien on the Trade-in without any further action or agreement by you.

If we have sold the Trade-in prior to cancellation of this Buyer's Order, we will pay you the agreed upon Trade-in Allowance and you will reimburse us for any amount we paid to the lienholder on the Trade-in.

3. **Taxes:** The Vehicle price doesn't include sales, use, ad valorem, highway, property or occupational taxes (federal, state or local) unless expressly stated. You agree to pay all taxes that apply to this transaction. If the amount of taxes owed exceeds the amount reflected in this Order, you are responsible for paying the difference.

4. **Other Products and Financing:** The Dealer offers goods and services from various suppliers. The amounts charged to customers for such goods or services may be greater than our cost, and/or we may receive a commission or other payment in connection with such sale. You are not required to purchase any other goods or services from us. You may also arrange financing through the finance source of your choice. If we assist you in obtaining financing, we may receive a fee, commission or other compensation from the Finance Source.

5. **ORAL STATEMENTS AND VEHICLE HISTORY REPORTS:** ORAL PROMISES AND REPRESENTATIONS ABOUT THE VEHICLE WILL NOT BE RECOGNIZED AND ARE NOT A WARRANTY OF ANY KIND. YOU MAY NOT RELY UPON VERBAL REPRESENTATIONS MADE BY DEALER, DEALER'S EMPLOYEES OR AGENTS ABOUT THE VEHICLE, INCLUDING, BUT NOT LIMITED TO, STATEMENTS REGARDING THE VEHICLE'S PRIOR HISTORY. WE HAVE NOT INDEPENDENTLY VERIFIED INFORMATION ON THIRD PARTY VEHICLE HISTORY REPORTS AND CANNOT REPRESENT OR WARRANT THE ACCURACY OF ANY SUCH REPORTS. RELIANCE UPON ANY SUCH REPORTS WILL BE AT YOUR PERIL. NEITHER DEALER, DEALER'S EMPLOYEES NOR AGENTS CAN ACCURATELY CONFIRM THE PRIOR HISTORY OF THE VEHICLE. YOU MAY HAVE THE VEHICLE INSPECTED BY AN INDEPENDENT MECHANIC PRIOR TO CONSUMMATING THIS PURCHASE.

6. **Notice Regarding Legal Documents:** Certain documents in this transaction affect your legal rights and impose certain duties and obligations. IF YOU HAVE ANY QUESTIONS OR CONCERNS ABOUT THESE DOCUMENTS OR ABOUT ANY OTHER MATTERS LEGAL IN NATURE, CONSULT WITH AN ATTORNEY OF YOUR CHOOSING PRIOR TO SIGNING ANY DOCUMENT OR COMPLETING THIS TRANSACTION. This transaction is an arms-length business transaction. No fiduciary duty or other similar duty or confidential relationship exists between you and the Dealer.

7. **Your Representations to Us:** (a) New vehicles only: YOU ARE NOT PURCHASING THE VEHICLE FOR RESALE OR EXPORT within the next 12 months from the date of this Order; (b) the Cash Down, and any other amounts due to us have been paid in full, any payment given to us will be promptly honored by the institution upon which it was drawn, and you have not borrowed any part of the Cash Down; (c) all statements made by you in this transaction are correct; and (d) you are who you have represented yourself to be. If you have purchased the Vehicle for use by anyone other than yourself, you must disclose this to us in writing.

8. **Buyer's Default and Dealer's Remedies:** In the event of your failure by you to perform your obligations under this Order or any breach by you of a representation or warranty made by you to use, we shall be permitted to the choice of remedies which may be used separately or together, including: (1) cancel this Buyer's Order; (2) repossess the Vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; (5) cancel any ancillary products you have purchased; (6) retain any Deposit made by you; and/or (7) in the event that you have delivered a Trade-in as part of the consideration for your purchase of the Vehicle from us, sell it and reimburse the Dealer out of the proceeds for any actual damages suffered by us as a result of your default, or place a security interest on the Trade-in if we return it to you. We shall further be entitled to recover from you for an event of default any costs incurred by us for repossession/collection, reasonable interest, plus reasonable attorney's fees. If the actual amount you owe to us is greater than the amount of the Deposit and/or proceeds from the sale of your Trade-in you agree to pay the difference to us upon demand and if the actual amount you owe is less, then we will pay the difference to you.

9. **Security Agreement:** In the event that we are not paid in full, this document grants us a security interest in the Vehicle being purchased. This security interest is separate and apart from, but subordinate to, any interest granted to a third party lender if the Vehicle is being purchased on credit.

10. **GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS ORDER AND ANY SALE/LEASE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF GEORGIA.

11. **VEHICLE DATA COLLECTION AND PRIVACY:** Vehicles collect and use different types of information for a wide range of purposes. If you have any questions or concerns, familiarize yourself with the data collection and opt out procedures of the vehicle manufacturer, and any third party applications with access to your vehicle's data, prior to buying, leasing or trading a vehicle.

12. **DAMAGES LIMITATION:** YOU ARE NOT ENTITLED TO RECOVER FROM THE DEALER ANY CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

13. **USED CAR BUYERS GUIDE: THE INFORMATION ON THE VEHICLE WINDOW IS PART OF THIS AGREEMENT AND OVERRIDES ANY CONTRARY PROVISIONS IN THIS AGREEMENT.**

GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE ACUERDO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL ACUERDO DE VENTA.

**Conditional Delivery Agreement/ Dealer's Right to Cancel:** We are not a lender, and this transaction is conditioned upon our being paid in full on the terms agreed upon in this Buyer's Order, and the Retail Installment Sales Contract (the Contract), if any. You understand that we have not been paid in full until your payment has been honored by the institution upon which it was drawn, or, if financing is arranged through a lender, "paid in full" means that the lender accepted assignment of the Contract, and the Dealer has received payment. You agree to cooperate and promptly provide accurate and complete information in response to requests by the lender regarding your credit worthiness. You are responsible for any payments which come due on your Trade-in until we have been paid in full.

**Our Obligations:** We will notify you in person, by phone or written notice if we are not paid in full and if we elect to cancel the purchase of the Vehicle. Once you have received notice, you must comply with "Your Obligations" described below and we must give back to you all consideration we have received from you under the terms of the Buyer's Order. If your Trade-in has already been sold, we will refund the trade allowance as described in Paragraph 2 above.

**Your Obligations:** If we cancel as provided above, you must return the Vehicle immediately in the same condition as when delivered to you, reasonable wear and tear excepted. You agree to pay us the cost of repairing damage or excessive use and to hold us harmless from any expenses pertaining to the Vehicle while it is in your possession. If you do not return the Vehicle immediately, you will be liable for all expenses incurred by us in taking the Vehicle from you. If you fail to return the Vehicle, we may use any legal means to take it back. You agree to reimburse us for payment made on your behalf to any lienholder of the Trade-in. If you owe money under this section, we can offset our refund of any down payment or trade allowance or other consideration paid by you, and/or obtain a security interest against your Trade-in until all sums due have been paid.

**Terms of Use of the Vehicle upon Delivery and until the Dealer Is Paid in Full:** You agree to provide full liability, collision and comprehensive insurance coverage on the Vehicle. You agree that only validly licensed drivers will operate the Vehicle.

In the event that the Dealer elects to cancel pursuant to this Agreement, you and we may agree to a new Contract with different financing terms, or agree to payment with alternate funds. Such renegotiated terms are voluntary, and neither you nor we are required to accept different financing terms or alternate funds.

Nothing in this Agreement gives you the right to cancel the purchase for any reasons except identified in this Agreement.

---

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district where the Dealer is located. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act. Nothing in this Agreement limits or precludes the arbitrator(s) from awarding monetary damages or other relief provided by law.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall be enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

FORM NO. ASB-BO-GA _B (Rev. 6/18)
© 2017 The Reynolds and Reynolds Company

Page 2 of 2

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Case 1:24-cv-06922-MHC-WCM   Document 1-3   Filed 09/28/23   Page 129 of 568

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/2/2023 11:03 PM**

TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,  )
    Plaintiff,  )
      )
v.  )
      )
AUDI OF AMERICA, LLC;  )
VOLKSWAGEN  )
GROUP OF AMERICA, INC. D/B/A AUDI  )      Civil Action File No.:
OF AMERICA, INC.; AUDI AG;  )        23-C-03730-S2
VOLKSWAGEN  )
AG; AND ASBURY AUTOMOTIVE  )
GROUP ,INC.,  )
      )

    Defendants.

## DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER THE DOCTRINE OF FORUM NON CONVENIENS

COMES NOW Defendant Volkswagen Group of America, Inc., ("VWGoA") through its undersigned counsel of record, and hereby moves to dismiss Plaintiff's Complaint pursuant to O.C.G.A. § 9-10-31.1, and shows this Court as follows:

### I.    FACTUAL BACKGROUND

Plaintiff Douglas Morton is a California resident, not a resident of Georgia. He filed his product liability lawsuit via counsel from North Carolina (with local Georgia counsel) for a motor-vehicle accident involving an Audi A6 (the "Vehicle") that occurred on U.S. Highway 25 in Marshall, North Carolina. (Compl. ¶ 1, 21.) The city of Marshall is located in Madison County, North Carolina, approximately 200 miles away from Gwinnett County. Out of the five Defendants, only one—Asbury Automotive Group ("Asbury")— has a physical presence in Georgia and the forum. Asbury is nothing more than a retailer who sold the relevant Audi A6 vehicle to someone *other* than the Plaintiff in a county outside of the forum. (Asbury's Answer to Plaintiff's Compl.,

1

¶ 16.) None of the remaining Defendants are citizens of Georgia. (*See generally* Compl.) Audi of America, LLC and Volkswagen Group of America are the only other U.S. based entities, but their offices and witnesses/employees are in Northern Virginia. (Compl. ¶ 4, 7.) Neither have any physical presence or operations in Georgia. (*Id.*) Likewise, Audi AG and Volkswagen AG are both foreign manufacturing companies located in Germany without any physical presence in the state of Georgia. (Compl. ¶ 10,13.)

All of the publicly available information, including the North Carolina State Highway Patrol Report (the "Report"), indicates that most of the key accident, fact, and medical witnesses reside outside of Georgia and will not be subject to subpoena for trial if the case is not dismissed in favor of North Carolina as a more appropriate forum. (*See* Exhibit A.) The Report makes clear that the other driver involved in this accident, Scottie Dale Proffitt, is a resident of Marshall, North Carolina. (*Id.*) Likewise, the responding officers are based in North Carolina as they are members of the North Carolina State Highway Patrol. (*See id.*)

Defendant VWGoA will allege Scottie Dale Proffitt is the proximate cause of Plaintiff's injuries. Mr. Proffitt is a citizen of Marshall, North Carolina *and has not been sued by Plaintiff*. Absent granting this Motion to Dismiss, VWGoA likely will not be able to compel this out-of-state resident to appear as a third party in Georgia despite being a potentially important party.

VWGoA submits that this lawsuit would be more appropriately litigated in Madison County, North Carolina given that the subject accident scene, automobile, and potential fact and medical/treating witnesses are located there instead of Georgia, and it would not deprive VWGoA of its option of bringing in a potentially indispensable party who resides in North Carolina. The lone basis for Plaintiff's forum choice is a tertiary retailer of the Vehicle who did not even sell or service the Vehicle in the forum county. In short, Plaintiff cannot present viable arguments that

2

the local interests of Gwinnett County, Georgia favor this case being litigated in the current forum which is hundreds of miles from 1) where the accident occurred, 2) where many of the witnesses reside, 3) where the potential sole causation defendant resides and 4) where the Vehicle is located.

Both for the interest of justice and for the convenience of the parties, this case should be dismissed pursuant to O.C.G.A. § 9-10-31.1(a) under the doctrine of forum *non conveniens*. There is no credible dispute that North Carolina (and more specifically Madison County) has the strongest interest in deciding this case.

## II. LEGAL STANDARD

O.C.G.A. § 9-10-31.1 allows defendants in civil actions to seek transfer or dismissal of a case under the doctrine of forum *non conveniens*. Under O.C.G.A. § 9-10-31.1, where a trial court, "on written motion of a party, finds that in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard in a forum outside this state…the court shall decline to adjudicate the matter under the doctrine of forum non conveniens." O.C.G.A. § 9-10-31.1(a). "As to a claim or action that would be more properly heard in a forum outside this state, the court shall dismiss the claim or action." *Id.*

Georgia's forum *non conveniens* statute explicitly lists seven factors that must be considered by the trial court when a party moves for dismissal or transfer on the grounds of forum *non conveniens*: (1) relative ease of access to sources of proof; (2) availability and cost of compulsory process for attendance of unwilling witnesses; (3) possibility of viewing of the premises, if viewing would be appropriate to the action; (4) unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to pursue his or her remedy; (5) administrative difficulties for the forum courts; (6) existence of local interests in deciding the case locally; and (7) the traditional deference given to a plaintiff's choice of forum. O.C.G.A. § 9-11-31.1(a).

3

When assessing whether to dismiss a case based on forum *non conveniens*, the trial court must "set out upon the record the essential reasoning that forms the basis for its exercise of discretion" in deciding whether to grant or deny the motion to dismiss under the doctrine of forum *non conveniens*. *Wang v. Liu*, 292 Ga. 568, 569 (2013). Georgia's appellate courts have repeatedly upheld the transfer or dismissal of a case pursuant to O.C.G.A. § 9-11-31.1 where analysis of the statute's seven factors reflect that venue would be more proper in the courts of another county, state, or country. *See Hawthorn Suites Golf Resorts, LLC v. Feneck*, 282 Ga. 554, 556-57 (2007) (affirming dismissal where case was more properly brought in Louisiana based on application of O.C.G.A. § 9-11-31.1(a) factors); *John Hardy Group, Inc. v. Cayo Largo Hotel Assocs.*, 286 Ga. App. 588 (2007) (affirming dismissal where case was more properly brought in Puerto Rico). This Court's determination of whether to transfer or dismiss a case due to forum *non conveniens* is a matter completely within its discretion, and absent an abuse of discretion, the Court's decision will be affirmed. *Hawthorne Suites*, 282 Ga. at 556.

## III.    ARGUMENT

### A.  THE OVERWHELMING WEIGHT OF MANDATORY STATUTORY FORUM NON CONVENIENS FACTORS WARRANTS DISMISSAL OF THIS CASE IN FAVOR OF MADISON COUNTY, NORTH CAROLINA.

There are multiple potential states and countries relevant to this case (North Carolina where Plaintiff's choice of counsel, witnesses, and where the accident are located; California where Plaintiff resides and presumably has received some medical treatment; or Germany where the subject Vehicle was manufactured and designed, etc.), but factually, none are more attenuated than

4

the present forum. All six of the relevant[1] statutory factors under O.C.G.A. § 9-10-31.1(a) militate dismissal of this case in the present Court on the grounds of forum *non conveniens*.

1. **Relative Ease of Access and Sources of Proof Favors North Carolina As the Convenient Forum**

As to the first factor—relative ease of access to sources of proof—it is undisputed that the accident occurred in Madison County, North Carolina, specifically in the town of Marshall. If this Case were dismissed and re-filed in Marshall County, North Carolina, there would be essentially no barriers or additional costs associated with discovery given that the overwhelming majority of witnesses specific to the accident, including eyewitnesses, passengers, the responding law enforcement officers, first responders, investigators, and initial emergency and medical personnel all reside in or around Marshall, North Carolina. (*See generally* Exhibit A). Upon information and belief, the subject vehicle is also located in North Carolina.

While Plaintiff will likely argue that discovery can take place across state lines under the Uniform Interstate Depositions and Discovery Act (UIDDA), that process will no doubt cause delays and require unnecessary expense to have to have subpoenas, requests, and notices issued in the forum where the case actually belongs. Furthermore the UIDDA does not permit North Carolina residents to be dragged to Gwinnett County, Georgia for trial. Because Plaintiff's counsel already resides in North Carolina, there is no additional burdens or prejudice to Plaintiff in dismissing the case in favor of North Carolina.

---

[1] The Plaintiff's choice of forum of Gwinnett County, Georgia is certainly a factor to be considered by the Court, but a plaintiff's "decision to litigate [his] case in Georgia [will] not override the clear implication of the [other] factors that the case should be tried in" another state. *Hawthorn Suites Golf Resorts, LLC v. Feneck*, 282 Ga. 554, 556-57 (2007) (affirming trial court's decision to dismiss case under forum non conveniens because it should be tried in Louisiana). Therefore, the mere fact that Plaintiff, a non-resident of Georgia, who has to travel from California no matter where he pursues his claim, arbitrarily chose to file suit in Georgia, is not dispositive to the issue of forum *non conveniens*.

**2. Availability and Cost of Compulsory Process for Attendance of Unwilling Witnesses Does North Carolina As the Convenient Forum**

This is a case involving allegations of serious injury, and yet Plaintiff has failed to sue Scottie Dale Proffitt, the driver of the 1999 Dodge Ram, whom VWGoA will allege is the primary and proximate cause of the accident. Mr. Proffitt resides outside the forum state and is not subject to a trial subpoena such that VWGoA could compel his live eyewitness testimony at trial in the present forum. In Georgia civil cases, trial subpoena power is limited. *See Clark v. Board of Dental Examiners of Georgia*, 240 Ga. 289, 291 (1977) (stating "service of the subpoena is limited to a 150-mile radius of the place of the hearing or trial…").

Likewise, in the present forum VWGoA may be unable to bring in Mr. Proffitt as a third-party defendant in the case given potential personal jurisdictional hurdles in compelling an out of state individual to become a party in a case in a venue to which he has no connection. *See Masterfile Corp. v. Accessible Healthcare Services, Inc.*, No. 1:10-cv-04189-SCJ, 2011 WL 13224882, at *3 (N.D. Ga. Aug. 12, 2011) (reasoning that the convenience of key witnesses is afforded the most weight in the decision to transfer venue); *McLane v. Marriott Intern, Inc.*, 547 F. Appx'x. 950, 954 (11th Cir. 2013) (upholding trial court's decision to dismiss case on basis of forum *non conveniens* on the basis that key witnesses necessary for resolution of the critical issue of liability resided in Costa Rica).

As such Mr. Proffitt will either be an unwilling witness VWGoA cannot compel to trial or worse, a necessary third-party defendant over whom the state of Georgia may not have jurisdiction. Either of these individually much less combined—weigh in favor of a dismissal on forum *non conveniens* grounds. The time and expense involved in having to litigate this issue of the Court's

jurisdiction over Mr. Proffitt is wholly unnecessary and falls only on the Defendants as a result of Plaintiff's arbitrary choice of forum.

The same is true for key fact witnesses and medical providers. While VWGoA expects that it will have to do some travel in any major products case to take *some* expert depositions—this is normally not the case for fact witnesses and medical providers. None of the first responders, accident eyewitness, or medical professionals who treated Plaintiff immediately after the accident can be compelled to testify live at trial. *See Ealy v. State*. 251 Ga. 426, 429 (1983) (trial court's decision to utilize provisions of the Uniform Act to Secure Attendance of Witnesses from Without the State was purely discretionary where the out-of-state witness could not be subpoenaed within the court's subpoena power). As difficult as it can be to secure the appearance of a physician in a venue near the physician's practice, it will be essentially impossible to do so in a venue located several hundred miles away from the physician's practice, in another state. In any event, even if such physicians could be compelled to appear in Gwinnett County, which is unlikely under Georgia's trial subpoena statute, they would certainly charge substantial fees to travel, which further indicates that North Carolina is the appropriate forum rather than Georgia. *See* O.C.G.A. § 24-13-22 (stating "[a] subpoena requiring the attendance of a witness at a hearing or trail may be served at any place within the state.").

Defendants should not be required to bear the burden of such fees and expenses—so that Plaintiff can pursue this lawsuit in a state where the accident did not occur and where Plaintiff does not reside. As already outlined, Plaintiff resides in California (Compl. ¶ 3) and Defendants Audi of America, LLC; VWGoA, Audi AG; and Volkswagen AG are foreign corporations (Compl. ¶¶ 4-15.) Asbury is the only Defendant with any connection to Gwinnett County, Georgia because Asbury has its registered agent for service of process in Georgia there. (Compl. ¶ 16.) The

7

fact that Asbury has a registered agent in Gwinnett County is not central to the product liability claims against the manufacturer of the Vehicle involving the design of the head rest. None of the underlying acts in this case, other than the purchase by someone other than Plaintiff and service of the subject vehicle by Asbury, even have any connection to the state of Georgia. This tenuous connection to Georgia does not outweigh the overwhelming prejudice to VWGoA of not being able to compel the witnesses its needs to testify live at trial.

**3. Possibility of Viewing the Premises Favors North Carolina as the Convenient Forum**

The third statutory factor—the possibility of viewing the scene of the subject accident also favors dismissal of this case and re-filing in Madison County, North Carolina. The location where the accident occurred is Madison County, North Carolina. (Compl. ¶ 1.) There is no fact or circumstance present with respect to viewing the premises or scene of the subject incident that has anything to do with any location in the State of Georgia or anywhere other than Madison County, North Carolina.

**4. Unnecessary Expense or Trouble to the Defendant not Necessary to the Plaintiff's Own Right to Pursue His Remedy Favor North Carolina As the Convenient Forum**

Compelling Plaintiff to pursue this action within the state where the accident actually occurred does not impact "plaintiff's own right to pursue [his] remedy." *Woodward Events, LLC v. Coffee House Industries, LLC*, 341 Ga. App. 526, 526 (2017). Plaintiff has already filed his case thousands of miles from his home state of California, so there is no additional burden in dismissing this case in the present forum and forcing Plaintiff to re-file in North Carolina. Plaintiff's lead counsel are already barred in and live in North Carolina, the Vehicle is located in and will have to be inspected in North Carolina, and Plaintiff has already stipulated to the application of North Carolina substantive law to his claims (Compl. ¶ 19.) Under the fourth statutory factor, dismissing the present case pursuant to O.C.G.A. § 9-10-31.1(a)(4) does not in

8

any way whatsoever impact Plaintiff's right to pursue his remedy. In addition to looking at impact on the Plaintiff, the fourth factor looks at fairness *from the perspective of the Defendant*. Is it fair to force VWGoA to arbitrarily defend itself in Georgia without being able to compel a potentially necessary party who discovery may show was the sole proximate cause of the accident? Is it fair to compel VWGoA to defend itself in a forum where it cannot compel key fact and medical witnesses to appear live at trial for direct and/or cross examination or where the jury cannot view the accident scene live? Of course not. Remaining in Georgia substantially impairs VWGoA's ability to defend itself in a very serious case and dramatically increases the costs associated with having to travel and litigate a case unnecessarily more than 200 miles from its proper forum.

**5. Administrative Difficulties for the Forum Court North Carolina as the Convenient Forum**

Similarly, the fifth statutory factor, regarding administrative difficulties for the forum court, supports dismissal. *See* O.C.G.A. § 9-10-31.1(a)(5). As already outlined, Plaintiff seeks application of North Carolina substantive law to the issues in his Complaint (Compl. ¶ 19)—while Georgia courts are not precluded from applying foreign state law, courts in North Carolina will have more experience with such application as an administrative matter. If a novel issue arises, none of the parties in the present forum will be able to seek appellate relief from the appellate courts in North Carolina. In the appropriate forum of North Carolina, conversely, any questions of law or issues of first impression can be directly appealed to the highest court in North Carolina where all issues of state law interpretation *must* be resolved.

9

Additionally, this Court's caseload and the administrative burden also support dismissal. Madison County, North Carolina has a population of approximately 22,000[2] people versus Gwinnett County which currently has approximately one million residents (and growing).[3] Gwinnett County courts like many metro-Atlanta counties has a high volume of cases and a continued COVID backlog.[4] Madison County sits in the Fifth Division of the Superior Courts of North Carolina and has a rotation of approximately eleven judges—more than enough to service a county of 20,000 residents.

### 6. Existence of Local Interests in Deciding the Case Locally Favors North Carolina as the Convenient Forum

Under the sixth statutory factor, there are no meaningful "local interests" that strongly favor the case being heard in the present forum. What compelling interest does a Gwinnett County Court have in tying up court, jury, and community resources presiding over a civil dispute between a California resident and mostly foreign defendants over an accident that took place two hundred miles away in Marshall, North Carolina? The answer is simple: none.

The opposite is true in Madison County, North Carolina, where the accident occurred, where some post-accident treatment occurred, and where the key eyewitness and other fact

---

[2] United States Census, https://www.census.gov/quickfacts/fact/table/madisoncountynorthcarolina/PST045222 (last visited August 1, 2023).
[3] Gwinnett, https://www.gwinnettcounty.com/web/gwinnett/aboutgwinnett/fastfacts/populationgrowth (last visited August 1, 2023).
[4] Gwinnett County Gets More Funding to Address Court Backlog, https://www.wsbradio.com/news/local/gwinnett-county-gets-more-funding-address-court-backlog/XPGJGJE3KVF5VF6RBTJEU2WYLM/ (last visited August 1, 2023); Daily Report, https://www.law.com/dailyreportonline/2023/02/08/a-trial-is-a-story-being-told-gwinnett-chief-judge-advises-lawyers-with-cases-before-him/ (last visited August 1, 2023).

witnesses in the case live. *See* O.C.G.A. § 9- 10-31.1(a)(6). To the extent any locality would have a "compelling interest" in resolving the matter, it would be the venue where the accident occurred.

## IV.    CONCLUSION

In sum, upon an application of the seven statutory factors set forth in O.C.G.A. § 9- 10-31.1(a), it is apparent that the interests of justice and fairness are furthered by dismissing this case in the present forum in favor of Madison County, North Carolina. The Defendants have filed contemporaneously herewith the stipulation required under O.C.G.A. § 9-10-31.1(b). Accordingly, VWGoA respectfully requests that the Court issue an Order dismissing this action pursuant to O.C.G.A. § 9-10-31.1(a) on the ground of forum *non conveniens*.

Respectfully submitted,

This 2nd day of August, 2023.

**SHOOK HARDY & BACON, LLP**

*/s/ Colin K. Kelly*

_____
Colin K. Kelly
Georgia Bar No. 781072
ckelly@shb.com
Caroline M. Gieser
Georgia Bar No. 167916
cgieser@shb.com
Timia A. Skelton
Georgia Bar No. 667099
tskelton@shb.com
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591
(470) 867-6012 (direct CKK)
(470) 867-6013 (direct CMG)

*Counsel for Defendant Volkswagen
Group of America, Inc.*

11

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,  )
    Plaintiff,  )
        )
v.  )
        )
AUDI OF AMERICA, LLC;  )
VOLKSWAGEN  )
GROUP OF AMERICA, INC. D/B/A AUDI  )    Civil Action File No.:
OF AMERICA, INC.; AUDI AG;  )    23-C-03730-S2
VOLKSWAGEN  )
AG; AND ASBURY AUTOMOTIVE  )
GROUP ,INC.,  )

    Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2023, I served a copy of the **DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT** upon all parties of record in this matter using the Odyssey E-File system and via electronic mail as follows:

Cale Conley
Davis Popper
Alex S. Edmonds
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
cale@conleygriggs.com
davis@conleygriggs.com
kip@conleygriggs.com
***Attorneys for Plaintiff***

Noah B. Abrams
Winston Kirby
Andrew Avram
Abrams & Abrams, P.A.
3201 Glenwood Avenue

12

Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 780-5400
***Attorneys for Plaintiff***

*/s/ Colin K. Kelly*

_____

Colin K. Kelly

*Counsel for Defendant Volkswagen*
*Group of America, Inc.*

13

# EXHIBIT A

This report has been redacted to prevent the disclosure of personally identifiable information.

This report has been redacted to prevent the disclosure of personally identifiable information.

DMV-349 (Rev. 1/09)

THIS REPORT IS FOR THE USE OF THE DIVISION OF MOTOR VEHICLES. THE DATA IS COLLECTED FOR STATISTICAL ANALYSIS AND SUBSEQUENT HIGHWAY SAFETY PROGRAMMING. DETERMINATIONS OF "FAULT" ARE THE RESPONSIBILITY OF INSURERS OR OF THE STATE'S COURTS.

No. of Units Involved: **2**
Form **1** of **1**
☐ Supplemental Report  ☐ Non-Reportable

*Do not write in these spaces*

Date Received by DMV

| Date | County | Time | Local Use/Patrol Area |
|---|---|---|---|
| 09/25/2021 | MADISON | 13:20 | 210925057GA - 07 |

**LOCATION**

33 Relation to Roadway Surface: **1**  Crash Occurred ☐ In ☒ Near

**MARSHALL** Municipality  or  **00.30** Miles  ☐N ☐S ☒E ☐W  outside municipality

on **US 25** Highway Number, or Highway, Street (if ramp or service road, indicate on line)

☐ Ramp or Service Road  (R.R. Crossing #) **00.10** Miles ____ ft.  ☒N ☐S ☒E ☐W

☐ At  **SR 1394**  ☒ From  Use Highway Number, Street Name or Adjacent County or State Line  ☒N ☐S ☐E ☐W toward  **SR 1395** Use Highway Number, Street Name or Adjacent County or State Line

Latitude ____
Longitude ____
Altitude ____

---

**UNIT # 1**  ☒ VEHICLE  ☐ PEDESTRIAN  ☐ HIT & RUN  ☐ COMMERCIAL VEHICLE (20)

Driver **SCOTTIE** First **DALE** Middle **PROFFITT** Last

Address **6936 US 2570 HWY**

City **MARSHALL**  State **NC**  Zip **28753-9302**

Same Address on Driver's License? ☒ Yes ☐ No

Driver's Phone Numbers (H) **(828) 206-4669**

D.L.# **REDACTED**  ☒ CDL License  D.L. Class **B**  State **NC**

DOB **REDACTED**  34 Vision Obstruction **0**  35 Physical Condition **1**  36 D.L. Restrictions **0**

37 Alcohol/Drugs Suspected **0**  38 Alcohol/Drugs Test **0**  39 Results (if known) **0**  40 Vehicle Seizure (DWI) ☐

Owner **SCOTTIE DALE PROFFITT**  Same as Driver? ☐

Address **6936 US 2570 HWY**  Same Address as Driver? ☐

City **MARSHALL**  State **NC**  Zip **28753-9302**

Plate # **TBY3595**  Plate State **NC**  Plate Year **2022**

VIN **3B7HF13Y5XG187590**

Vehicle Make **DODGE**  Vehicle Year **1999**  41 Vehicle Style (Type) **2**  42 Vehicle Drivable ☐ Yes ☒ No

43 TAD **FD-3**  44 Estimated Damage **$3,000.00**

Insurance Company **NATIONAL GENERAL INSURANCE CO.**
Policy # **200238408613**

---

**UNIT # 2**  ☒ VEHICLE  ☐ PEDESTRIAN  ☐ HIT & RUN  ☐ OTHER

Driver **DOUGLAS** First **GRANT** Middle **MORTON** Last

Address **3062 N GREG CIR**

City **PALM SPRINGS**  State **CA**  Zip **92262**

Same Address on Driver's License? ☐ Yes ☐ No

Driver's Phone Numbers (H) ____

D.L.# **REDACTED**  ☐ CDL License  D.L. Class **C**  State **CA**

DOB **REDACTED**  34 Vision Obstruction **0**  35 Physical Condition **0**  36 D.L. Restrictions **1**

37 Alcohol/Drugs Suspected **0**  38 Alcohol/Drugs Test **0**  39 Results (if known) ____  40 Vehicle Seizure (DWI) ☐

Owner **LYNN LEE LOVE**  Same as Driver? ☐

Address **2660 PEACHTREE RD NW APT 35D**  Same Address as Driver? ☐

City **ATLANTA**  State **GA**  Zip **30305**

Plate # **CPM3354**  Plate State **GA**  Plate Year **2022**

VIN **WAUE8AF26LN002921**

Vehicle Make **AUDI**  Vehicle Year **2020**  41 Vehicle Style (Type) **1**  42 Vehicle Drivable ☐ Yes ☒ No

43 TAD **BD-4**  44 Estimated Damage **$45,000.00**

Insurance Company **PROGRESSIVE**
Policy # **911826223**

---

**20 COMMERCIAL VEHICLE: Cargo, Carrier Name, Address, Source**

Unit ____  45 Cargo Body Type ____  ☐ Same Address as owner?  Source: ☐ Truck ☐ Shipping ☐ Driver

US DOT# ____  ICC# ____  Axles on Vehicle Including Trailers ____
State ____  State # ____  IFTA# ____
FEI# ____  Fleet # ____  Gross Vehicular Weight Rating ____

---

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 1 | 1 | 1 | Unit 1-Drv 1, Ped 1, etc. see above | W | M | 2 | 2 | 0 | 2 | 1 | 5 | see above | Veh# 1 Towed To/By: HAYNIES TOWING / HAYNIES TOWING |
| B | 2 | 1 | 1 | Unit 2-Drv 2, Ped 2, etc. see above | W | M | 2 | 1 | 0 | 2 | 1 | 2 | see above | Veh# 2 Towed To/By: HAYNIES TOWING / HAYNIES TOWING |
| C | 2 | 2 | 3 | REDACTED | W | M | 2 | 1 | 0 | 2 | 1 | 5 | | LYNN LEE LOVE  2660 PEACHTREE RD NW APT 35D, ATLANTA, GA 30305 |
| D | 2 | 2 | 4 | REDACTED | W | M | 2 | 1 | 0 | 2 | 1 | 5 | | BRUCE STEPHEN GELLY  411 N NEW RIVER DR APT 703, FORT LAUDERDALE, FL 33301 |
| E | | | | | | | | | | | | | | |
| F | | | | | | | | | | | | | | |
| G | | | | | | | | | | | | | | |
| H | | | | | | | | | | | | | | |

46 Name of EMS **B - MADISON COUNTY EMS**  46 Name of EMS ____

47 Injured Taken by EMS to **B - MISSION HOSPITAL, ASHEVILLE NC**  47 Injured Taken by EMS to ____

This report has been redacted to prevent the disclosure of personally identifiable information.

Form 1 of 1

Local Use/Patrol Area: 210925057GA - 07

| 48 POINTS OF INITIAL CONTACT (Write in Codes) | Unit # | 1 | 1,2,3 |
|---|---|---|---|
| | Unit # | 2 | 14,15,16 |

### VEHICLE INFO

| | Veh # | 1 | Veh # | 2 |
|---|---|---|---|---|
| 60 Authorized Speed Limit | | 45 | | 45 |

### ROADWAY INFO

| | |
|---|---|
| 69 Road Feature | 0 |
| 70 Road Character | 7 |
| 71 Road Classification | 2 |
| 72 Road Surface Type | 2 |
| 73 Road Configuration | 2 |
| 74 Access Control | 2 |
| 75 Number of Lanes | 2 |
| 76 Traffic Control Type | 13 |
| 77 Traffic Control Oper | 1 |

### WORK ZONE RELATED

| | |
|---|---|
| 78 Work Zone Area | 5 |
| 79 Work Activity | |
| 80 Work Area Marked | |
| 81 Crash Location | |

### CRASH SEQUENCE (Unit Level)

| | Unit # | 1 | Unit # | 2 |
|---|---|---|---|---|
| 49 Vehicle Maneuver/Action | | 4 | | 1 |
| 50 Non-Motorist Action | | | | |
| 51 Non-Motorist Location Prior to Impact | | | | |
| 52 Crash Sequence - First Event for this Unit | | 21 | | 21 |
| 53 Crash Sequence - Second Event | | | | |
| 54 Crash Sequence - Third Event | | | | |
| 55 Crash Sequence - Fourth Event | | | | |
| 56 Most Harmful Event for this Unit | | 21 | | 21 |
| 57 Distance/Direction of Object Struck | | 0 | | 0 |
| 58 Vehicle Underride/Override | | 3 | | 3 |
| 59 Vehicle Defects | | | | |

| 61 Estimate of Original Traveling Speed | 45 | 45 |
|---|---|---|
| 62 Estimate of Speed at Impact | 40 | 0 |
| 63 Tire Impressions Before Impact (ft.) | 46 | 0 |
| 64 Distance travelled After Impact (ft.) | 5 | 5 |
| 65 Emergency Vehicle Use | | |
| 66 Post Crash Fire (if 'Yes' check block) | ☐ | ☐ |
| 67 School Bus - Contact Vehicle | ☐ | ☐ |
| 68 School Bus - Noncontact Vehicle | ☐ | ☐ |

### TRAILER INFO.

| | Unit # | 1 | Unit # | 2 |
|---|---|---|---|---|
| 82 Trailer Type | | 0 | | 0 |
| 1st Trailer No. Axles | | | | |
| Width (inches) | | | | |
| Length (feet) | | | | |
| 2nd Trailer No. Axles | | | | |
| Width (inches) | | | | |
| Length (feet) | | | | |

### COMMERCIAL VEHICLE, Hazardous Material

| | | |
|---|---|---|
| Haz Mat Placard Involvement | ☐ Yes | ☐ No |
| Hazardous Cargo Released (Does not include fuel from fuel tank) | ☐ Yes | ☐ No |
| Carrying Haz Mat | ☐ Yes | ☐ No |

Unit — From Placard indicate
4-digit placard number or name from diamond or box
1-digit number from bottom of diamond

| 83 Unit # | | |
|---|---|---|
| Overwidth Trailer and Overwidth Mobilehome | Overwidth Permit — | |

## 84 DIAGRAM

Indicate North

N

US25

3

23

3



| Unit # 1 was | ☒ Traveling | ☐ Parked Facing | ☒ | ☐ | ☐ | ☐ | on US 25 |
|---|---|---|---|---|---|---|---|
| | | | N | S | E | W | |

| Unit # 2 was | ☒ Traveling | ☐ Parked Facing | ☒ | ☐ | ☐ | ☐ | on US 25 |
|---|---|---|---|---|---|---|---|
| | | | N | S | E | W | |

## 85 NARRATIVE (include pertinent unusual aspects which are not listed elsewhere on the form)

VEHICLES 1 AND 2 TRAVELING NORTH ON US25. VEHICLE 2 STOPPED FOR TRAFFIC. VEHICLE 1 FAILED TO REDUCE SPEED STRIKING VEHICLE 2. VEHICLES 1 AND 2 CAME TO REST ON US25.

### ADDITIONAL PROPERTY DAMAGE

| 86 Type/Owner | | Owner Address | | State Property? ☐ | Estimated Damage $ |
|---|---|---|---|---|---|

### WITNESSES

| Name | | Address | | Phone No |
|---|---|---|---|---|
| Name | | Address | | Phone No. |

### TRAFFIC VIOLATION(S)

| Name | SCOTTIE DALE PROFFITT | Charge(s) | 368H296 - FAILURE TO REDUCE SPEED |
|---|---|---|---|
| Name | | Address | |

| Officer Name | Officer Number | Department | ORI | Date of Report |
|---|---|---|---|---|
| TRP. M D WEAVER | 2841 | NC STATE HIGHWAY PATROL | NHP00 | 09/25/2021 |

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

23-C-03730-S2

8/2/2023 10:39 PM

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON, )
)
    Plaintiff, )
)
v. )
)
AUDI OF AMERICA, LLC; )
VOLKSWAGEN )
GROUP OF AMERICA, INC. D/B/A AUDI )
OF AMERICA, INC.; AUDI AG; )
VOLKSWAGEN )
AG; AND ASBURY AUTOMOTIVE )
GROUP ,INC., )
)
    Defendants.

Civil Action File No.:
23-C-03730-S2

## DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Volkswagen Group of America, Inc., incorrectly named as Volkswagen Group of America D/B/A Audi of America, Inc. (hereinafter "VWGoA"), as its answer to Plaintiff's Complaint, states and alleges as follows:

## INTRODUCTION

1.    This is a civil tort action seeking recovery for personal injuries suffered by Douglas Grant Morton ("Douglas Morton") arising from a motor vehicle collision that occurred on September 25, 2021, in Marshall, North Carolina. On that day, Scottie Dale Proffitt drove a 1999 Dodge Ram truck into the back of a 2020 Audi A6 (the "Subject Vehicle") being driven by Douglas Morton. The driver seat occupant restraint system of the Subject Vehicle failed to contain and protect Mr. Morton — in particular, the driver seat head restraint broke and failed in the incident, proximately causing him to suffer a catastrophic spinal cord injury that has left him permanently paralyzed.

**ANSWER: VWGoA admits that Plaintiff asserts a personal injury action for alleged injuries arising out of a motor vehicle collision involving a 2020 Audi A6. VWGoA is without information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 1 and therefore denies same.**

2.      Plaintiff reserves the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault or that any presently unnamed entity is believed to be at fault after further facts are shown in discovery.

**ANSWER: The allegations in Paragraph 2 relate to legal and/or procedural reservations to which no response is required. To the extent a response is required, VWGoA denies those allegations.**

## II. PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS

3.      Plaintiff Douglas Morton ("Plaintiff" or "Mr. Morton" herein) is a resident of the State of California. By filing this action, he avails himself of this Court's jurisdiction.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 3 and therefore denies same.**

4.      Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. (hereinafter "Audi, Inc." when separately referenced) is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in Herndon, Virginia. At all relevant times, Audi, Inc. (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, Inc. knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, Inc. also maintains a registered agent in this State — Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, where Audi, Inc. may be served with legal process in this case. At all relevant times, Audi, Inc. promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, maintains a registered agent to transact business in this State and County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, Inc.

**ANSWER: VWGoA admits that it is a New Jersey corporation with its principal place of business in Herndon, Virginia and that it is authorized to do business in the state of Georgia. VWGoA admits that it presently markets, promotes, advertises, and sells**

2

**Volkswagen products at wholesale to authorized dealers in the State of Georgia and the United States. VWGoA also admits that its registered agent for service of process in Georgia is located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. VWGoA denies the remaining allegations contained in Paragraph 4.**

5.      Personal Jurisdiction over Audi, Inc.: Georgia's Long-Arm Statute. Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Audi, Inc. also maintains a registered agent to transact business in this State and County. Under Georgia law, a foreign corporation that is authorized to transact business in Georgia is a resident of this State and subject to direct personal jurisdiction in this State.' Thus, this Court has direct personal jurisdiction over Defendant Audi, Inc. as a resident of this State in addition to long-arm personal jurisdiction over Audi, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER: The allegations in Paragraph 5 call for a legal conclusion regarding the application of Georgia's long-arm statute to which no response is required. To the extent a response is required, VWGoA denies those allegations. VWGoA admits that it presently markets, promotes, advertises, and sells Volkswagen products at wholesale to authorized dealers in Georgia and the United States. VWGoA also admits that its registered agent for service of process in Georgia is located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. VWGoA denies the remaining allegations in Paragraph 5.**

6.      Personal Jurisdiction over Audi, Inc.: Due Process. Audi, Inc. (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, it maintains a registered agent to transact

3

business in this State and County, and there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, Inc.'s actions in marketing and selling its vehicles to locations throughout Georgia and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being hailed into Court here. In short, Audi, Inc. has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi, Inc. in this Court comports with due process.

**ANSWER: The allegations in Paragraph 6 call for a legal conclusion regarding personal jurisdiction to which no response is required. To the extent a response is required, VWGoA denies those allegations. VWGoA admits that its registered agent for service of process in Georgia is located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, that there are independently-owned Audi dealerships and service centers in Georgia, and that VWGoA derives revenue from the sale of motor vehicles within Georgia. VWGoA denies the remaining allegations in Paragraph 6.**

7.      Upon information and belief; Defendant Audi of America, LLC (hereinafter "Audi, LLC" when separately referenced) is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Herndon, Virginia. At all relevant times, Audi, LLC (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at a authorized Audi dealership in Georgia. Audi, LLC knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, LLC may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808. At all relevant times, Audi, LLC promoted via television, interne, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, LLC.

**ANSWER: The allegations in Paragraph 7 call for a legal conclusion regarding personal jurisdiction to which no response is required. To the extent a response is required,**

VWGoA denies those allegations. VWGoA admits that its registered agent for service of process in Georgia is located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, that there are independently-owned Audi dealerships and service centers in Georgia, and that VWGoA derives revenue from the sale of motor vehicles within Georgia. VWGoA denies the remaining allegations in Paragraph 7.

8.     Personal Jurisdiction over Audi, LLC: Georgia's Long-Arm Statute. Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi, LLC under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER: The allegations in Paragraph 8 call for a legal conclusion regarding personal jurisdiction to which no response is required. To the extent a response is required, VWGoA denies those allegations. VWGoA admits that its registered agent for service of process in Georgia is located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, that there are independently-owned Audi dealerships and service centers in Georgia, and that VWGoA derives revenue from the sale of motor vehicles within Georgia. VWGoA denies the remaining allegations in Paragraph 8.**

9.     Personal Jurisdiction over Audi, LLC: Due Process. Audi, LLC (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where

the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, LLC's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, Audi, LLC has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi, LLC in this Court comports with due process.

**ANSWER: Paragraph 9 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. Further, the allegations in Paragraph 9 call for a legal conclusion to which no response is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 9.**

10.     Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Upon information and belief, Audi AG is a wholly-owned subsidiary of Defendant Volkswagen AG, and Audi AG is a sister company with its U.S. distributor, Defendant Audi, Inc. At all relevant times, Audi AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Audi AG may be served with process by having a German-translated copy of this Complaint served upon Audi AG at the Germany Federal Central Authority through the channels authorized by the Hague Convention. At all relevant times, Audi AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi AG.

**ANSWER: Paragraph 10 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 10.**

11.     Personal Jurisdiction over Audi AG: Georgia's Long-Arm Statute. Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission

in Georgia. Namely, Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER: Paragraph 11 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 11.**

12.     Personal Jurisdiction over Audi AG: Due Process. Audi AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, Audi AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi AG in this Court comports with due process based upon the contacts detailed above and those additional contacts detailed below:

a.     Audi AG exercises direct control over the marketing activities of the numerous authorized Audi dealers in Georgia — including specifically the authorized Audi dealer where the Subject Vehicle was first shipped a purchased by a consumer (Plaintiff in Georgia)

b.     Those authorized Audi dealers in Georgia are only allowed to use the Audi trademarked name, trademarked Audi emblem, and advertise and sell Audi vehicles with the express permission of Audi AG, and by following Audi AG's specific rules for how Audi vehicles can and cannot be marketed

c.     Audi AG has registered and owns numerous "Audi" trademarks with the U.S. Patent and Trademark Office

7

d.       Audi AG works directly with its sister company Audi Inc. (which maintains a registered agent in Georgia) to distribute hundreds of thousands of Audi vehicles all over the United States, and specifically in Georgia

e.       Audi AG and Audi Inc. regularly refer to themselves collectively as "Audi" and have represented that Audi AG is Audi Inc.'s "parent company." In fact, Audi AG has admitted that because the purpose of Audi Inc. is to sell Audi-brand vehicles, there is an economic benefit for Audi AG if Audi Inc.'s operations are successful.

f.       In 2019, over 224,000 Audi vehicles were shipped to the U.S., and in 2020 (the year the Subject Vehicle was first sold by an authorized Audi dealer in Georgia to Plaintiff), over 186,000 Audi vehicles were shipped to the U.S.

g.       Audi AG describes the U.S. as a "core market" for its vehicles and actively monitors and forecasts business and market trends in the U.S., including impacts on its authorized Audi dealers

h.       Audi AG actively participates in U.S. rulemaking for vehicle safety standards, including making direct requests to the National Highway Traffic Safety Administration for exceptions

i.       Audi AG on its own and collectively with Audi Inc. has spent millions of dollars and expended significant effort in advertising, promoting, and developing the Audi trademarks throughout the world—including the U.S. and Georgia specifically

j.       Audi AG's revenue in 2020 (the year the Subject Vehicle was first sold to a consumer by and through an authorized Audi dealer in Georgia) was approximately $55 Billion.

**ANSWER: Paragraph 12 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 12.**

13.       Defendant Volkswagen AG (hereinafter "VW AG" when separately referenced) is a German corporation with its principal place of business in Wolfsburg, Germany. Upon information and belief, VW AG is the parent company of Defendants Audi AG and Audi Inc., and exercises control over the business activities of the two entities. At all relevant times, VW AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at a authorized Audi dealership in Georgia. VW AG knew at all relevant

times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant VW AG may be served with process by having a German-translated copy of this Complaint served upon VW AG at the Germany Federal Central Authority through the channels authorized by the Hague Convention. At all relevant times, VW AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because VW AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to VW AG.

**ANSWER**: **Paragraph 13 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 13.**

14.     Personal Jurisdiction over VW AG: Georgia's Long-Arm Statute. VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over VW AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

**ANSWER**: **Paragraph 14 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 14.**

15.     Personal Jurisdiction over VW AG: Due Process. VW AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). VW AG' s actions in marketing

and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being hailed into Court here. In short, VW AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over VW AG in this Court comports with due process. Hereinafter, Defendants Audi, LLC, Audi, Inc., Audi AG, and VW AG shall be collectively referred to as "the Audi Defendants" or "Audi."

**ANSWER: Paragraph 15 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 15.**

16. Defendant Asbury Automotive Group, Inc. ("Asbury") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Duluth, Georgia.' Upon information and belief, at all relevant times, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, was and is in the business of maintaining, repairing, inspecting, servicing, marketing, promoting, advertising, assembling, distributing, leasing, and/or selling motor vehicles, including the Subject Vehicle that was first sold to Plaintiff at Asbury's authorized Audi dealer in Georgia (referred to as "Audi North Atlanta") and that performed service, repair and/or maintenance on the Subject Vehicle numerous times before the subject incident. Defendant Asbury transacts business in the State of Georgia, derives substantial revenue from business in this State, maintains its principal place of business in this state, and maintains a registered agent to transact business in this State. Defendant Asbury may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Because Defendant Asbury transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from business in this State, maintains its principal place of business in Gwinnett County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Defendant Asbury.

**ANSWER: Paragraph 16 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 16.**

17. Personal Jurisdiction over Defendant Asbury. Because Defendant Asbury actively maintains its principal place of business in the State of Georgia (and specifically in Gwinnett County) and maintains a registered agent to transact business in this State, there can be no dispute that this Court may properly exercise personal jurisdiction over Defendant Asbury.

**ANSWER: Paragraph 17 contains no allegations directed toward VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations contained in Paragraph 17.**

18. Jurisdiction and venue are not proper in any United States District Court because complete diversity of citizenship of the parties is lacking, there is no federal question giving rise to these claims, and pursuant to U.S.C. § 1441(b)(2) the "resident defendant" exception applies as Defendant Asbury is headquartered in Georgia and, thus, a resident of Georgia.

**ANSWER: Denied.**

19. This is an action related to tortious acts or omissions committed in and producing injury in the State of North Carolina. Therefore, the procedural and remedial laws of Georgia and the substantive laws of North Carolina that do not contravene Georgia public policy apply to the claims asserted herein.

**ANSWER: The allegations of Paragraph 19 call for a legal conclusion to which no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegation in Paragraph 19.**

20. Venue is proper in this County because Defendants Asbury and Audi, Inc. maintain a registered agent for service of process in Gwinnett County. Further, venue is proper in this County as to Defendants Audi, LLC, Audi AG, and VW AG because they are joint tortfeasors with the Defendants Asbury and Audi, Inc., and where defendants reside in different counties, venue may be maintained in any county in which one of the defendants resides.

**ANSWER: Denied.**

### III. OPERATIVE FACTS

*A. The Subject Motor Vehicle Collision*

21. The motor vehicle collision giving rise to this action occurred on September 25, 2021 at approximately 1:20 p.m. on U.S. Highway 25 in Marshall, North Carolina. At that time, Douglas Morton was travelling northbound on U.S. 25 and stopped for traffic. He was at all relevant times properly seat belted and acting prudently and with reasonable care.

**ANSWER: VWGoA admits that, based on the Crash Report attached hereto as Exhibit A, the motor vehicle collision giving rise to this action occurred on September 25, 2021 at approximately 1:20 PM on U.S. Highway 25 in Marshall, North Carolina. VWGoA is without information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 21 and therefore denies same.**

22.     Scottie Dale Proffitt was traveling northbound on U.S. 25 behind Mr. Morton. Mr. Proffitt failed to maintain a proper lookout and, as a result, drove his 1999 Dodge Ram truck into the back of the Subject Vehicle Mr. Morton was operating.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 22 and therefore denies same.**

23.     Though Mr. Morton was properly wearing a seatbelt, the 2020 Audi A6's driver occupant restraint system failed to properly contain Mr. Morton's body during the collision, and in particular, the driver seat head restraint broke, allowing Mr. Morton's head and body to move back and over the seat. When an ambulance arrived at the scene, Mr. Morton alerted paramedics that he could not feel his legs.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 23 and therefore denies same.**

24.     Mr. Morton was transported to Mission Memorial Hospital and immediately presented to the emergency room. Mr. Morton sustained numerous injuries, including a catastrophic thoracic spinal fracture and complete paraplegic spinal paralysis.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 24 and therefore denies same.**

25.     Mr. Morton remained at Mission Memorial Hospital for 35 days.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 25 and therefore denies same.**

26.     Mr. Morton was thereafter admitted to CarePartners Rehabilitation Hospital, where he underwent significant rehabilitation for approximately four months due to the severe nature of his spinal injuries and complications caused by extensive infections and ulcerations.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 26 and therefore denies same.**

27.    Despite his extensive efforts towards rehabilitation, Mr. Morton is permanently paralyzed from his chest down.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 27 and therefore denies same.**

28.    Mr. Morton's severe and catastrophic injuries were proximately caused by the Subject Vehicle's defective driver seat occupant restraint system and head restraint, which failed to provide adequate neck, head and body containment and protection, allowing Mr. Morton's head and body to move back and over the driver seat — injurious contact which should not and would not have occurred if the Subject Vehicle had adequately contained Mr. Morton's body during the collision.

**ANSWER: Denied.**

*B. The Subject 2020 Audi A6*

29.    The 2020 Audi A6, VIN No. WAUE8AF26LN002921, a four-door sedan, was designed, manufactured, assembled, imported and/or distributed, and placed into the stream of commerce as a complete product by the Audi Defendants and Defendant Asbury.

**ANSWER: Denied.**

30.    The Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021.

**ANSWER: Upon information and belief, VWGoA admits that the Subject Vehicle was purchased from Audi North Atlanta located in Roswell, Georgia and that the Subject Vehicle was serviced at Audi North Atlanta. VWGoA is without sufficient knowledge or information to admit or deny the remaining allegations contained in Paragraph 30 and therefore denies same.**

31.     As with any of its vehicles, the Audi Defendants, as the designer and manufacturer of the Subject Vehicle, designed and obtained components for the Subject Vehicle from a variety of suppliers which the Audi Defendants selected and contracted with to provide parts or components made to the Audi Defendants' design and/or manufacturing specifications. Those parts and components were then assembled, and the completed vehicle was manufactured and sold by the Audi Defendants and Defendant Asbury, as an Audi product sold under its Audi brand.

**ANSWER: VWGoA admits that a variety of suppliers contribute to the parts used to manufacture certain Audi vehicles. VWGoA lacks knowledge or information sufficient to from a belief about the truth of the remaining allegations contained in Paragraph 31 and therefore denies same.**

32.     The Audi Defendants, as the designer and manufacturer of the completed vehicle, and Defendant Asbury, as the seller and distributor of the completed vehicle, placed it into the stream of commerce and are both legally responsible for failures of components, whether designed by Audi or obtained from component suppliers, that make up the completed vehicle.

**ANSWER: Denied.**

33.     Upon information and belief, the Subject Vehicle had not been materially altered or modified from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by the Audi Defendants. In particular, to Plaintiff's knowledge, no one modified or altered in any way the driver seat occupant restraint system, including the driver seat head restraint, or assembly of any of its component or sub-component parts — which parts and components were specified, obtained, assembled and placed into the completed vehicle by the Audi Defendants, and as designed and manufactured by Audi and its employees and engineers.

**ANSWER: VWGoA is without information or knowledge sufficient to admit or deny the allegations in Paragraph 33 and therefore denies same.**

34.     Plaintiff alleges this case against the Audi Defendants and Defendant Asbury as a "crashworthiness" case, i.e., that the Subject Vehicle and in particular its front driver seat occupant restraint system was not adequately designed, manufactured, marketed, and sold in a condition to provide sufficient or "crashworthy" protection, containment, and restraint to Douglas Morton in what was a foreseeable level of crash forces.

**ANSWER: Denied.**

35.     It was, at all relevant times, known to the Audi Defendants that Audi vehicles needed to be crashworthy during use on the public highways and that it is essential that all component parts of the vehicle perform without failure so that occupants involved in collisions are properly protected from grievous injury.

**ANSWER: Denied.**

36.     Further, at all relevant times, the Audi Defendants knew that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint systems and fully functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

**ANSWER: Denied.**

37.     Despite this knowledge, the Audi Defendants either designed the Subject Vehicle in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured the Subject Vehicle such that its occupant restraint system and head restraints were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

**ANSWER: Denied.**

38.     As a result of the negligence, breaches of warranty, acts, and/or omissions of the Defendants and the defective and/or negligently designed vehicle described herein, the Audi A6 failed to provide appropriate and necessary crash protection to Douglas Morton in his driver seat position even though he was property seated in the driver seat and properly wearing the seat belt system provided in the vehicle by the Audi Defendants and Defendant Asbury. Specifically, the Subject Vehicle's driver seat occupant restraint system and head restraint failed to provide reasonably necessary containment and protection in this incident.

**ANSWER: Denied.**

39.     A rear collision producing rear impact forces such as this one was at all times foreseeable to Defendants. Manufacturers and retailers of vehicles like the Audi Defendants and Defendant Asbury know that their products will encounter crashes, and they have a duty to take reasonable steps to include adequate safety systems to restrain, contain, and protect vehicle occupants.

**ANSWER: Denied.**

40.     In short, while Douglas Morton may have suffered some injuries from the crash itself, his injuries were more severe, exacerbated and lead to permanent paralysis as a proximate result of the defective, negligently designed, and inadequately crashworthy condition of the driver seat occupant restraint system and driver head restraint which was designed, manufactured, and placed into the stream of commerce by the Audi Defendants and Defendant Asbury.

**ANSWER: Denied.**

41.     As outlined below, all Defendants are joint tortfeasors for the Douglas Morton's injuries and damages in an amount to be determined by the enlightened conscience of the jury, but under any scenario, in an amount exponentially in excess of the minimum amount necessary to confer jurisdiction in this Court.

**ANSWER: Denied.**

## IV. LEGAL CLAIMS

### COUNT ONE
### (The Audi Defendants—Negligence and/or Strict Products Liability)

42.     Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

**ANSWER: VWGoA incorporates its responses to Paragraphs 1-41 of the Complaint as it stated fully herein.**

43.     As a product designer and manufacturer of consumer vehicles, Audi owed and owes legal duties to Plaintiff and the public in general to design and manufacture vehicles that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

**ANSWER: VWGoA denies that it designed or manufactured vehicles at any relevant times. The allegations in Paragraph 43 call for a legal conclusion to which no response from VWGoA is required. To the extent a response is required, VWGoA denies the remaining allegations in Paragraph 43.**

44.     When Audi designed and/or manufactured the Subject Vehicle, it knew, or should have known through its own testing, studies, and other real-world incidents, that the front driver seat and occupant restraint system failed to contain and protect occupants from injury in rear-end collisions.

**ANSWER: Denied.**

45.     Audi failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front driver seat of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Audi chose a front-seat design, and/or manufactured a front seat, that lacks adequate crashworthiness in foreseeable collisions.

**ANSWER: Denied.**

46.     When it designed the 2020 Audi A6, the Audi Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Audi designed and/or

manufactured the 2020 Audi A6 with defective front seats so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The A6's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

**ANSWER: Denied.**

47.     Plaintiff's claims are based on characteristics of the 2020 Audi A6 that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the A6 that Plaintiff's claims are based on as inherent characteristics of the A6 that cannot be eliminated without substantially compromising its usefulness or desirability.

**ANSWER: Denied.**

48.     As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle by the Audi Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

**ANSWER: Denied.**

49.     The Audi Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Audi breached its duty by failing to warn of those dangers.

**ANSWER: Denied.**

50.     The Audi Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Audi never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

**ANSWER: Denied.**

51.     The risks to which Audi exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

**ANSWER: Denied.**

52.     Audi's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

**ANSWER: Denied.**

53.     The Audi Defendants are liable for the Subject Vehicle's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**ANSWER: Denied.**

## COUNT TWO
## (Defendant Asbury—Negligence)

54.     Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

**ANSWER: VWGoA incorporates its responses to Paragraphs 1-53 of the Complaint as it stated fully herein.**

55.     Defendant Asbury operates as a dealer of motor vehicles, including but not limited to motor vehicles designed, manufactured, assembled, produced, advertised, sold, and supplied by the Audi Defendants.

**ANSWER: Paragraph 55 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 55.**

56.     Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, advertised, marketed, listed, and/or sold the subject Audi A6 that Douglas Morton was driving at the time of the subject incident. Specifically, the Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021

**ANSWER: Paragraph 56 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 56.**

57.     Defendant Asbury owed a legal duty to those occupying the vehicles that they advertised, promoted, warranted, sold, leased, maintained, inspected, serviced, and/or supplied to

the general public, including, but not limited to Mr. Morton, to advertise, promote, warrant, maintain, inspect, lease, sell, service, and supply such vehicles, in a reasonably safe and lawful manner.

**ANSWER: Paragraph 57 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 57.**

58.    When Defendant Asbury sold the Subject Vehicle and/or during any of the numerous subsequent inspections of the Subject Vehicle, it knew, or should have known through the exercise of ordinary care, that the front driver seat and occupant restraint system failed to contain and protect occupants from foreseeable injury in rear-end collisions.

**ANSWER: Paragraph 58 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 58.**

59.    Defendant Asbury failed to exercise ordinary care and breached its duties of care by selling and distributing the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision.

**ANSWER: Paragraph 59 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 59.**

60.    Defendant Asbury further failed to exercise ordinary care in that it negligently, grossly negligently, recklessly, willfully, and wantonly failed to warn of the unreasonably dangerous condition of the Subject Vehicle, when they knew or should have known that the Subject Vehicle contained those defects in the supplemental restraint system and seat identified and described in this Complaint that could result in serious injury or death of an occupant, and did in fact result in those serious, permanent, and catastrophic injuries to Mr. Morton complained of in this Action.

**ANSWER: Paragraph 60 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 60.**

61.     Pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8, Defendant Asbury also failed to exercise ordinary care and breached its duties of care by negligently inspecting the subject vehicle after the date of first sale and failing to identify the defects detailed above, and/or Defendant Asbury failed to exercise ordinary care and breached its duties of care by negligently performing maintenance or repairs that may have also contributed to the defects with the occupant restraint system as detailed above.

**ANSWER: Paragraph 61 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 61.**

62.     Defendant Asbury also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Defendant Asbury breached its duty by failing to warn of those dangers.

**ANSWER: Paragraph 62 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 62.**

63.     Defendant Asbury acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Defendant Asbury never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

**ANSWER: Paragraph 63 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 63.**

64.     The risks to which Defendant Asbury exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge to a lay person like Mr. Morton who lacked the knowledge about vehicle restraint systems that the Audi Defendants and Defendant Asbury possessed.

**ANSWER: Paragraph 64 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 64.**

65. Defendant Asbury's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

**ANSWER: Paragraph 65 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 65.**

66. Further, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, conducted several subsequent service inspections of the Subject Vehicle after it was purchased from Defendant Asbury.

**ANSWER: Paragraph 66 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 66.**

67. Defendant Asbury owed Douglas Morton and the general public a duty to non-negligently service, inspect, maintain and/or repair the Subject Vehicle for dangerous conditions and inform or warn such consumers of foreseeable dangers, latent defects, and other dangerous conditions that they knew, or should have known of, and communicate adequate warnings about those dangers to foreseeable users of the Subject Vehicle.

**ANSWER: Paragraph 67 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 67.**

68. Yet, Defendant Asbury breached its duties of care by negligently failing to properly inspect the Subject Vehicle and by negligently failing to warn of the dangers, latent defects, and other dangerous conditions described herein.

**ANSWER: Paragraph 68 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 68.**

69. Upon information and belief, Plaintiff claims and alleges herein that, by and through its negligent acts and/or omission, Defendants Asbury's negligent failure to properly inspect the Subject Vehicle and/or negligent failure to adequately warn consumers about the defects and/or dangerous conditions present in the same were a proximate cause of and/or contributing factor to Douglas Morton's severe injuries and all damages that are recoverable under

Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**ANSWER**: **Paragraph 69 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 69.**

**COUNT THREE**
**(Defendant Asbury — Breach of Express and Implied Warranties under North Carolina Law)**

70.     Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, in order to induce the purchase of the products which it sold, or marketed and sold, including the Audi A6 which is the subject of this litigation, advertised to the public the availability and safety of their products.

**ANSWER**: **Paragraph 70 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 70.**

71.     Through the use of such advertising, Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, for the benefit of ultimate consumers and users, including Mr. Morton, directed the attention of the public and particularly ultimate consumers and users, specifically including Mr. Morton, and others similarly situated, by means of express representations and warranties, to their vehicles by representing that the public and ultimate consumers and users, including Mr. Morton, could occupy and operate the vehicles and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by Defendant Asbury.

**ANSWER**: **Paragraph 71 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 71.**

72.     In occupying and operating the Subject Vehicle, Mr. Morton relied upon the skill and judgment of Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and

upon the express warranty of Defendant Asbury, created under Georgia and North Carolina Law, and which is described above.

**ANSWER: Paragraph 72 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 72.**

73.     The Subject Vehicle was defective in design and/or manufacture, and such defect breached the express and implied warranties given by Defendant Asbury, by and through their officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom they are legally responsible.

**ANSWER: Paragraph 73 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 73.**

74.     As a direct and proximate result of the breach of express and implied warranties given for the benefit of ultimate consumers and users, including Mr. Morton, by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, as described previously, Mr. Morton suffered devastating and permanent injuries, which injuries have been described in this Amended Complaint.

**ANSWER: Paragraph 74 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 74.**

75.     As a direct and proximate result of the breach of implied warranties by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and which warranties specifically include the breach of the implied warranty of merchantability and breach of implied warranty of fitness for particular purpose, Mr. Morton received those injuries and damages as are previously described in this Amended Complaint.

**ANSWER: Paragraph 75 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 75.**

76. Such breaches of warranties include the failure by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, to provide necessary and proper warnings.

**ANSWER: Paragraph 76 contains no allegations directed towards VWGoA and therefore no response from VWGoA is required. To the extent a response is required, VWGoA denies the allegations in Paragraph 76.**

77. Such warranties were in full force and effect on the date of the subject wreck.

**ANSWER: Denied.**

## V. DAMAGES SOUGHT BY PLAINTIFF

78. Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

**ANSWER: VWGoA incorporates its responses to Paragraphs 1-77 of the Complaint as it stated fully herein.**

79. Douglas Grant Morton seeks recovery of damages from Defendants for past, present, and future medical bills and expenses, life care needs, and other necessary expenses incurred that are incident-related, in amounts to be shown by the evidence at trial.

**ANSWER: VWGoA denies that any act or omission of VWGoA caused any injury to Plaintiff. Accordingly, VWGoA denies the allegations contained in Paragraph 79.**

80. Douglas Grant Morton seeks damages from all Defendants for all past, present, and future pain and suffering resulting from his incident-related injuries, in an amount to be determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from his incident-related injuries.

**ANSWER: VWGoA denies that any act or omission of VWGoA caused any injury to Plaintiff. Accordingly, VWGoA denies the allegations contained in Paragraph 80.**

81. Douglas Grant Morton seeks recovery from all Defendants for any diminished future income and earning capacity proximately caused by the subject incident and the defective condition of the Subject Vehicle, as to be shown more fully by the evidence at trial.

**ANSWER: VWGoA denies that any act or omission of VWGoA caused any injury to Plaintiff. Accordingly, VWGoA denies the allegations contained in Paragraph 81.**

82.     Douglas Grant Morton seeks a recovery from all Defendants for the loss of full enjoyment of life and disfigurement he has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury.

**ANSWER: VWGoA denies that any act or omission of VWGoA caused any injury to Plaintiff. Accordingly, VWGoA denies the allegations contained in Paragraph 82.**

## VI. PRAYER FOR RELIEF

Responding to the WHEREFORE paragraph following Paragraph 82 of Plaintiff's Complaint, including sub-parts (a)-(e), VWGoA denies Plaintiff is entitled to any of the relief set forth in this paragraph. VWGoA denies all allegations contained in Plaintiff's Complaint that are not admitted or denied, or neither admitted or denied, based on a lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

## AFFIRMATIVE DEFENSES

At the time of the preparation of this Answer, VWGoA is unaware of all the facts and circumstances giving rise to the claims set forth in the Complaint. VWGoA reserves the right to assert additional affirmative defenses if discovery shows such defenses are applicable, or to rely on any defenses that may arise during discovery which VWGoA is not required to list as an affirmative defense.

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred, in whole or in part, because VWGoA has not breached any obligation or duty owed to Plaintiff.

3.     This Court lacks jurisdiction due to the presence of a mandatory and binding arbitration agreement.

4.      VWGoA is not a proper defendant to this action.

5.      Any damages sustained by Plaintiff were proximately caused by the intervening and superseding acts of persons or entities other than VWGoA, over whom VWGoA had no control or duty to control. ***See* North Carolina Highway Patrol Report, attached hereto has Exhibit A.**

6.      VWGoA has no contractual, statutory, or other duty or obligation to Plaintiff.

7.      VWGoA did not proximately cause Plaintiff's alleged injuries.

8.      Plaintiff's alleged injuries were not foreseeable.

9.      The current venue for this matter is improper, or alternatively, more convenient in another forum. VWGoA reserves the right to move to this Court to dismiss this action on the basis of forum *non conveniens* given that the accident giving rise to this action occurred in North Carolina and all the eyewitnesses reside outside of Georgia. *See* Exhibit A.

10.     Plaintiff has failed to state a claim for strict liability upon which relief can be granted.

11.     VWGoA avers that the subject vehicle may have been substantially altered and/or modified while not in VWGoA's control and before it was used by Plaintiff.

12.     The accident was caused by danger of which Plaintiff was or should have been reasonably aware.

13.     Plaintiff's claims may be barred by the doctrine of spoliation and/or the failure to preserve critical evidence.

14.      VWGoA may show that the subject vehicle was not used for its intended purpose at the time of the accident.

15.     Plaintiff's alleged damages, if any, may be barred, in whole or in part, by Plaintiff's failure to mitigate damages.

16.     Plaintiff's alleged damages, if any, are barred by the doctrine of set off.

17.     Upon information and belief, each alleged item of the Plaintiff's economic loss, or with reasonable certainty will replaced or indemnified, in whole or in part by collateral sources.

18.     Plaintiff's claims are barred in whole, or in part, because of the lack of a feasible, practical alternative design at the time the subject vehicle was designed, manufactured, sold, and distributed.

19.     Plaintiff's damages, if any, are barred by or reduced by the doctrine of avoidable consequences.

20.     VWGoA has complied with all provisions of the statutes cited in the Complaint.

21.     VWGoA has complied with all of its contractual obligations to Plaintiff.

22.     VWGoA has acted in good faith at all times with respect to the allegations in the Complaint.

23.     Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel or waiver.

24.     Plaintiff may have failed to join indispensable parties to this action.

25.     Any judgment rendered against VWGoA in this action should be limited to the fault, if any, attributable to this VWGoA although VWGoA denies it is responsible for any damages alleged by Plaintiff. VWGoA is entitled to apportion its fault, if any, to the fault of all other persons who are or could be responsible for any of Plaintiff's damages regardless of whether such persons are parties to this action, and regardless of whether it is ultimately shown that Plaintiff

was negligent. VWGoA right to apportionment applies regardless of whether Plaintiff's claims sound in negligence or in strict liability.

26. Plaintiff's claims should be dismissed, reduced, offset, or barred in accordance with any and all applicable principles of comparative negligence.

27. Plaintiff's claims and/or alleged damages are barred and/or limited by the provisions of the tort reform acts and/or statutes enacted in the State of Georgia

28. The product which is the subject of this action met or exceeded the state of the art at the time it was designed and manufactured.

29. The Plaintiff's claims are barred in whole or in part by the lack of defect, as the subject Audi A6 was properly designed and manufactured in accordance with the applicable standard of care and in compliance with all standards for design, inspection, testing, manufacturing, labeling, warning or instructions for use in and applicable to the subject vehicle.

30. The subject Audi A6 met or exceeded all Federal Motor Vehicle Safety Standards in effect at the time of its sale. The act of exceeding the appropriate Federal Motor Vehicle Safety Standard should in and of itself be prima facie evidence of the non-defectiveness of the vehicle in question. Further, Plaintiff has not identified a safer alternative design which is feasible from both a technical and economic standpoint that does not present additional risks of harm not seen in the incorporated components about which Plaintiff is complaining of.

31. All or a portion of the Plaintiff's claims are preempted by applicable federal and/or state statutes, rules, standards or regulations, including but not limited to the Federal Motor Vehicle Safety Act.

32. This action is or may be subject to an arbitration clause, which requires binding arbitration of this matter.

33.     VWGoA denies it is liable for exemplary/punitive damages. However, in the event any such damages are awarded against VWGoA, then, in the alternative, without any admission of misconduct or liability, the imposition of exemplary/punitive damages on these facts would be denial of the due process clause which prohibits the imposition of grossly excessive or arbitration punishments on a tortfeasor. *State Farm Mut. Auto. Insurance Co. v. Campbell*, 538 U.S. 408, 426, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003); *Cooper Indus. V. Leatherman Tool Group, Inc*., 532 U.S. 424, 434-36, 149 L. Ed. 2d 674, 121 S. Ct. 1678 (2001); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996).

34.     There is no basis in law or fact for the imposition of punitive damages with respect to Plaintiff's claims against VWGoA. There is no clear and convincing evidence Defendant was guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to the consequences and, accordingly, Plaintiff is not entitled to recover punitive damages in any sum whatsoever.

## DEMAND FOR JURY TRIAL

VWGoA specifically requests and demands a trial by jury of all counts against it in Plaintiff's Complaint.

WHEREFORE, having fully addressed the allegations in Plaintiff's Complaint, VWGoA prays the Court:

1.  Dismiss Plaintiff's Complaint with prejudice; and

2.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of August, 2023.

**SHOOK HARDY & BACON, LLP**

*/s/ Colin K. Kelly*

_____

Colin K. Kelly
Georgia Bar No. 781072
ckelly@shb.com
Caroline M. Gieser
Georgia Bar No. 167916
cgieser@shb.com
Timia A. Skelton
Georgia Bar No. 667099
tskelton@shb.com
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591
(470) 867-6012 (direct CKK)
(470) 867-6013 (direct CMG)

***Attorneys for Volkswagen Group of American, Inc.***

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN | ) | Civil Action File No.: |
| GROUP OF AMERICA, INC. D/B/A AUDI | ) | 23-C-03730-S2 |
| OF AMERICA, INC.; AUDI AG; | ) | |
| VOLKSWAGEN | ) | |
| AG; AND ASBURY AUTOMOTIVE | ) | |
| GROUP ,INC., | ) | |

Defendants.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served all counsel of record in the foregoing matter with a copy of **VOLKSWAGEN GROUP OF AMERICA, INC.'S ANSWER AND AFFIRMATIVE DEFENSES** to Plaintiff's Complaint via Odyssey E-File GA, addressed as follows:

Cale Conley
Davis Popper
Alex S. Edmonds
**Conley Griggs Partin LLP**
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, GA 30327
Telephone: (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Attorneys for Plaintiff*

Noah B. Abrams
**Abrams & Abrams, P.A.**
1526 Glenwood Avenue
Raleigh, NC 27608

31

Telephone: (919) 755-9166
nabrams@abramslawfirm.com

*Attorneys for Plaintiff*

Winston S. Kirby
Andrew Avram
**Edwards Kirby, LLP.**
3201 Glenwood Avenue
Suite 100
Raleigh, NC 27612
Telephone: (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

*Attorneys for Plaintiff*

Dated this 2nd day of August, 2023.

*/s/ Colin K. Kelly*

_____
Colin K. Kelly

***Attorneys for Volkswagen Group of American, Inc.***

# EXHIBIT A

This report has been redacted to prevent the disclosure of personally identifiable information.

DMV-349 (Rev. 1/09)

THIS REPORT IS FOR THE USE OF THE DIVISION OF MOTOR VEHICLES. THE DATA IS COLLECTED FOR STATISTICAL ANALYSIS AND SUBSEQUENT HIGHWAY SAFETY PROGRAMMING. DETERMINATIONS OF "FAULT" ARE THE RESPONSIBILITY OF INSURERS OR OF THE STATE'S COURTS.

**2** No. of Units Involved
Form **1** of **1**

☐ Supplemental Report  ☐ Non-Reportable

*Do not write in these spaces*

Date Received by DMV

| Date | County | Time | Local Use/Patrol Area |
|---|---|---|---|
| 09/25/2021 | MADISON | 13:20 | 210925057GA - 07 |

**LOCATION**

33 Relation to Roadway Surface **1**  Crash Occurred  ☐ In  ☒ Near

MARSHALL Municipality  or  00.30 Miles  ☐ N ☐ S ☒ E ☐ W  outside municipality

on US 25  Highway Number, or Highway, Street (if ramp or service road, indicate on line)  (R.R. Crossing #)  00.10 Miles ☐ ft.  ☐ N ☒ S ☐ E ☐ W

☐ Ramp or Service Road

At ☐  SR 1394  Use Highway Number, Street Name or Adjacent County or State Line  ☒ N ☐ S ☐ E ☐ W  toward  SR 1395  Use Highway Number, Street Name or Adjacent County or State Line

From ☒

Latitude
Longitude
Altitude

---

UNIT # **1**  ☒ VEHICLE  ☐ PEDESTRIAN  ☐ HIT & RUN  ☐ COMMERCIAL VEHICLE

Driver  SCOTTIE  DALE  PROFFITT
First  Middle  Last

Address 6936 US 2570 HWY

City MARSHALL  State NC  Zip 28753-9302

Same Address on Driver's License?  ☒ Yes  ☐ No  H Driver's Phone Numbers (828) 206-4669

D.L.# REDACTED  ☒ CDL License  D.L. Class B  State NC

DOB REDACTED  34 Vision Obstruction 0  35 Physical Condition 1  36 D.L. Restrictions 0

37 Alcohol/Drugs Suspected 0  38 Alcohol/Drugs Test 0  39 Results (if known) 0  40 Vehicle Seizure (DWI) ☐

Owner SCOTTIE DALE PROFFITT  Same as Driver? ☐

Address 6936 US 2570 HWY  Same Address as Driver? ☐

City MARSHALL  State NC  Zip 28753-9302

Plate # TBY3595  Plate State NC  Plate Year 2022

VIN 3B7HF13Y5XG187590

Vehicle Make DODGE  Vehicle Year 1999  41 Vehicle Style (Type) 2  42 Vehicle Drivable ☐ Yes ☒ No

43 TAD FD-3  44 Estimated Damage $3,000.00

Insurance Company NATIONAL GENERAL INSURANCE CO.
Policy # 200238408613

---

UNIT # **2**  ☒ VEHICLE  ☐ PEDESTRIAN  ☐ HIT & RUN  ☐ OTHER

Driver  DOUGLAS  GRANT  MORTON
First  Middle  Last

Address 3062 N GREG CIR

City PALM SPRINGS  State CA  Zip 92262

Same Address on Driver's License?  ☐ Yes  ☐ No  H Driver's Phone Numbers

D.L.# REDACTED  ☐ CDL License  D.L. Class C  State CA

DOB REDACTED  34 Vision Obstruction 0  35 Physical Condition 0  36 D.L. Restrictions 0

37 Alcohol/Drugs Suspected 0  38 Alcohol/Drugs Test 0  39 Results (if known)  40 Vehicle Seizure (DWI) ☒

Owner LYNN LEE LOVE  Same as Driver? ☐

Address 2660 PEACHTREE RD NW APT 35D  Same Address as Driver? ☐

City ATLANTA  State GA  Zip 30305

Plate # CPM3354  Plate State GA  Plate Year 2022

VIN WAUE8AF26LN002921

Vehicle Make AUDI  Vehicle Year 2020  41 Vehicle Style (Type) 1  42 Vehicle Drivable ☐ Yes ☒ No

43 TAD BD-4  44 Estimated Damage $45,000.00

Insurance Company PROGRESSIVE
Policy # 911826223

---

**20 COMMERCIAL VEHICLE: Cargo, Carrier Name, Address, Source**

Unit  45 Cargo Body Type  ☐ Same Address as owner?

Source:
☐ Truck
☐ Shipping
☐ Driver

US DOT#  ICC#  Axles on Vehicle Including Trailers
State  State #  IFTA#
FEI#  Fleet #  Gross Vehicular Weight Rating

Carrier Identification Numbers, GVWR, Axles

---

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 1 | 1 | 1 | Unit 1-Drv 1, Ped 1, etc. see above | W | M | 2 | 1 | 0 | 2 | 1 | 5 | see above | Veh# 1 Towed To/By: HAYNIES TOWING / HAYNIES TOWING |
| B | 2 | 1 | 1 | Unit 2-Drv 2, Ped 2, etc. see above | W | M | 2 | 1 | 0 | 2 | 1 | 2 | see above | Veh# 2 Towed To/By: HAYNIES TOWING / HAYNIES TOWING |
| C | 2 | 2 | 3 | REDACTED | W | M | 2 | 1 | 0 | 2 | 1 | 5 | | LYNN LEE LOVE 2660 PEACHTREE RD NW APT 35D, ATLANTA, GA 30305 |
| D | 2 | 2 | 4 | REDACTED | W | M | 2 | 1 | 0 | 2 | 1 | 5 | | BRUCE STEPHEN GELLY 411 N NEW RIVER DR APT 703, FORT LAUDERDALE, FL 33301 |
| E | | | | | | | | | | | | | | |
| F | | | | | | | | | | | | | | |
| G | | | | | | | | | | | | | | |
| H | | | | | | | | | | | | | | |

46 Name of EMS  B - MADISON COUNTY EMS
47 Injured Taken by EMS to  B - MISSION HOSPITAL, ASHEVILLE NC

46 Name of EMS
47 Injured Taken by EMS to

Case 1:24-cv-00022-MOC-WCM   Document 1-3   Filed 09/28/23   Page 179 of 568

Numbers in right margin: 8, 9, 10, 21, 11, 21, 12, 0, 13, 14, 8, 15, 16, 17, 0, 18, 19

Numbers in left margin: 1 1, 2 1, 3 1, 4 1, 5, 6 2, 7 1

This report has been redacted to prevent the disclosure of personally identifiable information.

Form 1 of 1

Local Use/Patrol Area

210925057GA - 07

| 48 POINTS OF INTIAL CONTACT (Write in Codes) | Unit # | 1 | 1,2,3 | VEHICLE INFO | Veh # | 1 | Veh # | 2 | ROADWAY INFO | | WORK ZONE RELATED | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Unit # | 2 | 14,15,16 | 60 Authorized Speed Limit | 45 | | 45 | | 69 Road Feature | 0 | 78 Work Zone Area | 5 |
| CRASH SEQUENCE (Unit Level) | Unit # | 1 | Unit # 2 | 61 Estimate of Original Traveling Speed | 45 | | 45 | | 70 Road Character | 7 | 79 Work Activity | |
| 49 Vehicle Maneuver/Action | | 4 | 1 | 62 Estimate of Speed at Impact | 40 | | 0 | | 71 Road Classification | 2 | 80 Work Area Marked | |
| 50 Non-Motorist Action | | | | 63 Tire Impressions Before Impact (ft.) | 46 | | 0 | | 72 Road Surface Type | 2 | 81 Crash Location | |
| 51 Non-Motorist Location Prior to Impact | | | | 64 Distance travelled After Impact (ft.) | 5 | | 5 | | 73 Road Configuration | 2 | TRAILER INFO. | |
| 52 Crash Sequence - First Event for this Unit | | 21 | 21 | 65 Emergency Vehicle Use | | | | | 74 Access Control | 3 | Unit # 1 | Unit # 2 |
| 53 Crash Sequence - Second Event | | | | 66 Post Crash Fire (if 'Yes' check block) | ☐ | | ☐ | | 75 Number of Lanes | 2 | 82 Trailer Type | 0 | 0 |
| 54 Crash Sequence - Third Event | | | | 67 School Bus - Contact Vehicle | ☐ | | ☐ | | 76 Traffic Control Type | 13 | 1st Trailer No. Axles | |
| 55 Crash Sequence - Fourth Event | | | | 68 School Bus - Noncontact Vehicle | ☐ | | ☐ | | 77 Traffic Control Oper | 1 | Length (feet) | |
| 56 Most Harmful Event for this Unit | | 21 | 21 | COMMERCIAL VEHICLE. Hazardous Material | | | | | | | 2nd Trailer No. Axles | |
| 57 Distance/Direction of Object Struck | | 0 | 0 | Involvement Haz Mat Placard | ☐ Yes | ☐ No | | Unit From Placard indicate | | | Width (inches) | |
| 58 Vehicle Underride/Override | | 3 | 3 | Hazardous Cargo Released | ☐ Yes | ☐ No | 4-digit placard number or name from diamond or box | 1-digit number from bottom of diamond | ◇ | | Length (feet) | |
| 59 Vehicle Defects | | 0 | 0 | (Does not include fuel from fuel tank) Carrying Haz Mat | ☐ Yes | ☐ No | | | | 83 Unit # Overwidth Trailer and Overwidth Mobilehome | Overwidth Permit | |

**84 DIAGRAM**



Indicate North

US25

3

23

3

| Unit # 1 was | ☒ Traveling | ☒ ☐ ☐ ☐ | on US 25 | Unit # 2 was | ☒ Traveling | ☒ ☐ ☐ ☐ | on US 25 |
|---|---|---|---|---|---|---|---|
| | ☐ Parked Facing | N S E W | | | ☐ Parked Facing | N S E W | |

**85 NARRATIVE** (include pertinent unusual aspects which are not listed elsewhere on the form)

VEHICLES 1 AND 2 WERE TRAVELING NORTH ON US25. VEHICLE 2 STOPPED FOR TRAFFIC. VEHICLE 1 FAILED TO REDUCE SPEED STRIKING VEHICLE 2. VEHICLES 1 AND 2 CAME TO REST ON US25.

**ADDITIONAL PROPERTY DAMAGE**

| 86 Type/ Owner | | Owner Address | | State Property? ☐ | Estimated Damage $ |
|---|---|---|---|---|---|

**WITNESSES**

| Name | | Address | | Phone No |
|---|---|---|---|---|
| Name | | Address | | Phone No. |

**TRAFFIC VIOLATION(S)**

| Name | SCOTTIE DALE PROFFITT | Charge(s) | 368H296 - FAILURE TO REDUCE SPEED |
|---|---|---|---|
| Name | | Address | |

| Officer Name | Officer Number | Department | ORI | Date of Report |
|---|---|---|---|---|
| TRP. M D WEAVER | 2841 | NC STATE HIGHWAY PATROL | NHP00 | 09/25/2021 |

Case 1:24-cv-00022-MOC-WCM   Document 1-3   Filed 09/28/23   Page 180 of 568

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/2/2023 10:55 PM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
AUDI OF AMERICA, LLC;　　　　　　)
VOLKSWAGEN　　　　　　　　　　　)
GROUP OF AMERICA, INC. D/B/A AUDI　)　　　Civil Action File No.:
OF AMERICA, INC.; AUDI AG;　　　　)　　　　23-C-03730-S2
VOLKSWAGEN　　　　　　　　　　　)
AG; AND ASBURY AUTOMOTIVE　　　)
GROUP ,INC.,　　　　　　　　　　　)

　　　　　Defendants.

## DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

Pursuant to O.C.G.A. § 9-10-31.1, Defendant Volkswagen Group of America, Inc., ("VWGoA") through its undersigned counsel of record, hereby moves to dismiss Plaintiff's Complaint for *forum non conveniens*. In support of this Motion, VWGoA relies on all pleadings of record and Defendant's Brief in Support filed herewith.

Accordingly, VWGoA respectfully requests that the Court enter an Order dismissing this case under the doctrine of *forum non conveniens*. As required by O.C.G.A. § 9-10-31.1(b), VWGoA stipulates that, with respect to a new action on Plaintiff's claims commenced by Plaintiff in a proper venue, VWGoA waives the right to assert a statute of limitations defense in any state of the United States in which Plaintiff's claims were not barred by limitations at the time Plaintiff filed the instant action, thereby tolling the limitations periods in those states beginning on the date Plaintiff filed its Complaint (June 2, 2023) and ending on the date Plaintiff's claims are dismissed.

This 2nd day of August, 2023.

1

**SHOOK HARDY & BACON, LLP**

*/s/ Colin K. Kelly*
_____
Colin K. Kelly
Georgia Bar No. 781072
ckelly@shb.com
Caroline M. Gieser
Georgia Bar No. 167916
cgieser@shb.com
Timia A. Skelton
Georgia Bar No. 667099
tskelton@shb.com
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309
(470) 867-6012 (direct CKK)
(470) 867-6013 (direct CMG)

*Counsel for Defendant Volkswagen Group of America, Inc.*

2

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,     )
     Plaintiff,     )
     )
v.     )
     )
AUDI OF AMERICA, LLC;     )
VOLKSWAGEN     )
GROUP OF AMERICA, INC. D/B/A AUDI     )     Civil Action File No.:
OF AMERICA, INC.; AUDI AG;     )     23-C-03730-S2
VOLKSWAGEN     )
AG; AND ASBURY AUTOMOTIVE     )
GROUP ,INC.,     )

     Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2023, I served a copy of the **DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION TO DISMISS FOR FORUM NON CONVENIENS** upon all parties of record in this matter using the Odyssey E-File system and via electronic mail as follows:

Cale Conley
Davis Popper
Alex S. Edmonds
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
cale@conleygriggs.com
davis@conleygriggs.com
kip@conleygriggs.com
***Attorneys for Plaintiff***

Noah B. Abrams
Winston Kirby
Andrew Avram
Abrams & Abrams, P.A.
3201 Glenwood Avenue

3

Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 780-5400
***Attorneys for Plaintiff***

*/s/ Colin K. Kelly*
_____
Colin K. Kelly

*Counsel for Defendant Volkswagen*
*Group of America, Inc.*

4

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/15/2023 1:06 PM**

TIANA P. GARNER, CLERK

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| | ) | |
| Defendants. | ) | |

### MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PARTY DEFENDANTS

COMES NOW Plaintiff Douglas Grant Morton, Individually, and pursuant to O.C.G.A.

§§9-11-15, 9-11-21 and other applicable law, hereby files this Motion for Leave to Amend the

Complaint to add the following as a party defendant in this case:

- Lear Corporation ("Lear");
- FNK North America, Inc.; Faurecia-NHK Co., Ltd.; Faurecia Automotive Seating, LLC; NHK Seating of America, Inc.; NHK Spring Co. Ltd.; and Faurecia USA Holdings, Inc. (collectively, "Faurecia");
- Brose North America, Inc.; and Brose Fahrzeugteile SE & Co. Kommanditgesellschaft ("Brose"); and
- Grammer, Inc.; Grammer Industries, LLC, and Grammer AG ("Grammer") (collectively referred to herein as the "Additional Defendants").

A proposed order granting this motion has been attached hereto as **Exhibit 1**. Plaintiff's

proposed amended complaint is attached as **Exhibit 2** to this motion, and a signed original of that

document and all attachments will be filed upon entry of an order on this motion. Given that the

statute of limitations for this action runs on September 25, 2023, and so service of process of the

amended complaint on the additional defendants may be promptly perfected, Plaintiff respectfully

1

requests this order be entered immediately by the Court. In support of this motion, Plaintiff respectfully shows the Court as follows:

1.

This is a civil tort action seeking recovery for personal injuries suffered by Douglas Grant Morton ("Douglas Morton") arising from a motor vehicle collision that occurred on September 25, 2021, in Marshall, North Carolina. On that day, Scottie Dale Proffitt drove a 1999 Dodge Ram truck into the back of a 2020 Audi A6 (the "Subject Vehicle") being driven by Douglas Morton. The driver seat occupant restraint system of the Subject Vehicle failed to contain and protect Mr. Morton – in particular, the driver seat head restraint broke and failed in the incident, proximately causing him to suffer a catastrophic spinal cord injury that has left him permanently paralyzed. Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the front seat driver seating system, restraint system, and seat components were designed and/or manufactured by the Additional Defendants.

2.

On May 30, 2023, Douglas Grant Morton, Individually and by and through undersigned counsel, filed this civil action.

3.

On July 17, 2023, Plaintiff's counsel was informally informed by Defendant Audi, Inc. that "Lear" supplied the subject vehicle's driver's seat, "Faurecia" supplied the subject vehicle's seatback, "Brose" supplied the subject vehicle's driver seat frame, and "Grammer" supplied the subject vehicle's driver headrest. However, Plaintiff has not yet been afforded an opportunity for full fact discovery to ascertain which specific legal entities associated with each of those named were responsible for the design of the respective component systems/parts. As shown above and

2

out of an abundance of caution, Plaintiff seeks to name multiple potential Defendants associated with each such component manufacturer based upon publicly available information known at this time and will amend this complaint, if necessary, to add any other entities associated with the component suppliers, once afforded the opportunity for full fact discovery to determine which legal entity(ies) were responsible for the design and manufacture of those components. Because Plaintiff has broadly named multiple parent and subsidiary entities where necessary for each component supplier (many of whom share headquarters and corporate officers), in the event this Court grants Plaintiff's motion, such potential added Defendants will have actual notice of this amended complaint and the claims asserted herein prior to the running of the statute of limitations.

4.

Under Georgia law, amendments to pleadings should be liberally allowed. O.C.G.A. § 9-11-15. Where a party seeks to add another party to a complaint, the Court, in its discretion, should evaluate several factors, including: (1) whether the new party will be prejudiced; and (2) whether the movant has some excuse or justification for having failed to name and serve the new party previously. *Horne v. Carswell*, 167 Ga. App. 229 (1983); O.C.G.A. § 9-11-21.

5.

By being added as a party to this action, Lear, Faurecia, Brose, and Grammer will not be unduly prejudiced. First, the statute of limitations on any claims by Plaintiff Douglas Grant Morton has not run, meaning that the Plaintiff could institute a separate action against the Additional Defendants now, raising the same claims alleged in the amended complaint, and each party would have to respond. Plaintiff believes it is judicially inefficient and would actually increase the "prejudice" or burden on the Additional Defendants, but notes that since a separate lawsuit could be brought at this time raising the same claims, it will not prejudice the Additional Defendants to

3

have those same claims raised in this lawsuit. Second, allowing the Additional Defendants to be added to this action will allow them to defend the assertions made against them in this case by any other presently-named Defendants in this lawsuit before any trial is conducted or verdict rendered in this action, rather than later in some other action. Thus, rather than prejudicing the Additional Defendants, adding them at this time would allow them to timely and efficiently address the claims made against them.

6.

Plaintiff further states that since the discovery period has not even technically commenced, discovery has been filed with this Court and served on the presently named Defendants but the time for responses has not yet accrued, and is still ongoing, the Additional Defendants will have ample opportunity to protect its interests, defend itself, and participate in the case.

7.

Moreover, Plaintiff here has an "excuse or justification for having failed to name and serve the new party previously" because, upon information and belief but without the benefit of fact discovery, Plaintiff had a good faith belief that the current Defendants were the proper entity against whom such claims for the Subject Incident should be made, and it was not until being informed by counsel for Defendant Audi, Inc. that the Additional Defendants were also proper parties in this lawsuit that Plaintiff recognized and believed that the Additional Defendants could also be proper entities against whom such claims should be made.

8.

Plaintiff has satisfied both factors of O.C.G.A. § 9-11-21, and, in the interests of the just and fair determination of this action, respectfully requests that the Court grant this motion and enter the Order attached hereto.

4

## CONCLUSION

For all the foregoing reasons, Plaintiff Douglas Grant Morton, Individually and by and through undersigned counsel, respectfully requests that this motion be granted, that the Court permit Plaintiff to serve Lear, Faurecia, Brose, and Grammer immediately with the amended complaint attached hereto by delivering it to the Additional Defendants' registered agents for service of process, and that this Amended Complaint be related back to the original filing of this action.

Respectfully Submitted, this 15th day of August, 2023.

CONLEY GRIGGS PARTIN LLP

*/s/ Cale Conley*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

5

*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

 /s/ *Noah B. Abrams* _____
Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:     (919) 755-9166
NAbrams@abramslawfirm.com
**EDWARDS KIRBY, L.L.P.**

 /s/ *Winston S. Kirby* _____
Winston S. Kirby
State Bar Number 49316
Andrew C. Avram
State Bar Number 51106
3201 Glenwood Avenue, Suite 100
Raleigh, NC  27619
Telephone:     (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

6

Exhibit 1

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PARTY DEFENDANTS

This matter comes before the Court upon motion by Plaintiff Douglas Grant Morton, and by and through undersigned counsel, for leave to amend the Complaint for Damages to add claims against the following additional party-defendants:

- Lear Corporation ("Lear");
- FNK North America, Inc.; Faurecia-NHK Co., Ltd.; Faurecia Automotive Seating, LLC; NHK Seating of America, Inc.; NHK Spring Co. Ltd.; and Faurecia USA Holdings, Inc. (collectively, "Faurecia");
- Brose North America, Inc.; and Brose Fahrzeugteile SE & Co. Kommanditgesellschaft ("Brose"); and
- Grammer, Inc.; Grammer Industries, LLC, and Grammer AG ("Grammer").

Pursuant to O.C.G.A. §§ 9-11-15, 9-11-21, and applicable case law, including *Horne v. Carswell,* 167 Ga. App. 229, 306 S.E.2d 94 (1983), the Court notes that amendments to pleadings should be liberally provided. The Court further finds that under the circumstances presented here, it finds that the addition of the parties sought to be added to the case would not unfairly prejudice the added parties, has not been delayed unduly, and would promote the interests of judicial efficiency. Accordingly, IT IS HEREBY ORDERED:

The motion is **GRANTED**. Plaintiff may immediately serve a second original of the Amended Complaint upon the registered agent for Lear, Faurecia, Brose, and Grammer in the State of Georgia or shall otherwise serve Lear, Faurecia, Brose, and Grammer, in a manner prescribed or provided for under the Georgia Civil Practice Act. The Court authorizes the issuance of a Second Original with process for the purposes of serving the Amended Complaint upon the added parties. All remaining parties to the action shall be provided a copy of the Amended Complaint as the rules require.

SO ORDERED this __day of August, 2023.

_____
Judge Shawn Fitzpatrick Bratton
State Court of Gwinnett County

Exhibit 2

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. | ) | |
| d/b/a AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAURECIA AUTOMOTIVE SEATING, LLC; | ) | |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | **JURY TRIAL DEMANDED** |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| Defendants. | ) | |

## **FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND**

COMES NOW Plaintiff Douglas Grant Morton and files this First Amended Complaint for

Damages and Demand for Jury Trial, respectfully showing the Court the following:

## **INTRODUCTION**

1.

This is a civil tort action seeking recovery for personal injuries suffered by Douglas Grant

Morton ("Douglas Morton") arising from a motor vehicle collision that occurred on September 25,

2021, in Marshall, North Carolina. On that day, Scottie Dale Proffitt drove a 1999 Dodge Ram truck into the back of a 2020 Audi A6 (the "Subject Vehicle") being driven by Douglas Morton. The driver seat occupant restraint system of the Subject Vehicle failed to contain and protect Mr. Morton – in particular, the driver seat head restraint broke and failed in the incident, proximately causing him to suffer a catastrophic spinal cord injury that has left him permanently paralyzed.

## II.     PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS

2.

Plaintiff Douglas Morton ("Plaintiff" or "Mr. Morton" herein) is a resident of the State of California. By filing this action, he avails himself of this Court's jurisdiction.

3.

Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. (hereinafter "Audi, Inc." when separately referenced) is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in Herndon, Virginia. At all relevant times, Audi, Inc. (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, Inc. knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia.  Audi, Inc. also maintains a registered agent in this State – Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, where Audi, Inc. may be served with legal process in

2

this case. At all relevant times, Audi, Inc. promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, maintains a registered agent to transact business in this State and County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, Inc.

4.

*Personal Jurisdiction over Audi, Inc.: Georgia's Long-Arm Statute*. Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Audi, Inc. also maintains a registered agent to transact business in this State and County. Under Georgia law, a foreign corporation that is authorized to transact business in Georgia is a resident of this State and subject to direct personal jurisdiction in this State.[1] Thus, this Court has direct personal jurisdiction over Defendant Audi, Inc. as a resident

---

[1] *See* O.C.G.A. § 9-10-90 (Georgia's long-arm statute defines "nonresident" to include a corporation that "is not authorized to do or transact business in this state at the time a claim or cause of action under [Georgia's long-arm statute] arises"); *see also Cooper Tire & Rubber Company v. McCall*, 312 Ga. 422 (2021); *Allstate Inc. Co. v. Klein*, 262 Ga. 599, 601 (1992) (The Supreme Court of Georgia held that a foreign corporation authorized to transact business in

of this State in addition to long-arm personal jurisdiction over Audi, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

<p style="text-align:center">5.</p>

*Personal Jurisdiction over Audi, Inc.: Due Process.*   Audi, Inc. (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market.  It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, it maintains a registered agent to transact business in this State and County, and there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia).  Audi, Inc.'s actions in marketing and selling its vehicles to locations throughout Georgia and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being haled into Court here.  In short, Audi, Inc. has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.  Exercising personal jurisdiction over Audi, Inc. in this Court comports with due process.

---

Georgia was a resident for purposes of personal jurisdiction because it did not meet the definition of "nonresident" in O.C.G.A. § 9-10-90 and could, thus, "sue or be sued to the same extent as a domestic corporation").

<p style="text-align:center">4</p>

6.

Upon information and belief, Defendant Audi of America, LLC (hereinafter "Audi, LLC" when separately referenced) is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Herndon, Virginia. At all relevant times, Audi, LLC (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, LLC knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, LLC may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808. At all relevant times, Audi, LLC promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, LLC.

7.

*Personal Jurisdiction over Audi, LLC: Georgia's Long-Arm Statute*. Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of

5

Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi, LLC under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

8.

*Personal Jurisdiction over Audi, LLC: Due Process.* Audi, LLC (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, LLC's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being haled into Court here. In short, Audi, LLC has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play

6

and substantial justice. Exercising personal jurisdiction over Audi, LLC in this Court comports with due process.

<center>9.</center>

Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Upon information and belief, Audi AG is a wholly-owned subsidiary of Defendant Volkswagen AG, and Audi AG is a sister company with its U.S. distributor, Defendant Audi, Inc. At all relevant times, Audi AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Audi AG may be served with process by having a German-translated copy of this Complaint served upon Audi AG through the Germany State Central Authority as authorized by the Hague Convention. At all relevant times, Audi AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with

<center>7</center>

the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi AG.

<div align="center">10.</div>

*Personal Jurisdiction over Audi AG: Georgia's Long-Arm Statute*. Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

<div align="center">11.</div>

*Personal Jurisdiction over Audi AG: Due Process.* Audi AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected

<div align="center">8</div>

by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being haled into Court here. In short, Audi AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi AG in this Court comports with due process based upon the contacts detailed above and those additional contacts detailed below:

- Audi AG exercises direct control over the marketing activities of the numerous authorized Audi dealers in Georgia – including specifically the authorized Audi dealer where the Subject Vehicle was first shipped a purchased by a consumer.

- Those authorized Audi dealers in Georgia are only allowed to use the Audi trademarked name, trademarked Audi emblem, and advertise and sell Audi vehicles with the express permission of Audi AG, and by following Audi AG's specific rules for how Audi vehicles can and cannot be marketed.

- Audi AG has registered and owns numerous "Audi" trademarks with the U.S. Patent and Trademark Office.

- Audi AG works directly with its sister company Audi Inc. (which maintains a registered agent in Georgia) to distribute hundreds of thousands of Audi vehicles all over the United States, and specifically in Georgia.

- Audi AG and Audi Inc. regularly refer to themselves collectively as "Audi" and have represented that Audi AG is Audi Inc.'s "parent company." In fact, Audi AG

9

has admitted that because the purpose of Audi Inc. is to sell Audi-brand vehicles, there is an economic benefit for Audi AG if Audi Inc.'s operations are successful.

- In 2019, over 224,000 Audi vehicles were shipped to the U.S., and in 2020 (the year the Subject Vehicle was first sold by an authorized Audi dealer in Georgia), over 186,000 Audi vehicles were shipped to the U.S.

- Audi AG describes the U.S. as a "core market" for its vehicles and actively monitors and forecasts business and market trends in the U.S., including impacts on its authorized Audi dealers.

- Audi AG actively participates in U.S. rulemaking for vehicle safety standards, including making direct requests to the National Highway Traffic Safety Administration for exceptions.

- Audi AG on its own and collectively with Audi Inc. has spent millions of dollars and expended significant effort in advertising, promoting, and developing the Audi trademarks throughout the world—including the U.S. and Georgia specifically.

- Audi AG's revenue in 2020 (the year the Subject Vehicle was first sold to a consumer by and through an authorized Audi dealer in Georgia) was approximately $55 Billion.

12.

Defendant Volkswagen AG (hereinafter "VW AG" when separately referenced) is a German corporation with its principal place of business in Wolfsburg, Germany. Upon information and belief, VW AG is the parent company of Defendants Audi AG and Audi Inc., and exercises control over the business activities of the two entities. At all relevant times, VW AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers,

10

retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. VW AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant VW AG may be served with process by having a German-translated copy of this Complaint served upon VW AG through the Germany State Central Authority as authorized by the Hague Convention. At all relevant times, VW AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because VW AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to VW AG.

13.

*Personal Jurisdiction over VW AG: Georgia's Long-Arm Statute*. VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising,

11

promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over VW AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

14.

*Personal Jurisdiction over VW AG: Due Process.* VW AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). VW AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being haled into Court here. In short, VW AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over VW AG in this Court comports with due process. Hereinafter, Defendants Audi, LLC, Audi, Inc., Audi AG, and VW AG shall be collectively referred to as "the Audi Defendants" or "Audi."

12

15.

Defendant Lear Corporation ("Lear") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Southfield, Michigan. At all relevant times, Lear was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts, including seats and seating systems, for use in motor vehicles, including specifically the 2020 Audi A6's front driver seating system at-issue in this matter (the "Subject Seat"). Lear transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Lear may be served by delivering Summons and the Complaint upon its registered agent, The Corporation Company, located at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan, 48170. Because Lear transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Lear.

16.

*Personal Jurisdiction over Lear: Georgia's Long-Arm Statute*. Defendant Lear transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Lear (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the Subject Seat that was shipped to and sold at an authorized Audi dealership

13

in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

17.

*Personal Jurisdiction over Lear: Due Process.*  Defendant Lear derives revenue from sales of its motor vehicle component systems and parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the Subject Seat (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Lear's actions in marketing and selling its motor vehicle seats and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Lear has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.  Exercising personal jurisdiction over Lear in this Court comports with due process.

18.

Defendant FNK North America, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Troy, Michigan. At all relevant times, FNK North America, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts, including seatbacks and seating systems for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter (the "Subject

14

Seatback"). FNK North America, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant FNK North America, Inc. may be served by delivering Summons and the Complaint upon its registered office located at Capitol Services, Inc., 108 Lakeland Avenue, Dover, Delaware, 19901. Because FNK North America, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia North America.

19.

Defendant Faurecia-NHK Co., Ltd. is a Japanese corporation with its principal place of business in Naka-Ku Yokohama, Japan. At all relevant times, Faurecia-NHK Co., Ltd. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. Faurecia-NHK Co., Ltd. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Japan is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Faurecia-NHK Co., Ltd. may be served with process by having a Japanese-translated copy of this Complaint served upon Faurecia-NHK Co., Ltd. at the Japan Central Authority through the channels authorized by the Hague Convention. Because Faurecia-NHK Co., Ltd. transacts business in this State, either on its own and/or by and through its wholly-

15

owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia-NHK Co., Ltd.

<div align="center">20.</div>

Defendant Faurecia Automotive Seating, LLC is a is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Troy, Michigan. At all relevant times, Faurecia Automotive Seating, LLC. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. Faurecia Automotive Seating, LLC transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Faurecia Automotive Seating, LLC. may be served by delivering Summons and the Complaint upon its registered agent, Capitol Corporate Services, Inc., located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, Michigan 48170.[2] Because Faurecia Automotive Seating, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia Automotive Seating, LLC.

---

[2] In the alternative, out of an abundance of caution, Faurecia Automotive Seating, LLC may also be served by delivering Summons and the Complaint upon its registered agent to transact business in its State of Incorporation, Capitol Services, Inc., located at 108 Lakeland Avenue, Dover, Delaware 19901.

<div align="center">16</div>

Defendant NHK Seating of America, Inc. is a is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Frankfort, Indiana. At all relevant times, NHK Seating of America, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. NHK Seating of America, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant NHK Seating of America, Inc. may be served by delivering Summons and the Complaint upon its registered agent, NHK International Corporation, located at 46855 Magellan Drive, Novi, Michigan 48377. Because NHK Seating of America, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to NHK Seating of America, Inc.

22.

Defendant NHK Spring Co., Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. At all relevant times, NHK Spring Co., Ltd. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. NHK Spring Co., Ltd. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia

for use by consumers in Georgia. Because Japan is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant NHK Spring Co., Ltd. may be served with process by having a Japanese-translated copy of this Complaint served upon NHK Spring Co., Ltd. at the Japan Central Authority through the channels authorized by the Hague Convention. Because NHK Spring Co., Ltd. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to NHK Spring Co., Ltd.

23.

Defendant Faurecia USA Holdings, Inc. is a is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Auburn Hills, Michigan. At all relevant times, Faurecia USA Holdings, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. Faurecia USA Holdings, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Faurecia USA Holdings, Inc. may be served by delivering Summons and the Complaint upon its registered agent, Capitol Corporate Services, Inc., located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, Michigan 48170.[3] Because Faurecia USA Holdings, Inc.

---

[3] In the alternative, out of an abundance of caution, Faurecia USA Holdings, Inc. may also be served by delivering Summons and the Complaint upon its registered agent to transact business in

18

transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia USA Holdings, Inc.

24.

Defendants FNK North America, Inc., Faurecia-NHK Co., Ltd., Faurecia Automotive Seating, LLC, NHK Seating of America, Inc., NHK Spring Co., Ltd., and Faurecia USA Holdings, Inc. shall herein be collectively referred to as "Faurecia Defendants" or "Faurecia."

25.

*Personal Jurisdiction over the Faurecia Defendants: Georgia's Long-Arm Statute*. The Faurecia Defendants transact business in the State of Georgia, derive substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Faurecia (either on their own and/or by and through their subsidiaries or affiliated entities) were actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seatback of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Faurecia under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

---

its State of Incorporation, Capitol Services, Inc., located at 108 Lakeland Avenue, Dover, Delaware 19901.

26.

*Personal Jurisdiction over Faurecia: Due Process.* The Faurecia Defendants derive revenue from the sale of motor vehicle component systems and parts within the State of Georgia and have purposefully availed themselves of the privilege of doing business in Georgia. They shipped, or participated in shipping, the subject 2020 Audi A6 front driver seatback (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Their business is affected by motor vehicle seats and component part sales in Georgia, either on its own and/or by and through its subsidiaries in Georgia and other Faurecia locations in states surrounding Georgia. Faurecia's actions in marketing and selling its motor vehicle seatbacks and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, the Faurecia Defendants have sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Faurecia in this Court comports with due process.

27.

Upon information and belief, Defendant Brose North America, Inc. is a limited liability company incorporated under the laws of the State of Michigan with its principal place of business in Auburn Hills, Michigan. At all relevant times, Brose North America, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seating system at-issue in this matter. Brose

20

North America, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Brose North America, Inc. may be served by delivering Summons and the Complaint upon its registered agent, The Corporation Company, located at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan 48170. Because Brose North America, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Brose North America, Inc.

28.

*Personal Jurisdiction over Brose North America, Inc.: Georgia's Long-Arm Statute.* Defendant Brose North America, Inc. transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased, and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Brose North America, Inc. (either on their own and/or by and through their subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seating system of the subject vehicle that was shipped to and sold at a authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Brose North America, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

29.

*Personal Jurisdiction over Brose North America, Inc.: Due Process.* Defendant Brose North America, Inc. derives revenue from the sale of motor vehicle component systems and parts

21

within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2020 Audi A6 front driver seating system (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Brose North America, Inc.'s actions in marketing and selling its motor vehicle seatbacks and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Brose North America, Inc. has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Defendant Brose North America, Inc. in this Court comports with due process.

30.

Defendant Brose Fahrzeugteile SE & Co. Kommanditgesellschaft (hereinafter "Brose SE" when separately referenced) is a German corporation with its principal place of business in Coburg, Germany. Upon information and belief, Brose is the parent company of Defendants Brose North America, Inc. At all relevant times, Brose SE (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seating system at-issue in this matter. Brose SE knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Hague Convention,

22

Defendant Brose SE may be served with process by having a German-translated copy of this Complaint served upon Brose SE through the Germany state Central Authority as authorized by the Hague Convention. Because Brose SE transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Brose SE.

31.

*Personal Jurisdiction over Brose SE.: Georgia's Long-Arm Statute*. Defendant Brose SE transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased, and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Brose SE (either on their own and/or by and through their subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seating system of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Brose SE. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

32.

*Personal Jurisdiction over Brose SE: Due Process.* Defendant Brose SE derives revenue from the sale of motor vehicle component systems and parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2020 Audi A6 front driver seating system (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way

23

to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Brose SE's actions in marketing and selling its motor vehicle seatbacks and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Brose SE has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Defendant Brose SE in this Court comports with due process. Defendants Brose North America, Inc. and Brose SE shall be collectively referred to as "Brose" or "Defendant Brose."

33.

Defendant Grammer, Inc. is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Shannon, Mississippi. At all relevant times, Grammer, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seat head restraint at-issue in this matter. Grammer, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Grammer, Inc. may be served by delivering Summons and the Complaint upon its registered agent, Michael Tapscott, located at 322 West Jefferson Street, Tupelo Mississippi, 38804.[4] Because Grammer,

---

[4] In the alternative, out of an abundance of caution, Grammer, Inc. may also be served by delivering Summons and the Complaint upon its registered agent to transact business in its State of Incorporation, CT Corporation Systems, Inc., located at 1010 Dale Street No, Saint Paul, Minnesota 55117.

24

Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Grammer, Inc.

34.

Defendant Grammer Industries, LLC is a corporation incorporated under the laws of the State of South Carolina with its principal place of business in Troy, Michigan. At all relevant times, Grammer Industries, LLC was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seat head restraint at-issue in this matter. Grammer Industries, LLC transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Grammer Industries, LLC may be served by delivering Summons and the Complaint upon its registered agent, CT Corporation System, located at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan 48170.[5] Because Grammer Industries, LLC. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Grammer Industries, LLC.

---

[5] In the alternative, out of an abundance of caution, Grammer Industries, LLC may also be served by delivering Summons and the Complaint upon its registered agent to transact business in its State of Incorporation, CT Corporation Systems, Inc., located at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

Case 1:24-cv-00022-MOC-WCM   Document 1-3   Filed 09/28/23   Page 219 of 568

35.

Defendant Grammer AG is a German corporation with its principal place of business in Ursensollen, Germany. Upon information and belief, Grammer AG is the parent company of Defendants Grammer, Inc. and Grammer Industries, LLC. At all relevant times, Grammer AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seat head restraint at-issue in this matter. Grammer AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Hague Convention, Defendant Grammer AG may be served with process by having a German-translated copy of this Complaint served upon Grammer AG through the German state Central Authority as authorized by the Hague Convention. Because Grammer AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Grammer AG.

36.

Defendants Grammar, Inc., Grammar Industries, LLC, and Grammar AG shall herein be collectively referred to as the "Grammer Defendants" or "Grammer."

37.

*Personal Jurisdiction over Grammer: Georgia's Long-Arm Statute*. The Grammer Defendants transact business in the State of Georgia, derive substantial revenue from goods sold,

26

purchased, and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Grammer (either on their own and/or by and through their subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seat head restraint of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Grammer under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

<div align="center">38.</div>

*Personal Jurisdiction over Grammer: Due Process.* The Grammer Defendants derive revenue from the sale of motor vehicle component systems and parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2020 Audi A6 front driver seat head restraint (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Grammer's actions in marketing and selling its motor vehicle head restraints and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Grammer has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Grammer in this Court comports with due process.

39.

Defendant Asbury Automotive Group, Inc. ("Asbury") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Duluth, Georgia.[6] Upon information and belief, at all relevant times, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, was and is in the business of maintaining, repairing, inspecting, servicing, marketing, promoting, advertising, assembling, distributing, leasing, and/or selling motor vehicles, including the Subject Vehicle that was first sold to Plaintiff at Asbury's authorized Audi dealer in Georgia (referred to as "Audi North Atlanta") and that performed service, repair and/or maintenance on the Subject Vehicle numerous times before the subject incident. Defendant Asbury transacts business in the State of Georgia, derives substantial revenue from business in this State, maintains its principal place of business in this state, and maintains a registered agent to transact business in this State. Defendant Asbury may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Because Defendant Asbury transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from business in this State, maintains its principal place of business in Gwinnett County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Defendant Asbury.

---

[6] The Georgia Secretary of State business search database lists Asbury's principal office address in Duluth, Georgia, and Asbury's 2022 Form 10-K filed with the U.S. Securities and Exchange Commission also lists its corporate headquarters and principal executive offices at the same address in Duluth.

40.

*Personal Jurisdiction over Defendant Asbury.*   Because Defendant Asbury actively maintains its principal place of business in the State of Georgia (and specifically in Gwinnett County) and maintains a registered agent to transact business in this State, there can be no dispute that this Court may properly exercise personal jurisdiction over Defendant Asbury.

41.

Upon information and belief, Defendants XYZ Companies 1-4 are partnerships, limited liability companies, and/or corporations who designed and/or manufactured the Subject Vehicle components, including the front driver seat, seatback, seating system, and/or head restraint components at issue in this lawsuit and described in more detail herein. The identities of XYZ Companies 1-4 cannot be ascertained at this time, but they are believed to be in some manner responsible for the acts and/or omissions alleged herein.[7] Plaintiff will amend this Complaint to substitute the identities of these Defendants once ascertained through the discovery process.

---

[7] Although Defendant Audi, Inc. (after receiving the original Complaint) informally informed Plaintiff's counsel that "Lear" supplied the subject vehicle's driver's seat, "Faurecia" supplied the subject vehicle's seatback, "Brose" supplied the subject vehicle's driver seat frame, and "Grammer" supplied the subject vehicle's driver headrest, Plaintiff has not yet been afforded an opportunity for full fact discovery to ascertain which specific legal entities associated with each of those names were responsible for the design of the respective component systems/parts.  As shown above and out of an abundance of caution, Plaintiff has named multiple potential Defendants associated with each such component manufacturer based upon publicly available information known at this time and will amend this Complaint, if necessary, to add any other entities associated with the component suppliers once afforded the opportunity for full fact discovery to determine which legal entity(ies) were responsible for the design and manufacture of those components. However, because Plaintiff has broadly named multiple parent and subsidiary entities where necessary for each component supplier (many of whom share headquarters and corporate officers), such potential added Defendants will have actual notice of this Amended Complaint and the claims asserted herein prior to the running of the statute of limitations.

29

42.

Plaintiff reserves the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault or that any presently unnamed entity is believed to be at fault after further facts are shown in discovery.

43.

Jurisdiction and venue are not proper in any United States District Court because complete diversity of citizenship of the parties is lacking, there is no federal question giving rise to these claims, and pursuant to U.S.C. § 1441(b)(2) the "resident defendant" exception applies as Defendant Asbury is headquartered in Georgia and, thus, a resident of Georgia.

44.

This is an action related to tortious acts or omissions committed in and producing injury in the State of North Carolina. Therefore, the procedural and remedial laws of Georgia and the substantive laws of North Carolina that do not contravene Georgia public policy apply to the claims asserted herein.

45.

Venue is proper in this County because Defendants Asbury and Audi, Inc. maintain a registered agent for service of process in Gwinnett County. Further, venue is proper in this County as to Defendants Audi, LLC, Audi AG, and VW AG because they are joint tortfeasors with the Defendants Asbury and Audi, Inc., and where defendants reside in different counties, venue may be maintained in any county in which one of the defendants resides.

30

### III.    OPERATIVE FACTS

*A.   The Subject Motor Vehicle Collision*

46.

The motor vehicle collision giving rise to this action occurred on September 25, 2021 at approximately 1:20 p.m. on U.S. Highway 25 in Marshall, North Carolina.  At that time, Douglas Morton was travelling northbound on U.S. 25 and stopped for traffic. He was at all relevant times properly seat belted and acting prudently and with reasonable care.

47.

Scottie Dale Proffitt was traveling northbound on U.S. 25 behind Mr. Morton. Mr. Proffitt failed to maintain a proper lookout and, as a result, drove his 1999 Dodge Ram truck into the back of the Subject Vehicle Mr. Morton was operating.

48.

Though Mr. Morton was properly wearing a seatbelt, the 2020 Audi A6's driver occupant restraint system failed to properly contain Mr. Morton's body during the collision, and in particular, the driver seat head restraint broke, allowing Mr. Morton's head and body to move back and over the seat. When an ambulance arrived at the scene, Mr. Morton alerted paramedics that he could not feel his legs.

49.

Mr. Morton was transported to Mission Memorial Hospital and immediately presented to the emergency room. Mr. Morton sustained numerous injuries, including a catastrophic thoracic spinal fracture and complete paraplegic spinal paralysis.

50.

Mr. Morton remained at Mission Memorial Hospital for 35 days.

51.

Mr. Morton was thereafter admitted to CarePartners Rehabilitation Hospital, where he underwent significant rehabilitation for approximately four months due to the severe nature of his spinal injuries and complications caused by extensive infections and ulcerations.

52.

Despite his extensive efforts towards rehabilitation, Mr. Morton is permanently paralyzed from his chest down.

53.

Mr. Morton's severe and catastrophic injuries were proximately caused by the Subject Vehicle's defective driver seat occupant restraint system and head restraint, which failed to provide adequate neck, head and body containment and protection, allowing Mr. Morton's head and body to move back and over the driver seat – injurious contact which should not and would not have occurred if the Subject Vehicle had adequately contained Mr. Morton's body during the collision.

*B. The Subject 2020 Audi A6*

54.

The 2020 Audi A6, VIN No. WAUE8AF26LN002921, a four-door sedan, was designed, manufactured, assembled, imported and/or distributed, and placed into the stream of commerce as a complete product by the Audi Defendants and Defendant Asbury.

55.

The Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control

32

by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021.

<div align="center">56.</div>

As with any of its vehicles, the Audi Defendants, as the designer and manufacturer of the Subject Vehicle, designed and obtained components for the Subject Vehicle from a variety of suppliers which the Audi Defendants selected and contracted with to provide parts or components made to the Audi Defendants' design and/or manufacturing specifications. Those parts and components were then assembled, and the completed vehicle was manufactured and sold by the Audi Defendants and Defendant Asbury, as an Audi product sold under its Audi brand.

<div align="center">57.</div>

The Audi Defendants, as the designer and manufacturer of the completed vehicle, and Defendant Asbury, as the seller and distributor of the completed vehicle, placed it into the stream of commerce and are both legally responsible for failures of components, whether designed by Audi or obtained from component suppliers, that make up the completed vehicle.

<div align="center">58.</div>

Upon information and belief, the Subject Vehicle had not been materially altered or modified from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by the Audi Defendants. In particular, to Plaintiff's knowledge, no one modified or altered in any way the driver seat occupant restraint system, including the driver seat head restraint, or assembly of any of its component or sub-component parts – which parts and components were specified, obtained, assembled and placed into the

<div align="center">33</div>

completed vehicle by the Audi Defendants, and as designed and manufactured by Audi and its employees and engineers.

<div align="center">59.</div>

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, Defendant Lear manufactured and/or designed the front driver seat in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver seat. Lear is, therefore, also legally responsible for the failures of the products and any related components that it supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products it manufactured and/or designed for Audi.

<div align="center">60.</div>

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the Faurecia Defendants manufactured and/or designed the front driver seatback in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver seatback. The Faurecia Defendants are, therefore, also legally responsible for the failures of the products and any related components that they supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products they manufactured and/or designed for Audi.

<div align="center">61.</div>

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the Brose Defendants manufactured and/or designed the front driver seat frame in the subject vehicle as a component supplier to the Audi Defendants

<div align="center">34</div>

and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver seat frame. The Brose Defendants are, therefore, also legally responsible for the failures of the products and any related components that they supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products they manufactured and/or designed for Audi.

62.

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the Grammer Defendants manufactured and/or designed the front driver seat head restraint in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver head restraint. The Grammer Defendants are, therefore, also legally responsible for the failures of the products and any related components that they supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products they manufactured and/or designed for Audi.

63.

Plaintiff alleges this case as a "crashworthiness" case, i.e., that the Subject Vehicle and in particular its front driver seat occupant restraint system was not adequately designed, manufactured, marketed, and sold in a condition to provide sufficient or "crashworthy" protection, containment, and restraint to Douglas Morton in what was a foreseeable level of crash forces.

64.

It was, at all relevant times, known to the Defendants that Audi vehicles needed to be crashworthy during use on the public highways and that it is essential that all component parts of

35

the vehicle perform without failure so that occupants involved in collisions are properly protected from grievous injury.

<div align="center">65.</div>

Further, at all relevant times, the Defendants knew that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint and seating systems and fully functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

<div align="center">66.</div>

Despite this knowledge, the Defendants either designed the Subject Vehicle in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured the Subject Vehicle such that its occupant restraint and seating system and head restraints were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

<div align="center">67.</div>

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, when Defendant Lear, the Faurecia Defendants, the Brose Defendants, and the Grammer Defendants designed, tested, manufactured, marketed and sold the subject vehicle front driver seat, seatback, seat frame, and head restraints to Audi for use in the subject vehicle, and at all times since then, they had actual knowledge that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint and seating systems and fully functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

<div align="center">36</div>

68.

Despite this knowledge, Defendants Lear, Faurecia, Brose, and/or Grammer manufactured and/or designed the components of the Subject Vehicle's occupant restraint and seating system and head restraint in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured the components of the Subject Vehicle's occupant restraint and seating system and head restraint such that the components were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

69.

As a result of the negligence, breaches of warranty, acts, and/or omissions of the Defendants and the defective and/or negligently designed vehicle described herein, the Audi A6 failed to provide appropriate and necessary crash protection to Douglas Morton in his driver seat position even though he was property seated in the driver seat and properly wearing the seat belt system provided in the vehicle. Specifically, the Subject Vehicle's driver seat occupant restraint system and head restraint failed to provide reasonably necessary containment and protection in this incident.

70.

A rear collision producing rear impact forces such as this one was at all times foreseeable to manufacturers, component suppliers, and retailers of vehicles like the Defendants, who know that their products will encounter crashes, and they have a duty to take reasonable steps to include adequate safety systems to restrain, contain, and protect vehicle occupants.

71.

In short, while Douglas Morton may have suffered some injuries from the crash itself, his injuries were more severe, exacerbated and lead to permanent paralysis as a proximate result of

37

the defective, negligently designed, and inadequately crashworthy condition of the driver seat occupant restraint system and driver head restraint which was designed, manufactured, and placed into the stream of commerce by Defendants.

72.

As outlined below, all Defendants are joint tortfeasors for the Douglas Morton's injuries and damages in an amount to be determined by the enlightened conscience of the jury, but under any scenario, in an amount exponentially in excess of the minimum amount necessary to confer jurisdiction in this Court.

## IV.    LEGAL CLAIMS

### COUNT ONE
### (The Audi Defendants—Negligence and/or Strict Products Liability)

73.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

74.

As a product designer and manufacturer of consumer vehicles, Audi owed and owes legal duties to Plaintiff and the public in general to design and manufacture vehicles that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

75.

When Audi designed and/or manufactured the Subject Vehicle, it knew, or should have known through its own testing, studies, and other real-world incidents, that the front driver seat and occupant restraint system failed to contain and protect occupants from injury in rear-end collisions.

38

76.

Audi failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front driver seat of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Audi chose a front-seat design, and/or manufactured a front seat, that lacks adequate crashworthiness in foreseeable collisions.

77.

When it designed the 2020 Audi A6, the Audi Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Audi designed and/or manufactured the 2020 Audi A6 with defective front seats so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The A6's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

78.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the A6 that Plaintiff's claims are based on as inherent characteristics of the A6 that cannot be eliminated without substantially compromising its usefulness or desirability.

79.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle by the Audi Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

80.

The Audi Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Audi breached its duty by failing to warn of those dangers.

81.

The Audi Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Audi never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

82.

The risks to which Audi exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

83.

Audi's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

40

84.

The Audi Defendants are liable for the Subject Vehicle's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**COUNT TWO**
**(Defendant Lear—Negligence and/or Strict Products Liability)**

85.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

86.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, Defendant Lear, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

87.

When Lear designed and/or manufactured the Subject Vehicle's front seat, it knew, or should have known through its own testing, studies, and other real-world incidents, that the seating system failed to contain and protect occupants from injury in rear-end collisions.

88.

Lear failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seat of the 2020 Audi A6 without sufficient strength and structural

41

integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Lear chose a seat, and/or manufactured a seat, that lacks adequate crashworthiness in foreseeable collisions.

89.

When it designed the 2020 Audi A6 front driver seat, Lear reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Lear designed and/or manufactured the subject vehicle with a defective front seat so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The seat's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

90.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front driver seat that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seat that Plaintiff's claims are based on as inherent characteristics of the seat that cannot be eliminated without substantially compromising its usefulness or desirability.

91.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seat by Defendant Lear, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

42

92.

Defendant Lear also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat. Lear breached its duty by failing to warn of those dangers.

93.

Defendant Lear acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seat, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat of the Subject Vehicle. However, Lear never warned consumers or Mr. Morton that the seat's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

94.

The risks to which Lear exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

95.

Lear's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

96.

Defendant Lear is liable for the Subject Vehicle's front driver seat's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined

43

by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

**COUNT THREE**
**(The Faurecia Defendants—Negligence and/or Strict Products Liability)**

97.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

98.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, the Faurecia Defendants, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

99.

When Faurecia designed and/or manufactured the Subject Vehicle's front seating system, it knew, or should have known through its own testing, studies, and other real-world incidents, that the seating system failed to contain and protect occupants from injury in rear-end collisions.

100.

Faurecia failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seating system of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a

44

rear end collision. Instead, Faurecia chose a seating system, and/or manufactured a seating system, that lacks adequate crashworthiness in foreseeable collisions.

101.

When it designed the 2020 Audi A6 front seating system, Faurecia reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Faurecia designed and/or manufactured the front seating system with a defective front seatback so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The seating system's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

102.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front seatback and seating system that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seating system that Plaintiff's claims are based on as inherent characteristics of the seating system that cannot be eliminated without substantially compromising its usefulness or desirability.

103.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seatback and seating system by the Faurecia Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

104.

The Faurecia Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seatback and seating system. Faurecia breached its duty by failing to warn of those dangers.

105.

Faurecia acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seating system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front seating system of the Subject Vehicle. However, Faurecia never warned consumers or Mr. Morton that the seating system's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

106.

The risks to which Faurecia exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

107.

Faurecia's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seating system, was a proximate cause of Douglas Morton's injuries.

108.

Faurecia is liable for the Subject Vehicle's front seatback and seating system design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined

46

by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT FOUR
### (The Brose Defendants—Negligence and/or Strict Products Liability)

109.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

110.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, The Brose Defendants, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

111.

When the Brose Defendants designed and/or manufactured the Subject Vehicle's front seating system, it knew, or should have known through its own testing, studies, and other real-world incidents, that the seating system failed to contain and protect occupants from injury in rear-end collisions.

112.

The Brose Defendants failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seating system of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and

47

over the seat in the event of a rear end collision. Instead, the Brose Defendants chose a seating system, and/or manufactured a seating system, that lacks adequate crashworthiness in foreseeable collisions.

<center>113.</center>

When it designed the 2020 Audi A6 front seating system, the Brose Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet the Brose Defendants designed and/or manufactured the front seating system with a defective front seat frame so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The seating system's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

<center>114.</center>

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front seating system that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seating system that Plaintiff's claims are based on as inherent characteristics of the seating system that cannot be eliminated without substantially compromising its usefulness or desirability.

<center>115.</center>

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seat frame and seating system by the Brose Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

<center>48</center>

116.

The Brose Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat frame and seating system. The Brose Defendants breached its duty by failing to warn of those dangers.

117.

The Brose Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seating system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front seating system of the Subject Vehicle. However, the Brose Defendants never warned consumers or Mr. Morton that the seating system's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

118.

The risks to which the Brose Defendants exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

119.

The Brose Defendants' failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seating system, was a proximate cause of Douglas Morton's injuries.

120.

The Brose Defendants are liable for the Subject Vehicle's front seat frame and seating system design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at

49

trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT FIVE
### (The Grammer Defendants—Negligence and/or Strict Products Liability)

121.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

122.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, the Grammer Defendants, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

123.

When the Grammer Defendants designed and/or manufactured the Subject Vehicle's front driver seat head restraint, it knew, or should have known through its own testing, studies, and other real-world incidents, that the head restraint failed to contain and protect occupants from injury in rear-end collisions.

124.

The Grammer Defendants failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seat head restraint of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and

50

over the seat in the event of a rear end collision. Instead, the Grammer Defendants chose a head restraint, and/or manufactured a head restraint, that lacks adequate crashworthiness in foreseeable collisions.

125.

When it designed the 2020 Audi A6 front seat head restraint, the Grammer Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet the Grammer Defendants designed and/or manufactured the defective front seat head restraint so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The head restraint's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

126.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front seat head restraint that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seating system that Plaintiff's claims are based on as inherent characteristics of the seating system that cannot be eliminated without substantially compromising its usefulness or desirability.

127.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seat head restraint by the Grammer Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

51

128.

The Grammer Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat head restraint. Grammer breached its duty by failing to warn of those dangers.

129.

The Grammer Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seat head restraint, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front seat head restraint in the Subject Vehicle. However, the Grammer Defendants never warned consumers or Mr. Morton that the seating system's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

130.

The risks to which Grammer exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

131.

The Grammer Defendants' failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat head restraint, was a proximate cause of Douglas Morton's injuries.

132.

The Grammer Defendants are liable for the Subject Vehicle's front seat head restraint design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in

52

an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT SIX
### (Defendant Asbury—Negligence)

133.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

134.

Defendant Asbury operates as a dealer of motor vehicles, including but not limited to motor vehicles designed, manufactured, assembled, produced, advertised, sold, and supplied by the Audi Defendants.

135.

Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, advertised, marketed, listed, and/or sold the subject Audi A6 that Douglas Morton was driving at the time of the subject incident. Specifically, the Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021

136.

Defendant Asbury owed a legal duty to those occupying the vehicles that they advertised, promoted, warranted, sold, leased, maintained, inspected, serviced, and/or supplied to the general

public, including, but not limited to Mr. Morton, to advertise, promote, warrant, maintain, inspect, lease, sell, service, and supply such vehicles, in a reasonably safe and lawful manner.

137.

When Defendant Asbury sold the Subject Vehicle and/or during any of the numerous subsequent inspections of the Subject Vehicle, it knew, or should have known through the exercise of ordinary care, that the front driver seat and occupant restraint system failed to contain and protect occupants from foreseeable injury in rear-end collisions.

138.

Defendant Asbury failed to exercise ordinary care and breached its duties of care by selling and distributing the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision.

139.

Defendant Asbury further failed to exercise ordinary care in that it negligently, grossly negligently, recklessly, willfully, and wantonly failed to warn of the unreasonably dangerous condition of the Subject Vehicle, when they knew or should have known that the Subject Vehicle contained those defects in the supplemental restraint system and seat identified and described in this Complaint that could result in serious injury or death of an occupant, and did in fact result in those serious, permanent, and catastrophic injuries to Mr. Morton complained of in this Action.

140.

Pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8, Defendant Asbury also failed to exercise ordinary care and breached its duties of care by negligently inspecting the

54

subject vehicle after the date of first sale and failing to identify the defects detailed above, and/or Defendant Asbury failed to exercise ordinary care and breached its duties of care by negligently performing maintenance or repairs that may have also contributed to the defects with the occupant restraint system as detailed above.

<div align="center">141.</div>

Defendant Asbury also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Defendant Asbury breached its duty by failing to warn of those dangers.

<div align="center">142.</div>

Defendant Asbury acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Defendant Asbury never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

<div align="center">143.</div>

The risks to which Defendant Asbury exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge to a lay person like Mr. Morton who lacked the knowledge about vehicle restraint systems that the Audi Defendants and Defendant Asbury possessed.

<div align="center">55</div>

144.

Defendant Asbury's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

145.

Further, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, conducted several subsequent service inspections of the Subject Vehicle after it was purchased from Defendant Asbury.

146.

Defendant Asbury owed Douglas Morton and the general public a duty to non-negligently service, inspect, maintain and/or repair the Subject Vehicle for dangerous conditions and inform or warn such consumers of foreseeable dangers, latent defects, and other dangerous conditions that they knew, or should have known of, and communicate adequate warnings about those dangers to foreseeable users of the Subject Vehicle.

147.

Yet, Defendant Asbury breached its duties of care by negligently failing to properly inspect the Subject Vehicle and by negligently failing to warn of the dangers, latent defects, and other dangerous conditions described herein.

148.

Upon information and belief, Plaintiff claims and alleges herein that, by and through its negligent acts and/or omission, Defendants Asbury's negligent failure to properly inspect the Subject Vehicle and/or negligent failure to adequately warn consumers about the defects and/or dangerous conditions present in the same were a proximate cause of and/or contributing factor to

56

Douglas Morton's severe injuries and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT SEVEN
### (Defendant Asbury – Breach of Express and Implied Warranties under North Carolina Law)

149.

Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, in order to induce the purchase of the products which it sold, or marketed and sold, including the Audi A6 which is the subject of this litigation, advertised to the public the availability and safety of their products.

150.

Through the use of such advertising, Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, for the benefit of ultimate consumers and users, including Mr. Morton, directed the attention of the public and particularly ultimate consumers and users, specifically including Mr. Morton, and others similarly situated, by means of express representations and warranties, to their vehicles by representing that the public and ultimate consumers and users, including Mr. Morton, could occupy and operate the  vehicles and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by Defendant Asbury.

151.

In occupying and operating the Subject Vehicle, Mr. Morton relied upon the skill and judgment of Defendant Asbury, by and through its officers, managers, agents, suppliers,

57

contractors, subcontractors, representatives, and others for whom it is legally responsible, and upon the express warranty of Defendant Asbury, created under Georgia and North Carolina Law, and which is described above.

<p style="text-align:center">152.</p>

The Subject Vehicle was defective in design and/or manufacture, and such defect breached the express and implied warranties given by Defendant Asbury, by and through their officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom they are legally responsible.

<p style="text-align:center">153.</p>

As a direct and proximate result of the breach of express and implied warranties given for the benefit of ultimate consumers and users, including Mr. Morton, by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, as described previously, Mr. Morton suffered devastating and permanent injuries, which injuries have been described in this Amended Complaint.

<p style="text-align:center">154.</p>

As a direct and proximate result of the breach of implied warranties by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and which warranties specifically include the breach of the implied warranty of merchantability and breach of implied warranty of fitness for particular purpose, Mr. Morton received those injuries and damages as are previously described in this Amended Complaint.

155.

Such breaches of warranties include the failure by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, to provide necessary and proper warnings.

156.

Such warranties were in full force and effect on the date of the subject wreck.

## V. DAMAGES SOUGHT BY PLAINTIFF

157.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

158.

Douglas Grant Morton seeks recovery of damages from Defendants for past, present, and future medical bills and expenses, life care needs, and other necessary expenses incurred that are incident-related, in amounts to be shown by the evidence at trial.

159.

Douglas Grant Morton seeks damages from all Defendants for all past, present, and future pain and suffering resulting from his incident-related injuries, in an amount to be determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from his incident-related injuries.

160.

Douglas Grant Morton seeks recovery from all Defendants for any diminished future income and earning capacity proximately caused by the subject incident and the defective condition of the Subject Vehicle, as to be shown more fully by the evidence at trial.

59

161.

Douglas Grant Morton seeks a recovery from all Defendants for the loss of full enjoyment of life and disfigurement he has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury.

## VI.     <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays:

(a) That Summons issue requiring the presently-named Defendants to appear and Answer this Complaint as provided by law;

(b) That Plaintiff has a trial by jury;

(c) That Plaintiff recovers from Defendants all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under North Carolina law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

(d) That all costs be taxed against Defendants; and

(e) For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

60

Respectfully submitted, this _____ day of August, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Cale Conley*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:    (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

*/s/ Noah B. Abrams*

Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:    (919) 755-9166
NAbrams@abramslawfirm.com
**EDWARDS KIRBY, L.L.P.**

*/s/ Winston S. Kirby*
Winston S. Kirby
State Bar Number 49316
Andrew C. Avram
State Bar Number 51106
3201 Glenwood Avenue, Suite 100
Raleigh, NC  27619
Telephone:    (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

61

## CERTIFICATE OF SERVICE

Plaintiffs this day served a copy of the foregoing pleading upon the below listed parties to this matter by electronic e-file through Odyssey and by electronic mail:

SHOOK HARDY & BACON LLP
Colin K. Kelly, Esq.
Caroline M. Gieser, Esq.
Timia A. Kelton, Esq.
1230 Peachtree Street, N.E., Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Attorneys for Defendant Asbury Automotive Group, Inc. and Volkswagen Group of America, Inc.*

This 15th day of August, 2023.

> **CONLEY GRIGGS PARTIN LLP**
>
>
> */s/ Cale Conley*
> CALE CONLEY
> Georgia Bar No. 181080

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/16/2023 10:01 AM**
TIANA P. GARNER, CLERK

**STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PARTY DEFENDANTS

This matter comes before the Court upon motion by Plaintiff Douglas Grant Morton, and by and through undersigned counsel, for leave to amend the Complaint for Damages to add claims against the following additional party-defendants:

- Lear Corporation ("Lear");
- FNK North America, Inc.; Faurecia-NHK Co., Ltd.; Faurecia Automotive Seating, LLC; NHK Seating of America, Inc.; NHK Spring Co. Ltd.; and Faurecia USA Holdings, Inc. (collectively, "Faurecia");
- Brose North America, Inc.; and Brose Fahrzeugteile SE & Co. Kommanditgesellschaft ("Brose"); and
- Grammer, Inc.; Grammer Industries, LLC, and Grammer AG ("Grammer").

Pursuant to O.C.G.A. §§ 9-11-15, 9-11-21, and applicable case law, including *Horne v. Carswell,* 167 Ga. App. 229, 306 S.E.2d 94 (1983), the Court notes that amendments to pleadings should be liberally provided. The Court further finds that under the circumstances presented here, it finds that the addition of the parties sought to be added to the case would not unfairly prejudice the added parties, has not been delayed unduly, and would promote the interests of judicial efficiency. Accordingly, IT IS HEREBY ORDERED:

The motion is **GRANTED**. Plaintiff may immediately serve a second original of the Amended Complaint upon the registered agent for Lear, Faurecia, Brose, and Grammer in the State of Georgia or shall otherwise serve Lear, Faurecia, Brose, and Grammer, in a manner prescribed or provided for under the Georgia Civil Practice Act. The Court authorizes the issuance of a Second Original with process for the purposes of serving the Amended Complaint upon the added parties. All remaining parties to the action shall be provided a copy of the Amended Complaint as the rules require.

SO ORDERED this 16 day of August, 2023.

Judge Shawn Fitzpatrick Bratton
State Court of Gwinnett County

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/22/2023 11:19 AM**
TIANA P. GARNER, CLERK

**STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. | ) | |
| d/b/a AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAURECIA AUTOMOTIVE SEATING, LLC; | ) | |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | **JURY TRIAL DEMANDED** |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND**

COMES NOW Plaintiff Douglas Grant Morton and files this First Amended Complaint for

Damages and Demand for Jury Trial, respectfully showing the Court the following:

**INTRODUCTION**

1.

This is a civil tort action seeking recovery for personal injuries suffered by Douglas Grant

Morton ("Douglas Morton") arising from a motor vehicle collision that occurred on September 25,

2021, in Marshall, North Carolina. On that day, Scottie Dale Proffitt drove a 1999 Dodge Ram truck into the back of a 2020 Audi A6 (the "Subject Vehicle") being driven by Douglas Morton. The driver seat occupant restraint system of the Subject Vehicle failed to contain and protect Mr. Morton – in particular, the driver seat head restraint broke and failed in the incident, proximately causing him to suffer a catastrophic spinal cord injury that has left him permanently paralyzed.

## II. PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS

2.

Plaintiff Douglas Morton ("Plaintiff" or "Mr. Morton" herein) is a resident of the State of California. By filing this action, he avails himself of this Court's jurisdiction.

3.

Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. (hereinafter "Audi, Inc." when separately referenced) is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in Herndon, Virginia. At all relevant times, Audi, Inc. (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, Inc. knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia.  Audi, Inc. also maintains a registered agent in this State – Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092, where Audi, Inc. may be served with legal process in

2

this case. At all relevant times, Audi, Inc. promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, maintains a registered agent to transact business in this State and County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, Inc.

4.

*Personal Jurisdiction over Audi, Inc.: Georgia's Long-Arm Statute*. Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, Inc. (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Audi, Inc. also maintains a registered agent to transact business in this State and County. Under Georgia law, a foreign corporation that is authorized to transact business in Georgia is a resident of this State and subject to direct personal jurisdiction in this State.[1] Thus, this Court has direct personal jurisdiction over Defendant Audi, Inc. as a resident

---

[1] *See* O.C.G.A. § 9-10-90 (Georgia's long-arm statute defines "nonresident" to include a corporation that "is not authorized to do or transact business in this state at the time a claim or cause of action under [Georgia's long-arm statute] arises"); *see also Cooper Tire & Rubber Company v. McCall*, 312 Ga. 422 (2021); *Allstate Inc. Co. v. Klein*, 262 Ga. 599, 601 (1992) (The Supreme Court of Georgia held that a foreign corporation authorized to transact business in

3

of this State in addition to long-arm personal jurisdiction over Audi, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

5.

*Personal Jurisdiction over Audi, Inc.: Due Process.* Audi, Inc. (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, it maintains a registered agent to transact business in this State and County, and there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, Inc.'s actions in marketing and selling its vehicles to locations throughout Georgia and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being haled into Court here. In short, Audi, Inc. has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi, Inc. in this Court comports with due process.

---

Georgia was a resident for purposes of personal jurisdiction because it did not meet the definition of "nonresident" in O.C.G.A. § 9-10-90 and could, thus, "sue or be sued to the same extent as a domestic corporation").

4

6.

Upon information and belief, Defendant Audi of America, LLC (hereinafter "Audi, LLC" when separately referenced) is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Herndon, Virginia. At all relevant times, Audi, LLC (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi, LLC knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Audi, LLC may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808. At all relevant times, Audi, LLC promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi, LLC.

7.

*Personal Jurisdiction over Audi, LLC: Georgia's Long-Arm Statute*. Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of

5

Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi, LLC (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi, LLC under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

8.

*Personal Jurisdiction over Audi, LLC: Due Process.* Audi, LLC (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi, LLC's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being haled into Court here. In short, Audi, LLC has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play

6

and substantial justice. Exercising personal jurisdiction over Audi, LLC in this Court comports with due process.

<div align="center">9.</div>

Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Upon information and belief, Audi AG is a wholly-owned subsidiary of Defendant Volkswagen AG, and Audi AG is a sister company with its U.S. distributor, Defendant Audi, Inc. At all relevant times, Audi AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. Audi AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Audi AG may be served with process by having a German-translated copy of this Complaint served upon Audi AG through the Germany State Central Authority as authorized by the Hague Convention. At all relevant times, Audi AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because Audi AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with

<div align="center">7</div>

the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Audi AG.

<div align="center">10.</div>

*Personal Jurisdiction over Audi AG: Georgia's Long-Arm Statute*. Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Audi AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising, promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

<div align="center">11.</div>

*Personal Jurisdiction over Audi AG: Due Process.* Audi AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected

<div align="center">8</div>

by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). Audi AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being haled into Court here. In short, Audi AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Audi AG in this Court comports with due process based upon the contacts detailed above and those additional contacts detailed below:

- Audi AG exercises direct control over the marketing activities of the numerous authorized Audi dealers in Georgia – including specifically the authorized Audi dealer where the Subject Vehicle was first shipped a purchased by a consumer.

- Those authorized Audi dealers in Georgia are only allowed to use the Audi trademarked name, trademarked Audi emblem, and advertise and sell Audi vehicles with the express permission of Audi AG, and by following Audi AG's specific rules for how Audi vehicles can and cannot be marketed.

- Audi AG has registered and owns numerous "Audi" trademarks with the U.S. Patent and Trademark Office.

- Audi AG works directly with its sister company Audi Inc. (which maintains a registered agent in Georgia) to distribute hundreds of thousands of Audi vehicles all over the United States, and specifically in Georgia.

- Audi AG and Audi Inc. regularly refer to themselves collectively as "Audi" and have represented that Audi AG is Audi Inc.'s "parent company." In fact, Audi AG

9

has admitted that because the purpose of Audi Inc. is to sell Audi-brand vehicles, there is an economic benefit for Audi AG if Audi Inc.'s operations are successful.

- In 2019, over 224,000 Audi vehicles were shipped to the U.S., and in 2020 (the year the Subject Vehicle was first sold by an authorized Audi dealer in Georgia), over 186,000 Audi vehicles were shipped to the U.S.

- Audi AG describes the U.S. as a "core market" for its vehicles and actively monitors and forecasts business and market trends in the U.S., including impacts on its authorized Audi dealers.

- Audi AG actively participates in U.S. rulemaking for vehicle safety standards, including making direct requests to the National Highway Traffic Safety Administration for exceptions.

- Audi AG on its own and collectively with Audi Inc. has spent millions of dollars and expended significant effort in advertising, promoting, and developing the Audi trademarks throughout the world—including the U.S. and Georgia specifically.

- Audi AG's revenue in 2020 (the year the Subject Vehicle was first sold to a consumer by and through an authorized Audi dealer in Georgia) was approximately $55 Billion.

12.

Defendant Volkswagen AG (hereinafter "VW AG" when separately referenced) is a German corporation with its principal place of business in Wolfsburg, Germany. Upon information and belief, VW AG is the parent company of Defendants Audi AG and Audi Inc., and exercises control over the business activities of the two entities. At all relevant times, VW AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers,

10

retailers or other entities) was doing business in the State of Georgia, was specifically targeting the Georgia market, and derived substantial revenue from ongoing and continuous sales of motor vehicles it was actively involved in designing, manufacturing, producing, promoting, advertising, and selling, including the Subject Vehicle which was specifically shipped to Georgia and purchased by Plaintiff at an authorized Audi dealership in Georgia. VW AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant VW AG may be served with process by having a German-translated copy of this Complaint served upon VW AG through the Germany State Central Authority as authorized by the Hague Convention. At all relevant times, VW AG promoted via television, internet, through affiliated distributors and retailers, and otherwise for its vehicles (including the Subject Vehicle and its model line) to be sold in Georgia. Because VW AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to VW AG.

13.

*Personal Jurisdiction over VW AG: Georgia's Long-Arm Statute*. VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, VW AG (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, marketing, advertising,

promoting, marketing, and shipping vehicles specifically for sale in Georgia, including the Subject Vehicle that was shipped directly to Georgia for first sale to a consumer (Plaintiff) at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over VW AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

14.

*Personal Jurisdiction over VW AG: Due Process.* VW AG (either on its own and/or by and through its affiliated importers, distributors, dealers, retailers or other entities) derives substantial revenue from sales of its motor vehicles (including the Subject Vehicle that was first sold by and through a authorized Audi dealership in Georgia) within the State of Georgia and purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. It shipped, or participated in shipping, the subject Audi A6 and other motor vehicles with the knowledge, intent, and/or reasonable expectation that they would find their way to Georgia through the stream of commerce along with marketing directly targeted at Georgia and Georgia consumers. Its business is affected by motor vehicle sales in Georgia. In fact, there are numerous authorized Audi dealerships and service centers in Georgia (including specifically the authorized Audi dealer where the Subject Vehicle was first shipped and purchased by Plaintiff in Georgia). VW AG's actions in marketing and selling its vehicles to locations throughout Georgia should have led it to reasonably anticipate being haled into Court here. In short, VW AG has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over VW AG in this Court comports with due process. Hereinafter, Defendants Audi, LLC, Audi, Inc., Audi AG, and VW AG shall be collectively referred to as "the Audi Defendants" or "Audi."

12

15.

Defendant Lear Corporation ("Lear") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Southfield, Michigan. At all relevant times, Lear was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts, including seats and seating systems, for use in motor vehicles, including specifically the 2020 Audi A6's front driver seating system at-issue in this matter (the "Subject Seat"). Lear transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Lear may be served by delivering Summons and the Complaint upon its registered agent, The Corporation Company, located at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan, 48170. Because Lear transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Lear.

16.

*Personal Jurisdiction over Lear: Georgia's Long-Arm Statute*. Defendant Lear transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Lear (either on its own and/or by and through its subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the Subject Seat that was shipped to and sold at an authorized Audi dealership

13

in Georgia. Thus, this Court has long-arm personal jurisdiction over Audi AG under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

17.

*Personal Jurisdiction over Lear: Due Process.* Defendant Lear derives revenue from sales of its motor vehicle component systems and parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the Subject Seat (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Lear's actions in marketing and selling its motor vehicle seats and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Lear has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Lear in this Court comports with due process.

18.

Defendant FNK North America, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Troy, Michigan. At all relevant times, FNK North America, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts, including seatbacks and seating systems for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter (the "Subject

14

Seatback"). FNK North America, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant FNK North America, Inc. may be served by delivering Summons and the Complaint upon its registered agent located at Capitol Services, Inc., 108 Lakeland Avenue, Dover, Delaware, 19901. Because FNK North America, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia North America.

<div align="center">19.</div>

Defendant Faurecia-NHK Co., Ltd. is a Japanese corporation with its principal place of business in Naka-Ku Yokohama, Japan. At all relevant times, Faurecia-NHK Co., Ltd. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. Faurecia-NHK Co., Ltd. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Japan is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant Faurecia-NHK Co., Ltd. may be served with process by having the documents, both the original English and a Japanese translation thereof, served upon Faurecia-NHK Co., Ltd. through the channels authorized by the Hague Convention. Because Faurecia-NHK Co., Ltd. transacts business in this State, either on its own and/or by and through its wholly-owned

<div align="center">15</div>

and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia-NHK Co., Ltd.

20.

Defendant Faurecia Automotive Seating, LLC is a is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Troy, Michigan. At all relevant times, Faurecia Automotive Seating, LLC. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. Faurecia Automotive Seating, LLC transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Faurecia Automotive Seating, LLC. may be served by delivering Summons and the Complaint upon its registered agent, Capitol Corporate Services, Inc., located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, Michigan 48170.[2] Because Faurecia Automotive Seating, LLC transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia Automotive Seating, LLC.

---

[2] In the alternative, out of an abundance of caution, Faurecia Automotive Seating, LLC may also be served by delivering Summons and the Complaint upon its registered agent to transact business in its State of Incorporation, Capitol Services, Inc., located at 108 Lakeland Avenue, Dover, Delaware 19901.

16

21.

Defendant NHK Seating of America, Inc. is a is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Frankfort, Indiana. At all relevant times, NHK Seating of America, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. NHK Seating of America, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant NHK Seating of America, Inc. may be served by delivering Summons and the Complaint upon its registered agent, NHK International Corporation, located at 46855 Magellan Drive, Novi, Michigan 48377. Because NHK Seating of America, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to NHK Seating of America, Inc.

22.

Defendant NHK Spring Co., Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. At all relevant times, NHK Spring Co., Ltd. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. NHK Spring Co., Ltd. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia

17

for use by consumers in Georgia. Because Japan is a signatory to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matter (the "Hague Convention"), Defendant NHK Spring Co., Ltd. may be served with process by having the documents, both the original English and a Japanese translation thereof, served upon NHK Spring Co., Ltd. through the channels authorized by the Hague Convention. Because NHK Spring Co., Ltd. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to NHK Spring Co., Ltd.

23.

Defendant Faurecia USA Holdings, Inc. is a is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Auburn Hills, Michigan. At all relevant times, Faurecia USA Holdings, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seatback at-issue in this matter. Faurecia USA Holdings, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Faurecia USA Holdings, Inc. may be served by delivering Summons and the Complaint upon its registered agent, Capitol Corporate Services, Inc., located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, Michigan 48170.[3] Because Faurecia USA Holdings, Inc.

---

[3] In the alternative, out of an abundance of caution, Faurecia USA Holdings, Inc. may also be served by delivering Summons and the Complaint upon its registered agent to transact business in

18

transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Faurecia USA Holdings, Inc.

<div align="center">24.</div>

Defendants FNK North America, Inc., Faurecia-NHK Co., Ltd., Faurecia Automotive Seating, LLC, NHK Seating of America, Inc., NHK Spring Co., Ltd., and Faurecia USA Holdings, Inc. shall herein be collectively referred to as "Faurecia Defendants" or "Faurecia."

<div align="center">25.</div>

*Personal Jurisdiction over the Faurecia Defendants: Georgia's Long-Arm Statute*. The Faurecia Defendants transact business in the State of Georgia, derive substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Faurecia (either on their own and/or by and through their subsidiaries or affiliated entities) were actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seatback of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Faurecia under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

---

its State of Incorporation, Capitol Services, Inc., located at 108 Lakeland Avenue, Dover, Delaware 19901.

<div align="center">19</div>

26.

*Personal Jurisdiction over Faurecia: Due Process.* The Faurecia Defendants derive revenue from the sale of motor vehicle component systems and parts within the State of Georgia and have purposefully availed themselves of the privilege of doing business in Georgia. They shipped, or participated in shipping, the subject 2020 Audi A6 front driver seatback (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Their business is affected by motor vehicle seats and component part sales in Georgia, either on its own and/or by and through its subsidiaries in Georgia and other Faurecia locations in states surrounding Georgia. Faurecia's actions in marketing and selling its motor vehicle seatbacks and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, the Faurecia Defendants have sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Faurecia in this Court comports with due process.

27.

Upon information and belief, Defendant Brose North America, Inc. is a limited liability company incorporated under the laws of the State of Michigan with its principal place of business in Auburn Hills, Michigan. At all relevant times, Brose North America, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seating system at-issue in this matter. Brose

20

North America, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Brose North America, Inc. may be served by delivering Summons and the Complaint upon its registered agent, The Corporation Company, located at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan 48170. Because Brose North America, Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Brose North America, Inc.

28.

*Personal Jurisdiction over Brose North America, Inc.: Georgia's Long-Arm Statute*. Defendant Brose North America, Inc. transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased, and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Brose North America, Inc. (either on their own and/or by and through their subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seating system of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Brose North America, Inc. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

29.

*Personal Jurisdiction over Brose North America, Inc.: Due Process.* Defendant Brose North America, Inc. derives revenue from the sale of motor vehicle component systems and parts

21

within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2020 Audi A6 front driver seating system (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Brose North America, Inc.'s actions in marketing and selling its motor vehicle seatbacks and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Brose North America, Inc. has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Defendant Brose North America, Inc. in this Court comports with due process.

30.

Defendant Brose Fahrzeugteile SE & Co. Kommanditgesellschaft (hereinafter "Brose SE" when separately referenced) is a German corporation with its principal place of business in Coburg, Germany. Upon information and belief, Brose is the parent company of Defendants Brose North America, Inc. At all relevant times, Brose SE (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seating system at-issue in this matter. Brose SE knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Hague Convention,

Defendant Brose SE may be served with process by having a German-translated copy of this Complaint served upon Brose SE through the Germany state Central Authority as authorized by the Hague Convention. Because Brose SE transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Brose SE.

31.

*Personal Jurisdiction over Brose SE.: Georgia's Long-Arm Statute*. Defendant Brose SE transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased, and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Brose SE (either on their own and/or by and through their subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seating system of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Brose SE. under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

32.

*Personal Jurisdiction over Brose SE: Due Process.* Defendant Brose SE derives revenue from the sale of motor vehicle component systems and parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2020 Audi A6 front driver seating system (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way

23

to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Brose SE's actions in marketing and selling its motor vehicle seatbacks and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Brose SE has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Defendant Brose SE in this Court comports with due process. Defendants Brose North America, Inc. and Brose SE shall be collectively referred to as "Brose" or "Defendant Brose."

<p style="text-align:center">33.</p>

Defendant Grammer, Inc. is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Shannon, Mississippi. At all relevant times, Grammer, Inc. was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seat head restraint at-issue in this matter. Grammer, Inc. transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Grammer, Inc. may be served by delivering Summons and the Complaint upon its registered agent, Michael Tapscott, located at 322 West Jefferson Street, Tupelo Mississippi, 38804.[4] Because Grammer,

---

[4] In the alternative, out of an abundance of caution, Grammer, Inc. may also be served by delivering Summons and the Complaint upon its registered agent to transact business in its State of Incorporation, CT Corporation Systems, Inc., located at 1010 Dale Street No, Saint Paul, Minnesota 55117.

Inc. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Grammer, Inc.

34.

Defendant Grammer Industries, LLC is a corporation incorporated under the laws of the State of South Carolina with its principal place of business in Troy, Michigan. At all relevant times, Grammer Industries, LLC was doing business in the state of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seat head restraint at-issue in this matter. Grammer Industries, LLC transacts business in this State, derives substantial revenue from business in the State of Georgia, and knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Defendant Grammer Industries, LLC may be served by delivering Summons and the Complaint upon its registered agent, CT Corporation System, located at 40600 Ann Arbor Road, Suite 201, Plymouth, Michigan 48170.[5] Because Grammer Industries, LLC. transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Grammer Industries, LLC.

---

[5] In the alternative, out of an abundance of caution, Grammer Industries, LLC may also be served by delivering Summons and the Complaint upon its registered agent to transact business in its State of Incorporation, CT Corporation Systems, Inc., located at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

25

35.

Defendant Grammer AG is a German corporation with its principal place of business in Ursensollen, Germany. Upon information and belief, Grammer AG is the parent company of Defendants Grammer, Inc. and Grammer Industries, LLC. At all relevant times, Grammer AG (either on its own and/or by and through its wholly-owned and/or affiliated importers, distributors, dealers, retailers or other entities) was doing business in the State of Georgia and was designing, manufacturing, testing, marketing, promoting, advertising, supplying, and selling component systems and parts for use in motor vehicles, including specifically the 2020 Audi A6's front driver seat head restraint at-issue in this matter. Grammer AG knew at all relevant times that its products were (and are) being sold in the State of Georgia for use by consumers in Georgia. Because Germany is a signatory to The Hague Convention, Defendant Grammer AG may be served with process by having a German-translated copy of this Complaint served upon Grammer AG through the German state Central Authority as authorized by the Hague Convention. Because Grammer AG transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from this State, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Grammer AG.

36.

Defendants Grammar, Inc., Grammar Industries, LLC, and Grammar AG shall herein be collectively referred to as the "Grammer Defendants" or "Grammer."

37.

*Personal Jurisdiction over Grammer: Georgia's Long-Arm Statute*. The Grammer Defendants transact business in the State of Georgia, derive substantial revenue from goods sold,

26

purchased, and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed a tortious act or omission in Georgia. Namely, Grammer (either on their own and/or by and through their subsidiaries or affiliated entities) was actively involved in designing, manufacturing, assembling, and shipping component systems and parts for use in motor vehicles specifically for sale in Georgia, including the front driver seat head restraint of the subject vehicle that was shipped to and sold at an authorized Audi dealership in Georgia. Thus, this Court has long-arm personal jurisdiction over Grammer under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

<p style="text-align:center">38.</p>

*Personal Jurisdiction over Grammer: Due Process.* The Grammer Defendants derive revenue from the sale of motor vehicle component systems and parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2020 Audi A6 front driver seat head restraint (including the components used with and/or compromising said system parts) and other motor vehicle seats and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle seats and component part sales in Georgia. Grammer's actions in marketing and selling its motor vehicle head restraints and components to businesses (such as the Audi Defendants) and consumers located throughout the State of Georgia should have led it to reasonably anticipate being haled into court here. In short, Grammer has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Grammer in this Court comports with due process.

<p style="text-align:center">27</p>

39.

Defendant Asbury Automotive Group, Inc. ("Asbury") is a corporation incorporated under the laws of the State of Delaware with its principal place of business and headquarters in Duluth, Georgia.[6] Upon information and belief, at all relevant times, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, was and is in the business of maintaining, repairing, inspecting, servicing, marketing, promoting, advertising, assembling, distributing, leasing, and/or selling motor vehicles, including the Subject Vehicle that was first sold to Plaintiff at Asbury's authorized Audi dealer in Georgia (referred to as "Audi North Atlanta") and that performed service, repair and/or maintenance on the Subject Vehicle numerous times before the subject incident. Defendant Asbury transacts business in the State of Georgia, derives substantial revenue from business in this State, maintains its principal place of business in this state, and maintains a registered agent to transact business in this State. Defendant Asbury may be served by delivering Summons and the Complaint upon its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Because Defendant Asbury transacts business in this State, either on its own and/or by and through its wholly-owned and/or affiliated entities, derives substantial revenue from business in this State, maintains its principal place of business in Gwinnett County, and is a joint tortfeasor with the other Defendants in this case, jurisdiction and venue are proper in this Court with respect to Defendant Asbury.

---

[6] The Georgia Secretary of State business search database lists Asbury's principal office address in Duluth, Georgia, and Asbury's 2022 Form 10-K filed with the U.S. Securities and Exchange Commission also lists its corporate headquarters and principal executive offices at the same address in Duluth.

40.

*Personal Jurisdiction over Defendant Asbury*.  Because Defendant Asbury actively maintains its principal place of business in the State of Georgia (and specifically in Gwinnett County) and maintains a registered agent to transact business in this State, there can be no dispute that this Court may properly exercise personal jurisdiction over Defendant Asbury.

41.

Upon information and belief, Defendants XYZ Companies 1-4 are partnerships, limited liability companies, and/or corporations who designed and/or manufactured the Subject Vehicle components, including the front driver seat, seatback, seating system, and/or head restraint components at issue in this lawsuit and described in more detail herein. The identities of XYZ Companies 1-4 cannot be ascertained at this time, but they are believed to be in some manner responsible for the acts and/or omissions alleged herein.[7] Plaintiff will amend this Complaint to substitute the identities of these Defendants once ascertained through the discovery process.

---

[7] Although Defendant Audi, Inc. (after receiving the original Complaint) informally informed Plaintiff's counsel that "Lear" supplied the subject vehicle's driver's seat, "Faurecia" supplied the subject vehicle's seatback, "Brose" supplied the subject vehicle's driver seat frame, and "Grammer" supplied the subject vehicle's driver headrest, Plaintiff has not yet been afforded an opportunity for full fact discovery to ascertain which specific legal entities associated with each of those names were responsible for the design of the respective component systems/parts.  As shown above and out of an abundance of caution, Plaintiff has named multiple potential Defendants associated with each such component manufacturer based upon publicly available information known at this time and will amend this Complaint, if necessary, to add any other entities associated with the component suppliers once afforded the opportunity for full fact discovery to determine which legal entity(ies) were responsible for the design and manufacture of those components. However, because Plaintiff has broadly named multiple parent and subsidiary entities where necessary for each component supplier (many of whom share headquarters and corporate officers), such potential added Defendants will have actual notice of this Amended Complaint and the claims asserted herein prior to the running of the statute of limitations.

42.

Plaintiff reserves the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault or that any presently unnamed entity is believed to be at fault after further facts are shown in discovery.

43.

Jurisdiction and venue are not proper in any United States District Court because complete diversity of citizenship of the parties is lacking, there is no federal question giving rise to these claims, and pursuant to U.S.C. § 1441(b)(2) the "resident defendant" exception applies as Defendant Asbury is headquartered in Georgia and, thus, a resident of Georgia.

44.

This is an action related to tortious acts or omissions committed in and producing injury in the State of North Carolina. Therefore, the procedural and remedial laws of Georgia and the substantive laws of North Carolina that do not contravene Georgia public policy apply to the claims asserted herein.

45.

Venue is proper in this County because Defendants Asbury and Audi, Inc. maintain a registered agent for service of process in Gwinnett County. Further, venue is proper in this County as to Defendants Audi, LLC, Audi AG, and VW AG because they are joint tortfeasors with the Defendants Asbury and Audi, Inc., and where defendants reside in different counties, venue may be maintained in any county in which one of the defendants resides.

30

### III.    OPERATIVE FACTS

*A.  The Subject Motor Vehicle Collision*

46.

The motor vehicle collision giving rise to this action occurred on September 25, 2021, at approximately 1:20 p.m. on U.S. Highway 25 in Marshall, North Carolina.  At that time, Douglas Morton was travelling northbound on U.S. 25 and stopped for traffic. He was at all relevant times properly seat belted and acting prudently and with reasonable care.

47.

Scottie Dale Proffitt was traveling northbound on U.S. 25 behind Mr. Morton. Mr. Proffitt failed to maintain a proper lookout and, as a result, drove his 1999 Dodge Ram truck into the back of the Subject Vehicle Mr. Morton was operating.

48.

Though Mr. Morton was properly wearing a seatbelt, the 2020 Audi A6's driver occupant restraint system failed to properly contain Mr. Morton's body during the collision, and in particular, the driver seat head restraint broke, allowing Mr. Morton's head and body to move back and over the seat. When an ambulance arrived at the scene, Mr. Morton alerted paramedics that he could not feel his legs.

49.

Mr. Morton was transported to Mission Memorial Hospital and immediately presented to the emergency room. Mr. Morton sustained numerous injuries, including a catastrophic thoracic spinal fracture and complete paraplegic spinal paralysis.

31

50.

Mr. Morton remained at Mission Memorial Hospital for 35 days.

51.

Mr. Morton was thereafter admitted to CarePartners Rehabilitation Hospital, where he underwent significant rehabilitation for approximately four months due to the severe nature of his spinal injuries and complications caused by extensive infections and ulcerations.

52.

Despite his extensive efforts towards rehabilitation, Mr. Morton is permanently paralyzed from his chest down.

53.

Mr. Morton's severe and catastrophic injuries were proximately caused by the Subject Vehicle's defective driver seat occupant restraint system and head restraint, which failed to provide adequate neck, head and body containment and protection, allowing Mr. Morton's head and body to move back and over the driver seat – injurious contact which should not and would not have occurred if the Subject Vehicle had adequately contained Mr. Morton's body during the collision.

B. The Subject 2020 Audi A6

54.

The 2020 Audi A6, VIN No. WAUE8AF26LN002921, a four-door sedan, was designed, manufactured, assembled, imported and/or distributed, and placed into the stream of commerce as a complete product by the Audi Defendants and Defendant Asbury.

55.

The Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer on approximately January 31, 2020, at an authorized Audi dealer

32

that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021.

56.

As with any of its vehicles, the Audi Defendants, as the designer and manufacturer of the Subject Vehicle, designed and obtained components for the Subject Vehicle from a variety of suppliers which the Audi Defendants selected and contracted with to provide parts or components made to the Audi Defendants' design and/or manufacturing specifications. Those parts and components were then assembled, and the completed vehicle was manufactured and sold by the Audi Defendants and Defendant Asbury, as an Audi product sold under its Audi brand.

57.

The Audi Defendants, as the designer and manufacturer of the completed vehicle, and Defendant Asbury, as the seller and distributor of the completed vehicle, placed it into the stream of commerce and are both legally responsible for failures of components, whether designed by Audi or obtained from component suppliers, that make up the completed vehicle.

58.

Upon information and belief, the Subject Vehicle had not been materially altered or modified from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by the Audi Defendants. In particular, to Plaintiff's knowledge, no one modified or altered in any way the driver seat occupant restraint system, including the driver seat head restraint, or assembly of any of its component or sub-component

33

parts – which parts and components were specified, obtained, assembled and placed into the completed vehicle by the Audi Defendants, and as designed and manufactured by Audi and its employees and engineers.

59.

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, Defendant Lear manufactured and/or designed the front driver seat in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver seat. Lear is, therefore, also legally responsible for the failures of the products and any related components that it supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products it manufactured and/or designed for Audi.

60.

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the Faurecia Defendants manufactured and/or designed the front driver seatback in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver seatback. The Faurecia Defendants are, therefore, also legally responsible for the failures of the products and any related components that they supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products they manufactured and/or designed for Audi.

61.

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the Brose Defendants manufactured and/or designed

34

the front driver seat frame in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver seat frame. The Brose Defendants are, therefore, also legally responsible for the failures of the products and any related components that they supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products they manufactured and/or designed for Audi.

62.

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, the Grammer Defendants manufactured and/or designed the front driver seat head restraint in the subject vehicle as a component supplier to the Audi Defendants and did so subject to specifications and tolerances required by Audi (as the original equipment manufacturer, or "OEM") for the front driver head restraint. The Grammer Defendants are, therefore, also legally responsible for the failures of the products and any related components that they supplied to Audi for the subject vehicle, as well as failures to warn of dangers of the products they manufactured and/or designed for Audi.

63.

Plaintiff alleges this case as a "crashworthiness" case, i.e., that the Subject Vehicle and in particular its front driver seat occupant restraint system was not adequately designed, manufactured, marketed, and sold in a condition to provide sufficient or "crashworthy" protection, containment, and restraint to Douglas Morton in what was a foreseeable level of crash forces.

64.

It was, at all relevant times, known to the Defendants that Audi vehicles needed to be crashworthy during use on the public highways and that it is essential that all component parts of

35

the vehicle perform without failure so that occupants involved in collisions are properly protected from grievous injury.

<div align="center">65.</div>

Further, at all relevant times, the Defendants knew that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint and seating systems and fully functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

<div align="center">66.</div>

Despite this knowledge, the Defendants either designed the Subject Vehicle in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured the Subject Vehicle such that its occupant restraint and seating system and head restraints were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

<div align="center">67.</div>

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, when Defendant Lear, the Faurecia Defendants, the Brose Defendants, and the Grammer Defendants designed, tested, manufactured, marketed and sold the subject vehicle front driver seat, seatback, seat frame, and head restraints to Audi for use in the subject vehicle, and at all times since then, they had actual knowledge that front driver seat occupants can suffer severe debilitating injuries in rear-end collisions if the occupant containment and restraint system fails, and further that adequate occupant restraint and seating systems and fully functioning head restraints significantly reduce the likelihood and severity of spinal cord injuries to persons in foreseeable rear-end collisions.

<div align="center">36</div>

68.

Despite this knowledge, Defendants Lear, Faurecia, Brose, and/or Grammer manufactured and/or designed the components of the Subject Vehicle's occupant restraint and seating system and head restraint in a defective way such that it did not adequately protect Douglas Morton, or defectively manufactured the components of the Subject Vehicle's occupant restraint and seating system and head restraint such that the components were inadequate to protect occupants from serious injury in a foreseeable rear-end collision, or both.

69.

As a result of the negligence, breaches of warranty, acts, and/or omissions of the Defendants and the defective and/or negligently designed vehicle described herein, the Audi A6 failed to provide appropriate and necessary crash protection to Douglas Morton in his driver seat position even though he was property seated in the driver seat and properly wearing the seat belt system provided in the vehicle. Specifically, the Subject Vehicle's driver seat occupant restraint system and head restraint failed to provide reasonably necessary containment and protection in this incident.

70.

A rear collision producing rear impact forces such as this one was at all times foreseeable to manufacturers, component suppliers, and retailers of vehicles like the Defendants, who know that their products will encounter crashes, and they have a duty to take reasonable steps to include adequate safety systems to restrain, contain, and protect vehicle occupants.

71.

In short, while Douglas Morton may have suffered some injuries from the crash itself, his injuries were more severe, exacerbated and lead to permanent paralysis as a proximate result of

37

the defective, negligently designed, and inadequately crashworthy condition of the driver seat occupant restraint system and driver head restraint which was designed, manufactured, and placed into the stream of commerce by Defendants.

72.

As outlined below, all Defendants are joint tortfeasors for the Douglas Morton's injuries and damages in an amount to be determined by the enlightened conscience of the jury, but under any scenario, in an amount exponentially in excess of the minimum amount necessary to confer jurisdiction in this Court.

## IV.     LEGAL CLAIMS

### COUNT ONE
**(The Audi Defendants—Negligence and/or Strict Products Liability)**

73.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

74.

As a product designer and manufacturer of consumer vehicles, Audi owed and owes legal duties to Plaintiff and the public in general to design and manufacture vehicles that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

75.

When Audi designed and/or manufactured the Subject Vehicle, it knew, or should have known through its own testing, studies, and other real-world incidents, that the front driver seat and occupant restraint system failed to contain and protect occupants from injury in rear-end collisions.

38

76.

Audi failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front driver seat of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Audi chose a front-seat design, and/or manufactured a front seat, that lacks adequate crashworthiness in foreseeable collisions.

77.

When it designed the 2020 Audi A6, the Audi Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Audi designed and/or manufactured the 2020 Audi A6 with defective front seats so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The A6's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

78.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the A6 that Plaintiff's claims are based on as inherent characteristics of the A6 that cannot be eliminated without substantially compromising its usefulness or desirability.

39

79.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle by the Audi Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

80.

The Audi Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Audi breached its duty by failing to warn of those dangers.

81.

The Audi Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Audi never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

82.

The risks to which Audi exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

83.

Audi's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

40

84.

The Audi Defendants are liable for the Subject Vehicle's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT TWO
### (Defendant Lear—Negligence and/or Strict Products Liability)

85.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

86.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, Defendant Lear, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

87.

When Lear designed and/or manufactured the Subject Vehicle's front seat, it knew, or should have known through its own testing, studies, and other real-world incidents, that the seating system failed to contain and protect occupants from injury in rear-end collisions.

88.

Lear failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seat of the 2020 Audi A6 without sufficient strength and structural

41

integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision. Instead, Lear chose a seat, and/or manufactured a seat, that lacks adequate crashworthiness in foreseeable collisions.

89.

When it designed the 2020 Audi A6 front driver seat, Lear reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Lear designed and/or manufactured the subject vehicle with a defective front seat so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The seat's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

90.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front driver seat that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seat that Plaintiff's claims are based on as inherent characteristics of the seat that cannot be eliminated without substantially compromising its usefulness or desirability.

91.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seat by Defendant Lear, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

42

92.

Defendant Lear also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat. Lear breached its duty by failing to warn of those dangers.

93.

Defendant Lear acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seat, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat of the Subject Vehicle. However, Lear never warned consumers or Mr. Morton that the seat's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

94.

The risks to which Lear exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

95.

Lear's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

96.

Defendant Lear is liable for the Subject Vehicle's front driver seat's design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined

43

by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT THREE
### (The Faurecia Defendants—Negligence and/or Strict Products Liability)

97.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

98.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, the Faurecia Defendants, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

99.

When Faurecia designed and/or manufactured the Subject Vehicle's front seating system, it knew, or should have known through its own testing, studies, and other real-world incidents, that the seating system failed to contain and protect occupants from injury in rear-end collisions.

100.

Faurecia failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seating system of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a

44

rear end collision. Instead, Faurecia chose a seating system, and/or manufactured a seating system, that lacks adequate crashworthiness in foreseeable collisions.

<p style="text-align:center">101.</p>

When it designed the 2020 Audi A6 front seating system, Faurecia reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet Faurecia designed and/or manufactured the front seating system with a defective front seatback so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The seating system's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

<p style="text-align:center">102.</p>

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front seatback and seating system that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seating system that Plaintiff's claims are based on as inherent characteristics of the seating system that cannot be eliminated without substantially compromising its usefulness or desirability.

<p style="text-align:center">103.</p>

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seatback and seating system by the Faurecia Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

<p style="text-align:center">45</p>

104.

The Faurecia Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seatback and seating system. Faurecia breached its duty by failing to warn of those dangers.

105.

Faurecia acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seating system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front seating system of the Subject Vehicle. However, Faurecia never warned consumers or Mr. Morton that the seating system's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

106.

The risks to which Faurecia exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

107.

Faurecia's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seating system, was a proximate cause of Douglas Morton's injuries.

108.

Faurecia is liable for the Subject Vehicle's front seatback and seating system design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined

46

by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT FOUR
**(The Brose Defendants—Negligence and/or Strict Products Liability)**

109.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

110.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, The Brose Defendants, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

111.

When the Brose Defendants designed and/or manufactured the Subject Vehicle's front seating system, it knew, or should have known through its own testing, studies, and other real-world incidents, that the seating system failed to contain and protect occupants from injury in rear-end collisions.

112.

The Brose Defendants failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seating system of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and

47

over the seat in the event of a rear end collision. Instead, the Brose Defendants chose a seating system, and/or manufactured a seating system, that lacks adequate crashworthiness in foreseeable collisions.

113.

When it designed the 2020 Audi A6 front seating system, the Brose Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet the Brose Defendants designed and/or manufactured the front seating system with a defective front seat frame so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The seating system's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

114.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front seating system that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seating system that Plaintiff's claims are based on as inherent characteristics of the seating system that cannot be eliminated without substantially compromising its usefulness or desirability.

115.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seat frame and seating system by the Brose Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

48

116.

The Brose Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat frame and seating system. The Brose Defendants breached its duty by failing to warn of those dangers.

117.

The Brose Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seating system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front seating system of the Subject Vehicle. However, the Brose Defendants never warned consumers or Mr. Morton that the seating system's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

118.

The risks to which the Brose Defendants exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

119.

The Brose Defendants' failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seating system, was a proximate cause of Douglas Morton's injuries.

120.

The Brose Defendants are liable for the Subject Vehicle's front seat frame and seating system design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at

49

trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT FIVE
### (The Grammer Defendants—Negligence and/or Strict Products Liability)

121.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

122.

Based upon information and belief, but without the benefit of fact discovery and pleading in the alternative as allowed by O.C.G.A. § 9-11-8, as a product designer and manufacturer, the Grammer Defendants, like the Audi Defendants, owed and owes legal duties to Plaintiff and the public in general to design and manufacture products that are not defective, which are reasonably safe and crashworthy for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

123.

When the Grammer Defendants designed and/or manufactured the Subject Vehicle's front driver seat head restraint, it knew, or should have known through its own testing, studies, and other real-world incidents, that the head restraint failed to contain and protect occupants from injury in rear-end collisions.

124.

The Grammer Defendants failed to exercise ordinary care and breached its duties of care by either designing and/or manufacturing the front seat head restraint of the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and

50

over the seat in the event of a rear end collision. Instead, the Grammer Defendants chose a head restraint, and/or manufactured a head restraint, that lacks adequate crashworthiness in foreseeable collisions.

125.

When it designed the 2020 Audi A6 front seat head restraint, the Grammer Defendants reasonably foresaw that rear-end collisions such as the one giving rise to this action would occur. Yet the Grammer Defendants designed and/or manufactured the defective front seat head restraint so lacking in crashworthiness that Mr. Morton suffered severe and traumatic spinal cord injuries because of those defects. The head restraint's inadequate design and/or manufacturing enhanced Mr. Morton's injuries far beyond what they reasonably should have otherwise been suffered in the collision.

126.

Plaintiff's claims are based on characteristics of the 2020 Audi A6 front seat head restraint that can be eliminated without substantially compromising its usefulness or desirability. No ordinary person with ordinary knowledge common to the community would recognize the characteristics of the seating system that Plaintiff's claims are based on as inherent characteristics of the seating system that cannot be eliminated without substantially compromising its usefulness or desirability.

127.

As a direct and proximate result of the defective design and/or manufacture of the Subject Vehicle front seat head restraint by the Grammer Defendants, Plaintiff suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

51

128.

The Grammer Defendants also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat head restraint. Grammer breached its duty by failing to warn of those dangers.

129.

The Grammer Defendants acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front seat head restraint, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front seat head restraint in the Subject Vehicle. However, the Grammer Defendants never warned consumers or Mr. Morton that the seating system's lack of adequate protection would enhance spinal cord injuries for persons in rear-end crashes.

130.

The risks to which Grammer exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge.

131.

The Grammer Defendants' failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat head restraint, was a proximate cause of Douglas Morton's injuries.

132.

The Grammer Defendants are liable for the Subject Vehicle's front seat head restraint design and/or manufacturing defect(s) causing or contributing to the injuries of Douglas Morton and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in

52

an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT SIX
### (Defendant Asbury—Negligence)

133.

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

134.

Defendant Asbury operates as a dealer of motor vehicles, including but not limited to motor vehicles designed, manufactured, assembled, produced, advertised, sold, and supplied by the Audi Defendants.

135.

Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, advertised, marketed, listed, and/or sold the subject Audi A6 that Douglas Morton was driving at the time of the subject incident. Specifically, the Subject Vehicle was manufactured and specifically shipped to Georgia, where it was first purchased by a consumer (Plaintiff) on approximately January 31, 2020, at an authorized Audi dealer that was owned, operated and controlled by Defendant Asbury (with direct oversight and control by the Audi Defendants). That authorized Audi dealership is named Audi North Atlanta and located in Roswell, Georgia. The Subject Vehicle received numerous inspections, service, and maintenance at Audi North Atlanta after the time of first sale in January 2020 up until the time of the subject incident on September 25, 2021.

136.

Defendant Asbury owed a legal duty to those occupying the vehicles that they advertised, promoted, warranted, sold, leased, maintained, inspected, serviced, and/or supplied to the general

public, including, but not limited to Mr. Morton, to advertise, promote, warrant, maintain, inspect, lease, sell, service, and supply such vehicles, in a reasonably safe and lawful manner.

137.

When Defendant Asbury sold the Subject Vehicle and/or during any of the numerous subsequent inspections of the Subject Vehicle, it knew, or should have known through the exercise of ordinary care, that the front driver seat and occupant restraint system failed to contain and protect occupants from foreseeable injury in rear-end collisions.

138.

Defendant Asbury failed to exercise ordinary care and breached its duties of care by selling and distributing the 2020 Audi A6 without sufficient strength and structural integrity to (a) hold Mr. Morton in a stable position in this foreseeable rear-end collision; and/or (b) to maintain sufficient integrity of the head restraint such that it would prevent his head, neck and body from moving suddenly and violently backward and over the seat in the event of a rear end collision.

139.

Defendant Asbury further failed to exercise ordinary care in that it negligently, grossly negligently, recklessly, willfully, and wantonly failed to warn of the unreasonably dangerous condition of the Subject Vehicle, when they knew or should have known that the Subject Vehicle contained those defects in the supplemental restraint system and seat identified and described in this Complaint that could result in serious injury or death of an occupant, and did in fact result in those serious, permanent, and catastrophic injuries to Mr. Morton complained of in this Action.

140.

Pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8, Defendant Asbury also failed to exercise ordinary care and breached its duties of care by negligently inspecting the

54

subject vehicle after the date of first sale and failing to identify the defects detailed above, and/or Defendant Asbury failed to exercise ordinary care and breached its duties of care by negligently performing maintenance or repairs that may have also contributed to the defects with the occupant restraint system as detailed above.

<center>141.</center>

Defendant Asbury also had a duty and continuing duty to warn the public, including Douglas Morton, of the dangers posed by the Subject Vehicle's defective front driver seat occupant restraint system. Defendant Asbury breached its duty by failing to warn of those dangers.

<center>142.</center>

Defendant Asbury acted unreasonably in failing to warn of the dangers posed by the Subject Vehicle's front driver seat occupant restraint system, and that failure to adequately warn caused Douglas Morton to suffer a grievous spinal cord injury. Mr. Morton's injuries were a foreseeable consequence of the defective front driver seat occupant restraint system of the Subject Vehicle. However, Defendant Asbury never warned consumers or Mr. Morton that the Subject Vehicle's lack of adequate front seat protection would enhance spinal cord injuries for persons in rear-end crashes.

<center>143.</center>

The risks to which Defendant Asbury exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge to a lay person like Mr. Morton who lacked the knowledge about vehicle restraint systems that the Audi Defendants and Defendant Asbury possessed.

<center>55</center>

144.

Defendant Asbury's failure to provide adequate warnings for the dangers associated with the use of the Subject Vehicle, including the substantial likelihood of injury associated with the use of the front driver seat, was a proximate cause of Douglas Morton's injuries.

145.

Further, Defendant Asbury, either on its own and/or by and through its wholly-owned and/or affiliated entities, conducted several subsequent service inspections of the Subject Vehicle after it was purchased from Defendant Asbury.

146.

Defendant Asbury owed Douglas Morton and the general public a duty to non-negligently service, inspect, maintain and/or repair the Subject Vehicle for dangerous conditions and inform or warn such consumers of foreseeable dangers, latent defects, and other dangerous conditions that they knew, or should have known of, and communicate adequate warnings about those dangers to foreseeable users of the Subject Vehicle.

147.

Yet, Defendant Asbury breached its duties of care by negligently failing to properly inspect the Subject Vehicle and by negligently failing to warn of the dangers, latent defects, and other dangerous conditions described herein.

148.

Upon information and belief, Plaintiff claims and alleges herein that, by and through its negligent acts and/or omission, Defendants Asbury's negligent failure to properly inspect the Subject Vehicle and/or negligent failure to adequately warn consumers about the defects and/or dangerous conditions present in the same were a proximate cause of and/or contributing factor to

Douglas Morton's severe injuries and all damages that are recoverable under Georgia and/or North Carolina law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial, and in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

## COUNT SEVEN
### (Defendant Asbury – Breach of Express and Implied Warranties under North Carolina Law)

149.

Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, in order to induce the purchase of the products which it sold, or marketed and sold, including the Audi A6 which is the subject of this litigation, advertised to the public the availability and safety of their products.

150.

Through the use of such advertising, Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, for the benefit of ultimate consumers and users, including Mr. Morton, directed the attention of the public and particularly ultimate consumers and users, specifically including Mr. Morton, and others similarly situated, by means of express representations and warranties, to their vehicles by representing that the public and ultimate consumers and users, including Mr. Morton, could occupy and operate the vehicles and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by Defendant Asbury.

151.

In occupying and operating the Subject Vehicle, Mr. Morton relied upon the skill and judgment of Defendant Asbury, by and through its officers, managers, agents, suppliers,

contractors, subcontractors, representatives, and others for whom it is legally responsible, and upon the express warranty of Defendant Asbury, created under Georgia and North Carolina Law, and which is described above.

<p style="text-align:center">152.</p>

The Subject Vehicle was defective in design and/or manufacture, and such defect breached the express and implied warranties given by Defendant Asbury, by and through their officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom they are legally responsible.

<p style="text-align:center">153.</p>

As a direct and proximate result of the breach of express and implied warranties given for the benefit of ultimate consumers and users, including Mr. Morton, by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, as described previously, Mr. Morton suffered devastating and permanent injuries, which injuries have been described in this Amended Complaint.

<p style="text-align:center">154.</p>

As a direct and proximate result of the breach of implied warranties by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, and which warranties specifically include the breach of the implied warranty of merchantability and breach of implied warranty of fitness for particular purpose, Mr. Morton received those injuries and damages as are previously described in this Amended Complaint.

<p style="text-align:center">58</p>

<center>155.</center>

Such breaches of warranties include the failure by Defendant Asbury, by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom it is legally responsible, to provide necessary and proper warnings.

<center>156.</center>

Such warranties were in full force and effect on the date of the subject wreck.

<center>**V.    DAMAGES SOUGHT BY PLAINTIFF**</center>

<center>157.</center>

Plaintiff re-alleges all previous paragraphs and incorporate them herein by reference.

<center>158.</center>

Douglas Grant Morton seeks recovery of damages from Defendants for past, present, and future medical bills and expenses, life care needs, and other necessary expenses incurred that are incident-related, in amounts to be shown by the evidence at trial.

<center>159.</center>

Douglas Grant Morton seeks damages from all Defendants for all past, present, and future pain and suffering resulting from his incident-related injuries, in an amount to be determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from his incident-related injuries.

<center>160.</center>

Douglas Grant Morton seeks recovery from all Defendants for any diminished future income and earning capacity proximately caused by the subject incident and the defective condition of the Subject Vehicle, as to be shown more fully by the evidence at trial.

<center>59</center>

Douglas Grant Morton seeks a recovery from all Defendants for the loss of full enjoyment of life and disfigurement he has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

(a) That Summons issue requiring the presently-named Defendants to appear and Answer this Complaint as provided by law;

(b) That Plaintiff has a trial by jury;

(c) That Plaintiff recovers from Defendants all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under North Carolina law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

(d) That all costs be taxed against Defendants; and

(e) For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted, this 22nd day of August, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Davis Popper*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com


*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

 */s/ Noah B. Abrams*

Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:     (919) 755-9166
NAbrams@abramslawfirm.com
**EDWARDS KIRBY, L.L.P.**

 */s/ Winston S. Kirby*
Winston S. Kirby
State Bar Number 49316
Andrew C. Avram
State Bar Number 51106
3201 Glenwood Avenue, Suite 100
Raleigh, NC  27619
Telephone:     (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

61

## CERTIFICATE OF SERVICE

Plaintiffs this day served a copy of the foregoing pleading upon the below listed parties to this matter by electronic e-file through Odyssey and by electronic mail:

SHOOK HARDY & BACON LLP
Colin K. Kelly, Esq.
Caroline M. Gieser, Esq.
Timia A. Kelton, Esq.
1230 Peachtree Street, N.E., Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com

*Attorneys for Defendant Asbury Automotive Group, Inc., and Volkswagen Group of America, Inc.*

This 22nd day of August, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Davis S. Popper*
Davis S. Popper
Georgia Bar No. 863530

62

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 11:19 AM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER:___**23-C-03730-S2**_____

PLAINTIFF

VS.

**Brose North America, Inc. c/o RA -The Corporation**

**Company, 40600 Ann Arbor Road, Ste 201**

**Plymouth, MI 48170**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

    **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** _____, **20_____.**

22nd day of August, 2023

Tiana P. Garner
**Clerk of State Court**

By_____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 1:59 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**Faurecia Automotive Seating LLC c/o RA**

**Capitol Services, Inc., 108 Lakeland Avenue**

**Dover, DE 19901**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____ 22nd day of August, 2023 _____, 20_____.

Tiana P. Garner
**Clerk of State Court**

By _____ *Julie S. Thomas*
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
8/22/2023 11:19 AM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**Faurecia Automotive Seating, LLC c/o RA**

**Capitol Corporate Services, Inc. 186 N. Main St.**

**2nd Floor, Ste. One, Plymouth, MI 48170**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.
22nd day of August, 2023

Tiana P. Garner
Clerk of State Court

By _____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
8/22/2023 11:19 AM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**Faurecia USA Holdings, Inc. c/o RA**

**Capitol Services, Inc., 108 Lakeland Avenue**

**Dover, DE 19901**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____22nd day of August, 2023_____, 20_____.

Tiana P. Garner
**Clerk of State Court**

By_____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
8/22/2023 11:19 AM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**Faurecia USA Holdings, Inc. c/o RA**

**Capitol Corporate Services, Inc. 186 N. Main St.**

**2nd Floor, Ste. One, Plymouth, MI 48170**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.
22nd day of August, 2023

Tiana P. Garner
Clerk of State Court

By_____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
8/22/2023 11:19 AM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**FNK North America, Inc.c/o RA Capitol**

**Services, Inc. 108 Lakeland Avenue**

**Dover, DE 19901**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.
22nd day of August, 2023

Tiana P. Garner
**Clerk of State Court**

By _____
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 11:19 AM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

PLAINTIFF

CIVIL ACTION
NUMBER: **23-C-03730-S2**

VS.

**Grammer, Inc.  c/o RA CT Corporation**

**Systems, Inc. 1010 Dale Street N.**

**Saint Paul, MN 55117-5603**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____,  20_____.
22nd day of August, 2023

Tiana P. Garner
**Clerk of State Court**

By _____
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
8/22/2023 11:19 AM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**Grammer Industries c/o RA CT Corporation**

**System , 40600 Ann Arbor Road, Ste 201**

**Plymouth, MI 48170**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

22nd day of August, 2023

This _____ day of _____, 20_____.

Tiana P. Garner
Clerk of State Court

By _____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 11:19 AM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER:___**23-C-03730-S2**_____

PLAINTIFF

VS.

**Grammer Industries LLC c/o RA CT**

**Corporation System , 2 Office Park Court, Ste 103**

**Columbia, SC 29223**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This _____ day of** 22nd day of August, 2023
**_____, 20_____.**

**Tiana P. Garner**
**Clerk of State Court**

**By _____**
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 11:19 AM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**Grammer, Inc.  c/o RA Michael Tapscott**

**322 West Jefferson Street**

**Tupelo, Mississippi 38804**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.

22nd day of August, 2023

Tiana P. Garner
**Clerk of State Court**

By _____
**Deputy Clerk**

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 11:19 AM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER:___ **23-C-03730-S2**___

PLAINTIFF

VS.

**Lear Corporation c/o RA The Corporation**

**Company, 40600 Ann Arbor Road, Ste 201**

**Plymouth, MI 48170**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** ___22nd day of August, 2023_____, **20**_____.

**Tiana P. Garner**
**Clerk of State Court**

**By**_____
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/22/2023 11:19 AM**
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Douglas Grant Morton**

CIVIL ACTION
NUMBER: **23-C-03730-S2**

PLAINTIFF

VS.

**NHK Seating of America, Inc. c/o RA**

**NHK International Corporation**

**46855 Magellan Dr., Novi, MI 48377**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Cale Conley, Conley Griggs Partin LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.

22nd day of August, 2023

Tiana P. Garner
Clerk of State Court

By_____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/25/2023 11:41 AM**
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case:<br>23-C-03730-S2 | Court:<br>State | County:<br>Gwinnett, GA | Job:<br>9422894 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Douglas Grant Morton | | Defendant / Respondent:<br>AUDI OF AMERICA, LLC et al. | |
| Received by:<br>Evolution Process Service | | For:<br>Conley Griggs Partin LLP | |
| To be served upon:<br>Grammer Industries, LLC | | | |

I, Lester L. Franzen, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| Recipient Name / Address: | Lisa Culler, Authorized Representative, c/o Registered Agent: CT Corporation System: 2 Office Park Ct Ste 103, Columbia, SC 29223 |
|---|---|
| Manner of Service: | Corporation, Aug 24, 2023, 9:15 am EDT |
| Documents: | Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT) |

Additional Comments:
1) Successful Attempt: Aug 24, 2023, 9:15 am EDT at c/o Registered Agent: CT Corporation System: 2 Office Park Ct Ste 103, Columbia, SC 29223 received by Lisa Culler, Authorized Representative. Age: 58; Ethnicity: Caucasian; Gender: Female; Weight: 200; Height: 5'8"; Hair: Gray;

_Subscribed and sworn to before me by the affiant who is_
_personally known to me._

Lester L. Franzen          Date

Notary Public

Evolution Process Service          Date          Commission Expires
6018 N Keystone Ave
Indianapolis, IN 46220

24 Aug 23

24 August '23          Exp 5/22/33

TRACY L. STEELE
NOTARY PUBLIC
Exp. May 22, 2033
SOUTH CAROLINA

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/25/2023 4:12 PM**

TIANA P. GARNER, CLERK

**STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. | ) | |
| d/b/a AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAURECIA AUTOMOTIVE SEATING, LLC; | ) | |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO ASBURY AUTOMOTIVE GROUP, INC.'S**
**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Plaintiff Douglas Morton files this Opposition to Defendant Asbury Automotive Group, Inc.'s Motion to Compel Arbitration and Stay Proceedings, showing the Court as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This negligence and product liability case involves Plaintiff Douglas Morton's permanent, paralyzing spinal cord injuries resulting from a September 25, 2021 motor vehicle collision when a 1999 Dodge Ram rear-ended the subject 2020 Audi A6 that Plaintiff Morton was driving.

Plaintiff did not own the subject Audi vehicle. Rather, Plaintiff's friend, Lynn Love, purchased the subject Audi vehicle at a dealership owned by Defendant Asbury pursuant to a September 16, 2020 Vehicle Buyer Order that Plaintiff did not sign and was not a party to. Yet, Defendant Asbury now moves to compel Plaintiff to arbitration—even though Plaintiff did not sign the arbitration provision in the Buyer Order (or any portion of the Buyer Order), and even though there is no evidence that the parties intended to benefit or bind Plaintiff to the terms of the Buyer Order. On these facts as detailed below, Defendant Asbury's motion to compel arbitration must be denied.

## STATEMENT OF FACTS

On September 16, 2020, Lynn Love purchased the subject vehicle from an Audi dealership owned and operated by Defendant Asbury. Mr. Love entered a Vehicle Buyer Order with Asbury, which contains the following Arbitration Provision that only Mr. Love initialed:



*See* Vehicle Buyer Order, attached as **Exhibit 1**. The first line of the provision defines its scope: "Either *you* or *we* may choose to have any dispute *between us* decided by arbitration and not in court or by jury trial." *Id.* at p. 2. The first paragraph reinforces who the provision applies to:

Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the

claim or dispute) ***between you or us or our employees, agents, successors, or assigns*** which arises out of or relates to your credit applications, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. *Id.*

The Order defines "You" as "the buyer or buyers executing this Agreement" (i.e., Lynn Love), and "Us" and "We" as "the authorized Dealer named on the face of this Agreement" (i.e., Asbury). *Id.* Finally, the Order specifically notes: "If you have purchased the Vehicle for use by anyone other than yourself, you must disclose this to us in writing." *Id.* at p. 2, para. 7.

## II.     ARGUMENT AND CITATION TO AUTHORITY

Asbury, as the party seeking arbitration, "bears the burden of proving the existence of a valid and enforceable agreement to arbitrate." *United Health Services of Georgia, Inc. v. Alexander*, 342 Ga. App. 1, 2 (2017) (citations omitted). Whether a valid and enforceable arbitration agreement exists is a question of law for the Court. *Id*. As a matter of contract, the existence of a valid arbitration agreement is governed by Georgia principles of contract formation. *Coleman v. United Health Services of Georgia, Inc.,* 244 Ga. App. 682, 683 (2018). "A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party." *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1171–72 (11th Cir. 2011). However, "it is well recognized that 'traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Branch v. Ottinger*, 477 F. App'x 718, 720 (11th Cir. 2012) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

Douglas Morton was not a party to the Buyer's Order between Lynn Love and Asbury, Mr. Morton was not referenced anywhere in the Order, and aside from being friends there was no legal relationship between Mr. Morton and Mr. Love that would have permitted Mr. Love to sign the Order on Mr. Morton's behalf without his knowledge or consent. Nevertheless, Asbury attempts to bind Mr. Morton to the terms of the Arbitration Provision based upon the third-party beneficiary and equitable estoppel doctrines. For the reasons below (and in the light most favorable to Plaintiff Morton as the non-moving party), these arguments lack merit, and Asbury cannot compel Plaintiff to arbitrate claims against parties that he never agreed to arbitrate with.

### A. Plaintiff is Not a Third-Party Beneficiary to the Arbitration Provision under Georgia Law.

Under Georgia law, "[a] third-party beneficiary contract is 'one in which the promisor engages to the promisee to render some performance to a third person.'" *Northen v. Tobin*, 5262 Ga. App. 339 (2003) (quoting *Starrett v. Commercial Bank of Ga.*, 226 Ga. App. 598 (1997)). Under O.C.G.A. § 9-2-20(b), "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." However, "[i]n order for a third party to have standing to enforce a contract[,] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." *Perry Golf Course Dev. v. Hous. Auth. of City of Atlanta*, 294 Ga. App. 387 (2008) (citations omitted). Here, even a cursory reading of the Buyer's Order and Arbitration Provision (that do not reference Plaintiff or contain his signature) makes clear that Plaintiff is not a third-party beneficiary.

Asbury attempts to show the intent required to prove a third-party beneficiary relationship by pointing to a single parenthetical reference about third parties in the arbitration provision:

> Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) between you or us or our employees, agents, successors, or assigns which arises out of or relates to your credit applications, purchase or condition of this vehicle, this contract or any resulting transaction or relationship *(including any such relationship with third parties who do not sign this contract)* shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

However, Asbury's argument that this parenthetical phrase "expresses the parties' intent to convey contractual obligations to arbitrate upon those who were not signatories to the Buyer's order, including Plaintiff" misinterprets the provision. (Def. Br. at 5).

On its face, the arbitration provision grants only "you" (Lynn Love) and "us" (Asbury) the right to elect to arbitrate, and ***only*** in "[a]ny claim or dispute. . . ***between you or us or our employees, agents, successors, or assigns***." Plaintiff is neither a "you" nor an "us." The arbitration provision does mention non-signatory third parties; however, it does not grant such third parties the right to elect arbitration, nor does it allow – much less require – arbitration of claims other than those between "you or us". Instead, it grants Lynn Love or Asbury the right to compel arbitration for claims against each other ) *arising out of or relating to* a resulting transaction or relationship with a non-signatory third party. In other words, by the clear and express terms of the Agreement itself, the non-signatory third party relationship relates only to the types of claims that the parties to the Buyer Order may arbitrate ***against each other***. It does not create another class of non-signatory persons who can be compelled to arbitration.

In *Lawson*, for example, the Eleventh Circuit affirmed the denial of the defendant's motion to compel arbitration, finding that the defendant could not compel arbitration pursuant to an agreement to which it was not a party. In that case, the plaintiffs entered into a loan agreement with their car dealership to finance the purchase of a used car. *Lawson*, 648 F.3d at 1168. The plaintiffs exercised an option, provided in the loan agreement, "to purchase credit life insurance"

from a third-party insurer, the fee for which was included in the total amount financed for the car purchase. *Id*. at 1168-69. When the plaintiffs later sued the insurance company, the insurance company attempted to compel arbitration, arguing it was a third-party beneficiary of the arbitration clause in the plaintiffs' loan agreement with their car dealership. *See id*. at 1171-72.

The Eleventh Circuit rejected this argument. The arbitration clause defined "[d]ispute" broadly to include "any controversy or claim arising from or relating to the loan agreement," including "any aspect of the sale of the vehicle involving any Buyer, Co-Buyer, Seller or assignee, agent, employee, surety bonding company or insurer of any of these persons." *Id*. at 1168. Nevertheless, the court held that the insurer was not a third-party beneficiary. *Id*. at 1171-72. Despite the broad definition of what disputes could be compelled to arbitration, the arbitration clause expressly limited *who* was authorized to compel arbitration. *Id*. at 1168. Similar to the language of the arbitration provision here, the clause stated that "either you or we may choose to have the Dispute" arbitrated. *Id*. at 1168. And, similar to here, the agreement specifically identified which parties constituted "you" and "we"—and those parties did not include the insurer. Therefore, the court held, the contract evidenced an intent to benefit solely those parties defined as "you" and "we"; it did not evidence any intent to benefit the non-party insurer.

Likewise, though the arbitration provision in the Buyer's Order defines the kinds of claims that may be arbitrated broadly, it expressly restricts who may compel arbitration to Lynn Love and Asbury. The Buyer Order and the arbitration clause in it do not show, on its face or elsewhere, an intent to allow anyone other than Lynn Love or Asbury to compel arbitration of a dispute.[1] In fact,

---

[1] Asbury also claims that "[u]nder the same third-party beneficiary principles, Defendants Audi of America, LLC[,] Volkswagen Group of America, Inc., Audi AG, and Volkswagen AG also have standing to enforce the binding arbitration provision in the Vehicle Buyer's Order." Def. Br. at fn. 3. However, like Plaintiff, each of the above parties are not named within the Buyer's Order, nor is there anything in the Buyer's Order evidencing an intent to grant those parties the authority to

6

as noted above, if Mr. Love had purchased the vehicle with the intent that it would be used by Mr. Morton, Mr. Love would have been required to disclose that in writing to Asbury. Yet, in the space provided for Co-Buyer Initials in the arbitration provision it simply states "N/A".

### B. The Doctrine of Equitable Estoppel Does Not Apply to Plaintiff's Claims Against Asbury

Asbury also contends that it can compel Plaintiff to arbitrate under the doctrine of equitable estoppel, arguing that Plaintiff is "estopped from avoiding the applicable arbitration provision" because Plaintiff allegedly asserts claims that are directly related to the contractual provisions contained in the Buyer's Order. Def. Br. at 6. But equitable estoppel requires more than the mere existence of a tangential, or even factually significant, arbitration agreement to compel arbitration. Rather, it must be shown that Plaintiff has asserted legal claims which *arise out of and relate to* the same contract in which the arbitration agreement is located. "Where, as here, … the issue is whether the underlying claims are such that the party asserting them should be estopped from denying the application of the arbitration clause," the Court must "examine whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006) (emphasis added). Stated another way, "estoppel is

---

compel arbitration. Accordingly, Plaintiff, the parties listed above, and any other individual or entity beyond Lynn Love or Asbury do not have standing to compel arbitration under the Buyer's Order.

Indeed, by its express terms, only ***employees, agents, successors, or assigns*** of Asbury would be protected by this Agreement. To the extent that Asbury Automotive claims that Defendants Audi of America, LLC, Volkswagen Group of America, Inc., Audi AG, and Volkswagen AG are somehow entitled to enforcement of this arbitration provision, this would constitute a binding, judicial admission of an agency relationship between Asbury Automotive and these Defendants.

appropriate if in substance the complaint [is] based on the alleged breach of the obligations and duties assigned to it in the agreement" containing the arbitration clause. *Id*. at 628

Here, Plaintiff's claims do not "arise out of relate to" the Buyer's Order. Rather, Plaintiff's claims arise out of a motor vehicle collision which, due to the defective manufacture and/or design of the vehicle, caused Plaintiff to become permanently paralyzed. Though the Buyer's Order relates to the sale of the vehicle to Mr. Love, it does not directly relate to Plaintiff's claims, which are based upon legal duties associated with manufacturing, designing, inspecting and/or servicing the subject vehicle. Indeed, Plaintiff does not make ***a single reference*** to the Buyer's Order in his Complaint. "Put differently, Plaintiff would have an independent right to recover against [Asbury] even if the contract containing the arbitration clause were void." *See Carson v. Home Depot, Inc.*, No. 1:21-CV-4715-TWT, 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (holding that Home Depot could not enforce an arbitration clause within a terms of service agreement where the plaintiff's complaint does not reference the terms of service.") Accordingly, Plaintiff's claim is not "based on" or "inextricably intertwined with" the Buyer's Order.

Further, the one Georgia case cited in support of Asbury's argument involved a *nonsignatory* party seeking to estop a *signatory* from avoiding an agreement to arbitrate. Here, Asbury, the *signatory* to the agreement, seeks to compel Plaintiff, a *nonsignatory* to the agreement, to arbitrate a dispute that Plaintiff never agreed to arbitrate. "The equitable estoppel exception simply does not apply in this context and cannot be used to require a nonsignatory to arbitrate a dispute where it never agreed to arbitrate anything." *Leevers v. Bilberry*, 2007 WL 315344, at *4, fn. 8 (M.D. Ga. Jan. 31, 2007) ("It is one thing to permit a nonsignatory to an arbitration agreement to compel a signatory to an arbitration agreement to arbitrate when the nonsignatory's claims and/or defenses are inextricably intertwined with the arbitration agreement and/or the other parties

to the agreement. It is quite different to compel a nonsignatory to arbitrate a dispute when he never agreed to arbitrate anything.").

Compelling arbitration under the principle of equitable estoppel is unwarranted here according to Georgia law. Nevertheless, in assessing and applying equitable principles a court must achieve more than a "dry" application of law to facts:

> In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness. The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from rely[ing] on the contract when it works to [his] advantage [by establishing the claim], and repudiat[ing] it when it works to [his] disadvantage [by requiring arbitration]. The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.

*In re Humana Inc. Managed Care Litigation*, 285 F.3d 971, 976 (11th Cir. 2002), reversed on other grounds by *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003) (internal citations and quotations omitted). In other words, equitable estoppel's purpose is to prevent "the arbitration proceedings [between the two signatories] [from being] rendered meaningless…." *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)). Therefore, equitable estoppel demands careful scrutiny of the claims, relationships and circumstances of an individual case. *See MS Dealer*, 177 F.3d at 947. It is similarly clear that, given these equitable considerations, arbitration should not be compelled.

In this case, Plaintiff was not a party to the Buyer's Order, and no evidence exists showing that the parties intended Plaintiff to benefit from (or be bound to) the Buyer's Order. Plaintiff was never aware of the existence of the Buyer's Order. And Plaintiff has not claimed or enjoyed any right or benefit of the Buyer's Order. To forcibly subject Plaintiff to arbitration here would "allow contracting parties to bind an unsuspecting third party to arbitration without providing a benefit

desired or accepted by the third party." *Coleman v. United Health Servs. of Georgia, Inc.*, 344 Ga. App. 682, 686 (2018). Such an outcome serves no equitable purpose.

### III.    CONCLUSION

Asbury seeks to deprive Plaintiff of his constitutional right to a jury trial. In doing so, it is required to *prove* that Plaintiff is legally bound to an arbitration agreement he never read or signed. Asbury has failed to do so. Accordingly, this Court should deny Asbury's Motion to Compel Arbitration and Stay Proceedings.

Respectfully Submitted, this 25th day of August, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Davis Popper*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:      (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com
*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

*/s/ Noah B. Abrams*
Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:      (919) 755-9166
NAbrams@abramslawfirm.com

10

**EDWARDS KIRBY, L.L.P.**

 /s/ *Winston S. Kirby*
Winston S. Kirby
State Bar Number 49316
Andrew C. Avram
State Bar Number 51106
3201 Glenwood Avenue, Suite 100
Raleigh, NC  27619
Telephone:     (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

11

Exhibit 1

F&I MGR: SCOTT SIEBOLD
CONT#: 000000
VEHICLE BUYER'S ORDER
STK# LN002921
DEAL# 121745
CUST# 931867

**IT HAS TO BE**

## NALLEY
**AUDI NORTH ATLANTA**
AUTOMOTIVE
11505 ALPHARETTA HIGHWAY
ROSWELL, GA 30076  678 795 2900

THIS VEHICLE ORDER FORM IS FOR THE FOLLOWING

☒ NEW   ☐ USED

| YEAR | MAKE | | SERIES |
|---|---|---|---|
| 2020 | AUDI | | A6 2.0T QUATTRO |

| MILEAGE | COLOR | | TRIM |
|---|---|---|---|
| 3988 | 2Y2Y/White | | |

| STOCK NO. | VIN # |
|---|---|
| LN002921 | WAUE8AF26LN002921 |

| DEAL # | | CUSTOMER # | |
|---|---|---|---|
| 121745 | | 931867 | |
| DATE | SALESPERSON 1 | | SALESPERSON 2 |
| 09/16/2120 | Nicholas Watterson | | |
| CUSTOMER'S NAME | | | |
| LYNN LEE LOVE | | | |
| CO-CUSTOMER'S NAME | | | |
| N/A | | | |
| STREET ADDRESS | | | |
| 2660 PEACHTREE RD NW APT 36D | | | |
| CITY | COUNTY | STATE | ZIP |
| ATLANTA | FULTON | GA | 30305 |
| RESIDENCE PHONE | | BUSINESS PHONE | |
| 954-254-5220 | | | |
| E-MAIL ADDRESS | | MOBILE PHONE | |
| Thebill@bellsouth.net | | 954-254-5220 | |

| PRICE OF VEHICLE | $ 58158 | 00 |
|---|---|---|

| ACCESSORIES: | | |
|---|---|---|
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| **WE OWE** | 499 | 00 |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| **RESISTALL** | 650 | 00 |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| **DEALER SERVICE CHARGE\*** | 599 | 00 |
| **TITLE SERVICE FEE\*\*** | 98 | 00 |
| N/A | N/A | |
| N/A | N/A | |
| **TOTAL DELIVERED PRICE** | 60004 | 00 |
| TRADE-IN ALLOWANCE(S) | N/A | |
| CASH PRICE OR TRADE DIFFERENCE | 60004 | 00 |
| N/A | N/A | |
| TAVT RATE ( N/A%) | 3696 | 26 |
| PLUS: TAG, TITLE, LEMON LAW AND EMISSION TESTING FEES | 46 | 00 |
| PLUS: PAYOFF ON TRADE VEHICLE(S) | N/A | |
| N/A | N/A | |
| N/A | N/A | |
| | N/A | |
| **TOTAL BALANCE** | 63746 | 26 |
| LESS INITIAL PAYMENT/CASH DOWN | N/A | |
| LESS REBATE/FACTORY INCENTIVE | 4000 | 00 |
| **BALANCE DUE** | $ 59746 | 26 |

### TRADE-IN RECORD

| YEAR | MAKE | MODEL | TYPE | COLOR |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |
| VIN # | | | | MILEAGE |
| N/A | | | | N/A |

| ALLOWANCE $ | N/A | ESTIMATED PAYOFF $ | | N/A |
|---|---|---|---|---|
| TRADE 2 | YR | MAKE | | MODEL |
| | N/A | N/A | | N/A |
| VIN # | | | | MILEAGE |
| N/A | | | | N/A |

| ALLOWANCE $ | N/A | ESTIMATED PAYOFF $ | N/A |
|---|---|---|---|

**TRADE-IN DISCLOSURE**

You acknowledge that all of your rights, title and interest in such Trade-In vehicle(s). You represent that you are the sole owner of the vehicle and have the right to sell or otherwise transfer ownership of the Vehicle. Except as disclosed in writing to us you further acknowledge the representations and responsibilities on the back of this Order relating to Trade-In Vehicles, and on the Authorization to Release Payoff Information executed with this Order, if any.

Negative Equity: If the pay-off for your Trade-In(s) exceeds the Trade-In Allowance, the difference will be added to balance due.

Customer initials _____

Co-Customer initials _____

\*Dealer Service Charge: This charge covers Dealer services related to this Vehicle and its sale and may result in profit to the Dealer for the services. This charge does not include payment for the preparation and/or completion of legal documents and is not an official charge.

\*\*Title Service Fee: This fee covers dealer services relating to the processing of this vehicle's title and may result in profit to the Dealer. This is not an official fee.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, this vehicle is sold "AS IS" and "WITH ALL FAULTS." The Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Oral statements should not be construed as a warranty or promise of any kind.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

Buyer acknowledges receipt of any warranty information prior to the sale of the vehicle.

Conditional Delivery Agreement/Dealer's Right to Cancel: If buyer and co-buyer sign here, then the provisions of the Conditional Delivery Agreement/Dealer's Right to Cancel apply.

Buyer _____

Co-Buyer _____ N/A

| CREDIT LIFE | N/A |
|---|---|
| ACCIDENT & HEALTH | N/A |
| N/A | N/A |
| TOTAL ADDITIONAL COVERAGE | N/A |
| **AMOUNT FINANCED** | 59746 26 |
| APR % | N/A |
| FINANCE CHARGE | N/A |
| MONTHS | 59746 26 |
| **TOTAL TIME BALANCE** | 59746 26 |

For your protection, request a receipt for all payments you make.

This Order and Agreement represents the final agreement between the parties related to the sale of the vehicle and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

Buyer Signs: X _____   Co-Buyer Signs: X _____ N/A

You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms. You have received a completely filled in copy of this Order and Agreement. You acknowledge that you are 18 years or older.

Buyer Signs: X _____   Co-Buyer Signs: X _____ N/A

Accepted by Seller: X _____   By: F&I MANAGER

FORM NO. ABB-BO-GA_a (Rev. 9/13)
© 2017 The Reynolds and Reynolds Company
99337-1 ABG105-11
Page 1 of 2

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

These definitions apply to this Agreement:

*"You"* means the buyer or buyers executing this Agreement as such.

*"Dealer"*, *"Us"* and *"We"* means the authorized Dealer named on the face of this Agreement.

*"Manufacturer"* means the manufacturer of the Vehicle.

*"Vehicle"* is the vehicle or chassis that is the subject of this Agreement.

*"Trade-in"* is the used vehicle that You intend to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

1. **Modifications or Cancellation Due to the Manufacturer or Other Events:** If the Manufacturer modifies, discontinues, or fails to deliver the Vehicle or changes the price, or if we cannot deliver the Vehicle due to accident, fire, act of nature, or cause beyond our control, then either you or we may terminate this Order without liability to the other party, and Dealer shall refund your deposits and return your Trade-in, if applicable.

2. **Trade-in Vehicle Title and Appraisal and Return upon Cancellation for Any Reason:** You will immediately provide Certificate of Title to the Trade-in. If you cannot, then you agree to reimburse the Dealer for all costs incurred for the issuance of duplicate title. If there is a lien or other encumbrance, you agree to take all necessary steps to enable us to obtain a Certificate of Title in accordance with applicable state law. You agree to cooperate immediately with the Dealer to provide all documents necessary to accomplish this.

If you have not yet delivered your Trade-in to us, we will reappraise it at the time it is delivered to us. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown on this Order, you may cancel this Order. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us.

In the event this transaction is cancelled for any reason, and we have paid some or all of the balance owed to the lienholder on the Trade-in, you shall immediately reimburse us for the amount paid to the lienholder. Otherwise, we may place a lien on the Trade-in without any further action or agreement by you

If we have sold the Trade-in prior to cancellation of this Buyer's Order, we will pay you the agreed upon Trace-in Allowance and you will reimburse us for any amount we paid to the lienholder on the Trade-in.

3. **Taxes:** The Vehicle price doesn't include sales, use, ad valorem, highway, property or occupational taxes (federal, state or local) unless expressly stated. You agree to pay all taxes that apply to this transaction. If the amount of taxes owed exceeds the amount reflected in this Order, you are responsible for paying the difference.

4. **Other Products and Financing:** The Dealer offers goods and services from various suppliers. The amounts charged to customers for such goods or services may be greater than our cost, and/or we may receive a commission or other payment in connection with such sale. You are not required to purchase any other goods or services from us. You may also arrange financing through the finance source of your choice. If we assist you in obtaining financing, we may receive a fee, commission or other compensation from the Finance Source.

5. **ORAL STATEMENTS AND VEHICLE HISTORY REPORTS:** ORAL PROMISES AND REPRESENTATIONS ABOUT THE VEHICLE WILL NOT BE RECOGNIZED AND ARE NOT A WARRANTY OF ANY KIND. YOU MAY NOT RELY UPON VERBAL REPRESENTATIONS MADE BY DEALER, DEALER'S EMPLOYEES OR AGENTS ABOUT THE VEHICLE, INCLUDING, BUT NOT LIMITED TO, STATEMENTS REGARDING THE VEHICLE'S PRIOR HISTORY. WE HAVE NOT INDEPENDENTLY VERIFIED INFORMATION ON THIRD PARTY VEHICLE HISTORY REPORTS AND CANNOT REPRESENT OR WARRANT THE ACCURACY OF ANY SUCH REPORTS. RELIANCE UPON ANY SUCH REPORTS WILL BE AT YOUR PERIL. NEITHER DEALER, DEALER'S EMPLOYEES NOR AGENTS CAN ACCURATELY CONFIRM THE PRIOR HISTORY OF THE VEHICLE. YOU MAY HAVE THE VEHICLE INSPECTED BY AN INDEPENDENT MECHANIC PRIOR TO CONSUMMATING THIS PURCHASE.

6. **Notice Regarding Legal Documents:** Certain documents in this transaction affect your legal rights and impose certain duties and obligations. IF YOU HAVE ANY QUESTIONS OR CONCERNS ABOUT THESE DOCUMENTS OR ABOUT ANY OTHER MATTERS LEGAL IN NATURE, CONSULT WITH AN ATTORNEY OF YOUR CHOOSING PRIOR TO SIGNING ANY DOCUMENT OR COMPLETING THIS TRANSACTION. This transaction is an arms-length business transaction. No fiduciary duty or other similar duty or confidential relationship exists between you and the Dealer.

7. **Your Representations to Us:** (a) New vehicles only: YOU ARE NOT PURCHASING THE VEHICLE FOR RESALE OR EXPORT within the next 12 months from the date of this Order; (b) the Cash Down, and any other amounts due to us have been paid in full, any payment given to us will be promptly honored by the institution upon which it was drawn, and you have not borrowed any part of the Cash Down; (c) all statements made by you in this transaction are correct; and (d) you are who you have represented yourself to be. If you have purchased the Vehicle for use by anyone other than yourself, you must disclose this to us in writing.

8. **Buyer's Default and Dealer's Remedies:** In the event of any failure by you to perform your obligations under this Order or any breach by you of a representation or warranty made by you to us: we shall be permitted to the choice of remedies which may be used separately or together, including: (1) cancel this Buyer's Order; (2) repossess the Vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; (5) cancel any ancillary products you have purchased; (6) retain any Deposit made by you; and/or (7) in the event that you have delivered a Trade-in as part of the consideration for your purchase of the Vehicle from us, sell it and reimburse the Dealer out of the proceeds for any actual damages suffered by us as a result of your default, or place a security interest on the Trade-in if we return it to you. We shall further be entitled to recover from you for an event of default any costs incurred by us for repossession/collection, reasonable interest, plus reasonable attorney's fees. If the actual amount you owe to us is greater than the amount of the Deposit and/or proceeds from the sale of your Trade-in you agree to pay the difference to us upon demand and if the actual amount you owe is less, then we will pay the difference to you.

9. **Security Agreement:** In the event that we are not paid in full, this document grants us a security interest in the Vehicle being purchased. This security interest is separate and apart from, but subordinate to, any interest granted to a third party lender if the Vehicle is being purchased on credit.

10. **GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS ORDER AND ANY SALE/LEASE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF GEORGIA.

11. **VEHICLE DATA COLLECTION AND PRIVACY:** Vehicles collect and use different types of information for a wide range of purposes. If you have any questions or concerns, familiarize yourself with the data collection and opt out procedures of the vehicle manufacture, and any third party applications with access to your vehicle's data, prior to buying, leasing or trading a vehicle.

12. **DAMAGES LIMITATION:** YOU ARE NOT ENTITLED TO RECOVER FROM THE DEALER ANY CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

13. **USED CAR BUYERS GUIDE: THE INFORMATION ON THE VEHICLE WINDOW IS PART OF THIS AGREEMENT AND OVERRIDES ANY CONTRARY PROVISIONS IN THIS AGREEMENT.**

GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE ACUERDO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL ACUERDO DE VENTA.

**Conditional Delivery Agreement/ Dealer's Right to Cancel:** We are not a lender, and this transaction is conditioned upon our being paid in full on the terms agreed upon in this Buyer's Order, and the Retail Installment Sales Contract (the Contract), if any. You understand that we have not been paid in full until your payment has been honored by the institution upon which it was drawn, or, if financing is arranged through a lender, "paid in full" means that the lender accepted assignment of the Contract, and the Dealer has received payment. You agree to cooperate and promptly provide accurate and complete information in response to requests by the lender regarding your credit worthiness. You are responsible for any payments which come due on your Trade-in until we have been paid in full.

**Our Obligations:** We will notify you in person, by phone or written notice if we are not paid in full and if we elect to cancel the purchase of the Vehicle. Once you have received notice, you must comply with "Your Obligations" described below and we must give back to you all consideration we have received from you under the terms of the Buyer's Order. If your Trade-in has already been sold, we will refund the trade allowance as described in Paragraph 2 above.

**Your Obligations:** If we cancel as provided above, you must return the Vehicle immediately in the same condition as when delivered to you, reasonable wear and tear excepted. You agree to pay us the cost of repairing damage or excessive use and to hold us harmless from any expenses pertaining to the Vehicle while it is in your possession. If you do not return the Vehicle immediately, you will be liable for all expenses incurred by us in taking the Vehicle from you. If you fail to return the Vehicle, we may use any legal means to take it back. You agree to reimburse us for payment made on your behalf to any lienholder of the Trade-in. If you owe money under this section, we can offset our refund of any down payment or trade allowance or other consideration paid by you, and/or obtain a security interest against your Trade-in until all sums due have been paid.

**Terms of Use of the Vehicle upon Delivery and until the Dealer Is Paid in Full:** You agree to provide full liability, collision and comprehensive insurance coverage on the Vehicle. You agree that only validly licensed drivers will operate the Vehicle.

In the event that the Dealer elects to cancel pursuant to this Agreement, you and we may agree to a new Contract with different financing terms, or agree to payment with alternate funds. Such renegotiated terms are voluntary, and neither you nor we are required to accept different financing terms or alternate funds.

Nothing in this Agreement gives you the right to cancel the purchase for any reasons except identified in this Agreement.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district where the Dealer is located. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act. Nothing in this Agreement limits or precludes the arbitrator(s) from awarding monetary damages or other relief provided by law.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable by any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

FORM NO. ASB-BO-GA □ (Rev. 6/18)
©2017 The Reynolds and Reynolds Company
Page 2 of 2
46337™1™ABG105-F1
09/16/2020  04:52 pm

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## CERTIFICATE OF SERVICE

Plaintiff this day served a copy of the foregoing pleading upon the below listed parties to

this matter by electronic e-file through Odyssey and by electronic mail:

SHOOK HARDY & BACON LLP
Colin K. Kelly, Esq.
Caroline M. Gieser, Esq.
Timia A. Kelton, Esq.
1230 Peachtree Street, N.E., Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Attorneys for Defendant Asbury Automotive Group, Inc. Volkswagen Group of America, Inc.*

This 25th day of August, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Davis S. Popper*
Davis S. Popper
Georgia Bar No. 863530

12

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/31/2023 10:00 AM**
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case:<br>23-C-03730-S2 | Court:<br>State | County:<br>Gwinnett, GA | | Job:<br>9422648 |
|---|---|---|---|---|
| Plaintiff / Petitioner:<br>Douglas Grant Morton | | Defendant / Respondent:<br>AUDI OF AMERICA, LLC et al. | | |
| Received by:<br>Evolution Process Service | | For:<br>Conley Griggs Partin LLP | | |
| To be served upon:<br>Brose North America, Inc. | | | | |

I, Miguel Bruce, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Ms. Kylie Anderson, Intake Specialist, c/o The Corporation Company: 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170

**Manner of Service:** Corporation, Aug 29, 2023, 12:00 pm EDT

**Documents:** Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Aug 29, 2023, 12:00 pm EDT at c/o The Corporation Company: 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170 received by Ms. Kylie Anderson, Intake Specialist. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'6"; Hair: Blond;

_____   8/30/23
**Miguel Bruce**          **Date**

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
**Notary Public**

8/30/2023    July 7, 2027
**Date**        **Commission Expires**

TERESA M. GUESS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 7, 2027
ACTING IN COUNTY OF Wayne

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/31/2023 10:00 AM**
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case:<br>23-C-03730-S2 | Court:<br>State | County:<br>Gwinnett, GA | Job:<br>9422772 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Douglas Grant Morton | | Defendant / Respondent:<br>AUDI OF AMERICA, LLC et al. | |
| Received by:<br>Evolution Process Service | | For:<br>Conley Griggs Partin LLP | |
| To be served upon:<br>Faurecia Automotive Seating LLC | | | |

I, Miguel Bruce, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Ms. Kylie Anderson, Intake Specialist, c/o Capitol Services, Inc.; 186 N Main St 2nd Floor, Suite 1, Plymouth, MI 48170

**Manner of Service:** Corporation, Aug 29, 2023, 12:00 pm EDT

**Documents:** Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Aug 29, 2023, 12:00 pm EDT at c/o Capitol Services, Inc.; 186 N Main St 2nd Floor, Suite 1, Plymouth, MI 48170 received by Ms. Kylie Anderson, Intake Specialist. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'6"; Hair: Blond;

_____    _____
**Miguel Bruce**              **Date**

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the offiant who is personally known to me.

_____
**Notary Public**

_____    _____
**Date**                    **Commission Expires**

TERESA M. GUESS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 7, 2027
ACTING IN COUNTY OF *w my n*

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
8/31/2023 10:52 AM
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case:<br>23-C-03730-S2 | Court:<br>State | County:<br>Gwinnett, GA | Job:<br>9422807 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Douglas Grant Morton | | Defendant / Respondent:<br>AUDI OF AMERICA, LLC et al. | |
| Received by:<br>Evolution Process Service | | For:<br>Conley Griggs Partin LLP | |
| To be served upon:<br>Faurecia USA Holdings, Inc. | | | |

I, Miguel Bruce, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:  Ms. Kylie Anderson, Intake Specialist, c/o Capitol Services, Inc.: 186 N Main St 2nd Floor, Suite 1, Plymouth, MI 48170

Manner of Service:  Corporation, Aug 29, 2023, 12:00 pm EDT

Documents:  Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

Additional Comments:
1) Successful Attempt: Aug 29, 2023, 12:00 pm EDT at c/o Capitol Services, Inc.: 186 N Main St 2nd Floor, Suite 1, Plymouth, MI 48170 received by Ms. Kylie Anderson, Intake Specialist. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'6"; Hair: Blond;

_____  8/30/23
Miguel Bruce              Date

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public
8/30/2023              July 7, 2027
Date                    Commission Expires

TERESA M. GUESS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 7, 2027
ACTING IN COUNTY OF Wayne

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**8/31/2023 10:00 AM**
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case:<br>23-C-03730-S2 | Court:<br>State | County:<br>Gwinnett, GA | Job:<br>9422666 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Douglas Grant Morton | | Defendant / Respondent:<br>AUDI OF AMERICA, LLC et al. | |
| Received by:<br>Evolution Process Service | | For:<br>Conley Griggs Partin LLP | |
| To be served upon:<br>Grammer Industries, LLC | | | |

I, Miguel Bruce, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:  Ms. Kylie Anderson, Intake Specialist, c/o The Corporation Company: 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170

Manner of Service:  Corporation, Aug 29, 2023, 12:00 pm EDT

Documents:  Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

Additional Comments:
1) Successful Attempt: Aug 29, 2023, 12:00 pm EDT at c/o The Corporation Company: 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170 received by Ms. Kylie Anderson, Intake Specialist. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'6"; Hair: Blond;

_Miguel Bruce_                    _8/30/23_
Miguel Bruce                         Date

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is
personally known to me.

_Teresa M. Guess_
Notary Public
_8/30/2023_          _July 7, 2027_
Date               Commission Expires

TERESA M. GUESS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 7, 2027
ACTING IN COUNTY OF _Wayne_

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**8/31/2023 10:00 AM**

TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: 23-C-03730-S2 | Court: State | County: Gwinnett, GA | Job: 9422639 |
|---|---|---|---|
| **Plaintiff / Petitioner:** Douglas Grant Morton | | **Defendant / Respondent:** AUDI OF AMERICA, LLC et al. | |
| **Received by:** Evolution Process Service | | **For:** Conley Griggs Partin LLP | |
| **To be served upon:** Lear Corporation | | | |

I, Miguel Bruce, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  Ms. Kylie Anderson, Intake Specialist, c/o The Corporation Company: 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170

**Manner of Service:**  Corporation, Aug 29, 2023, 12:00 pm EDT

**Documents:**  Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Aug 29, 2023, 12:00 pm EDT at c/o The Corporation Company: 40600 Ann Arbor Rd E Suite 201, Plymouth, MI 48170 received by Ms. Kylie Anderson, Intake Specialist. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'6"; Hair: Blond;

_Miguel Bruce_  _8/30/23_

**Miguel Bruce**          **Date**

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

_Subscribed and sworn to before me by the affiant who is personally known to me._

_Teresa M. Guess_

**Notary Public**

_8/30/2023_          _July 7, 2027_

**Date**          **Commission Expires**

TERESA M. GUESS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 7, 2027
ACTING IN COUNTY OF _Wayne_

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/1/2023 9:37 AM**

TIANA P. GARNER, CLERK

**STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. | ) | |
| d/b/a AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAURECIA AUTOMOTIVE SEATING, LLC; | ) | |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT VOLKSWAGEN GROUP OF**
**AMERICA, INC.'S MOTION TO DISMISS UNDER THE DOCTRINE OF**
**FORUM *NON CONVENIENS***

Plaintiff files this Opposition to Defendant Volkswagen Group of America, Inc.'s Motion

to Dismiss Under the Doctrine of Forum *Non Conveniens*, respectfully showing the Court as

follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This negligence and product liability case arises out of a motor vehicle collision on September 25, 2021 that resulted in Plaintiff Douglas Morton's permanent, paralyzing spinal cord injuries while driving a 2020 Audi A6 that was designed, tested, manufactured, assembled, and sold by Defendant Volkswagen Group of America, Inc. ("Volkswagen"). Although incorporated in New Jersey and headquartered in Virginia, Defendant Volkswagen regularly transacts business in Georgia and actively maintains a registered agent in Gwinnett County.[1] The subject Audi vehicle was shipped directly to Georgia and first sold at an Audi-authorized dealer located in Georgia.  Compl. at ¶ 30.  Defendant Asbury Automotive Group, Inc. owns and operates the Audi-authorized dealer (with direct oversight by Volkswagen) that first sold the subject vehicle in Georgia and performed service, repair and maintenance work on the vehicle numerous times in Georgia before the subject wreck. *Id.* at ¶ 16, 30. Defendant Asbury is headquartered in Georgia and (like Volkswagen) actively maintains a registered agent in Gwinnett County. *Id.*

Despite these specific ties to Gwinnett County, Volkswagen (by and through its Atlanta-based attorneys) now moves to dismiss this case under the doctrine of forum *non conveniens*, arguing that this case should be heard in Madison County, North Carolina, where the subject wreck occurred. Under Georgia law, Volkswagen bears the burden to place *specific facts* in the record to show that litigating this case in Gwinnett County would so significantly inconvenience Volkswagen such that the traditional deference owed to Plaintiff's chosen forum should be disregarded. It has failed to do so. On these facts as detailed below (and in the light most favorable to Plaintiff as the non-moving party), Volkswagen's motion to dismiss must be denied.

---

[1] *See* Plf. Compl. at ¶ 4; *see also* Georgia Secretary of State webpage for Volkswagen Group of America, Inc., attached as **Exhibit 1.**

2

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A. Volkswagen Fails to Meet its Burden to Show that Georgia's Forum *Non Conveniens* "Factors" Favor Dismissal

Georgia's forum *non conveniens* statute, O.C.G.A. § 9-10-31.1(a), permits a court to dismiss a case <u>only</u> when the moving party demonstrates that, in the interest of justice and for the convenience of the parties and witnesses, the case would be more properly heard in a forum outside the state. The Court's ruling on a forum *non conveniens* motion is a matter committed to the sound discretion of the trial court and, absent an abuse of that discretion, the trial court's decision shall be affirmed. *See Hawthorn Suites Golf Resorts v. Feneck*, 282 Ga. 554, 556 (2007). Defendant bears the burden of placing facts in the record to demonstrate that the seven "factors" enumerated in the forum *non conveniens* statute weigh in favor of dismissal. *See Gowdy v. Schley*, 317 Ga. App. 693 (2012). Volkswagen has failed to carry this heavy burden.

#### 1.   The Traditional Deference Given to a Plaintiff's Choice of Forum

As reflected in O.C.G.A. 9-10-31.1(a) and recent case law, there is "traditional deference" given to a Plaintiff's choice of forum. *See Park Avenue Bank v. Steamboat City Dev. Co.*, 317 Ga. App. 289 (2012), *cert. denied*, *overruled on other grounds* in *Wang v. Liu*, 292 Ga. 568 (2013). This factor, thus, weighs heavily and decidedly in favor of venue remaining in Plaintiff's chosen forum of Gwinnett County and should be given significant weight as no other factor comes close to the overwhelming interest a plaintiff has in choosing his/her own forum.  By using the language "the traditional deference given to a plaintiff's choice of venue" rather than simply listing "a plaintiff's choice of venue" as a factor, the Georgia General Assembly made clear that a plaintiff's choice of venue is of paramount importance.

## 2. <u>Relative Ease of Access to Sources of Proof</u>

Volkswagen argues that the proof in this case is most accessible in North Carolina since the wreck occurred in North Carolina and certain fact witnesses reside in North Carolina. However, Volkswagen's argument fails for two reasons. First, the most important evidence in this case—the subject vehicle and its occupant restraint system, headrest, and components—are currently being stored in Covington, Georgia. Thus, in order for the jury to see such evidence in person, it would be undoubtedly more accessible for the vehicle to be transported to a trial in Gwinnett County than in North Carolina.

Second, the major "sources of proof" at trial in a major product liability case will likely be the testimony of expert witnesses. The parties have not yet disclosed their experts; thus, Volkswagen has failed to show that expert testimony will be inconvenienced in any way by litigating this case in Gwinnett County. Further, it is safe to assume many, if not most, of the parties' experts will be traveling from distant states outside of Georgia and North Carolina via airplane. Atlanta's Hartsfield-Jackson International Airport is one of the busiest and most accessible airports in the world and makes Gwinnett County a much more convenient and efficient forum for attendance of out-of-state witnesses than Madison County, North Carolina, where flight options will likely be comparatively limited. As such, this factor weighs heavily in favor of Gwinnett County.

## 3. <u>Availability and Cost of Compulsory Process for Attendance of Unwilling Witnesses</u>

Volkswagen first argues that this case should be dismissed from Gwinnett County since it will not be able to compel to trial Scottie Dale Proffit, the driver of the vehicle that rear-ended the Audi that Plaintiff was driving, since he resides in North Carolina. Volkswagen, thus, argues Mr. Proffit is either "an unwilling witness [Volkswagen] cannot compel to trial" or "a necessary third-

party defendant over whom the State of Georgia may not have jurisdiction." (Def. Br. at 6-7). Volkswagen then asserts that it also will be unable to compel unidentified fact witnesses residing in North Carolina to participate in this case during discovery or at trial. *Id.* But each concern is legally and factually unfounded.

First, Georgia Courts have long held that the party seeking transfer due to the attendance of unwilling witnesses must put facts in the record to show an actual inability to get process over any unwilling witnesses. In *Hawkins v. Blair,* 334 Ga. App. 898 (2015), the Court of Appeals held that although the party seeking dismissal complained of a hypothetical inability to secure out of State witness testimony, both South Carolina and Georgia had enacted the Uniform Interstate Deposition and Discovery Act, which allowed for both sides to secure any uncooperative witnesses. Therefore, this factor weighed against dismissal. *Id.* Volkswagen bears the burden of putting *specific facts* in the record in support of its claim of actual unavailability and the inability of the Uniform Deposition Act to effectuate service over unwilling witnesses.

Volkswagen has not placed any facts in the record or identified any specific evidence demonstrating that Mr. Proffit or any other potential witnesses are unavailable or unwilling to participate in this case or travel to Gwinnett County. *See McInerney v. McInerney*, 313 Ga. 462, 470 (2022) (reversing trial court's order granting motion to dismiss since the court failed to determine whether any witnesses were actually "unwilling to travel…as opposed to merely being inconvenienced by the prospect" under the second factor of the forum *non conveniens* analysis). Regardless, both Georgia and North Carolina have adopted the Uniform Act. (O.C.G.A. § 24-13-110, *et. seq.* and N.C.G.S. §§ 1F-1, *et. seq*). As such, if any witness refused to appear for deposition or trial, this Court would have jurisdiction to compel such testimony. N.C. Gen. Stat. Ann. § 1F-3 (2022) (outlining the process for issuance of a subpoena to a witness related to an action out of

5

state); O.C.G.A. § 24-13-113 (same). Moreover, from a practical standpoint, Georgia has long allowed the use of deposition testimony at trial, and in our modern era, many depositions and court proceedings are now conducted via videoconference. Zoom depositions of witnesses and the usage of those depositions at trial is a fair alternative for any uncooperative witnesses.

Second, Scottie Dale Proffit is not a necessary or indispensable party to this action because Volkswagen is free to attempt to apportion fault against him, regardless of whether Mr. Proffit is a named defendant or not. In *Deaton Holdings, Inc. v. Reid*, 367 Ga. App. 746, 747 (2023), the plaintiff brought suit after she was injured by a truck owned by the defendant, Deaton. *Id.* Deaton moved to add two other individuals and a company that owned a separate truck involved in the collision as necessary and indispensable parties. *Id.* The court held the separate parties were not necessary or indispensable defendants since Deaton was free to seek contribution from the other parties as joint tortfeasors. *Id.* at 749. Here, since Volkswagen is free to attempt to apportion non-party fault against Mr. Proffit under O.C.G.A. § 51-12-33(b), Mr. Proffit is not a necessary or indispensable party.

Volkswagen has failed to show that Mr. Proffit or any other unnamed witness is unwilling to testify in Gwinnett County, nor has Volkswagen shown that any such unwilling witness cannot be compelled to participate subject to the Uniform Interstate Deposition and Discovery Act. Nevertheless, to the extent Volkswagen can identify any such witnesses, Plaintiff agrees to pay for the required (a) travel; (b) time off work; (c) food; and (d) lodging expenses, if necessary. This factor weighs heavily in favor of Gwinnett County.

4. <u>Possibility of Viewing of the Premises, if Viewing Would be Appropriate to the Action</u>

The factor regarding the possibility of viewing the premises, by the express terms of the statute, applies only "if viewing would be appropriate to the action." O.C.G.A. § 9-10-31.1(a)(3).

6

Nothing here suggests that viewing the accident premises would be appropriate. No dispute about the scene (or even the basics of the wreck sequence for that matter) exists that would merit a need for a scene visit. Inspection of the subject vehicle and occupant restraint system, located in Convington, Georgia, will be far more important. If the jury needs to see physical evidence from the scene, this will be displayed by both parties through crash reconstructionists, photographs, videos, and likely animations of the crash itself. There is simply no need to shut down a major North Carolina highway so the jury can stand on the side of the highway, years after the crash occurred, without any physical evidence of the wreck present. Volkswagen has failed to identify any particular manner in which a site inspection would be more beneficial than other types of demonstrative evidence which are routinely used in trials of this nature. Thus, this factor heavily favors venue in Gwinnett County.

5. <u>Unnecessary Expense or Trouble to the Defendant Not Necessary to the Plaintiff's Own Right to Pursue His or Her Remedy</u>

Nothing suggests that Volkswagen would suffer prejudice or unnecessary trouble and expense to litigate this case in Gwinnett County (where it actively maintains a registered agent) rather than Madison County, North Carolina. In fact, Volkswagen's counsel – Colin Kelly, Caroline Gieser, and Timia Skelton – all practice out of the Atlanta office of the law firm Shook Hardy & Bacon, LLP. Similarly, Plaintiff's lead counsel are Cale Conley, Davis Popper, and Alex Edmonds with the Atlanta-based law firm Conley Griggs Partin. Although Plaintiff (a California resident) will have to travel whether trial is in Georgia or North Carolina, Gwinnett County is in fact far easier for Plaintiff – a paraplegic – to travel to via Atlanta's international airport, which regularly offers numerous options for direct flights to and from California.

Volkswagen argues that litigating this case in an "arbitrary" forum like Gwinnett County "substantially impairs [its] ability to defend itself," repeating its claims that the evidence and

7

witnesses reside in North Carolina. (Def. Br. at 9). But, as previously discussed, venue in Gwinnett County is not arbitrary. The subject vehicle was first sold in Georgia, was serviced numerous times in Georgia before the subject wreck and is currently being stored in Georgia. Volkswagen has not identified any actual unavailable or unwilling witnesses, and even if it had, any out-of-state witnesses can easily be compelled to participate in discovery and/or trial though the Uniform Deposition and Discovery Act, or through recorded video testimony. No facts exist which merit the need for a jury to visit the premises where the crash occurred. And finally, Volkswagen and Defendant Asbury both *actively maintain registered agents in Gwinnett County*.[2] Volkswagen has failed to present any specific facts about Gwinnett County showing any significant inconvenience. Therefore, this factor weighs in favor of Gwinnett County.

### 6. Administrative Difficulties for the Forum Courts

Volkswagen argues that applying North Carolina substantive law in this case presents insurmountable administrative difficulty to this Court. (Def. Br. at 9). But any "administrative difficulty" to Gwinnett County in applying foreign substantive law is insignificant and does not favor dismissal. First, Georgia's procedural and substantive product liability laws will apply in this case because North Carolina's products liability laws regarding pure contributory negligence (like Virginia's) violate Georgia public policy; otherwise, Georgia procedural and substantive law will apply. *See Alexander v. General Motors Corp.*, 267 Ga. 339 (1996) (holding that Georgia substantive law applied to a products liability action arising out of a crash in Virginia since Virginia products liability law violated Georgia public policy). Further, even if certain North Carolina

---

[2] Volkswagen incorrectly asserts that "Asbury is the only Defendant with any connection to Gwinnett County, Georgia because Asbury has its registered agent for service of process in Georgia there." (Def. Br. at 7). Incredibly, Volkswagen fails to mention *anywhere* in its brief that its registered agent is also located in Gwinnett County.

8

substantive laws apply here, it does not justify dismissal from Gwinnett County. In *Josh Hill v. Indiana Mills & Manufacturing, Inc. et al.,* Judge Emily Brantley rejected similar arguments to transfer a products liability action involving vehicle defects from Gwinnett County to Virginia, where the subject wreck occurred. No. 17-C-07188-S1, at *7-12 (Ga. St. Ct. 2020). The Defendant argued that the case should be transferred to Virginia under forum *non conveniens* due (in part) to "the need to adjudicate the case according to foreign law." *Id.* Judge Brantley rejected the motion, holding that there were "no known difficulties for the Gwinnett County Court system that would suggest this Court could not handle hearing the case…." *Id.*[3] Likewise, any slight administrative difficulty in applying foreign law does not support dismissal from Gwinnett County, which routinely handles complex civil litigation and products liability actions such as this one.

Further, Volkswagen suggests that given its small population, Madison County's docket is better situated to hear this case. But this may not be true – Madison County is one of 27 counties served by the Fifth Division of the Superior Courts of North Carolina. Often it can be more difficult to obtain a trial date in a small county such as this, given the wide range of territory that the small number of rotating judges must cover. And though Gwinnett County is a large county, it employs a large and highly efficient court system that is entirely capable of handling this action. If anything, this factor, while minimally relevant, favors trying this case in Gwinnett County, which is obviously well-equipped to handle a large-scale products liability case like this one.

       7.  <u>Existence of Local Interests in Deciding the Case Locally</u>

Aside from the accident scene, none of the parties have any ties to Madison County, North Carolina—Plaintiff resides in California, and Volkswagen is headquartered in Virginia.

---

[3] A copy of Judge Brantley's Order on Pending Motions in *Hill v. Indiana Mills & Manufacturing, Inc. et al.*, No. 17-C-07188-S1 (Ga. St. Ct. 2020) is attached as **Exhibit 2.**

9

Accordingly, Madison County, North Carolina citizens have zero stake in the outcome of this litigation. The local interests of Madison County to this lawsuit are, at best, a non-factor.

### III.  <u>CONCLUSION</u>

Volkswagen has not put forth sufficient evidence to show why, in the interests of justice and for the convenience of the parties, this matter should not be heard in Plaintiff's chosen forum of Gwinnett County. Accordingly, Volkswagen has failed to meet its burden of proof to demonstrate that dismissal is warranted in this case. Plaintiff respectfully requests this Court deny Defendant Volkswagen's Motion to Dismiss Under the Doctrine Forum *Non Conveniens*.

This 1st day of September, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Davis Popper*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Pro Hac Vice Motions to Be Filed For:*

**ABRAMS & ABRAMS, P.A.**

 /s/ *Noah B. Abrams*

Noah B. Abrams
State Bar Number 38735
1526 Glenwood Avenue
Raleigh, NC  27608
Telephone:     (919) 755-9166
NAbrams@abramslawfirm.com


**EDWARDS KIRBY, L.L.P.**

 /s/ *Winston S. Kirby*
Winston S. Kirby
State Bar Number 49316
Andrew C. Avram
State Bar Number 51106
3201 Glenwood Avenue, Suite 100
Raleigh, NC  27619
Telephone:     (919) 780-5400
wkirby@edwardskirby.com
aavram@edwardskirby.com

11

Exhibit 1



# GEORGIA CORPORATIONS DIVISION

GEORGIA SECRETARY OF STATE

# BRAD RAFFENSPERGER

**HOME (/)**

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | **VOLKSWAGEN GROUP OF AMERICA, INC.** | Control Number: | **H950230** |
| Business Type: | **Foreign Profit Corporation** | Business Status: | **Active/Compliance** |
| Business Purpose: | **NONE** | | |
| Principal Office Address: | **2200 WOODLAND POINTE AVE, Herndon, VA, 20171, USA** | Date of Formation / Registration Date: | **8/18/1975** |
| Jurisdiction: | **New Jersey** | Last Annual Registration Year: | **2023** |

### REGISTERED AGENT INFORMATION

Registered Agent Name: **Corporation Service Company**

Physical Address: **2 SUN COURT, SUITE 400, PEACHTREE CORNERS, GA, 30092, USA**

County: **Gwinnett**

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| Elmar-Marius Licharz | CFO | 2200 Woodland Pointe Ave, Herndon, VA, 20171, USA |
| Kevin Duke | Secretary | 2200 Woodland Pointe Ave, Herndon, VA, 20171, USA |
| Scott Keogh | CEO | 2200 Woodland Pointe Ave, Herndon, VA, 20171, USA |

Back                           Filing History          Name History

Return to Business Search

---

Exhibit 2


## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2020 JAN 17 PM 1:37

RICHARD ALEXANDER, CLERK

JOSHUA KYLE HILL,  )
    Plaintiff,  )
                            )
v.  )  **CIVIL ACTION FILE**
                            )  **NO. 17-C-07188-S1**
INDIANA MILLS & MANUFACTURING,  )
INC., et al.,  )
    Defendants.  )
                            )

## <u>ORDER ON PENDING MOTIONS</u>

The above-styled action came before this Court on the parties' various pending motions i.e. Defendants' motion to apply foreign law (Virginia substantive law), Defendants' motion to dismiss for *forum non conveniens* or to transfer venue, Defendant Indiana Mills & Manufacturing, Inc.'s ("IMMI") motion for summary judgment and Defendants Commercial Vehicle Group, Inc. and CVG National Seating Company, LLC's (collectively "CVG") motion for summary judgment.[1] The Court held a motions hearing on January 6, 2020 to hear these pending matters and counsel for both Plaintiff and Defendants were present and offered argument regarding same. Therefore, after hearing argument, reviewing the entire record, exhibits and attachments thereto, deposition testimony and applicable Georgia law, the Court hereby **FINDS** and **ORDERS** as follows:

---

[1] The Court's rulings on the parties' various <u>Daubert</u> motions on Lange, Page, MKandawire, Kress and Meyer and the parties' motions to file certain documents and exhibits under seal pursuant to the subject consent confidentiality order in place are **HEREBY RESERVED**. Moreover, the Court will consider argument related to redacted/unredacted settlement agreements and their relevancy at the pre-trial conference of this action scheduled for February 20, 2020, if not otherwise moot by then.

1

## FACTUAL OVERVIEW

This is a personal injury/product liability/negligence case whereby the current style and remaining parties are Joshua Hill, the plaintiff, with Zurich American Insurance Company (as Intervenor) v. Commercial Vehicle Group, Inc., CVG National Seating Company and Indiana Mills & Manufacturing, Inc.

According to the pleadings, on December 28, 2015, Plaintiff Joshua Kyle Hill was involved in a single vehicle accident in Rocky Mount, Franklin County, Virginia while operating a 2013 Kenworth T660 semi-truck. Plaintiff rolled the Kenworth cab onto its side as he was attempting to negotiate a turn. The Kenworth cab skidded approximately 100 feet through a drainage culvert, overturning and ejecting Plaintiff; paralyzing him from the neck down.

CVG and IMMI are now the only remaining defendants in this case. Defendants Commercial Vehicle Group, Inc. is a Delaware corporation with its principal place of business in Ohio. It has no registered office or registered agent in the State of Georgia. CVG National Seating Company, LLC is a limited-liability company incorporated under the laws of Delaware with its principal place of business in Tennessee. It also has no registered office or registered agent in the State of Georgia. IMMI is an Indiana corporation with its principal place of business also in Indiana. IMMI also has no registered office or registered agent in the State of Georgia. CVG, through a wholly owned subsidiary of Commercial Vehicle Group, Inc. (i.e. CVG FinishTEK), maintains a place of business in Dalton, Whitfield County, Georgia. The operations of the place of business in Dalton, Georgia have no connection to any issue in this case. Neither the seatbelt nor the seat, both of issue in this matter, were designed, manufactured, sold or marketed in the State of Georgia

2

Plaintiff does not dispute the facts as recited. Plaintiff's claims allege negligence and product liability claims against IMMI and CVG, in that the seatbelt system and seating system failed. As such, each of the pending motions are addressed in turn below.

## LEGAL ANALYSIS

### 1. Defendants' Motion to Apply Foreign Law (Virginia)

Defendants argue that this Court should apply the substantive law of Virginia to the claims remaining at issue in this action, stating that Georgia's rule of *lex loci delicti*[2] requires the Court to apply Virginia law to the claims before this Court because the accident at issue occurred in the Commonwealth of Virginia and the parties do not have any ties to the State of Georgia giving rise to the claims before the Court and to hold otherwise would violate these Defendants' due process rights. The Court does not agree.

The Georgia Supreme Court specifically held that Virginia products liability law, which requires a finding of either negligence or breach of warranty, violates Georgia public policy and may not be enforced. Alexander v. General Motors Corp., 267 Ga. 339 (1996). As Plaintiff correctly notes, in Alexander, the plaintiff was injured when the driver's seat of his vehicle failed while he was driving in Virginia. Id. The trial court dismissed the strict liability claims brought by plaintiff, which the Georgia Court of Appeals upheld. The Supreme Court reversed, finding that "Georgia's public policy of shifting to manufacturers the burden of loss caused by defective products is effectuated by precisely those 'somewhat different methods'" -- namely Georgia's law on strict liability. Id. at 340. The Supreme Court held:

---

[2] In Georgia, under the doctrine of *lex loci delicti*, tort cases are general governed by the substantive law of the state where the tort or wrong occurred, unless there exists a public policy exception to the rule. See Bagnell v. Ford Motor Co., 297 Ga.App. 835, 836(1) (2009). See also Dowis v. Mud Slingers, 279 Ga. 808, 816 (2005).

3

A claim in negligence in a Virginia products liability case differs from a strict liability claim in Georgia in that the latter eliminates questions of negligence and the usual defenses to negligence. This comparison demonstrates that Virginia law and Georgia law are **radically dissimilar** in terms of the burden placed on persons seeking recompense for injuries caused by defective products.

Id. (emphasis added).

Moreover, Georgia appellate courts recognize a public policy exception to the rule of *lex loci delicti.* "Even if an application of the rule of lex loci deliciti renders the law of another state applicable, the forum, within constitutional limits, is not required to give the law of another state extra-territorial effect. This is only done as a matter of courtesy or comity, which will not be enforced if the law of the other state contravenes the public policy of the forum." Bailey v. Cottrell, Inc., 313 Ga. App. 371, 373 (2011) (quoting Fed. Ins. Co. v. Nat. Distrib. Co., 203 Ga. App. 763, 765-66 (1992)). Applicable to the case at bar, Georgia law recognizes a product liability claim based upon strict liability against "those actively involved in the design, specifications, or formulation of a defective final product or of a **defective component part** which failed during use of a product and caused injury." (emphasis added). Davenport v. Cummins Alabama, Inc., 284 Ga. App. 666, 671(1) (2007). See O.C.G.A. § 51–1–11. This alone requires denial of the application of Virginia law to the instant action. Proceeding further, however, this Court notes that Georgia's common law that recognizes comparative negligence and a 50% bar to recovery is the applicable and correct standard to apply to the facts of this matter. O.C.G.A. § 51-12-33(g); Zaldivar v. Prickett, 297 Ga. 589, 594 (2015) ("The doctrine of comparative negligence always has rested upon the notion that every person is bound at all times to exercise ordinary care for his own safety.").

Last, the only nexus between Virginia and the subject matter of the case is that the truck

4

was passing through Virginia, pursuant to a contract between two Georgia-based entities, when the wreck occurred. As this Court has previously ruled, Defendant IMMI's contacts with this state are sufficient to comply with the minimum standards of due process and to afford personal jurisdiction in this forum under both the Long Arm Statute and under the principles of due process. The same analysis applies to CVG in this instance. O.C.G.A. § 9-10-91(1); <u>Innovative Clinical & Consulting Servs, LLC v. First Nat'l Bank</u>, 279 Ga. 672 (2005). Accordingly, for these reasons and as further detailed in the Court's ruling on the motion to dismiss for *forum non conveniens* or to transfer venue, the Court is satisfied that personal jurisdiction and venue in this Court have been satisfactorily established by the evidence and that Virginia substantive and common law are inapposite and impermissibly conflict with binding Georgia precedent in this action. Defendants' motion to apply the foreign law of Virginia is **DENIED**.

2. **Defendants' Motion to Dismiss for *Forum Non Conveniens* or to Transfer Venue**

In the case at bar, the remaining parties in this action are not residents of Georgia. Defendants argue that the State of Virginia is the appropriate forum for this action, as that is where the accident occurred (Franklin County, VA). Or in the alternative, Defendants seek to otherwise transfer the case to Whitfield County, Georgia, where CVG maintains a wholly-owned subsidiary. Finally, Defendants argue that the vanishing venue statutes apply, requiring that this Court dismiss or transfer this action under the doctrine of *forum non conveniens*. See O.C.G.A. §§ 9-10-93; 9-10-31(d)(preempted). Plaintiff contends that the failure to raise the defense of improper venue either in the answer or by motion filed before or contemporaneously with the answer constitutes a waiver of the defense. In this action, it is clear that Defendant CVG did not assert improper venue in any of the twenty-two (22) affirmative defenses in their Answer or file a motion to dismiss.

5

Later, Defendant CVG further affirmatively stated in interrogatory responses: "Defendant does not contend that service of process was deficient or that venue or jurisdiction are improper." In that connection, Defendant IMMI moved to dismiss for lack of personal jurisdiction, however, they did not move this Court until the eve of trial to dismiss or transfer venue on any claim of inconvenience, after nearly two (2) years of substantial litigation. Accordingly, after reviewing the entire record and hearing argument, the Court does find that Defendant IMMI and CVG have **WAIVED** the defense of venue.[3] CVG conceded jurisdiction and venue and IMMI did not move the Court under the doctrine of FNC until the eve of trial. The defense of improper venue may be waived by a nonresident defendant, and such a waiver may be express or implied. Empire Forest Products v. Gillis, 184 Ga. App. 542, 543(1)(1987).

Further, the Georgia Court of Appeals has expressly addressed the vanishing venue doctrine, noting that "the principle of 'vanishing venue' has lost much of its force in future cases as a result of the amendment of O.C.G.A. § 9–10–31, effective July 1, 1999. See Ga. L. 1999, p. 734, § 2, stating the intent of the General Assembly 'to provide for a fairer and more predictable rule of venue ... [and] to eliminate the waste of time and resources to courts and parties under the vanishing venue doctrine.'" Robinson v. Star Gas of Hawkinsville, Inc., 243 Ga.App. 112 (2000).

Therefore, in addition to Defendants' waiver, Georgia's vanishing venue statute (preempted) and venue statute, O.C.G.A. §§ 9-10-31; 9-10-93, by their plain language only contemplate actions where joint tortfeasor defendants are Georgia residents residing in different

---

[3] Ordinarily, a waiver operates to preclude a subsequent assertion of the right waived or any claim based thereon. And once a right is waived the waiver cannot be withdrawn without the consent of the other party, even if subsequent events prove the right waived to have been more valuable than was anticipated. Robinson v. Star Gas of Hawkinsville, Inc., 243 Ga. App. 112, 116 (2000).

6

Georgia counties, and does not even speak to the facts of this case where a nonresident brings an action against joint tortfeasor foreign defendants who do not reside in Georgia i.e. IMMI and CVG.

Pretermitting this Court having already decided that Defendants have sufficient long arm and due process connections to Georgia or have otherwise waived jurisdiction and venue objections, that the vanishing venue statutes do not support dismissal or transfer of this action, and that Georgia precedent does not require a Georgia court to follow foreign substantive law which violates its public policy, the Court **will still review the merits** of the motion to dismiss for *forum non conveniens* de novo.[4]

O.C.G.A. § 9-10-31.1(a) states in its entirety:

(a) If a court of this state, on written motion of a party, finds that in the **interest of justice** and for the **convenience of the parties and witnesses** a claim or action would be more properly heard in a forum outside this state or in a different county of proper venue within this state, the court shall decline to adjudicate the matter under the doctrine of forum non conveniens. As to a claim or action that would be more properly heard in a forum outside this state, the court shall dismiss the claim or action. As to a claim or action that would be more properly heard in a different county of proper venue within this state, the venue shall be transferred to the appropriate county. In determining whether to grant a motion to dismiss an action

---

[4] O.C.G.A. § 9-11-12 (b) requires parties to assert in their responsive pleadings "[e]very defense, in law or fact, to a claim for relief" including "improper venue," and O.C.G.A. § 9-11-12 (h) provides for waiver of "defenses" including improper venue. But although O.C.G.A. § 9-10-31.1 is found in an Article entitled "Venue" in Chapter 10 of Title 9 of our Code, nothing in O.C.G.A. § 9-10-31.1 states that a motion to dismiss for forum non conveniens is a "defense" or that it is subject to the waiver provisions of O.C.G.A. § 9-11-12. There does not appear to be a Georgia case on point, but generally under federal law the application of the doctrine of forum non conveniens is not seen as a defense subject to waiver. See Yavuz v. 61 MM, Ltd., 576 F.3d 1166, 1173 (II) (B) (10th Cir. 2009) ("[F]orum non conveniens is a discretionary doctrine which is not waived by a party's failure to raise it in an initial responsive pleading. ... 'Under the doctrine of forum non conveniens, a court has the **discretion** to dismiss a case **even if jurisdiction and proper venue are established**,"); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3829 (4th ed.) ("Although the authority is not extensive," "[u]nlike a motion to dismiss for improper venue under Rule 12 (b) (3)," a motion to dismiss for forum non conveniens "is not a 'defense' that must be raised by pre-answer motion or responsive pleading."). **There are sound logical reasons for not requiring a forum non conveniens motion to be made within the limited time period allowed for a defendant to file an answer or to move to amend his answer. ... This time is certainly adequate to check the venue statutes and determine whether they have been met. However, the factors of equity and convenience, such as the location of important witnesses and evidence, which control a forum non conveniens motion may not be apparent without time-consuming investigation and, frequently, discovery.** Wegman v. Wegman, 338 Ga.App. 648, 654 (2016)(emphasis added).

7

or to transfer venue under the doctrine of forum non conveniens, the court shall give consideration to the following factors:

**(1) Relative ease of access to sources of proof;**

**(2) Availability and cost of compulsory process for attendance of unwilling witnesses;**

**(3) Possibility of viewing of the premises, if viewing would be appropriate to the action;**

**(4) Unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to pursue his or her remedy;**

**(5) Administrative difficulties for the forum courts;**

**(6) Existence of local interests in deciding the case locally; and**

**(7) The traditional deference given to a plaintiff's choice of forum.**

(emphasis added).

After reviewing all of the relevant factors in the analysis of whether the current forum would be inconvenient for the parties, the Court is persuaded by Plaintiff's argument, *to wit*:

<u>Relative Ease of Access to Sources of Proof</u>

The major "source of proof" at trial for both Plaintiff as well as IMMI and the CVG Defendants will likely be expert witnesses, for which Gwinnett County is a far more accessible venue. Two of Plaintiff's expert witnesses, Paul Lewis, Jr. and Dr. Jonathan Eisenstat, live in the Atlanta area. Plaintiff's remaining experts live outside of Georgia and will also be flying into Atlanta's Hartsfield-Jackson International Airport for hearings or trial. Further, Defendants' experts Joe Kent and Chimba Mkandawire, Ph.D. both live in the Atlanta area, and Tyler Kress, Ph.D. lives in the neighboring state of Tennessee. Defendants' remaining experts will be traveling from distant states and will also be flying into Atlanta's Hartsfield-Jackson airport for hearings or trial. The most important evidence in this case—the subject tractor-trailer's occupant protection system and components—are both located in Villa Rica, Georgia after all parties worked

8

collaboratively to bring them here. Thus, if the jury wanted to see such evidence in person, Gwinnett County would undoubtedly be the more accessible venue for that source of proof.

<u>Availability & Cost of Compulsory Process for Attendance of Unwilling Witnesses</u>

Most of Plaintiff's expert witnesses as well as IMMI and the CVG Defendants' expert witnesses either live in the Atlanta area or will be traveling to trial from out-of-state via airplane. Atlanta's Hartsfield-Jackson International Airport is one of the busiest and most accessible airports in the world, and makes Gwinnett County a much more convenient and efficient forum for attendance of out-of-state witnesses than Franklin County, Virginia, where flight options will likely be comparatively limited. Moreover, none of the remaining parties' experts are located in Virginia. Further, the parties (by agreement) have already taken videotaped depositions of all Virginia-based eyewitnesses, reporting officers, first responders and emergency medical personnel with knowledge about the subject incident. Thus, there will be no need to compel the attendance of those witnesses, especially where (as here) there is no real dispute about "what happened" that makes those witnesses particularly material or creates a strong need to call them live instead of using the videotaped testimony the parties have already incurred the travel and expense to obtain. Indeed, other than these first responders and eye witnesses who have already been deposed by videotape, Virginia is not convenient to anyone else in the case.

<u>Possibility of Viewing of the Premises</u>

The factor regarding the possibility of viewing the premises, by the express terms of the statute, applies only "if viewing would be appropriate to the action." O.C.G.A. § 9-10-31.1(a)(3). Nothing here suggests that viewing the accident premises would be appropriate. The parties have hundreds of photographs of the subject scene taken by police and other first responders and their

expert witnesses have already visited and extensively photographed the scene. Further, no dispute about the scene (or even the basics of the wreck sequence for that matter) that would merit a need for a scene visit. In fact, the experts' reconstructions of the wreck sequence are all fairly similar. It is, thus, highly unlikely that the Court or a jury would need to physically view the wreck scene. Inspection of the subject tractor-trailer and occupant protection system located in Villa Rica, Georgia will be far more important. Thus, this factor heavily favors venue in Gwinnett County.

### Unnecessary Expense or Trouble to the Defendant

Nothing suggests that either IMMI or the CVG Defendants would suffer prejudice or unnecessary trouble and expense to litigate this case in Gwinnett County rather than Franklin County, Virginia. In fact, IMMI's Atlanta-based counsel is Terry Brantley with the law firm Swift Currie McGhee & Heirs. Further, CVG's lead counsel are Rick Saeger, Chris Byrd and Ben Ralston, all of whom are with the Atlanta-based law firm Weinberg Wheeler Hudgins Gunn & Dial. Similarly, Plaintiff's lead counsel are Cale Conley and Davis Popper with the Atlanta-based law firm Conley Griggs Partin. Conversely, neither Plaintiff nor Defendants have any counsel licensed to practice in Virginia. Accordingly, every party would have to incur enormous expenses to hire Virginia counsel as well as for additional travel/lodging if trial were in Virginia. Although Plaintiff (a North Carolina resident) will have to travel whether trial is in Georgia or Virginia, Gwinnett County is in fact far easier for plaintiff – a quadriplegic – to travel to.

### Administrative Difficulties for the Forum Courts

There are no known difficulties for the Gwinnett County Court system that would suggest this Court could not handle hearing the case, particularly considering the Court has already specially-set this case for a two-week trial to begin on Monday, March 9, 2020.

10

<u>Existence of Local Interests in Deciding the Case Locally</u>

Aside from the accident scene, none of the parties have any ties to Franklin County, Virginia—Plaintiff resides in North Carolina, IMMI is headquartered in Indiana, CVG is headquartered in Ohio, and CVG National Seating is headquartered in Tennessee. Second, the subject tractor-trailer contained a load from a Georgia entity (Georgia-Pacific) at the time of the subject incident, the subject tractor-trailer was maintained in Georgia by a Georgia corporation (Georgia Kenworth) prior to the incident, Plaintiff received medical care in Georgia at Shepherd's Center and his main treaters there have been identified as witnesses who may be called live to testify at trial.

<u>The Traditional Deference Given to a Plaintiff's Choice of Forum</u>

As reflected in O.C.G.A. 9-10-31.1(a) and recent case law, there is "traditional deference" given to a Plaintiff's choice of forum. This factor, thus, weighs heavily and decidedly in favor of venue remaining in Gwinnett County and should be given significant weight as no other factor comes close to the overwhelming interest a plaintiff has in choosing his/her own forum. By using the language "the traditional deference given to a plaintiff's choice of venue" rather than simply listing "a plaintiff's choice of venue" as a factor, the Georgia General Assembly made clear that a plaintiff's choice of venue is of paramount importance.

Therefore, after reviewing the evidence of record and applicable Georgia law, the Court is satisfied that the current venue is the most convenient and appropriate forum under the 7 factors enumerated in O.C.G.A. § 9-10-31.1(a). <u>Wang v. Liu</u>, 292 Ga. 568, 570 (2013)("[t]oday, we acknowledge explicitly that specific findings on each of the enumerated statutory factors are a

better practice."). Defendants' Motion to Dismiss for *Forum Non Conveniens* or to Transfer Venue is hereby **DENIED**.[5]

### 3. Defendants IMMI and CVG's Motions for Summary Judgment[6]

Defendants IMMI and CVG argue that they are entitled to summary judgment on Plaintiff's claims and that they are not liable to Plaintiff for his crippling injuries because they only made the seat and seatbelt at issue, which were only component parts to the entire integrated occupant protection system that PACCAR, Inc., the OEM, purposefully decided to put into this Kenworth cab. Under Georgia product liability law, however, an entity that makes a product (and/or is actively involved in designing a product) is strictly liable for the product's defects. This applies to component parts. <u>Davenport v. Cummins Alabama, Inc.</u>, 284 Ga. App. 666, 671(1) (2007). Moreover, even PACCAR, Inc. states in its 30(b)(6) deposition that CVG and IMMI had an active role designing the occupant protection system itself. Plaintiff argues that it so follows that the relationship between IMMI, CVG, and PACCAR and their roles with respect to the integration of the seat and seatbelt into the integrated protection system remain factual issues to be determined by a jury and that a jury could readily find that CVG and IMMI were actively involved in designing and manufacturing the occupant protection system and are therefore liable for the system's defects, which were a proximate cause of Plaintiff's paralyzing injuries in this foreseeable quarter roll incident. This Court agrees.

To prevail at summary judgment, the moving party must demonstrate there is no genuine

---

[5] Defendants' request for a certificate of immediate review pursuant to O.C.G.A. §§ 5-7-2; 5-6-34(b) is **DENIED**. <u>Price v. State</u>, 237 Ga. 352, 352-53 (1976)("The trial judge's denial of certification is not itself an appealable decision.").
[6] As both motions substantially advance similar legal arguments and request the same relief, the Court will issue its consolidated ruling with regard to both, herein.

issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. O.C.G.A. $ 9-11-56(c). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the non-moving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the non-moving party's case." Lau's Com. v. Haskins, 261 Ga. 491 (1991). If an essential element of plaintiffs' claim remains one of pure speculation or conjecture, or if the evidence shows the probabilities are at best evenly balanced, then defendants are entitled to summary judgment in their favor. See Redmon v. Daniel, 335 Ga. App. 159 (2015). Ultimately, a defendant is entitled to summary judgment when the record reveals there is no evidence sufficient to create a jury issue on at least one essential element of the non-moving party's claims. Lau's Corp., 261 Ga. at 495.

"What amounts to proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent." Reed v. Carolina Cas. Ins. Co., 327 Ga. App. 130, 132(2) (2014) (punctuation omitted); see Zeagler v. Norfolk S. Ry. Co., 317 Ga. App. 302, 308(2) (2012)("[c]ausation is traditionally a decision for the jury."). As the Court of Appeals recently opined, "[m]oreover, in numerous cases, we have reiterated the principle that questions of negligence and causation, except in plain, palpable, and indisputable cases, are solely for jury determination." Id.

Here, it is a question of genuine material fact as to whether this quarter roll event was foreseeable in that the suspension seat (by design) would rise to its highest position and catapult Plaintiff's Hill's head upwards into the roof because the seat's upward movement during a rollover

13

was not constrained in any way. Similarly, a question of fact remains as to whether it was foreseeable that IMMI's three-point seatbelt (by design) would allow Plaintiff's body to catapult upwards with the seat and slam laterally into the roof rail at ground impact because the seatbelt did not prevent this vertical and lateral excursion during a rollover. Finally, it remains unclear at this stage to what extent or degree CVG and IMMI worked together to integrate their seat and seatbelt together as part of subject tractor-trailer's occupant protection system by their own designs – especially after learning and discussing the catastrophic dangers posed by their products when so combined prior to this accident.

After review of the entire record, applicable Georgia law and hearing argument from the parties, the Court cannot say that this is a case where there could only be one outcome as to CVG and IMMI's liability and that this is one of those rare cases where it is plain, palpable, and indisputable that summary judgment should be granted for Defendants. It is for the fact finder to resolve whether the seat and seatbelt at issue were defective and whether that failure was foreseeable; whether the seat and seatbelt proximately caused Plaintiff's paralyzing injuries; whether CVG and IMMI were actively involved in the design of the OPS; whether the OPS was itself defective and proximately caused Plaintiff's injuries; whether CVG and IMMI are liable for negligently designing the seat, seatbelt and OPS; and whether CVG and IMMI are liable for strict liability or negligent for failure to warn. As such, genuine issues of material fact remain for a jury to decide and when viewed in this light, Defendant IMMI and Defendant CVG's motions for summary judgment must be and hereby are **DENIED**.

14

## CONCLUSION

**THEREFORE**, for the above and foregoing reasons, Defendants' motion to apply foreign law (Virginia) is **DENIED**; Defendants' motion to dismiss for *forum non conveniens* or to transfer venue is **DENIED**; Defendant IMMI's motion for summary judgment is **DENIED** and Defendant CVG's motion for summary judgment is **DENIED**.

**SO ORDERED**, this __16th__ day of January, 2020.

Judge Emily J. Brantley
State Court of Gwinnett County

Copies to:
Cale Conley, Esq.
Benjamin Ralston, Esq.
Frederick Sager, Jr., Esq.
Christopher Byrd, Esq.
Alicia Timm, Esq.
Jason Carter, Esq.
Willie Ellis, Esq.
David Hayes, Esq.
Ryan Ingram, Esq.
Leryan Lambert, Esq.
Anthony Morris, Esq.
Leslie Neubauer, Esq.
Ryan Perwich, Esq.
Jon Powell, Esq.
Terry Brantley, Esq.
Heidi Chapman, Esq.
Douglas Abrams, Esq.
Noah Abrams, Esq.
Scott Farrow, Esq.
Davis Popper, Esq.
Dustin Sharpes, Esq.
Matthew Stone, Esq.
Blake Shelby, Esq.
*C:\ADMIN ORDERS\GWINNETT\PENDING MTNS ORD.doc*

Case 1:24-cv-00022-MOC-WCM   Document 1-3   Filed 09/28/23   Page 382 of 568

<u>**CERTIFICATE OF SERVICE**</u>

Plaintiff this day served a copy of the foregoing pleading upon the below listed parties to

this matter by electronic e-file through Odyssey and by electronic mail:

SHOOK HARDY & BACON LLP
Colin K. Kelly, Esq.
Caroline M. Gieser, Esq.
Timia A. Kelton, Esq.
1230 Peachtree Street, N.E., Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Attorneys for Defendant Asbury Automotive Group, Inc. Volkswagen Group of America, Inc.*

This 1st day of September, 2023.

**CONLEY GRIGGS PARTIN LLP**


*/s/ Davis S. Popper*
Davis S. Popper
Georgia Bar No. 863530

12

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/13/2023 10:59 AM**
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case: 23-C-03730-S2 | Court: State | County: Gwinnett, GA | Job: 9422714 |
|---|---|---|---|
| **Plaintiff / Petitioner:** Douglas Grant Morton | | **Defendant / Respondent:** AUDI OF AMERICA, LLC et al. | |
| **Received by:** Evolution Process Service | | **For:** Conley Griggs Partin LLP | |
| **To be served upon:** Faurecia Automotive Seating LLC | | | |

I, Isaiah Greene 1367519, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Christie Oldham, Authorized Agent, c/o Capitol Services, Inc.: 108 Lakeland Ave, Dover, DE 19901

**Manner of Service:** Corporation, Sep 5, 2023, 12:25 pm EDT

**Documents:** Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Sep 5, 2023, 12:25 pm EDT at c/o Capitol Services, Inc.: 108 Lakeland Ave, Dover, DE 19901 received by Christie Oldham, Authorized Agent. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 150; Height: 5'5"; Hair: Blond;

Isaiah Greene 1367519                Date 9/8/23

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date 9/8/2023        Commission Expires 11/10/2024

**Karen E. Elliott**
**Notary Public**
**State of Delaware**
**My Commission Expires November 10, 2024**

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**9/13/2023 10:59 AM**
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: 23-C-03730-S2 | Court: State | County: Gwinnett, GA | Job: 9422728 |
|---|---|---|---|
| Plaintiff / Petitioner: Douglas Grant Morton | | Defendant / Respondent: AUDI OF AMERICA, LLC et al. | |
| Received by: Evolution Process Service | | For: Conley Griggs Partin LLP | |
| To be served upon: Faurecia USA Holdings, Inc. | | | |

I, Isaiah Greene 1367519, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:    Christie Oldham, Authorized Agent, c/o Capitol Services, Inc.: 108 Lakeland Ave, Dover, DE 19901
Manner of Service:    Corporation, Sep 5, 2023, 12:25 pm EDT
Documents:    Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

Additional Comments:
1) Successful Attempt: Sep 5, 2023, 12:25 pm EDT at c/o Capitol Services, Inc.: 108 Lakeland Ave, Dover, DE 19901 received by Christie Oldham, Authorized Agent. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 150; Height: 5'5"; Hair: Blond;

Isaiah Greene 1367519      Date  9/8/23

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public    Karen E Elliott
Date  9/8/2023        Commission Expires  11/10/2024

Karen E. Elliott
Notary Public
State of Delaware
My Commission Expires November 10, 2024

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
9/6/2023 1:53 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DOUGLAS GRANT MORTON,                    )
     Plaintiff(s),                      )          CIVIL ACTION FILE
                                        )          NUMBER 23-C-03730-S2
v.                                       )
                                        )
AUDI OF AMERICA, LLC, et al.,            )
     Defendant(s).                      )

## ORDER DENYING DEFENDANT ASBURY AUTOMOTIVE GROUP, INC.'S MOTION TO COMPEL ARBITRATION

Defendant Asbury Automotive Group, Inc.'s Motion to Compel Arbitration and Stay Proceedings having been read, and after considering the motion, Plaintiffs' opposition thereto, all matters of record and the applicable and controlling law, the Court finds as follows.

For the reasons stated, and based on the authorities relied upon, by Plaintiff in opposition to Defendant Asbury Automotive Group, Inc.'s motion, the Court finds that Plaintiff is not a third-party beneficiary to the arbitration provision in the Buyer's Order between Lynn Love and Audi North Atlanta and that Plaintiff is not estopped from avoiding the application of the arbitration provision. *See generally Simmons v. Universal Protection Services, LLC*, 349 Ga. App. 374 (2019) (where the court reiterated the rule that, a person is not a third party beneficiary to a contract, unless it clearly appears from the contract that it was intended for that person benefit).

WHEREFORE, Defendant Asbury Automotive Group, Inc.'s Motion to Compel Arbitration and Stay Proceedings is hereby DENIED.

SO ORDERED, this ____5____ day of ____Sept_____, 2023.

_____
Shawn F. Bratton, Judge
State Court of Gwinnett County

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**9/7/2023 11:24 AM**
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: 23-C-03730-S2 | Court: State | County: Gwinnett, GA | Job: 9422873 |
|---|---|---|---|
| Plaintiff / Petitioner: Douglas Grant Morton | | Defendant / Respondent: AUDI OF AMERICA, LLC et al. | |
| Received by: Evolution Process Service | | For: Conley Griggs Partin LLP | |
| To be served upon: Grammer, Inc. | | | |

I, JOHN HLAVAC, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Bob Gustafson, Intake Specialist , c/o CT Corporation Systems, Inc.: 1010 Dale St N, St Paul, MN 55117

**Manner of Service:** Corporation, Aug 24, 2023, 10:44 am CDT

**Documents:** Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Aug 24, 2023, 10:44 am CDT at c/o CT Corporation Systems, Inc.: 1010 Dale St N, St Paul, MN 55117 received by Bob Gustafson, Intake Specialist . Age: 60; Ethnicity: Caucasian; Gender: Male; Weight: 180; Height: 5'8"; Hair: Brown; Eyes: Brown;

_____     9-5-23
JOHN HLAVAC                          Date

Evolution Process Service
6018 N Keystone Ave.
Indianapolis, IN 46220
(317) 362-0316

Subscribed and sworn to before me by the affiant who is personally known to me.

_____

Notary Public

9/6/23
Date            Commission Expires

CHLOE B. HEROD
NOTARY PUBLIC
MINNESOTA
My Commission Expires January 31, 2027

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/13/2023 10:59 AM**

TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: 23-C-03730-S2 | Court: State | County: Gwinnett, GA | Job: 9422701 |
|---|---|---|---|
| **Plaintiff / Petitioner:** Douglas Grant Morton | | **Defendant / Respondent:** AUDI OF AMERICA, LLC et al. | |
| **Received by:** Evolution Process Service | | **For:** Conley Griggs Partin LLP | |
| **To be served upon:** FNK North America, Inc. | | | |

I, Isaiah Greene, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address: Christie Oldham, Authorized Agent, c/o Capitol Services, Inc.: 108 Lakeland Ave, Dover, DE 19901

Manner of Service: Corporation, Sep 5, 2023, 12:25 pm EDT

Documents: Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Sep 5, 2023, 12:25 pm EDT at c/o Capitol Services, Inc.: 108 Lakeland Ave, Dover, DE 19901 received by Christie Oldham, Authorized Agent. Age: 40; Ethnicity: Caucasian; Gender: Female; Weight: 150; Height: 5'5"; Hair: Blond;

Isaiah Greene 1367519          Date 9/8/23

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date 9/8/2023          Commission Expires 11/10/2024

Karen E. Elliott
Notary Public
State of Delaware
My Commission Expires November 10, 2024

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-03730-S2
9/13/2023 10:59 AM
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case:<br>23-C-03730-S2 | Court:<br>State | County:<br>Gwinnett, GA | Job:<br>9422860 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Douglas Grant Morton | | Defendant / Respondent:<br>AUDI OF AMERICA, LLC et al. | |
| Received by:<br>Evolution Process Service | | For:<br>Conley Griggs Partin LLP | |
| To be served upon:<br>Grammer, Inc. | | | |

I, Doug Whitaker, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:     Reed Hillen, Authorized Agent, c/o Reg Agent Michael Tapscott: 322 W Jefferson St, Tupelo, MS 38804

Manner of Service:     Corporation, Aug 25, 2023, 3:53 pm CDT

Documents:     Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

Additional Comments:
1) Successful Attempt: Aug 25, 2023, 3:53 pm CDT at c/o Reg Agent Michael Tapscott: 322 W Jefferson St, Tupelo, MS 38804 received by Reed Hillen, Authorized Agent. Age: 64; Ethnicity: Caucasian; Gender: Male; Weight: 200; Height: 6'0"; Hair: Gray;

_Doug Whitaker_          9-11-23
Doug Whitaker          Date

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is
personally known to me.

_Kimberly Cates_
Notary Public
9/11/23
Date          Commission Expires

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 58249
KIMBERLY CATES
Commission Expires
Jan. 5, 2024
ITAWAMBA COUNTY

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03730-S2**
**9/13/2023 10:59 AM**
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case: 23-C-03730-S2 | Court: State | County: Gwinnett, GA | Job: 9422837 |
|---|---|---|---|
| Plaintiff / Petitioner: Douglas Grant Morton | | Defendant / Respondent: AUDI OF AMERICA, LLC et al. | |
| Received by: Evolution Process Service | | For: Conley Griggs Partin LLP | |
| To be served upon: NHK Seating of America, Inc. | | | |

I, Thomas Glenfield, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Cheryl Mason, Office Adminstrator, c/o NHK International Corporation: 46855 Magellan Dr, Novi, MI 48377

**Manner of Service:**   Corporation, Aug 29, 2023, 2:30 pm EDT

**Documents:**   Summons and First Amended Complaint (Received Aug 23, 2023 at 1:23pm EDT)

**Additional Comments:**
1) Successful Attempt: Aug 29, 2023, 2:30 pm EDT at c/o NHK International Corporation: 46855 Magellan Dr, Novi, MI 48377 received by Cheryl Mason, Office Adminstrator. Age: 55; Ethnicity: Caucasian; Gender: Female; Weight: 165; Height: 5'5"; Hair: Brown; Other: Glasses;

Thomas Glenfield     9-8-23

_____
Thomas Glenfield          Date

Evolution Process Service
6018 N Keystone Ave
Indianapolis, IN 46220

Subscribed and sworn to before me by the affiant who is
personally known to me.

_____
Notary Public

9/8/2023          7/8/2026
_____
Date          Commission Expires

Germaine Rutkowski
Notary Public of Michigan
Genesee County
Expires 07/08/2026
Acting in the County of _____

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/20/2023 10:51 AM**
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORIGA

DOUGLAS GRANT MORTON, )
     Plaintiff(s), )
         )      CIVIL ACTION FILE
v.                 )      NO.:  23-C-03730-S2
         )
AUDI OF AMERICA, LLC, et al., )
     Defendants. )

---

### <u>ORDER DENYING DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION TO DISMISS UNDER THE DOCTRINE OF FORUM NON CONVENIENS</u>

Defendants Volkswagen Group of America, Inc.'s Motion to Dismiss Under the Doctrine of Forum Non Conveniens having been read, after considering the motion, Plaintiff's response thereto, all matters of record and the applicable and controlling law, the Court finds as follows.

**INTRODUCTION**

Plaintiff, resident of California, brought this action arising from an automobile collision in North Carolina, alleging that Defendants' negligence caused him injury. Defendant Volkswagen Group of America, Inc. ("Volkswagen") maintains an agent for service of process in Gwinnett County, Georgia. Defendant Asbury Automotive Group, Inc. is headquartered in Georgia and maintains a registered agent in Gwinnett County.

A party seeking dismissal on *forum non conveniens* grounds bears the burden of showing that the factors support dismissal. *Hawkins v. Blair*, 334 Ga. App. 898 (2015). "A defendant seeking to change venue by reason of *forum non conveniens* has a heavy burden." *Park Ave. Bank v. Steamboat City Dev. Co., L.P.*, 317 Ga. App. 289 (2012), *overruled on other grounds by Wang v. Liu*, 292 Ga. 568 (2013).

Subsection (a) of O.C.G.A. § 9-10-31.1 provides that "[i]f a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard in a forum outside this state . . . the court shall decline to adjudicate the matter under the doctrine of *forum non conveniens*." That subsection additionally lists seven factors to be considered by the courts in determining whether to transfer a case, pursuant to the doctrine.

Nevertheless, "[i]t is not the seven enumerated factors, but the first sentence of the statute that expresses the core concepts of the *forum non conveniens* doctrine. This fundamental expression, in conjunction with the seven factors, comprises the larger 'procedural framework' of the statutory *forum non conveniens* doctrine. The seven factors are a means to an end: They serve to guide the court toward a reasoned and just finding on whether the case is one which 'would be more properly heard in a forum outside the state.'" *Fed. Ins. Co. v. Chicago Ins. Co.*, 281 Ga. App. 152, 154-55, 635 S.E.2d 411, 414 (2006) *overruled on other grounds by Wang v. Liu*, 292 Ga. 568, 740 S.E.2d 136 (2013).

In determining whether to grant Defendants' motion, the Court has considered to the seven factors set out in O.C.G.A. § 9-10-31.1 (a). Those factors are addressed sequentially below.

**THE SEVEN FACTORS OF O.C.G.A. § 9-10-31.1**

**(1) The Relative Ease of Access to Sources of Proof.**

Obviously, Plaintiff finds Gwinnett County to be the more convenient forum, while Defendants believe that Madison County, North Carolina, is more convenient. The burden is on Defendants to show that access to sources of proof would be better in

Madison County, North Carolina, than in Gwinnett County. *See Hawkins v. Blair*, 334 Ga. App. 898 (2015). Defendant has not shown that access to sources of proof would be better in Madison County. Discovery is typically provided electronically, and depositions may be taken remotely. Moreover, Gwinnett County is much closer to Hartsfield Jackson International Airport, allowing convenient access to experts who travel from other jurisdictions. Thus, the Court finds that Defendant Volkswagen did not meet its burden to show that access to sources of proof would be better in another forum. Accordingly, the Court finds that the factor set out in O.C.G.A §9-10-31.1 (a) (1) weighs in favor of Plaintiffs.

**(2) The Availability and Cost of Compulsory Process for Attendance of Unwilling Witnesses.**

Defendants did not identify any unwilling witnesses residing outside of Gwinnett County. *See Woodard Events, LLC v. Coffee House Indus., LLC*, 341 Ga. App. 526 (2017); *Hawkins v. Blair*, 334 Ga. App. 898 (2015).

Therefore, the Court finds the second factor of O.C.G.A §9-10-31.1 (a) to weigh in favor of Plaintiffs.

**(3) The Possibility of Viewing of the Premises, if Viewing would be Appropriate to the Action.**

This Court regularly presides over automobile tort and product liability cases. The Court can neither recall a single such case that included a premises viewing, nor fathom that a premises viewing would be warranted in this case. Instead of a site view, the jury is more likely to view the vehicle that forms the subject matter of Plaintiff's product claims. For this reason, the Court finds that the third factor of O.C.G.A §9-10-31.1 (a) weighs in favor of Plaintiffs.

**(4) Unnecessary Expense or Trouble to the Defendant Not Necessary to the Plaintiff's Own Right to Pursue its Remedy.**

As to unnecessary expense or trouble, Defendants provided concrete examples of how litigating this case in Gwinnett County would cause them unnecessary expense or trouble not necessary to the Plaintiff's right to pursue his remedy.

For this reason and based upon the authorities cited by Plaintiff in opposition to Volkswagen's motion, the Court finds that Defendants met their burden to show that the fourth factor of O.C.G.A §9-10-31.1 (a) weighs in their favor.

**(5) Administrative Difficulties for the Forum Courts.**

The Court does not anticipate that it will experience administrative difficulties resulting from this case.

The Court finds that Defendants did not meet their burden to show the fifth factor of O.C.G.A §9-10-31.1 (a) weighs in their favor.

**(6) The Existence of Local Interests in Deciding the Case Locally.**

After considering the arguments of counsel and the authorities cited, the Court finds that local interests do not exist in either forum which are particularly instrumental to deciding Defendants' motion to transfer. The Court finds that Defendants did not meet their burden to show that the sixth factor of O.C.G.A §9-10-31.1 (a) weighs in their favor. *See generally R.J. Taylor Mem'l Hosp., Inc. v. Beck*, 280 Ga. 660 (2006).

**(7) The Traditional Deference given to a Plaintiff's Choice of Forum.**

The Court finds that this factor weighs in favor of Plaintiff.

**CONCLUSION**

In sum, having found the equities balanced on the seven factors of Section 9-10-31.1 (a) weigh in favor Plaintiff, the Court finds that Defendants did not meet their burden of showing that the applicable factors support transfer.

Moreover, the Court finds that transferring this case would not serve the interest of justice.

WHEREFORE, Defendants Volkswagen Group of America, Inc.'s Motion to Dismiss Under the Doctrine of Forum Non Conveniens is hereby DENIED.

SO ORDERED, this _19_ day of _September_ 2023.

_[signature]_

Shawn F. Bratton, Judge
State Court of Gwinnett County

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/21/2023 4:43 PM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,

      Plaintiff,

**vs.**

AUDI OF AMERICA, LLC, et al.,

      Defendants.

**Civil Action File**
**No. 23-c-03730-S2**

## STIPULATION EXTENDING TIME

COMES NOW Defendant Brose North America, Inc. ("Brose") and Plaintiff Douglas Grant Morton ("Morton") and file this Stipulation of Extension of Time pursuant to O.C.G.A. § 9-11-6(b) as follows:

Brose was served with a copy of the Complaint in this matter on August 29, 2023. Brose's answer or other responsive pleading is currently due on September 30, 2023. Per this stipulation, Brose shall have until October 30, 2023, to file its answer or otherwise respond to the Complaint.

Respectfully submitted this 21st day of September 2023.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
Georgia Bar No. 020914
Promenade Tower
1230 Peachtree St. NE
Atlanta, GA 30309
Tel: (404) 868-2030
Email: canulewicz@bradley.com

- 1 -

/s/ R. Thomas Warburton
R. Thomas Warburton
Georgia Bar No. 218175
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Tel: (205) 521-8987
E-mail: twarburton@bradley.com

*Counsel for Defendant Brose North America, Inc.*

**CONLEY GRIGGS PARTIN, LLP**

/s/ Davis Popper
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEX S. EDMONDS
Georgia Bar No. 564605
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

*Counsel for Plaintiff*

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served a copy of the within and foregoing **Stipulation Extending Time** by filing a copy of same with the Court's electronic filing system, which will provide all parties of record with electronic notice.

This 21st day of September 2023.


*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz

- 3 -

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/21/2023 3:34 PM**

**TIANA P. GARNER, CLERK**

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 23-C-03730-S2 |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC. | ) | |
| d/b/a AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAURECIA AUTOMOTIVE SEATING, LLC; | ) | |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| Defendants. | | |

## **STIPULATION OF EXTENSION OF TIME TO ANSWER**

**COMES NOW** Douglas Grant Morton, by and through his counsel of record, and

hereby stipulates and agrees that Defendants GRAMMER, INC. and GRAMMER

INDUSTRIES, LLC shall have up through and including October 23, 2023 to answer,

object or otherwise respond to Plaintiff's First Amended Complaint for Damages and Jury

Trial Demand.

**SO STIPULATED**, this 21st day of September 2023.

**CONLEY GRIGGS PARTIN LLP**

_/s/ Alex S. Edmonds_

CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
ALEXANDER S. EDMONDS
Georgia Bar No. 564605
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: (404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

## CERTIFICATE OF SERVICE

Plaintiff this day served a copy of the foregoing pleading upon the below listed parties to

this matter by electronic e-file through Odyssey and by electronic mail:

SHOOK HARDY & BACON LLP
Colin K. Kelly, Esq.
Caroline M. Gieser, Esq.
Timia A. Kelton, Esq.
1230 Peachtree Street, N.E., Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Attorneys for Defendant Asbury Automotive Group, Inc. Volkswagen Group of America, Inc.*

Justin A. Cousino (via email only)
Grammer Americas
1429 Coining Drive
Toledo, OH 43612
Justin.cousino@grammer.com
*Attorney for Defendants Grammer, Inc. and Grammer Industries, LLC*

This 21st day of September, 2023.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Alexander S. Edmonds*
Alexander S. Edmonds
Georgia Bar No. 564605

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/27/2023 6:08 PM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON,                  :
                                       :
    Plaintiffs,                        :
                                       :
v.                                     :   Civil Action File No.:
                                       :   23-C-03730-S2
AUDI OF AMERICA, LLC;                  :
VOLKSWAGEN GROUP OF AMERICA,           :
INC. d/b/a AUDI OF AMERICA, INC. ;     :
AUDI AG; VOLSWAGERN AG; LEAR           :
CORPORATION; FNK NORTH                 :
AMERICA, INC.; FAURECIA-NHK CO.
LTD.; FAURECIA AUTOMOTIVE
SEATING, LLC; NHK SEATING OF
AMERICA, INC.; NHK SPRING CO,
LTD.; FAURECIA USA HOLDINGS INC.;
BROSE NORTH AMERICA INC.; BROSE
FAHRZEUGTEILE SE & CO.
KOMMANDITGESELLSCHAFT;
GRAMMER, INC.; GRAMMER
INDUSTRIES, LLC; GRAMMER AG;
ASBURY AUTOMOTIVE GROUP, INC.;
and XYZ COMPANIES 1-4,

    Defendants.

---

## ANSWER AND DEFENSES OF DEFENDANT
## FAURECIA AUTOMOTIVE SEATING, LLC

---

COMES NOW Faurecia Automotive Seating, LLC ("Faurecia Automotive Seating"), and

respectfully shows as follows:

### FIRST DEFENSE

This Complaint fails to state a claim upon which relief may be granted from this Defendant.

### SECOND DEFENSE

Venue as to this Defendant is improper.

## THIRD DEFENSE

Jurisdiction over the person of this Defendant is improper.

## FOURTH DEFENSE

There may be an insufficiency of process or service of process as to this Defendant.

## FIFTH DEFENSE

The subject product is not defective.

## SIXTH DEFENSE

To the extent shown by the evidence, the defenses of product abuse, misuse, and/or alteration are asserted.

## SEVENTH DEFENSE

To the extent shown by the evidence, the defense of spoliation of evidence is asserted.

## EIGHTH DEFENSE

At all times this Defendant was in the exercise of that degree of care required by law therefore, Plaintiff may not recover of this Defendant.

## NINTH DEFENSE

Plaintiff's claimed injuries were not caused, contributed to, or enhanced by any act or failure by this Defendant.

## TENTH DEFENSE

To the extent shown by the evidence, Plaintiff may have failed to exercise ordinary care for their own safety, assumed the risk of injury, failed to avoid the consequences of any alleged act or failure to act of this Defendant, and/or may be barred from recovery due to negligence equal or greater than this Defendant.

## ELEVENTH DEFENSE

Plaintiff's damages may have been caused or contributed to by the acts or omissions of other persons or entities.

## TWELFTH DEFENSE

No duty to warn was breached by this Defendant.

## THIRTEENTH DEFENSE

Plaintiff's warning claims may be barred by the open and obvious defense.

## FOURTEENTH DEFENSE

With respect to warranty claims, there is a lack of privity.

## FIFTEENTH DEFENSE

No express or implied warranties were breached by this Defendant.

## SIXTEENTH DEFENSE

Plaintiff's claims may be barred by the doctrine of preemption.

## SEVENTEENTH DEFENSE

Plaintiff's claims may be barred by the doctrines of waiver, estoppel, laches and unclean hands.

## EIGHTEENTH DEFENSE

Plaintiff's claims may be barred by the applicable statute(s) of limitation.

## NINETEENTH DEFENSE

This Defendant denies each and every material allegation made against it by Plaintiff and demands strict proof thereof.

<u>TWENTIETH DEFENSE</u>

<u>AND ANSWER</u>

Responding to the specific allegations of the numbered paragraphs of Plaintiff's Complaint, this Defendant further shows as follows:

## **<u>INTRODUCTION</u>**[1]

1.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of Plaintiff's Complaint.

## **II. <u>PARTIES, JURSIDICTION, VENUE & SERVICE OF PROCESS</u>**

2.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of Plaintiff's Complaint.

3.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of Plaintiff's Complaint.

4.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of Plaintiff's Complaint.

---

[1] Plaintiff's titles are being included for reference. Faurecia Automotive Seating does not adopt any allegations therein.

5.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of Plaintiff's Complaint.

6.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of Plaintiff's Complaint.

7.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of Plaintiff's Complaint.

8.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of Plaintiff's Complaint.

9.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of Plaintiff's Complaint.

10.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of Plaintiff's Complaint.

11.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of Plaintiff's Complaint.

12.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of Plaintiff's Complaint.

13.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of Plaintiff's Complaint.

14.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of Plaintiff's Complaint.

15.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of Plaintiff's Complaint.

16.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of Plaintiff's Complaint.

17.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of Plaintiff's Complaint.

18.

Faurecia Automotive Seating admits FNK North America was a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. Faurecia Automotive Seating denies the remaining allegations contained in Paragraph 18 of Plaintiff's

Complaint or is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of Plaintiff's Complaint.

19.

Faurecia Automotive Seating admits Faurecia-NHK is a Japanese corporation with its principal place of business in Naka-Ku Yokohama, Japan. Faurecia Automotive Seating denies the remaining allegations contained in Paragraph 19 of Plaintiff's Complaint or is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of Plaintiff's Complaint.

20.

Faurecia Automotive Seating admits that it is a Delaware corporation with its principal place of business located in Michigan. Faurecia Automotive Seating further admits that it may be served through its registered agent, Capitol Corporate Services, Inc. located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, MI 48170. Faurecia Automotive Seating denies the remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of Plaintiff's Complaint.

22.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of Plaintiff's Complaint.

23.

Faurecia Automotive Seating admits that Faurecia USA Holdings, Inc. is a corporation with its principal place of business located in Auburn Hills, MI. Faurecia Automotive Seating

further admits that Faurecia USA Holdings, Inc., may be served through its registered agent, Capitol Corporate Services, Inc. located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, MI 48170. Faurecia Automotive Seating denies the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint.

<div align="center">24.</div>

Faurecia Automotive Seating denies the allegations in Paragraph 24 of Plaintiff's Complaint.

<div align="center">25.</div>

Faurecia Automotive Seating denies the allegations in Paragraph 25 of Plaintiff's Complaint.

<div align="center">26.</div>

Faurecia Automotive Seating denies the allegations in Paragraph 26 of Plaintiff's Complaint.

<div align="center">27.</div>

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of Plaintiff's Complaint.

<div align="center">28.</div>

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of Plaintiff's Complaint.

<div align="center">29.</div>

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of Plaintiff's Complaint.

30.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of Plaintiff's Complaint.

31.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of Plaintiff's Complaint.

32.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of Plaintiff's Complaint.

33.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of Plaintiff's Complaint.

34.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of Plaintiff's Complaint.

35.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of Plaintiff's Complaint.

36.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of Plaintiff's Complaint.

37.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of Plaintiff's Complaint.

38.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of Plaintiff's Complaint.

39.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of Plaintiff's Complaint.

40.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of Plaintiff's Complaint.

41.

Faurecia Automotive Seating denies the information noted in footnote #7 as it pertains to it. Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 of Plaintiff's Complaint.

42.

Paragraph 42 of Plaintiff's Complaint does not contain any allegations to which a response is required.

43.

Faurecia Automotive Seating denies the allegations in Paragraph 43 of Plaintiff's Complaint.

44.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of Plaintiff's Complaint.

45.

Faurecia Automotive Seating denies the allegations in Paragraph 45 of Plaintiff's Complaint.

### III. <u>OPERATIVE FACTS</u>

*A. The Subject Motor Vehicle Collision*

46.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of Plaintiff's Complaint.

47.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of Plaintiff's Complaint.

48.

Faurecia Automotive Seating denies the allegations in Paragraph 48 of Plaintiff's Complaint.

49.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of Plaintiff's Complaint.

50.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of Plaintiff's Complaint.

51.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of Plaintiff's Complaint.

52.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of Plaintiff's Complaint.

53.

Faurecia Automotive Seating denies the allegations in Paragraph 53 of Plaintiff's Complaint.

*B. The Subject 2020 Audi A6*

54.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of Plaintiff's Complaint.

55.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of Plaintiff's Complaint.

56.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of Plaintiff's Complaint.

57.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of Plaintiff's Complaint.

58.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of Plaintiff's Complaint.

59.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of Plaintiff's Complaint.

60.

Faurecia Automotive Seating denies the allegations in Paragraph 60 of Plaintiff's Complaint.

61.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of Plaintiff's Complaint.

62.

Faurecia Automotive Seating is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of Plaintiff's Complaint.

63.

Faurecia Automotive Seating denies the allegations in Paragraph 63 of Plaintiff's Complaint.

64.

Faurecia Automotive Seating denies the allegations in Paragraph 64 of Plaintiff's Complaint.

65.

Faurecia Automotive Seating denies the allegations in Paragraph 65 of Plaintiff's Complaint.

66.

Faurecia Automotive Seating denies the allegations in Paragraph 66 of Plaintiff's Complaint.

67.

Faurecia Automotive Seating denies the allegations in Paragraph 67 of Plaintiff's Complaint.

68.

Faurecia Automotive Seating denies the allegations in Paragraph 68 of Plaintiff's Complaint.

69.

Faurecia Automotive Seating denies the allegations in Paragraph 69 of Plaintiff's Complaint.

70.

Faurecia Automotive Seating denies the allegations in Paragraph 70 of Plaintiff's Complaint.

71.

Faurecia Automotive Seating denies the allegations in Paragraph 71 of Plaintiff's Complaint.

72.

Faurecia Automotive Seating denies the allegations in Paragraph 72 of Plaintiff's Complaint.

## IV. LEGAL CLAIMS

### COUNT ONE
### (The Audi Defendants – Negligence and/or Strict Products Liability)

73.

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-72 of Plaintiff's Complaint, and its Defenses.

74. - 84.

Paragraphs 74 through 84 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia Automotive Seating. To the extent that Paragraphs 74 through 84 are deemed to contain any substantive allegations against Defendant Faurecia Automotive Seating, those allegations are denied.

## COUNT TWO
### (Defendant Lear – Negligence and/or Strict Product Liability)

85.

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-84 of Plaintiff's Complaint, and its Defenses.

86. - 96.

Paragraphs 86 through 96 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia Automotive Seating. To the extent that Paragraphs 86 through 96 are deemed to contain any substantive allegations against Defendant Faurecia Automotive Seating, those allegations are denied.

## COUNT THREE
### (Faurecia Defendants – Negligence and/or Strict Products Liability)

97.

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-96 of Plaintiff's Complaint, and its Defenses.

98. – 108.

Faurecia Automotive Seating denies the allegations in Paragraphs 98 – 108 of Plaintiff's Complaint.

## COUNT FOUR
### (The Brose Defendants – Negligence and/or Strict Products Liability)

109.

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-108 of Plaintiff's Complaint, and its Defenses.

<div align="center">110. – 120.</div>

Paragraphs 110 through 120 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia Automotive Seating. To the extent that Paragraphs 110 through 120 are deemed to contain any substantive allegations against Defendant Faurecia Automotive Seating, those allegations are denied.

<div align="center">

**COUNT FIVE**
**(The Grammer Defendants – Negligence and/or Strict Products Liability)**

121.

</div>

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-120 of Plaintiff's Complaint, and its Defenses.

<div align="center">122. – 132.</div>

Paragraphs 122 through 132 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia Automotive Seating. To the extent that Paragraphs 122 through 132 are deemed to contain any substantive allegations against Defendant Faurecia Automotive Seating, those allegations are denied.

<div align="center">

**COUNT SIX**
**(Defendant Asbury – Negligence)**

133.

</div>

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-132 of Plaintiff's Complaint, and its Defenses.

134. – 148.

Paragraphs 134 through 148 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia Automotive Seating. To the extent that Paragraphs 134 through 148 are deemed to contain any substantive allegations against Defendant Faurecia Automotive Seating, those allegations are denied.

## COUNT SEVEN
### (Defendant Asbury – Breach of Express and Implied Warranties under North Carolina Law)

149. – 156.

Paragraphs 149 through 156 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia Automotive Seating. To the extent that Paragraphs 149 through 156 are deemed to contain any substantive allegations against Defendant Faurecia Automotive Seating, those allegations are denied.

## V. DAMAGES SOUGHT BY PLAINTIFF

157.

Faurecia Automotive Seating restates and incorporates herein by reference its previously stated responses to Paragraphs 1-108 of Plaintiff's Complaint, and its Defenses.

158. – 161.

Faurecia Automotive Seating denies the allegations in Paragraph 158 through 161 of Plaintiff's Complaint.

## VI. <u>PRAYER FOR RELIEF</u>

Faurecia Automotive Seating denies all allegations not specifically admitted to herein, including the relief requested in Plaintiff's "WHEREFORE" Paragraph including subparts (a)-(e), except that Faurecia Automotive Seating requests a trial by the maximum number of jurors allowable (12) as to all appropriate issues.

**WHEREFORE**, having fully responded to Plaintiff's Complaint, Faurecia Automotive Seating prays as follows:

    a.   That judgment be entered in its favor;

    b.   That costs be taxed against Plaintiff;

    c.   That it have a trial by jury of twelve persons; and

    d.   That it have such further relief as the Court deems just and proper.

Respectfully submitted this 27th day of September, 2023.

WATSON SPENCE LLP

*/s/ Michael R. Boorman*
Michael R. Boorman
Georgia Bar No. 067798
mboorman@watsonspence.com
999 Peachtree Street, N.E., Suite 1130
Atlanta, Georgia, 30309
Telephone: (229) 436-1545
*Counsel for Defendant Faurecia Automotive Seating, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the Odyssey e-filing system which will automatically send email notification of such filing to the following attorneys of record:

Cale Conley
Davis Popper
Alex S. Edmonds
Conley Griggs Partin, LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, Georgia 30327
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

Noah B. Abrams
Abrams & Abrams, P.A.
1526 Glenwood Avenue
Raleigh, North Carolina 27608
NAbrams@abramslawfirm.com

Winston S. Kirby
Andrew C. Avram
Edwards Kirby, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27619
wkirby@edwardskirby.com
aavram@edwardskirby.com
*Counsel for Plaintiff*

Colin K. Kelly
Caroline M. Gieser
Timia A. Kelton
Shook Hardy & Bacon LLP
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Counsel for Asbury Automotive Group, Inc. and Volkswagen Group of America, Inc.*

[*Signature Line on Following Page.*]

This 27th day of September, 2023.

/s/ Michael R. Boorman
Michael R. Boorman
Georgia Bar No. 067798

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/27/2023 6:08 PM**

TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY
# STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action File No.: |
| | : | 23-C-03730-S2 |
| AUDI OF AMERICA, LLC; | : | |
| VOLKSWAGEN GROUP OF AMERICA, | : | |
| INC. d/b/a AUDI OF AMERICA, INC. ; | : | |
| AUDI AG; VOLSWAGERN AG; LEAR | : | |
| CORPORATION; FNK NORTH | : | |
| AMERICA, INC.; FAURECIA-NHK CO. | | |
| LTD.; FAURECIA AUTOMOTIVE | | |
| SEATING, LLC; NHK SEATING OF | | |
| AMERICA, INC.; NHK SPRING CO, | | |
| LTD.; FAURECIA USA HOLDINGS INC.; | | |
| BROSE NORTH AMERICA INC.; BROSE | | |
| FAHRZEUGTEILE SE & CO. | | |
| KOMMANDITGESELLSCHAFT; | | |
| GRAMMER, INC.; GRAMMER | | |
| INDUSTRIES, LLC; GRAMMER AG; | | |
| ASBURY AUTOMOTIVE GROUP, INC.; | | |
| and XYZ COMPANIES 1-4, | | |
| | | |
| Defendants. | | |

## ANSWER AND DEFENSES OF DEFENDANT
## FAURECIA USA HOLDINGS, INC.

COMES NOW Faurecia USA Holdings, Inc. ("Faurecia USA Holdings"), and respectfully

shows as follows:

## FIRST DEFENSE

This Complaint fails to state a claim upon which relief may be granted from this Defendant.

## SECOND DEFENSE

Venue as to this Defendant is improper.

## THIRD DEFENSE

Jurisdiction over the person of this Defendant is improper.

## FOURTH DEFENSE

There may be an insufficiency of process or service of process as to this Defendant.

## FIFTH DEFENSE

The subject product is not defective.

## SIXTH DEFENSE

To the extent shown by the evidence, the defenses of product abuse, misuse, and/or alteration are asserted.

## SEVENTH DEFENSE

To the extent shown by the evidence, the defense of spoliation of evidence is asserted.

## EIGHTH DEFENSE

At all times this Defendant was in the exercise of that degree of care required by law therefore, Plaintiff may not recover of this Defendant.

## NINTH DEFENSE

Plaintiff's claimed injuries were not caused, contributed to, or enhanced by any act or failure by this Defendant.

## TENTH DEFENSE

To the extent shown by the evidence, Plaintiff may have failed to exercise ordinary care for their own safety, assumed the risk of injury, failed to avoid the consequences of any alleged act or failure to act of this Defendant, and/or may be barred from recovery due to negligence equal or greater than this Defendant.

ELEVENTH DEFENSE

Plaintiff's damages may have been caused or contributed to by the acts or omissions of other persons or entities.

TWELFTH DEFENSE

No duty to warn was breached by this Defendant.

THIRTEENTH DEFENSE

Plaintiff's warning claims may be barred by the open and obvious defense.

FOURTEENTH DEFENSE

With respect to warranty claims, there is a lack of privity.

FIFTEENTH DEFENSE

No express or implied warranties were breached by this Defendant.

SIXTEENTH DEFENSE

Plaintiff's claims may be barred by the doctrine of preemption.

SEVENTEENTH DEFENSE

Plaintiff's claims may be barred by the doctrines of waiver, estoppel, laches and unclean hands.

EIGHTEENTH DEFENSE

Plaintiff's claims may be barred by the applicable statute(s) of limitation.

NINETEENTH DEFENSE

This Defendant denies each and every material allegation made against it by Plaintiff and demands strict proof thereof.

<u>TWENTIETH DEFENSE</u>

<u>AND ANSWER</u>

Responding to the specific allegations of the numbered paragraphs of Plaintiff's Complaint, this Defendant further shows as follows:

## **<u>INTRODUCTION</u>**[1]

1.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of Plaintiff's Complaint.

## **II. <u>PARTIES, JURSIDICTION, VENUE & SERVICE OF PROCESS</u>**

2.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of Plaintiff's Complaint.

3.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of Plaintiff's Complaint.

4.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of Plaintiff's Complaint.

---

[1] Plaintiff's titles are being included for reference. Faurecia USA Holdings does not adopt any allegations therein.

5.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of Plaintiff's Complaint.

6.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of Plaintiff's Complaint.

7.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of Plaintiff's Complaint.

8.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of Plaintiff's Complaint.

9.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of Plaintiff's Complaint.

10.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of Plaintiff's Complaint.

11.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of Plaintiff's Complaint.

12.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of Plaintiff's Complaint.

13.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of Plaintiff's Complaint.

14.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of Plaintiff's Complaint.

15.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of Plaintiff's Complaint.

16.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of Plaintiff's Complaint.

17.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of Plaintiff's Complaint.

18.

Faurecia USA Holdings admits FNK North America was a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. Faurecia USA Holdings denies the remaining allegations contained in Paragraph 18 of Plaintiff's Complaint or

is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of Plaintiff's Complaint.

19.

Faurecia USA Holdings admits Faurecia-NHK is a Japanese corporation with its principal place of business in Naka-Ku Yokohama, Japan. Faurecia USA Holdings denies the remaining allegations contained in Paragraph 19 of Plaintiff's Complaint or is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of Plaintiff's Complaint.

20.

Faurecia USA Holdings admits that Faurecia Automotive Seating is a Delaware corporation with its principal place of business located in Michigan. Faurecia USA Holdings further admits that Faurecia Automotive Seating may be served through its registered agent, Capitol Corporate Services, Inc. located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, MI 48170. Faurecia USA Holdings denies the remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of Plaintiff's Complaint.

22.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of Plaintiff's Complaint.

23.

Faurecia USA Holdings admits that it is a corporation with its principal place of business located in Auburn Hills, MI. Faurecia USA Holdings further admits that it may be served through its registered agent, Capitol Corporate Services, Inc. located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, MI 48170. Faurecia USA Holdings denies the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.

Faurecia USA Holdings denies the allegations in Paragraph 24 of Plaintiff's Complaint.

25.

Faurecia USA Holdings denies the allegations in Paragraph 25 of Plaintiff's Complaint.

26.

Faurecia USA Holdings denies the allegations in Paragraph 26 of Plaintiff's Complaint.

27.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of Plaintiff's Complaint.

28.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of Plaintiff's Complaint.

29.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of Plaintiff's Complaint.

30.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of Plaintiff's Complaint.

31.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of Plaintiff's Complaint.

32.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of Plaintiff's Complaint.

33.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of Plaintiff's Complaint.

34.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of Plaintiff's Complaint.

35.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of Plaintiff's Complaint.

36.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of Plaintiff's Complaint.

37.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of Plaintiff's Complaint.

38.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of Plaintiff's Complaint.

39.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of Plaintiff's Complaint.

40.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of Plaintiff's Complaint.

41.

Faurecia USA Holdings denies the information noted in footnote #7 as it pertains to it. Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 of Plaintiff's Complaint.

42.

Paragraph 42 of Plaintiff's Complaint does not contain any allegations to which a response is required.

43.

Faurecia USA Holdings denies the allegations in Paragraph 43 of Plaintiff's Complaint.

44.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of Plaintiff's Complaint.

45.

Faurecia USA Holdings denies the allegations in Paragraph 45 of Plaintiff's Complaint.

### III. <u>OPERATIVE FACTS</u>

*A. The Subject Motor Vehicle Collision*

46.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of Plaintiff's Complaint.

47.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of Plaintiff's Complaint.

48.

Faurecia USA Holdings denies the allegations in Paragraph 48 of Plaintiff's Complaint.

49.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of Plaintiff's Complaint.

50.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of Plaintiff's Complaint.

51.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of Plaintiff's Complaint.

52.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of Plaintiff's Complaint.

53.

Faurecia USA Holdings denies the allegations in Paragraph 53 of Plaintiff's Complaint.

*B. The Subject 2020 Audi A6*

54.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of Plaintiff's Complaint.

55.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of Plaintiff's Complaint.

56.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of Plaintiff's Complaint.

57.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of Plaintiff's Complaint.

58.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of Plaintiff's Complaint.

59.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of Plaintiff's Complaint.

60.

Faurecia USA Holdings denies the allegations in Paragraph 60 of Plaintiff's Complaint.

61.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of Plaintiff's Complaint.

62.

Faurecia USA Holdings is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of Plaintiff's Complaint.

63.

Faurecia USA Holdings denies the allegations in Paragraph 63 of Plaintiff's Complaint.

64.

Faurecia USA Holdings denies the allegations in Paragraph 64 of Plaintiff's Complaint.

65.

Faurecia USA Holdings denies the allegations in Paragraph 65 of Plaintiff's Complaint.

66.

Faurecia USA Holdings denies the allegations in Paragraph 66 of Plaintiff's Complaint.

67.

Faurecia USA Holdings denies the allegations in Paragraph 67 of Plaintiff's Complaint.

68.

Faurecia USA Holdings denies the allegations in Paragraph 68 of Plaintiff's Complaint.

69.

Faurecia USA Holdings denies the allegations in Paragraph 69 of Plaintiff's Complaint.

70.

Faurecia USA Holdings denies the allegations in Paragraph 70 of Plaintiff's Complaint.

71.

Faurecia USA Holdings denies the allegations in Paragraph 71 of Plaintiff's Complaint.

72.

Faurecia USA Holdings denies the allegations in Paragraph 72 of Plaintiff's Complaint.

## IV. <u>LEGAL CLAIMS</u>

### COUNT ONE
### (The Audi Defendants – Negligence and/or Strict Products Liability)

73.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-72 of Plaintiff's Complaint, and its Defenses.

74. - 84.

Paragraphs 74 through 84 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia USA Holdings. To the extent that Paragraphs 74 through 84 are deemed to contain any substantive allegations against Defendant Faurecia USA Holdings, those allegations are denied.

**COUNT TWO**
**(Defendant Lear – Negligence and/or Strict Product Liability)**

85.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-84 of Plaintiff's Complaint, and its Defenses.

86. - 96.

Paragraphs 86 through 96 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia USA Holdings. To the extent that Paragraphs 86 through 96 are deemed to contain any substantive allegations against Defendant Faurecia USA Holdings, those allegations are denied.

**COUNT THREE**
**(Faurecia Defendants – Negligence and/or Strict Products Liability)**

97.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-96 of Plaintiff's Complaint, and its Defenses.

98. – 108.

Faurecia USA Holdings denies the allegations in Paragraphs 98 – 108 of Plaintiff's Complaint.

**COUNT FOUR**
**(The Brose Defendants – Negligence and/or Strict Products Liability)**

109.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-108 of Plaintiff's Complaint, and its Defenses.

110. – 120.

Paragraphs 110 through 120 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia USA

Holdings. To the extent that Paragraphs 110 through 120 are deemed to contain any substantive allegations against Defendant Faurecia USA Holdings, those allegations are denied.

## COUNT FIVE
### (The Grammer Defendants – Negligence and/or Strict Products Liability)

121.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-120 of Plaintiff's Complaint, and its Defenses.

122. – 132.

Paragraphs 122 through 132 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia USA Holdings. To the extent that Paragraphs 122 through 132 are deemed to contain any substantive allegations against Defendant Faurecia USA Holdings, those allegations are denied.

## COUNT SIX
### (Defendant Asbury – Negligence)

133.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-132 of Plaintiff's Complaint, and its Defenses.

134. – 148.

Paragraphs 134 through 148 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia USA Holdings. To the extent that Paragraphs 134 through 148 are deemed to contain any substantive allegations against Defendant Faurecia USA Holdings, those allegations are denied.

## COUNT SEVEN
**(Defendant Asbury – Breach of Express and Implied Warranties under North Carolina Law)**

149. – 156.

Paragraphs 149 through 156 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant Faurecia USA Holdings. To the extent that Paragraphs 149 through 156 are deemed to contain any substantive allegations against Defendant Faurecia USA Holdings, those allegations are denied.

## V. DAMAGES SOUGHT BY PLAINTIFF

157.

Faurecia USA Holdings restates and incorporates herein by reference its previously stated responses to Paragraphs 1-108 of Plaintiff's Complaint, and its Defenses.

158. – 161.

Faurecia USA Holdings denies the allegations in Paragraph 158 through 161 of Plaintiff's Complaint.

## VI. PRAYER FOR RELIEF

Faurecia USA Holdings denies all allegations not specifically admitted to herein, including the relief requested in Plaintiff's "WHEREFORE" Paragraph including subparts (a)-(e), except that Faurecia USA Holdings requests a trial by the maximum number of jurors allowable (12) as to all appropriate issues.

**WHEREFORE**, having fully responded to Plaintiff's Complaint, Faurecia USA Holdings prays as follows:

a. That judgment be entered in its favor;

b. That costs be taxed against Plaintiff;

c. That it have a trial by jury of twelve persons; and

d.  That it have such further relief as the Court deems just and proper.

Respectfully submitted this 27th day of September, 2023.

WATSON SPENCE LLP

*/s/ Michael R. Boorman*
Michael R. Boorman
Georgia Bar No. 067798
mboorman@watsonspence.com
999 Peachtree Street, N.E., Suite 1130
Atlanta, Georgia, 30309
Telephone: (229) 436-1545
*Counsel for Defendant Faurecia USA Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the Odyssey e-filing system which will automatically send email notification of such filing to the following attorneys of record:

Cale Conley
Davis Popper
Alex S. Edmonds
Conley Griggs Partin, LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, Georgia 30327
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

Noah B. Abrams
Abrams & Abrams, P.A.
1526 Glenwood Avenue
Raleigh, North Carolina 27608
NAbrams@abramslawfirm.com

Winston S. Kirby
Andrew C. Avram
Edwards Kirby, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27619
wkirby@edwardskirby.com
aavram@edwardskirby.com
*Counsel for Plaintiff*

Colin K. Kelly
Caroline M. Gieser
Timia A. Kelton
Shook Hardy & Bacon LLP
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Counsel for Asbury Automotive Group, Inc. and Volkswagen Group of America, Inc.*

[*Signature Line on Following Page.*]

This 27th day of September, 2023.

/s/ Michael R. Boorman
Michael R. Boorman
Georgia Bar No. 067798

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/27/2023 6:08 PM**

**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| DOUGLAS GRANT MORTON, | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | Civil Action File No.: |
|  | : | 23-C-03730-S2 |
| AUDI OF AMERICA, LLC; | : | |
| VOLKSWAGEN GROUP OF AMERICA, | : | |
| INC. d/b/a AUDI OF AMERICA, INC. ; | : | |
| AUDI AG; VOLSWAGERN AG; LEAR | : | |
| CORPORATION; FNK NORTH | : | |
| AMERICA, INC.; FAURECIA-NHK CO. | | |
| LTD.; FAURECIA AUTOMOTIVE | | |
| SEATING, LLC; NHK SEATING OF | | |
| AMERICA, INC.; NHK SPRING CO, | | |
| LTD.; FAURECIA USA HOLDINGS INC.; | | |
| BROSE NORTH AMERICA INC.; BROSE | | |
| FAHRZEUGTEILE SE & CO. | | |
| KOMMANDITGESELLSCHAFT; | | |
| GRAMMER, INC.; GRAMMER | | |
| INDUSTRIES, LLC; GRAMMER AG; | | |
| ASBURY AUTOMOTIVE GROUP, INC.; | | |
| and XYZ COMPANIES 1-4, | | |
|  | | |
| Defendants. | | |

## ANSWER AND DEFENSES OF DEFENDANT
## FNK NORTH AMERICA, INC.

COMES NOW FNK North America, Inc. ("FNK North America"), and respectfully shows

as follows:

### FIRST DEFENSE

This Complaint fails to state a claim upon which relief may be granted from this Defendant.

### SECOND DEFENSE

Venue as to this Defendant is improper.

## THIRD DEFENSE

Jurisdiction over the person of this Defendant is improper.

## FOURTH DEFENSE

There may be an insufficiency of process or service of process as to this Defendant.

## FIFTH DEFENSE

The subject product is not defective.

## SIXTH DEFENSE

To the extent shown by the evidence, the defenses of product abuse, misuse, and/or alteration are asserted.

## SEVENTH DEFENSE

To the extent shown by the evidence, the defense of spoliation of evidence is asserted.

## EIGHTH DEFENSE

At all times this Defendant was in the exercise of that degree of care required by law therefore, Plaintiff may not recover of this Defendant.

## NINTH DEFENSE

Plaintiff's claimed injuries were not caused, contributed to, or enhanced by any act or failure by this Defendant.

## TENTH DEFENSE

To the extent shown by the evidence, Plaintiff may have failed to exercise ordinary care for their own safety, assumed the risk of injury, failed to avoid the consequences of any alleged act or failure to act of this Defendant, and/or may be barred from recovery due to negligence equal or greater than this Defendant.

## ELEVENTH DEFENSE

Plaintiff's damages may have been caused or contributed to by the acts or omissions of other persons or entities.

## TWELFTH DEFENSE

No duty to warn was breached by this Defendant.

## THIRTEENTH DEFENSE

Plaintiff's warning claims may be barred by the open and obvious defense.

## FOURTEENTH DEFENSE

With respect to warranty claims, there is a lack of privity.

## FIFTEENTH DEFENSE

No express or implied warranties were breached by this Defendant.

## SIXTEENTH DEFENSE

Plaintiff's claims may be barred by the doctrine of preemption.

## SEVENTEENTH DEFENSE

Plaintiff's claims may be barred by the doctrines of waiver, estoppel, laches and unclean hands.

## EIGHTEENTH DEFENSE

Plaintiff's claims may be barred by the applicable statute(s) of limitation.

## NINETEENTH DEFENSE

This Defendant denies each and every material allegation made against it by Plaintiff and demands strict proof thereof.

## TWENTIETH DEFENSE

## AND ANSWER

Responding to the specific allegations of the numbered paragraphs of Plaintiff's Complaint, this Defendant further shows as follows:

## INTRODUCTION[1]

### 1.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of Plaintiff's Complaint.

## II. PARTIES, JURSIDICTION, VENUE & SERVICE OF PROCESS

### 2.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of Plaintiff's Complaint.

### 3.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of Plaintiff's Complaint.

### 4.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of Plaintiff's Complaint.

### 5.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of Plaintiff's Complaint.

---

[1] Plaintiff's titles are being included for reference. FNK North America does not adopt any allegations therein.

6.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of Plaintiff's Complaint.

7.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of Plaintiff's Complaint.

8.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of Plaintiff's Complaint.

9.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of Plaintiff's Complaint.

10.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of Plaintiff's Complaint.

11.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of Plaintiff's Complaint.

12.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of Plaintiff's Complaint.

13.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of Plaintiff's Complaint.

14.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of Plaintiff's Complaint.

15.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of Plaintiff's Complaint.

16.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of Plaintiff's Complaint.

17.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of Plaintiff's Complaint.

18.

FNK North America admits that it is a Delaware corporation with its principal place of business located in Michigan. FNK North America further admits that it may be served through its registered agent, Capitol Services, Inc. located at 108 Lakeland Avenue, Dover, DE 19901. FNK North America denies the remaining allegations contained in Paragraph 18 of Plaintiff's Complaint.

19.

FNK North America admits Faurecia-NHK is a Japanese corporation with its principal place of business in Naka-Ku Yokohama, Japan. FNK North America denies the remaining allegations contained in Paragraph 19 of Plaintiff's Complaint or is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of Plaintiff's Complaint.

20.

FNK North America admits that Faurecia Automotive Seating is a Delaware corporation with its principal place of business located in Michigan. FNK North America further admits that Faurecia Automotive Seating may be served through its registered agent, Capitol Corporate Services, Inc. located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, MI 48170. FNK North America denies the remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of Plaintiff's Complaint.

22.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of Plaintiff's Complaint.

23.

FNK North America admits that Faurecia USA Holdings is a corporation with its principal place of business located in Michigan. FNK North America further admits that it may be served

through its registered agent, Capitol Corporate Services, Inc. located at 186 North Main Street, 2nd Floor, Suite One, Plymouth, MI 48170. FNK North America denies the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.

FNK North America denies the allegations in Paragraph 24 of Plaintiff's Complaint.

25.

FNK North America denies the allegations in Paragraph 25 of Plaintiff's Complaint.

26.

FNK North America denies the allegations in Paragraph 26 of Plaintiff's Complaint.

27.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of Plaintiff's Complaint.

28.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of Plaintiff's Complaint.

29.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of Plaintiff's Complaint.

30.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of Plaintiff's Complaint.

31.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of Plaintiff's Complaint.

32.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of Plaintiff's Complaint.

33.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of Plaintiff's Complaint.

34.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of Plaintiff's Complaint.

35.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of Plaintiff's Complaint.

36.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of Plaintiff's Complaint.

37.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of Plaintiff's Complaint.

38.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of Plaintiff's Complaint.

39.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of Plaintiff's Complaint.

40.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of Plaintiff's Complaint.

41.

FNK North America denies the information noted in footnote #7 as it pertains to it. FNK North America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 of Plaintiff's Complaint.

42.

Paragraph 42 of Plaintiff's Complaint does not contain any allegations to which a response is required.

43.

FNK North America denies the allegations in Paragraph 43 of Plaintiff's Complaint.

44.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of Plaintiff's Complaint.

45.

FNK North America denies the allegations in Paragraph 45 of Plaintiff's Complaint.

## III. <u>OPERATIVE FACTS</u>

### *A. The Subject Motor Vehicle Collision*

46.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of Plaintiff's Complaint.

47.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of Plaintiff's Complaint.

48.

FNK North America denies the allegations in Paragraph 48 of Plaintiff's Complaint.

49.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of Plaintiff's Complaint.

50.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of Plaintiff's Complaint.

51.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of Plaintiff's Complaint.

52.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of Plaintiff's Complaint.

53.

FNK North America denies the allegations in Paragraph 53 of Plaintiff's Complaint.

*B.  The Subject 2020 Audi A6*

54.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of Plaintiff's Complaint.

55.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of Plaintiff's Complaint.

56.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of Plaintiff's Complaint.

57.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of Plaintiff's Complaint.

58.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of Plaintiff's Complaint.

59.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of Plaintiff's Complaint.

60.

FNK North America denies the allegations in Paragraph 60 of Plaintiff's Complaint.

61.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of Plaintiff's Complaint.

62.

FNK North America is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of Plaintiff's Complaint.

63.

FNK North America denies the allegations in Paragraph 63 of Plaintiff's Complaint.

64.

FNK North America denies the allegations in Paragraph 64 of Plaintiff's Complaint.

65.

FNK North America denies the allegations in Paragraph 65 of Plaintiff's Complaint.

66.

FNK North America denies the allegations in Paragraph 66 of Plaintiff's Complaint.

67.

FNK North America denies the allegations in Paragraph 67 of Plaintiff's Complaint.

68.

FNK North America denies the allegations in Paragraph 68 of Plaintiff's Complaint.

69.

FNK North America denies the allegations in Paragraph 69 of Plaintiff's Complaint.

70.

FNK North America denies the allegations in Paragraph 70 of Plaintiff's Complaint.

71.

FNK North America denies the allegations in Paragraph 71 of Plaintiff's Complaint.

72.

FNK North America denies the allegations in Paragraph 72 of Plaintiff's Complaint.

## IV. <u>LEGAL CLAIMS</u>

### COUNT ONE
**(The Audi Defendants – Negligence and/or Strict Products Liability)**

73.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-72 of Plaintiff's Complaint, and its Defenses.

74. - 84.

Paragraphs 74 through 84 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant FNK North America. To the extent that Paragraphs 74 through 84 are deemed to contain any substantive allegations against Defendant FNK North America, those allegations are denied.

### COUNT TWO
**(Defendant Lear – Negligence and/or Strict Product Liability)**

85.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-84 of Plaintiff's Complaint, and its Defenses.

86. - 96.

Paragraphs 86 through 96 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant FNK North America. To the extent that Paragraphs 86 through 96 are deemed to contain any substantive allegations against Defendant FNK North America, those allegations are denied.

**COUNT THREE**
**(Faurecia Defendants – Negligence and/or Strict Products Liability)**

97.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-96 of Plaintiff's Complaint, and its Defenses.

98. – 108.

FNK North America denies the allegations in Paragraphs 98 – 108 of Plaintiff's Complaint.

**COUNT FOUR**
**(The Brose Defendants – Negligence and/or Strict Products Liability)**

109.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-108 of Plaintiff's Complaint, and its Defenses.

110. – 120.

Paragraphs 110 through 120 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant FNK North America. To the extent that Paragraphs 110 through 120 are deemed to contain any substantive allegations against Defendant FNK North America, those allegations are denied.

## COUNT FIVE
### (The Grammer Defendants – Negligence and/or Strict Products Liability)

121.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-120 of Plaintiff's Complaint, and its Defenses.

122. – 132.

Paragraphs 122 through 132 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant FNK North America. To the extent that Paragraphs 122 through 132 are deemed to contain any substantive allegations against Defendant FNK North America, those allegations are denied.

## COUNT SIX
### (Defendant Asbury – Negligence)

133.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-132 of Plaintiff's Complaint, and its Defenses.

134. – 148.

Paragraphs 134 through 148 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant FNK North America. To the extent that Paragraphs 134 through 148 are deemed to contain any substantive allegations against Defendant FNK North America, those allegations are denied.

## COUNT SEVEN
### (Defendant Asbury – Breach of Express and Implied Warranties under North Carolina Law)

149. – 156.

Paragraphs 149 through 156 of the Complaint do not appear to contain any allegations against this Defendant, and therefore, do not call for a response from Defendant FNK North America. To the extent that Paragraphs 149 through 156 are deemed to contain any substantive allegations against Defendant FNK North America, those allegations are denied.

## V. <u>DAMAGES SOUGHT BY PLAINTIFF</u>

157.

FNK North America restates and incorporates herein by reference its previously stated responses to Paragraphs 1-108 of Plaintiff's Complaint, and its Defenses.

158. – 161.

FNK North America denies the allegations in Paragraph 158 through 161 of Plaintiff's Complaint.

## VI. <u>PRAYER FOR RELIEF</u>

FNK North America denies all allegations not specifically admitted to herein, including the relief requested in Plaintiff's "WHEREFORE" Paragraph including subparts (a)-(e), except that FNK North America requests a trial by the maximum number of jurors allowable (12) as to all appropriate issues.

**WHEREFORE**, having fully responded to Plaintiff's Complaint, FNK North America prays as follows:

      a.  That judgment be entered in its favor;

      b.  That costs be taxed against Plaintiff;

      c.  That it have a trial by jury of twelve persons; and

      d.  That it have such further relief as the Court deems just and proper.

Respectfully submitted this 27th day of September, 2023.

WATSON SPENCE LLP

*/s/ Michael R. Boorman*
Michael R. Boorman
Georgia Bar No. 067798
mboorman@watsonspence.com
999 Peachtree Street, N.E., Suite 1130
Atlanta, Georgia, 30309
Telephone: (229) 436-1545
*Counsel for Defendant FNK North America,*
*LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the Odyssey e-filing system which will automatically send email notification of such filing to the following attorneys of record:

Cale Conley
Davis Popper
Alex S. Edmonds
Conley Griggs Partin, LLP
4200 Northside Parkway, NW, Building One, Suite 300
Atlanta, Georgia 30327
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

Noah B. Abrams
Abrams & Abrams, P.A.
1526 Glenwood Avenue
Raleigh, North Carolina 27608
NAbrams@abramslawfirm.com

Winston S. Kirby
Andrew C. Avram
Edwards Kirby, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27619
wkirby@edwardskirby.com
aavram@edwardskirby.com
*Counsel for Plaintiff*

Colin K. Kelly
Caroline M. Gieser
Timia A. Kelton
Shook Hardy & Bacon LLP
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Counsel for Asbury Automotive Group, Inc. and Volkswagen Group of America, Inc.*

[*Signature Line on Following Page.*]

This 27th day of September, 2023.

/s/ Michael R. Boorman
Michael R. Boorman
Georgia Bar No. 067798

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/27/2023 6:48 PM**

**TIANA P. GARNER, CLERK**

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 23-C-03730-S2 |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC. d/b/a AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; VOLKSWAGEN AG; LEAR | ) | **JURY TRIAL DEMANDED** |
| CORPORATION; FNK NORTH | ) | |
| AMERICA, INC.; FAURECIA-NHK CO., | ) | |
| LTD; FAURECIA AUTOMOTIVE | ) | |
| SEATING, LLC; NHK SEATING OF | ) | |
| AMERICA, INC.; NHK SPRING CO. | ) | |
| LTD; FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | |
| GRAMMER, INC.; GRAMMER | ) | |
| INDUSTRIES, LLC; GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANT LEAR CORPORATION'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND

Defendant Lear Corporation ("Lear"), by special appearance and without waiving any defenses or other rights, answers Plaintiff's First Amended Complaint and Jury Trial Demand ("Plaintiff's Complaint") as follows:

## AFFIRMATIVE, GENERAL, AND OTHER DEFENSES

At the time of the preparation of this Answer, Lear is unaware of all of the facts and circumstances giving rise to the claims set forth in Plaintiff's Complaint. The following defenses are raised so as not to be waived as a matter of law. These defenses will be relied upon to the

extent the facts developed show they apply. Lear reserves its right to assert additional defenses, which Lear is not required to list as an affirmative defense.

### FIRST DEFENSE

This Court lacks personal jurisdiction over Lear.

### SECOND DEFENSE

Lear did not design, manufacture, assemble, sell, distribute, or warrant any seat or component part in the Subject Vehicle. Plaintiff's claim against Lear fails, because Lear made no act or omission that proximately caused any injury to Plaintiff.

### THIRD DEFENSE

Lear asserts lack of privity between these parties.

### FOURTH DEFENSE

Venue is improper in Gwinnett County, Georgia.

### FIFTH DEFENSE

Any judgment rendered against Lear in this action should be limited to the fault, if any, attributable to Lear, although Lear denies it is responsible for any damages alleged by Plaintiff. Lear is entitled to apportion its fault, if any, with the fault of all other persons and/or entities that are or could be responsible for any of Plaintiff's damages regardless of whether such persons and/or entities are parties to this action, and regardless of whether it is ultimately shown that Plaintiff was negligent. Lear's right to apportionment applies regardless of whether Plaintiff's claims sound in negligence or in strict liability.

### SIXTH DEFENSE

Plaintiff's claims should be dismissed, reduced, offset, or barred in accordance with any and all applicable principles of contributory negligence and/or comparative negligence, if any.

Plaintiff's contributory negligence is a complete bar to Plaintiff's claims.

## SEVENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, to the extent the evidence shows Plaintiff failed to mitigate his alleged damages.

## EIGHTH DEFENSE

Plaintiff's' claims or alleged damages are barred or limited by the provisions of the tort reform acts or statutes enacted in the State of Georgia and the North Carolina Liability Act, N.C. Gen. Stat. § 99B-1, *et seq.*

## NINTH DEFENSE

Lear did not have any duty to warn.  Moreover, any such duty, if it existed, was either not necessary or was satisfied or discharged by the original equipment (vehicle) manufacturer, to which any such duty belongs.  The lack of or alleged inadequacy of any warnings were also not a proximate cause of any of Plaintiff's injuries.

## TENTH DEFENSE

The subject seating systems met or exceeded the state of the art at the time they were designed and manufactured.

## ELEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part by the lack of defect, as the subject seating systems were properly designed and manufactured in accordance with the applicable standard of care and in compliance with all standards for design, inspection, testing, and manufacturing applicable to the subject seating systems.

## TWELFTH DEFENSE

The subject seating systems met or exceeded all Federal Motor Vehicle Safety Standards

3

in effect at the time of their sale. This is prima facia evidence that the subject seating systems were not defective. Further, Plaintiff has not identified a safer alternative design that is feasible from both a technical and economic standpoint that does not present additional risks of harm not seen in the incorporated components about which Plaintiff complains.

### THIRTEENTH DEFENSE

All or a portion of the Plaintiff's claims are preempted by applicable federal or state statutes, rules, standards or regulations, including but not limited to the Federal Motor Vehicle Safety Act.

### FOURTEENTH DEFENSE

Lear denies it is liable for punitive damages. However, in the event any such damages are awarded against Lear, then, in the alternative, without any admission of misconduct or liability, the imposition of punitive damages on these facts would be a denial of due process in violation of the due process clause, which prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. *State Farm Mut. Auto. Insurance Co. v. Campbell*, 538 U.S. 408, 426, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003); *Cooper Indus. V. Leatherman Tool Group, Inc.*, 532 U.S. 424, 434-36, 149 L. Ed. 2d 674, 121 S. Ct. 1678 (2001); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996).

### FIFTEENTH DEFENSE

There is no basis in law or fact for the imposition of punitive damages with respect to Plaintiff's claims against Lear. There is no clear and convincing evidence that Lear is guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to the consequences its actions and, accordingly, Plaintiff is not entitled to recover punitive damages in any sum whatsoever.

4

## SIXTEENTH DEFENSE

Lear did not breach any express or implied warranty allegedly owed to Plaintiff, and by reason thereof, Plaintiff may not recover damages from Lear.

## SEVENTEENTH DEFENSE

Any abuse, misuse, improper use, improper maintenance, improper repair, alteration or modification of the allegedly defective products, including the subject seating systems, which are a part of the Subject Vehicle described in Plaintiff's Complaint, may be the proximate cause of the injuries alleged by Plaintiff.

## EIGHTEENTH DEFENSE

Any warranties that were provided to the consumer by Defendant Asbury Automotive Group, Inc. were disclaimed, including implied warranties, as allowed by Georgia and North Carolina law.

## NINETEENTH DEFENSE

Lear's investigation into the facts and circumstances giving rise to Plaintiff's Complaint is ongoing. Lear has not inspected the scene where the accident occurred, the Subject Vehicle, or the subject seating systems. Lear has not yet performed any accident reconstruction or other case-specific testing and is not aware of the results of any accident reconstruction or case-specific testing completed by any other parties. At the time of the preparation of this Answer, discovery has not yet begun. The assertions made in this Answer are based on what Lear knows at this time.

5

## ANSWERING THE SPECIFIC ALLEGATIONS IN THE COMPLAINT

Without waiving the defenses asserted herein, Lear specifically answers Plaintiff's allegations in accordance with the numbered paragraphs in Plaintiff's Complaint, as follows:

## ANSWERING THE SECTION OF PLAINTIFF'S
## COMPLAINT TITLED "INTRODUCTION"

1.

Lear admits Plaintiff has filed this action as a tort action for injuries he claims to have sustained in a motor vehicle collision that occurred on September 25, 2021 in Marshall, North Carolina. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this Paragraph makes any allegations against Lear, those allegations are denied.

## ANSWERING THE SECTION OF PLAINTIFF'S COMPLAINT TITLED "PARTIES, JURISDICTION, VENUE, & SERVICE OF PROCESS"

2.

Lear admits that, by filing suit, Plaintiff has submitted to the jurisdiction of this Court. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations contained in paragraph 2 and therefore denies them.

3.

The allegations contained in paragraph 3 are directed to defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

4.

The allegations contained in paragraph 4 are directed to defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc., and not to Lear. Lear lacks knowledge and

6

information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied, including the legal conclusions set forth in footnote 1, which contain an incomplete recitation of Georgia law.

<p style="text-align:center">5.</p>

The allegations contained in paragraph 5 are directed to defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<p style="text-align:center">6.</p>

The allegations contained in paragraph 6 are directed to defendant Audi of America, LLC, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<p style="text-align:center">7.</p>

The allegations contained in paragraph 7 are directed to defendant Audi of America, LLC, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<p style="text-align:center">8.</p>

The allegations contained in paragraph 8 are directed to defendant Audi of America, LLC, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<p style="text-align:center">7</p>

9.

The allegations contained in paragraph 9 are directed to defendant Audi AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

10.

The allegations contained in paragraph 10 are directed to defendant Audi AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

11.

The allegations contained in paragraph 11 are directed to defendant Audi AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

12.

The allegations contained in paragraph 12 are directed to defendant Volkswagen AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

13.

The allegations contained in paragraph 13 are directed to defendant Volkswagen AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations

8

and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">14.</div>

The allegations contained in paragraph 14 are directed to defendant Volkswagen AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">15.</div>

Lear admits it is a Delaware corporation with its principal place of business in Southfield, Michigan. Lear admits that it may be served through its registered agent in Michigan. Lear denies the remaining allegations contained in paragraph 15.

<div align="center">16.</div>

Lear denies the allegations contained in Paragraph 16.

<div align="center">17.</div>

Lear denies the allegations contained in paragraph 17.

<div align="center">18.</div>

The allegations contained in paragraph 18 are directed to defendant FNK North America, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">19.</div>

The allegations contained in paragraph 19 are directed to defendant Faurecia-NHK Co., Ltd., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these

<div align="center">9</div>

allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

20.

The allegations contained in paragraph 20, including footnote 2, are directed to defendant Faurecia Automotive Seating, LLC, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

21.

The allegations contained in paragraph 21 are directed to defendant NHK Seating of America, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

22.

The allegations contained in paragraph 22 are directed to defendant NHK Spring Co., Ltd., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

23.

The allegations contained in paragraph 23, including footnote 3, are directed to defendant Faurecia USA Holdings, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

24.

The allegations contained in paragraph 24 are a description of nomenclature not requiring admission or denial.

25.

The allegations contained in paragraph 25 are directed to the Faurecia Defendants and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

26.

The allegations contained in paragraph 26 are directed to the Faurecia Defendants and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

27.

The allegations contained in paragraph 27 are directed to defendant Brose North America, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

28.

The allegations contained in paragraph 28 are directed to defendant Brose North America Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

29.

The allegations contained in paragraph 29 are directed to defendant Brose North America Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

30.

The allegations contained in paragraph 30 are directed to defendant Brose Fahrzeugteile SE & Co. Kommanditgesellschaft and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

31.

The allegations contained in paragraph 31 are directed to defendant Brose Fahrzeugteile SE & Co. Kommanditgesellschaft and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

32.

The allegations contained in paragraph 32 are directed to defendant Brose Fahrzeugteile SE & Co. Kommanditgesellschaft and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

33.

The allegations contained in paragraph 33, including footnote 4, are directed to defendant Grammer, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny

12

these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<center>34.</center>

The allegations contained in paragraph 34, including footnote 5, are directed to defendant Grammer Industries, LLC, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<center>35.</center>

The allegations contained in paragraph 35 are directed to defendant Grammer AG, and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<center>36.</center>

The allegations contained in paragraph 36 are a description of nomenclature not requiring admission or denial.

<center>37.</center>

The allegations contained in paragraph 37 are directed to the Grammar Defendants and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<center>38.</center>

The allegations contained in paragraph 38 are directed to the Grammar Defendants and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and

<center>13</center>

therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">39.</div>

Lear denies Asbury Automotive Group, Inc. made any act or omission with respect to the Subject Vehicle that gives rise to any liability to Plaintiff. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations contained in this paragraph, including those contained in footnote 6, and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">40.</div>

The allegations contained in paragraph 40 are directed to defendant Asbury Automotive Group, Inc., and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">41.</div>

The allegations contained in paragraph 41 are directed to defendants XYZ Companies 1-4 and not to Lear. Lear lacks knowledge and information sufficient to admit or deny these allegations and therefore denies them. Lear denies the allegations contained in footnote 7 directed to Lear. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations contained in footnote 7 and therefore denies them. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

<div align="center">42.</div>

The allegations contained in paragraph 42 are a reservation of rights not requiring admission or denial. Adding and dropping parties is governed by the Federal Rules of Civil

<div align="center">14</div>

Procedure, the Georgia Civil Practice Act, or the North Carolina Rules of Civil Procedure. To the extent this paragraph makes any allegations against Lear or purports to confer on Plaintiff any rights other than those conferred by applicable law, those allegations are denied.

43.

Lear admits that there is no federal question as alleged in paragraph 43. Lear denies the remaining allegations in paragraph 43.

44.

Paragraph 44 contains legal conclusions to which no response is required. Lear denies the remaining allegations in paragraph 44 to the extent they are directed to Lear.

45.

Paragraph 45 contains legal conclusions to which no response is required. The allegations contained in paragraph 45 are not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

**ANSWERING THE SECTION OF PLAINTIFF'S**
**COMPLAINT TITLED "OPERATIVE FACTS**

46.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 46 and therefore denies them.

47.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 47 and therefore denies them.

48.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 48 and therefore denies them.

15

49.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 49 and therefore denies them.

50.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 50 and therefore denies them.

51.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 51 and therefore denies them.

52.

Lear lacks knowledge and information sufficient to admit or deny the allegations in paragraph 52 and therefore denies them.

53.

Lear denies that it designed, manufactured, or placed into the stream of commerce the Subject Vehicle, occupant restraint system, or driver head restraint and therefore denies the allegations contained in paragraph 53 to the extent they are directed to Lear. Lear is without sufficient information to admit or deny the remaining allegations contained in paragraph 53 and therefore denies them.

54.

Upon information and belief, Lear denies Defendant Asbury designed, manufactured, assembled, imported and/or distributed the Subject Vehicle. Upon information and belief, Defendant Asbury sold the Subject Vehicle to nonparty Lynn Love. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations and therefore denies them.

55.

Upon information and belief, Lear denies the allegations in paragraph 55.

56.

To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations and therefore denies them.

57.

Lear denies the allegations contained in paragraph 57.

58.

Lear has not had an opportunity to inspect the Subject Vehicle and, therefore, lacks information sufficient to admit or deny whether the Subject Vehicle and its seating systems, including restraints, have been materially altered or modified since the Subject Vehicle was purchased from an Audi dealership. Accordingly, Lear denies the allegations contained in paragraph 58.

59.

Lear denies the allegations contained in paragraph 59. Lear did not design, manufacture, or supply the subject seating system or any of its subcomponents.

60.

The allegations of this paragraph are not directed to Lear. Lear is without sufficient information to admit or deny the allegations contained in paragraph 60 and therefore denies those allegations. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

17

61.

The allegations of this paragraph are not directed to Lear. Lear is without sufficient information to admit or deny the allegations contained in paragraph 61 and therefore denies those allegations. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

62.

The allegations of this paragraph are not directed to Lear. Lear is without sufficient information to admit or deny the allegations contained in paragraph 62 and therefore denies those allegations. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

63.

Lear admits that Plaintiff alleges this case as a "crashworthiness" case. To the extent this paragraph makes any allegations against Lear, those allegations are denied.

64.

Lear admits that it is generally knowledgeable that vehicles must be crashworthy. Lear further admits that the performance of a component part can have an effect on the crashworthiness of a vehicle, depending on the forces and circumstances of the accident. There are also many other factors that may affect the crashworthiness of a vehicle, including the overall vehicle design. Lear denies that it designed, tested, manufactured or supplied the Subject Vehicle or any of its components. Lear denies the remaining allegations in paragraph 64 directed to Lear. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations directed to other Defendants and therefore denies them.

18

65.

To the extent this paragraph is directed to Lear, Lear admits that it knows front driver seat occupants can be injured in rear-end collisions and that occupant containment and restraint systems may prevent or function to reduce the likelihood of injuries, depending on the facts and circumstances of the crash and other aspects of the vehicle's design. Lear denies that it designed, tested, manufactured or supplied the Subject Vehicle or any of its components. Lear denies the remaining allegations in paragraph 65 directed to Lear. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations directed to other Defendants and therefore denies them.

66.

Lear denies it designed or manufactured the Subject Vehicle, its occupant restraint, seating systems, and or head restraints. Lear denies any remaining allegations in paragraph 66 directed to Lear. Lear lacks knowledge and information sufficient to admit or deny the remaining allegations directed to other Defendants and therefore denies them.

67.

Lear denies that it designed, tested, manufactured or sold the Subject Vehicle or any of its components and therefore denies the allegations contained in paragraph 67 to the extent they are directed to Lear. Lear is without knowledge or information sufficient to admit or deny the remaining allegations directed to other Defendants and therefore denies them.

68.

Lear denies that it designed, tested, manufactured or sold the Subject Vehicle or any of its components and therefore denies the allegations contained in paragraph 68 to the extent they are directed to Lear. Lear denies the remaining allegations contained in paragraph 68.

19

69.

Lear denies that it designed, tested, manufactured or sold the Subject Vehicle or any of its components and therefore denies the allegations contained in paragraph 69 to the extent they are directed to Lear. Lear denies the remaining allegations contained in paragraph 69.

70.

Lear admits rear collisions of varying degrees of severity are foreseeable. The description of legal duties contained in paragraph 70 is incomplete and/or incorrect and therefore denied. Lear denies the remaining allegations contained in paragraph 70 directed to Lear. Lear denies that occurrence of injury in a given rear-end collision means that the vehicle or its safety systems were not crashworthy or that they were unreasonably dangerous for their foreseeable use in any respect. Lear is without sufficient information to admit or deny the remaining allegations contained in paragraph 70 direct to other defendants and therefore denies them.

71.

Lear denies that it designed, manufactured, or placed into the stream of commerce the Subject Vehicle, occupant restraint system, or driver head restraint and therefore denies the allegations contained in paragraph 71 to the extent they are directed to Lear. Lear is without sufficient information to admit or deny the remaining allegations contained in paragraph 71 and therefore denies them.

72.

Lear denies the allegations contained in paragraph 72.

**ANSWERING THE SECTION OF PLAINTIFF'S COMPLAINT TITLED "LEGAL CLAIMS"**

73.

Lear incorporates its responses to the all preceding paragraphs.

20

74.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 74 and therefore denies them.

75.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 75 and therefore denies them.

76.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 76 and therefore denies them.

77.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 77 and therefore denies them.

78.

This paragraph is Plaintiff's characterization of his claims, to which Lear is not obligated to respond. To the extent a response is required and these allegations are directed to Lear, these allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 78 and therefore denies them.

79.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations

21

against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 79 and therefore denies them.

80.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 80 and therefore denies them.

81.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 81 and therefore denies them.

82.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 82.

83.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 83 and therefore denies them.

84.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 84 and therefore denies them.

85.

Lear incorporates its responses to the preceding paragraphs.

86.

This paragraph contains conclusions about Lear's legal duties. The description of those legal duties contained in paragraph 86 is incomplete and/or incorrect and therefore denied. Lear denies it designed, manufactured, tested, assembled, sold, or distributed the subject seating systems. Lear denies the remaining allegations contained in paragraph 86 directed to Lear. To the extent this paragraph makes allegations directed to other defendants, Lear lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

87.

Lear denies the allegations contained in paragraph 87.

88.

Lear denies the allegations contained in paragraph 88.

89.

Lear denies the allegations contained in paragraph 89.

90.

This paragraph is Plaintiff's characterization of his claims, to which Lear is not obligated to respond. To the extent a response is required and these allegations are directed to Lear, these allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 90 and therefore denies them.

91.

Lear denies the allegations contained in paragraph 91.

92.

Lear denies the allegations contained in paragraph 92.

93.

Lear denies the allegations contained in paragraph 93.

94.

Lear denies it exposed Plaintiff to any risks of harm and therefore denies the allegations contained in paragraph 94.

95.

Lear denies the allegations contained in paragraph 95.

96.

Lear denies the allegations contained in paragraph 96.

97.

Lear incorporates its responses to the preceding paragraphs.

98.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 98 and therefore denies them.

99.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 99 and therefore denies them.

100.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations

24

against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 100 and therefore denies them.

101.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 101 and therefore denies them.

102.

This paragraph is Plaintiff's characterization of his claims, to which Lear is not obligated to respond. To the extent a response is required and these allegations are directed to Lear, these allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 102 and therefore denies them.

103.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 103 and therefore denies them.

104.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 104 and therefore denies them.

105.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 105 and therefore denies them.

25

106.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 106.

107.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 107 and therefore denies them.

108.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 108 and therefore denies them.

109.

Lear incorporates its responses to the preceding paragraphs.

110.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 110 and therefore denies them.

111.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 111 and therefore denies them.

26

112.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 112 and therefore denies them.

113.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 113 and therefore denies them.

114.

This paragraph is Plaintiff's characterization of his claims, to which Lear is not obligated to respond. To the extent a response is required and these allegations are directed to Lear, these allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 114 and therefore denies them.

115.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 115 and therefore denies them.

116.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 116 and therefore denies them.

117.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations

against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 117 and therefore denies them.

118.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 118.

119.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 119 and therefore denies them.

120.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 120 and therefore denies them.

121.

Lear incorporates its responses to the preceding paragraphs.

122.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 122 and therefore denies them.

123.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to

28

admit or deny the remaining allegations contained in paragraph 123 and therefore denies them.

124.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 124 and therefore denies them.

125.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 125 and therefore denies them.

126.

This paragraph is Plaintiff's characterization of his claims, to which Lear is not obligated to respond. To the extent a response is required and these allegations are directed to Lear, these allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 126 and therefore denies them.

127.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 127 and therefore denies them.

128.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 128 and therefore denies them.

129.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 129 and therefore denies them.

130.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 130.

131.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 131 and therefore denies them.

132.

This paragraph is not directed to Lear. To the extent this paragraph makes any allegations against Lear, those allegations are denied. Lear is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 132 and therefore denies them.

133.

Lear incorporates its responses to the preceding paragraphs.

134.

The allegations contained in paragraph 134 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is deemed necessary, Lear admits, upon information and belief, Asbury sells motor vehicles designed, manufactured, assembled, produced, advertised, sold and supplied by Volkswagen

30

Group of America, Inc. Lear lacks knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 134 and therefore denies them.

135.

The allegations contained in paragraph 135 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is deemed necessary, Lear denies that Plaintiff purchased Subject Vehicle. Lear admits, upon information and belief, Asbury performed some service on the Subject Vehicle after it was purchased from Asbury. Lear denies, upon information and belief, these inspections related to the subject seating systems. Lear lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 135 and therefore denies them.

136.

The allegations contained in paragraph 136 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, this paragraph contains conclusions about Asbury's legal duties. The description of those legal duties contained in paragraph 136 is incomplete and/or incorrect and therefore denied. Lear denies any remaining allegations contained in paragraph 136.

137.

The allegations contained in paragraph 137 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is required, Lear denies the allegations in paragraph 137 upon information and belief.

138.

The allegations contained in paragraph 138 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is

required, Lear denies the allegations in paragraph 138 upon information and belief.

<p style="text-align:center">139.</p>

The allegations contained in paragraph 139 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 139 upon information and belief.

<p style="text-align:center">140.</p>

The allegations contained in paragraph 140 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 140 upon information and belief.

<p style="text-align:center">141.</p>

The allegations contained in paragraph 141 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 141 upon information and belief.

<p style="text-align:center">142.</p>

The allegations contained in paragraph 142 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 142 upon information and belief.

<p style="text-align:center">143.</p>

Upon information and belief, Lear denies Asbury exposed Plaintiff to the risks alleged. Lear is without information sufficient to admit or deny the remaining allegations in paragraph 143.

<p style="text-align:center">144.</p>

The allegations contained in paragraph 144 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is

<p style="text-align:center">32</p>

required, Lear denies the allegations in paragraph 144 upon information and belief.

145.

The allegations contained in paragraph 145 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is deemed necessary, Lear admits, upon information and belief, Asbury performed some service on the Subject Vehicle after it was purchased from Asbury. Lear denies, upon information and belief, these inspections related to the subject seating systems. Lear denies any remaining allegations contained in paragraph 145.

146.

The allegations contained in paragraph 146 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is required, this paragraph contains conclusions about Asbury's legal duties. The description of those legal duties contained in paragraph 146 is incomplete and/or incorrect and therefore denied. Lear denies any remaining allegations in paragraph 146 upon information and belief.

147.

The allegations contained in paragraph 147 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is deemed necessary, the allegations contained in paragraph 147 are denied upon information and belief.

148.

The allegations contained in paragraph 148 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear.  To the extent a response is

33

deemed necessary, the allegations contained in paragraph 148 are denied upon information and belief.

<p align="center">149.</p>

The allegations contained in paragraph 149 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 149, and the same, therefore, are denied.

<p align="center">150.</p>

The allegations contained in paragraph 150 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 150 upon information and belief.

<p align="center">151.</p>

The allegations contained in paragraph 151 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 151 upon information and belief.

<p align="center">152.</p>

The allegations contained in paragraph 152 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 152 upon information and belief.

<p align="center">153.</p>

The allegations contained in paragraph 153 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 153 upon information and belief.

154.

The allegations contained in paragraph 154 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 154 upon information and belief.

155.

The allegations contained in paragraph 155 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 155 upon information and belief.

156.

The allegations contained in paragraph 156 are directed to Defendant Asbury and not to Lear. Those allegations therefore do not require a response from Lear. To the extent a response is required, Lear denies the allegations in paragraph 156 upon information and belief.

## ANSWERING THE SECTION OF PLAINTIFF'S COMPLAINT TITLED "DAMAGES SOUGHT BY PLAINTIFF

157.

Lear incorporates its responses to the preceding paragraphs.

158.

To the extent the allegations contained in Paragraph 158 are directed to Lear, those allegations are denied. Lear further denies it is liable to Plaintiff in any amount.

159.

To the extent the allegations contained in Paragraph 159 are directed to Lear, those allegations are denied. Lear further denies it is liable to Plaintiff in any amount.

35

160.

To the extent the allegations contained in Paragraph 160 are directed to Lear, those allegations are denied. Lear further denies it is liable to Plaintiff in any amount.

161.

To the extent the allegations contained in Paragraph 161 are directed to Lear, those allegations are denied. Lear further denies it is liable to Plaintiff in any amount.

## ANSWERING PLAINTIFF'S COMPLAINT AS A WHOLE

Lear denies any allegation contained in Plaintiff's Complaint not admitted, denied, or neither admitted nor denied for lack of knowledge or information sufficient to form a belief as to the truth of the allegation(s).

## PRAYER FOR RELIEF

WHEREFORE having Answered Plaintiff's Complaint fully, Lear denies Plaintiff is entitled to any relief and further demands its immediate dismissal from this action with all costs taxed against Plaintiff and such other and further relief as this Court deems just, equitable, and proper under the circumstances.

*[Date and Signature on next page]*

36

Respectfully submitted this 27th day of September, 2023.

/s/ **James L. Hollis**

James L. Hollis
Georgia Bar No. 930998
Hugh Peterson III
Georgia Bar No. 574212
**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

Jena C. Lombard
Georgia Bar No. 213734
**BALCH & BINGHAM LLP**
801 Broad Street, Suite 800
Augusta, GA 30901
Telephone: (706) 842-3718
Facsimile: (866) 501-9962

*Attorneys for Defendants Lear Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of September, 2023, I caused to be electronically filed the foregoing **DEFENDANT LEAR CORPORATION'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND** with the Clerk of the Court using the Odyssey eFileGA e-filing system, which will automatically send an e-mail notification of such filing to the following attorneys of record:

Cale Conley, Esq.
Davis Popper,Esq.
Alex S. Edmonds, Esq.
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway, NW Building One, Suite 300 Atlanta, Georgia 30327
cale@conleygriggs.com
davis@conleygriggs.com

Noah B. Abrams,Esq.
**ABRAMS & ABRAMS, P.A.**
1526 Glenwood Avenue
Raleigh, NC 27608
NAbrams@abramslawfirm.com

Winston S. Kirby. Esq.
Andrew C. Avram, Esq.
**EDWARDS KIRBY, L.L.P.**
3201 Glenwood Avenue, Suite 100
Raleigh, NC 27619
wkirby@edwardskirby.com
aavram@edwardskirby.com

*Attorneys for Plaintiff*

Christopher S. Anulewicz, Esq.
**BRADLEY ARANT BOULT CUMMINGS LLP**
Promenade Tower
1230 Peachtree St. NE
Atlanta, GA 30309
canulewicz@bradley.com

R. Thomas Warburton,Esq.
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
twarburton@bradley.com

*Attorneys for Brose North America, Inc*

Colin K. Kelly, Esq.
Caroline M. Gieser, Esq.
Timia A. Kelton, Esq.
**SHOOK HARDY & BACON LLP**
1230 Peachtree Street, N.E., Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com

*Attorneys for Defendant Asbury Automotive Group, Inc., and Volkswagen Group of America, Inc.*

*/s/ James L. Hollis*  _____
James L. Hollis
Georgia Bar No. 930998

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03730-S2**

**9/27/2023 12:27 PM**
TIANA P. GARNER, CLERK

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | )( | |
| | )( | |
| Plaintiff, | )( | |
| | )( | CIVIL ACTION FILE NO. |
| v. | )( | 23-C-03730-S2 |
| | )( | |
| AUDI OF AMERICA, LLC; | )( | |
| VOLKSWAGEN GROUP OF AMERICA, INC. | )( | |
| d/b/a AUDI OF AMERICA, TNC.; | )( | |
| AUDI AG; | )( | |
| VOLKSWAGEN AG; | )( | |
| LEAR CORPORATION; | )( | |
| FNK NORTH AMERICA, INC.; | )( | |
| FAURECIA-NHK CO., LTD; | )( | |
| FAURECIA AUTOMOTIVE SEATING, LLC; | )( | |
| NIIK SEATING OF AMERICA, INC.; | )( | |
| NIIK SPRING CO. LTD; | )( | |
| FAURECIA USA HOLDINGS INC; | )( | |
| BROSE NORTH AMERICA, INC.; | )( | |
| BROSE FAHRZEUGTEILE SE & CO. | )( | |
| KOMMANDITGESELLSCHAFT; | )( | |
| GRAMMER, INC.; | )( | |
| GRAMMER INDUSTRIES, LLC; | )( | |
| GRAMMER AG; | )( | |
| ASBURY AUTOMOTIVE GROUP, INC; | )( | |
| and XYZ COMPANIES 1-4 | )( | |
| | )( | |
| Defendants. | )( | |

## STIPULATION EXTENDING TIME FOR NHK SEATING OF AMERICA, INC. TO FILE RESPONSIVE PLEADINGS

COME NOW Plaintiff and Defendant NHK Seating of America, Inc., by and through their

respective attorneys of record in the above-styled action, and pursuant to O.C.G.A. § 9-11-6(b),

hereby stipulate and agree that the time within which Defendant NHK Seating of America, Inc.

may answer, move or otherwise respond to Plaintiff's First Amended Complaint for Damages and

Jury Trial Demand shall be extended through and including October 27, 2023, and Defendant NHK

Seating of America, Inc. shall not be found to be in default, shall not be required to move to open default nor pay any costs associated with default at the time of filing the responsive pleading.

NHK Seating of America, Inc. further stipulates that it has been properly served in this action and that it has been identified by its correct legal name in the style of this case.

Stipulated and Agreed to this 27th day of September, 2023 by:

CONLEY GRIGGS PARTIN LLP

*/s/ Davis Popper*
*[signed with express permission]*
_____
Cale Conley
Georgia Bar No. 181080
Davis Popper
Georgia Bar No. 863530
Alex S. Edmonds
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
(404) 467-1155
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Myrece R. Johnson*
_____
C. Bradford Marsh
Georgia Bar No. 471280
Myrece R. Johnson
Georgia Bar No. 940301
*Attorneys for Defendant NHK Seating of America, Inc.*

1420 Peachtree St. N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
brad.marsh@swiftcurrie.com
myrece.johnson@swiftcurrie.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused the attached **STIPULATION EXTENDING TIME FOR NHK SEATING OF AMERICA, INC. TO FILE RESPONSIVE PLEADINGS** to be filed and served on counsel of record in this matter.

This 27th day of September, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Myrece R. Johnson*

_____
C. Bradford Marsh
Georgia Bar No. 471280
Myrece R. Johnson
Georgia Bar No. 940301
*Attorneys for Defendant NHK Seating of America, Inc.*

1420 Peachtree St. N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
brad.marsh@swiftcurrie.com
myrece.johnson@swiftcurrie.com

4857-8620-4033, v. 1

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| DOUGLAS GRANT MORTON, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AUDI OF AMERICA, LLC; | ) |
| VOLKSWAGEN GROUP OF AMERICA, | ) |
| INC. D/B/A AUDI OF AMERICA, INC.; | ) |
| AUDI AG; | ) |
| VOLKSWAGEN AG; | ) |
| LEAR CORPORATION; | ) |
| FNK NORTH AMERICA, INC.; | ) |
| FAURECIA-NHK CO., LTD; | ) |
| FAIRECIA AUTOMOTIVE SEATING, | ) |
| LLC; | ) |
| NHK SEATING OF AMERICA, INC.; | ) |
| NHK SPRING CO. LTD; | ) |
| FAURECIA USA HOLDINGS INC; | ) |
| BROSE NORTH AMERICA, INC.; | ) |
| BROSE FAHRZEUGTEILE SE & CO. | ) |
| KOMMANDITGESELLSCHAFT; | ) |
| GRAMMER, INC.; | ) |
| GRAMMER INDUSTRIES, LLC; | ) |
| GRAMMER AG; | ) |
| ASBURY AUTOMOTIVE GROUP, INC.; | ) |
| and XYZ COMPANIES 1-4 | ) |
| | ) |
| Defendants. | |

Civil Action File No.:
23-C-03730-S2

**DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S**
**MOTION FOR RECONSIDERATION AND BRIEF IN SUPPORT,**
**OR ALTERNATIVELY TO ISSUE A CERTIFICATE OF IMMEDIATE REVIEW**

COMES NOW, defendant Volkswagen Group of America, Inc. ("VWGoA"), by and

through its undersigned counsel of record, and respectfully moves the Court to reconsider its

September 20, 2023 Order Denying VWGoA's Motion to Dismiss Under the Doctrine of Forum

*Non Conveniens* ("Order") given that there is material evidence that was not known to the Court

1

at the time of its decision which warrants reconsideration. In the alternative, and pursuant to O.C.G.A.§5-6-34(b), VWGoA respectfully requests a Certificate of Immediate Review of the Court's September 20, 2023 Order denying VWGoA's Motion to Dismiss, showing the Court as follows:

## I.  <u>INTRODUCTION</u>

While this Court certainly has discretion to decide the appropriate forum for this case, VWGoA discovered significant and highly relevant evidence after it filed its Motion to Dismiss, which further supports North Carolina as the most proper forum under the "interest of justice" and "convenience of the parties and witnesses" standard set forth in O.C.G.A.§ 9-11-31.1.

*First*, Jesse Daren Ramsey ("Mr. Ramsey"), a previously unidentified but potentially necessary party, has been identified as the driver of a vehicle that set the entire series of events in motion which led to what is actually a multi-vehicle incident.  (*See* Affidavit of Jesse Ramsey, attached hereto as **Exhibit A**.) Mr. Ramsey is resident of Madison, North Carolina and confirmed under oath that it would be "inconvenient, costly and a hardship" to travel to Gwinnett County and that he would not be willing to voluntarily travel to the forum.  (*Id.* at ¶7.)  Mr. Ramsey believes he may have caused or contributed to the collision since the Plaintiff may have had to suddenly brake to avoid colliding with him, which caused Scottie Dale Proffitt ("Mr. Proffitt") to rear end the Audi vehicle driven by Plaintiff.  (*Id.* at ¶5.)  Mr. Ramsey fled the scene before police and first responders arrived or were able to identify or interview him.  VWGoA has likewise confirmed that Mr. Proffitt—the other driver, eyewitness, and potentially indispensable party who is also not subject to jurisdiction in the current forum—is not willing to travel to Georgia for proceedings in this case.  Mr. Proffitt has executed an affidavit confirming that "it would be more convenient for [him] and would permit me to more easily carry out [his] duties if the trial was conducted in

2

Madison County, North Carolina." (*See* Affidavit of Scottie Dale Proffitt ¶6, attached hereto as **Exhibit B.**)

 *Second*, not only have Mr. Ramsey and Mr. Proffitt provided sworn affidavits for the Court, but four other key fact witnesses have provided similar sworn testimony that it would be both inconvenient and a hardship to travel to Gwinnett County to testify as witnesses in this matter and are therefore "unwilling" witnesses. (*See* Affidavit of Kenny Brown, attached hereto as **Exhibit C**; Affidavit of Regina Bishop, attached hereto as **Exhibit D**; Affidavit of Ryan Thorpe, attached hereto as **Exhibit E**; and Affidavit of Amanda McAninch, attached hereto as **Exhibit F**.) As a result of this new evidence, it is now undisputed that there are at least six key witnesses—including two parties who caused or contributed to the accident and injuries at issue—all of whom: (1) live in Madison County, North Carolina; (2) either responded to or witnessed the subject accident; (3) have confirmed it would be inconvenient and a hardship to voluntarily travel to Gwinnett County, Georgia; (4) provided sworn testimony that they would be unwilling to voluntarily travel to Gwinnett County, Georgia to testify as a witness at a hearing or at trial; and (5) agreed it would be more convenient if the trial related to the subject accident was conducted in Madison County, North Carolina.

 *Third*, VWGoA respectfully asks the Court to reconsider its analysis regarding the "access to proof" prong of its forum analysis to the extent that it relied heavily on the fact the subject vehicle was located in Georgia. Plaintiff failed to inform the Court in its Opposition that the Audi vehicle was unilaterally and intentionally moved from North Carolina to Georgia (without either a protocol for evidence preservation or consent of the parties) *after* the filing of the Complaint (and further investigation may reveal it may have been moved after the filing of VWGoA's Motion to Dismiss). Prior to VWGoA filing its Motion to Dismiss, counsel for VWGoA inquired as to the

<div align="center">3</div>

location of the subject vehicle and was informed by Plaintiff's counsel that the subject vehicle **was located in Raleigh, North Carolina**. (*See* June 27, 2023 Email from Noah B. Abrams, attached hereto as **Exhibit H**.) VWGoA learned that the subject vehicle had intentionally been moved across state lines after it read Plaintiff's Opposition to its Motion to Dismiss. Whatever the motivation for Plaintiff to move key evidence across state lines without either a protocol for preservation or consent, the Court should not reward the manipulation of evidence into the forum and consider where the evidence was located at the time of the filing of the Complaint and Motion to Dismiss and base its decision on that location alone—not on where the evidence was moved after the fact.

In short, given all of the new evidence the Court now has at its disposal,[1] the Court should reconsider decision and issue an Order GRANTING VWGoA's Motion to Dismiss on Forum Non Conveniens grounds given that more factors favor North Carolina as the appropriate forum under O.C.G.A.§ 9-11-31.1.

## II.     RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed his Complaint for Damages in the State Court of Gwinnett County on May 31, 2023. Defendant VWGoA timely filed its Answer and Motion to Dismiss Under the Doctrine of Forum *Non Conveniens* ("Motion to Dismiss") on August 2, 2023. Plaintiff filed his Opposition to VWGoA's Motion to Dismiss ("Opposition") on September 1, 2023. The Court entered its Order Denying VWGoA's Motion to Dismiss on September 20, 2023. The Court stated the basis for denial was its finding that VWGoA did not meet its burden in showing that the applicable

---

[1] The fact that a non-resident Plaintiff has attempted to litigate a North Carolina accident here in Georgia does not outweigh the inconvenience, costs, and prejudice to the defendants in being forced to litigate without necessary parties, witnesses, and evidence that are all located in North Carolina.

4

factors under O.C.G.A. § 9-10-31.1(a) supported transfer of the case and that transfer of the case would not serve the interest of justice (Sept. 20, 2023 Order.)

## III.     ARGUMENT AND CITATION TO AUTHORITY

### A.     LEGAL STANDARD

As explained by the Supreme Court of Georgia, "[i]n general, a trial court has an inherent power to amend and control one of its orders during the same term in which the order was entered." *Mandt v. Lovell*, 293 Ga. 807, 809 (2013) (citation omitted). In this regard, the Court of Appeals will uphold a trial court's decision to grant or deny a motion for reconsideration absent an abuse of discretion. *See Stephens v. Alan V. Mock Construction Co., Inc.*, 302 Ga. App. 280 (2010); *see also Bocker v. Crisp*, 313 Ga. App. 585 (2012). Here, where new key evidence has emerged that significantly impacts the Court's prior analysis, VWGoA respectfully requests the Court exercise its inherent power to reconsider and vacate its September 20, 2023 Order and grant VWGoA's Motion to Dismiss Under the Doctrine of Forum Non Conveniens.

### B. NEWLY DISCOVERED EVIDENCE WARRANTS RECONSIDERATION OF SEVERAL KEY FACTORS, WHICH CLEARLY FAVOR NORTH CAROLINA OVER GEORGIA AS THE MOST APPROPRIATE FORUM.

The Court's Order set forth what it believed to be the appropriate forum under the "interest of justice" and "convenience of the **parties** and witnesses" as required by O.C.G.A. § 9-11-31.1 (emphasis added). VWGoA has now procured six affidavits—two from potentially necessary parties and four from other fact witnesses, which directly impact the Court's analysis under O.C.G.A. § 9-11-31.1 and require reconsideration of the following factors favoring North Carolina as the appropriate forum: (1) the availability and cost of compulsory process for attendance of witnesses [and parties] who now admit they are unwilling witnesses; and (2) the existence of local

5

interests [in North Carolina] in deciding a case involving a previously undisclosed potential party who fled the scene and/or caused or contributed to the collision.

### 1. Evidence that Two Necessary Parties and Other Key Witnesses Are Unwilling to Travel to the Forum Warrants Reconsideration of the Court's Denial of VWGoA's Motion to Dismiss.

Even though none of the identified North Carolina witnesses (including one potential third party) could be compelled to appear live at trial under O.C.G.A § 24-13-22, this Court found that VWGoA did not meet its burden in proving witness unavailability. Unbeknown to VWGoA at the time it filed its Motion to Dismiss, there is another witness and potentially indispensable party who not only witnessed the incident at issue here, but likely set the entire chain of events in motion which led to Plaintiff's injuries. (*See* **Exhibit A**.) Jesse Daren Ramsey was the driver of a vehicle that caused Plaintiff to have to brake hard and contributed to the rear end collision with Mr. Proffitt's vehicle. (*Id*.) Mr. Ramsey is resident of Madison, North Carolina and has now confirmed that it would be "inconvenient, costly and a hardship" to travel to Gwinnett County and that he would not be willing to voluntarily travel here to the current forum. (*Id.* at ¶7.) Mr. Ramsey was a previously unidentified *witness* to the accident, and he admitted to fleeing the scene.[2] (*Id.* at ¶5.) VWGoA has likewise confirmed that Mr. Proffitt—the other driver who collided with Plaintiff— is likewise not willing to voluntarily travel to Georgia for proceedings in this case. (*See* **Exhibit B.**) Mr. Proffitt has executed an affidavit confirming that "it would be more convenient for [him] and would permit me to more easily carry out [his] duties if the trial was conducted in Madison County, North Carolina." (*See* **Exhibit B**, ¶6.)

---

[2] It is also believed that he was under the influence of methamphetamine at the time of the accident.

Under O.C.G.A § 9-10-91 neither Mr. Ramsey nor Mr. Proffitt can be brought in as third party defendants to this case if it remains in the present forum. In the appropriate North Carolina forum, a jury would decide which parties—including Mr. Ramsey and Mr. Proffitt—caused or contributed to Plaintiff's injuries and hear from them live at trial. Surely this is cause for reconsideration of the Court's Order.

In addition to both Mr. Ramsey and Mr. Proffitt (*see supra* at p. 2-3), there are four additional fact witnesses who are unwilling to travel to Gwinnett County, Georgia for trial. First, Mr. Kenny Brown lives and works in Madison County, North Carolina as an officer with the Marshall Police Department, and he responded to the subject action. (*See* **Exhibit C**.) Mr. Brown stated that he could testify regarding the scene of the accident and knowledge from being a responder to the crash, but that because it would be inconvenient and a hardship, he is unwilling to travel to Gwinnett County voluntarily. (*Id.*) Second, Ms. Regina Bishop lives and works in Madison County, North Carolina as the chief of the Marshall Fire Department, and she also responded to the subject accident. (*See* **Exhibit D**.) Ms. Bishop stated that she could testify regarding the scene of the accident and general knowledge having responded to the crash, but she would not voluntarily travel to Gwinnett County to do so because it would be inconvenient and a hardship. (*Id.*) Third, Mr. Ryan Thorpe lives and works in Madison County, North Carolina as a wrecker driver for Haynie Towing & Recovery Wrecker, and he responded to the accident scene. (*See* **Exhibit E**.) Mr. Thorpe stated that he could testify regarding the accident scene having responded to the crash site, but it would be inconvenient and a hardship for him to do so, so he was also unwilling to travel to Gwinnett County. (*Id.*) Fourth, Ms. Amanada McAninch also lives and works in Madison County, North Carolina, and she was a witness to the subject accident, who stated that she could testify to the actual accident scene. (*See* **Exhibit F**.) However, Ms.

7

McAninch stated that it would be inconvenient and a hardship to travel to Gwinnett County to testify, and she would be unwilling to do so in this matter. (*Id.*) Based on this additional evidence, it becomes convincingly clear that "for the convenience of the … witnesses" this action would be much more properly heard in Madison County North Carolina.

VWGoA has now provided (and duly filed with the Court) sworn affidavits of six different witnesses –all of whom all reside in and around Madison County, North Carolina and all of whom have now confirmed that they are unwilling to travel to the current forum. (*See* **Exhibits A-F.**) All six of the "unwilling"[3] witnesses state they could testify regarding the subject accident based on their personal knowledge having witnessed or responded to the scene, but confirm that it would be inconvenient and a hardship to travel to Gwinnett County and would have to be compelled to do so. (*Id*). Because all of these witnesses reside out of state, none of them legally could be compelled to testify live at trial under O.C.G.A § 24-13-22, which states that "[a] subpoena requiring the attendance of a witness at a hearing or trial may be **served at any place within this state**" *See* O.C.G.A § 24-13-22 (emphasis added).

While it is true that Georgia provides a mechanism for parties to compel out-of-state residents to engage in discovery in Georgia, *see* O.C.G.A. § 24-13-111, this does nothing to compel any of the witnesses testimony at trial, as they are all non-residents. *See Ealy v. State*, 251 Ga. 426, 429 (1983) (reasoning that the trial court's subpoena power is inapplicable as to an out-of-state witness); *Ziegler v. State*, 270 Ga. App. 787, 790 (2004) (stating "out-of-state witnesses are beyond

---

[3] While the Plaintiff focused in his Opposition on the location of expert witnesses, there is no real debate that experts are the epitome of *willing* witnesses, and their ability to testify at trial in this matter should not be considered in assessing this factor. What is relevant is the ability to compel *unwilling* witnesses. O.C.G.A. § 9-10-31.1(a)(2).

8

the subpoena power of the court…"). The inability to subpoena witnesses who are potential *causes* of the injuries and incident to be evaluated live by a jury at trial weighs heavily in favor of dismissal since it is purely a creation of the Plaintiff's inconvenient and unjust forum. This is easily remedied and within the Court's discretion.

### 2. North Carolina Has a Much Stronger Interest in Bringing Local Residents—Including One Who Fled the Scene—to Justice than any Court in Georgia.

The Court's Order noted it considered arguments and authorities cited by both parties in finding that "local interests [did] not exist in either forum", but VWGoA asks the Court to reconsider this factor in light of Mr. Ramsey's Affidavit. (*See* **Exhibit** A.) Here, Plaintiff intentionally chose[4] NOT to sue two of the primary parties, who would be joint tortfeasors in a North Carolina court and who individually or in concert with the Plaintiff caused the accident. Mr. Proffitt—who rear ended Plaintiff—and Mr. Ramsey—who Plaintiff was avoiding (and who fled the scene)—are both local residents of Madison County, North Carolina. The fact that Mr. Ramsey was in front of Plaintiff, started the chain reaction accident, and then allegedly fled the scene is something the local North Carolina community clearly has an interest in resolving and adjudicating. Surely, the citizens of Madison County have a stronger interest than Gwinnett County in passing judgment over not one but two of their own citizens who caused or contributed to a significant injury collision. The Plaintiff has not offered any argument or support whatsoever

---

[4] One transparent reason that Plaintiff is likely trying to intentionally avoid North Carolina as the forum (and likely chose not to sue two of the primary parties who caused or contributed to the accident) is that North Carolina is a pure contributory negligence state. Thus, if Mr. Morton was in any way negligent in causing the accident—something Defendants believe they will be able to show if allowed to bring in the proper North Carolina resident parties—Morton would be barred from recovery. *See Brubach v. Peterson*, 261 N.C. App. 115, 115 (2018) (citing *McCauley v. Thomas*, 242 N.C. App. 82, 89 (2015) (reasoning that contributory negligence by a plaintiff is sufficient to bar recovery from a defendant committing ordinary negligence).

9

as to the interest Gwinnett County has in a dispute involving a California resident suing for injuries that took place in North Carolina. The new evidence put forth to the Court involving Mr. Ramsey and Mr. Proffitt warrants reconsideration of this factor and titling it back in favor of North Carolina over the present forum.

## C. THE FACT THAT PLAINTIFF UNILATERALLY MOVED THE SUBJECT VEHICLE TO GEORGIA AFTER FILING THE COMPLAINT IS EVIDENCE OF FORUM SHOPPING AND SHOULD NOT TIP THE "RELATIVE EASE OF ACCESS TO SOURCES OF PROOF" IN PLAINTIFF'S FAVOR.

Prior to VWGoA filing its Motion to Dismiss, counsel for VWGoA inquired as to the location of the subject vehicle and was informed by Plaintiff's counsel that the subject vehicle was located in Raleigh, North Carolina. (*See* **Exhibit H**.) VWGoA's first time learning that the subject vehicle is now in Covington, Georgia is from reading Plaintiff's Opposition. VWGoA's counsel was not notified that the subject vehicle would be moved, did not consent to it being moved, and has significant concerns over whether the condition of vehicle has been changed or altered in the moving process.[5]

The movement of the subject vehicle from North Carolina to Georgia, after filing of the Complaint and without notifying defense counsel, is indicative of the lengths Plaintiff will go to try and defeat VWGoA's strong forum challenge and is a manipulation of key evidence in the case. Moreover, even if the subject vehicle is now located in Georgia, this does not change the fact that

---

[5] Plaintiff's counsel did not even consult with defense counsel regarding the protocol to be followed prior to and after moving the subject vehicle, and Defendants reserve the right to make spoliation challenges and inquiries over this evidence regardless of where is currently resides. *See Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 339 (2018) (stating "[a] trial court's finding that a party lost or destroyed relevant evidence may lead to sanctions, including the worst case severe sanctions such as an instruction to the jury to presume rebuttably that the evidence was adverse to the spoliating party's claim or defense…or the dismissal of the case.").

10

a substantial number of key fact witnesses—including multiple vehicle owners, eyewitnesses and investigators involved in the incident—are ALL located in North Carolina. Compared to North Carolina, there are few if any witnesses that will need to be accessed in Gwinnett County, Georgia that are relevant to the claims at issue.

## D. THE COURT SHOULD RECONSIDER THE OTHER FACTORS IT RELIED UPON.

### 1. There Is No Dispute That the Accident Scene Is in North Carolina.

The Court's Order focused on the jury's ability to view the *vehicle* as opposed to the scene of the accident. Here, Plaintiff does not dispute that the accident scene is in North Carolina—and whether the parties agree over the importance or likelihood of the jury wanting to see the scene is a debate best left to a North Carolina judge or jury. While it is clear that the Court has never had a party request a scene visit before, this is technically not part of the forum factor analysis. There is no dispute that a Georgia jury would *never* be able to visit the accident scene 200 miles away, and therefore, this factor weighs in VWGoA's favor.

### 2. The Court Has Agreed that Administrative Difficulties in the Forum Favor Dismissal.

While this court noted in its Order that it does not anticipate that it will experience administrative difficulties resulting from this case, this factor warrants reconsideration for the following reasons. First, in *Lonon, et al. v. East Georgia Regional Medical Center LLC* (Case No. 22-C-02915-S2), this very Court granted a motion to transfer venue on forum non conveniens grounds and highlighted the administrative difficulties Gwinnett County faces due to the fact that the venue has become a "preferred destination for personal injury cases." (*See* Court's Order in *Lonon*, p. 4 attached hereto as **Exhibit G**.) Gwinnett County continues to seek relief and funding to resolve COVID-related backlogs. (*See* https://www.gwinnettdailypost.com/local/gwinnett-gets-indigent-defense-grant-to-expedite-pandemic-related-backlog-of-cases/article_c529655e-

11

e2f3-11ed-9c00-37f498bc51c1.html). If the Court applies its ruling from *Lonon,* according to the 2022 Census, the population in Madison County, North Carolina is 21,193[6] versus a population of 975,352 in Gwinnett County.[7] Accordingly, there are significant administrative differences between the two counties at issue (both in terms of population and caseload), and this factor weighs in favor of granting a dismissal in favor of Madison County, North Carolina, a small community where the evidence now before the court confirms many of the key witnesses (and two potential parties) live and work.

Second, Plaintiff also has already admitted that North Carolina law will apply to some of the claims but baldly asserts, without citation to any binding legal authority, that North Carolina's substantive products liability laws violate Georgia public policy, and therefore will not apply. Again this is a wholly unnecessary exercise that a proper venued court in North Carolina would never have to engage in given that the accident took place in North Carolina. Georgia law is clear that tort actions are governed by **the substantive law of the state where the tort was committed** (*Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (2005)), and frankly, any dispute over Georgia versus North Carolina law still proves the point that it is an administrative "difficulty" that clearly favors dismissal. Any conflict is wholly of Plaintiff's own making given that dismissing the case in favor of its proper forum would eliminate the strawman "public policy" debate. A North Carolina court would simply apply North Carolina law. *Stokes v. Wilson and Redding Law Firm*, 72 N.C. App. 107, 112-13 (1984) (stating "[u]nder North Carolina choice of law rules, we apply

---

[6] 2022 Madison County, North Caroline Census, https://www.census.gov/quickfacts/fact/table/madisoncountynorthcarolina/PST045222 (last visited September 12, 2023)

[7] 2022 Gwinnett County, Georgia Census, https://www.census.gov/quickfacts/fact/table/gwinnettcountygeorgia/PST045222 (last visited September 12, 2023).

the substantive law of the state where the cause of action accrued and the procedural rules of North

Carolina."). In *Hawkins v. Blair*, 334. Ga. App. 898 (2015), the Georgia Court of Appeals affirmed

the trial court's finding that administrative difficulties favored dismissal were the tort action was

committed in South Carolina, and thus, the trial court would need to apply South Carolina tort law.

*Id.* at 903. Similarly, here the Court may reasonably find that application of North Carolina

substantive law poses administrative difficulty in favor of dismissal—especially where it is already

clear Plaintiff will likely attempt to create conflict of law where none would exist if this case were

filed in the proper forum.

### 3. The Court Should Not Give Undue Weight to Plaintiff's Choice of Forum since He Is NOT a Resident of Georgia.

VWGoA does not dispute that Plaintiff's choice of forum is certainly relevant to the *non-*

*conveniens* analysis. The issue is how much weight it should be given, and Georgia law is clear

that forum selection is only given weight when the Plaintiff *actually lives in the forum*. Here,

Plaintiff is a resident of California. Georgia federal cases applying Georgia law are instructive on

the issue of out-of-state litigants attempting to place undue weight on their choice of forum holding

that "[t]he weight accorded to plaintiff's choice of forum is diminished substantially . . . when the

forum is neither plaintiff's home district nor the place where the majority of the operative events

or transactions underlying the action occurred." *See Rigby v. Flue-Cured Tobacco Co-op.*

*Stabilization Corp.*, No. 7:05-CV-122 (HL), 2006 WL 1312412, at *5 (M.D. Ga. May 11, 2006);

*see also Prather v. Yamond Const. Co., Inc.*, 570 F. Supp. 278, 284 (N.D. Ga. 1983) (citing

*Burroughs Wellcome Co. Giant Food, Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975)) (stating that

where the forum selected by the plaintiff is not connected with the parties or the subject matter of

the lawsuit, it is generally less difficult than otherwise for the defendant, seeking a change of

venue, "to meet the burden of showing sufficient inconvenience to tip the balance of convenience strong in the defendant's favor."). Here, Plaintiff's choice of forum is not consistent with the "interest of justice and … the convenience of the parties and witnesses" and thus should be balanced against the other six factors which favor North Carolina as the appropriate forum for this case.

## IV. CONCLUSION

For these reasons, VWGoA respectfully requests that this Court GRANT VWGoA's Motion for Reconsideration, vacate its September 20, 2023 Order, and issue an Order GRANTING VWGoA's Motion to Dismiss Under the Doctrine of Forum *Non Conveniens*. Alternatively, if the Court is inclined to deny this Motion, VWGoA respectfully requests the Court issue a Certificate for Immediate Review to allow appellate review of the issues raised in the instant Motion.

For the Court's convenience, a Certificate of Immediate Review is attached to this Motion as **Exhibit I**.

Respectfully submitted,

This 28th day of September, 2023.                    **SHOOK HARDY & BACON, LLP**

                                                    */s/ Colin K. Kelly*
                                                    Colin K. Kelly
                                                    Georgia Bar No. 781072
                                                    ckelly@shb.com
                                                    Caroline M. Gieser
                                                    Georgia Bar No. 167916
                                                    cgieser@shb.com
                                                    Timia A. Skelton
                                                    Georgia Bar No. 667099
                                                    tskelton@shb.com
                                                    1230 Peachtree Street NE, Suite 1200
                                                    Atlanta, GA 30309-3591
                                                    (470) 867-6012 (direct CKK)
                                                    (470) 867-6006 (direct TAS)
                                                    (470) 867-6013 (direct CMG)

14

*Counsel for Defendant Volkswagen*
*Group of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, I served a copy of the **DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION FOR RECONSIDERATION AND BRIEF IN SUPPORT** upon all parties of record in this matter using the Odyssey E-File system and via electronic mail as follows:

Cale Conley
Davis Popper
Alex S. Edmonds
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
cale@conleygriggs.com
davis@conleygriggs.com
kip@conleygriggs.com
***Attorneys for Plaintiff***

Noah B. Abrams
Winston Kirby
Andrew Avram
Abrams & Abrams, P.A.
3201 Glenwood Avenue
Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 780-5400
***Attorneys for Plaintiff***


*/s/ Colin K. Kelly*
Colin K. Kelly

***Counsel for Defendant Volkswagen Group of America, Inc.***

16

# EXHIBIT A

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | |
| | ) | NO. 23-C-03730-S2 |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC.; | ) | |
| | | |
| Defendants. | | |

### AFFIDAVIT OF JESSE RAMSEY

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Jesse Ramsey, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Accident").

4. I was involved in the Accident.

5. I was driving the vehicle in front of a white Audi I believe to be the vehicle Mr. Morton. I made a sudden stop to turn onto Hemlock Drive in Madison County, North Carolina. When I made that sudden stop, the white Audi had to stop suddenly, and a red pickup truck carrying wood rear ended the white Audi.

6. I can testify regarding the scene of the accident, my involvement in the accident, and my general knowledge from being a witness at the crash scene.

1

7. It would be inconvenient, costly, and a hardship for me to travel to Gwinnett County, Georgia.

8. I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

JESSE RAMSEY

STATE OF NORTH CAROLINA  :

: SS

COUNTY OF *Buncombe*

The foregoing instrument was acknowledged before me this _26th_ day of _Sept._, 2023, by _Jesse Daren Ramsey_ who is personally known to me or produced _NC drivers license_ as identification.

*Christine Hill*
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Christine Hill_

My Commission expires: _04-12-2026_



CHRISTINE HILL
NOTARY
PUBLIC · NC
BUNCOMBE COUNTY

2

# EXHIBIT B

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DOUGLAS GRANT MORTON                     )
                                         )          CIVIL ACTION FILE
            Plaintiff,                   )
                                         )          NO. 23-C-03730-S2
v.                                       )
                                         )
AUDI OF AMERICA, LLC; VOLKSWAGEN         )
GROUP OF AMERICA, INC. d/b/a AUDI OF     )
AMERICA, INC.; AUDI AG; VOLKSWAGEN       )
AG; and ASBURY AUTOMOTIVE GROUP, INC.;   )

            Defendants.

## AFFIDAVIT OF SCOTTIE DALE PROFFITT

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally

appeared, who after being duly sworn, states as follows:

1. I, Scottie Dale Proffitt, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I was a witness to the Subject Accident

5. I can testify regarding the scene of the accident and my general knowledge from being a witness at the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.


_Scottie Proffitt_
SCOTTIE DALE PROFFITT


STATE OF NORTH CAROLINA :

: SS

COUNTY OF _Madison_

The foregoing instrument was acknowledged before me this _19th_ day of _September_, 2023, by _Scottie Dale Proffitt_ ~~who is personally known to me or~~ (produced) _NC Drivers License_ (as identification.)


_Christine Hill_
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Christine Hill_

My Commission expires: _04-12-2026_

# EXHIBIT C

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | |
| | ) | NO.  23-C-03730-S2 |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC.; | ) | |

Defendants.

**AFFIDAVIT OF KENNY BROWN**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Kenny Brown, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I am an officer with the Marshall Police Department who responded to the Subject Accident.

5. I can testify regarding the scene of the accident and my general knowledge from being a respondent to the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_____
KENNY BROWN

STATE OF NORTH CAROLINA :

: SS

COUNTY OF _Madison_

The foregoing instrument was acknowledged before me this __20__ day of __Sept__ , 2023, by , who is personally known to me or produced _____ as identification.

_____
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Michelle Massey_

My Commission expires: __3/30/25__

# EXHIBIT D

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON )
                                     )
                                     ) CIVIL ACTION FILE
    Plaintiff, )
                                       ) NO.  23-C-03730-S2
v. )
                                       )
AUDI OF AMERICA, LLC; VOLKSWAGEN )
GROUP OF AMERICA, INC. d/b/a AUDI OF )
AMERICA, INC.; AUDI AG; VOLKSWAGEN )
AG; and ASBURY AUTOMOTIVE GROUP, INC.; )

    Defendants.

## AFFIDAVIT OF REGINA BISHOP

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Regina Bishop, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I am the chief of the Marshall Fire Department who responded to the Subject Accident.

5. I can testify regarding the scene of the accident and my general knowledge from being a respondent to the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter.  It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_Regina Bishop_

REGINA BISHOP

STATE OF NORTH CAROLINA :

: SS

COUNTY OF

The foregoing instrument was acknowledged before me this 20th day of September, 2023, by , who is personally known to me or produced Driver's License as identification.

_Chesney M Bishop_

NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Chesney M Bishop_

My Commission expires: 7-23-2028

# EXHIBIT E

DOUGLAS GRANT MORTON )
                                   )        CIVIL ACTION FILE
       Plaintiff, )
                                   )        NO.  23-C-03730-S2
v. )
                                   )
AUDI OF AMERICA, LLC; VOLKSWAGEN )
GROUP OF AMERICA, INC. d/b/a AUDI OF )
AMERICA, INC.; AUDI AG; VOLKSWAGEN )
AG; and ASBURY AUTOMOTIVE GROUP, INC.; )

       Defendants.

## **AFFIDAVIT OF RYAN THORPE**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Ryan Thorpe, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I was a wrecker driver who responded to the Subject Accident with Haynie Towing & Recovery Wrecker.

5. I can testify regarding the scene of the accident and my general knowledge from being a respondent to the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter.  It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_Ryan Thorpe_ _(signature)_

RYAN THORPE

STATE OF NORTH CAROLINA :

: SS

COUNTY OF

_(Notary seal: CHESNEY M BISHOP, MY COMMISSION EXPIRES, NOTARY PUBLIC, 07/25/2028, MADISON COUNTY, NC)_

The foregoing instrument was acknowledged before me this 20th day of September, 2023, by , who is personally known to me or produced Drivers License as identification.

_(signature)_

NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Chesney M Bishop_

My Commission expires: 7-23-2028

# EXHIBIT F

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| DOUGLAS GRANT MORTON | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | |
| | ) | NO. 23-C-03730-S2 |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC.; | ) | |

Defendants.

## **AFFIDAVIT OF AMANDA MCANINCH**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Amanda McAninch, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I was a witness to the Subject Accident

5. I can testify regarding the scene of the accident and my general knowledge from being a witness at the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_Amanda mcaninch_
AMANDA MCANINCH

STATE OF NORTH CAROLINA  :

COUNTY OF _Madison_                  : SS

The foregoing instrument was acknowledged before me this _19th_ day of _September_, 2023, by _Amanda mcaninch_ who is ~~personally known to me~~ or (produced _NC drivers license_ as identification.)

_Christine Hill_
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Christine Hill_

My Commission expires: _04-12-2026_

CHRISTINE HILL
NOTARY
PUBLIC
BUNCOMBE COUNTY, NC

# EXHIBIT G

E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**22-C-02915-S2**
**1/12/2023 10:37 AM**
**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORIGA

JERRY LONON, et al.,                    )
                                        )
        Plaintiff(s),                   )
                                        )        CIVIL ACTION FILE
v.                                      )        NO.: 22-C-02915-S2
                                        )
EAST GEORGIA REGIONAL MEDICAL )
CENTER, LLC, et al.,                    )
        Defendants.                     )
                                        )
_____             )

<u>ORDER GRAINTING DEFENDANT ALLEN'S MOTION TO TRANSFER VENUE
AND TRANSFERRING CASE TO THE STATE COURT OF CHATHAM COUNTY</u>

Defendant Sheri Nicole Allen R.N.'s Motion to Transfer Venue Based on Forum

Non Conveniens having been read, after considering the motion, Plaintiffs' response

thereto, all matters of record, and the applicable and controlling law, the Court finds as

follows.

"Georgia courts have long accepted the practice of trial counsel stating certain

facts 'in their place' as a means of establishing evidence for the record or making an offer

of proof. Such statements by counsel, as an officer of the court, are presumed correct."

PAUL S. MILICH, GEORGIA RULES OF EVIDENCE § 12:5 (2022) (footnotes

omitted). Accordingly, the Court will consider statements which were made in their

place by counsel without objection.

Subsection (a) of O.C.G.A. § 9-10-31.1 provides that "[i]f a court of this state, on

written motion of a party, finds that in the interest of justice and for the convenience of

the parties and witnesses a claim or action would be more properly heard in a . . .

different county of proper venue within this state, the court shall decline to adjudicate the

matter under the doctrine of *forum non conveniens*." That subsection additionally lists

1

seven factors to be considered by the courts in determining whether to transfer a case, pursuant to the doctrine.

Nevertheless, "[i]t is not the seven enumerated factors, but the first sentence of the statute that expresses the core concepts of the *forum non conveniens* doctrine. This fundamental expression, in conjunction with the seven factors, comprises the larger 'procedural framework' of the statutory *forum non conveniens* doctrine. The seven factors are a means to an end: They serve to guide the court toward a reasoned and just finding on whether the case is one which 'would be more properly heard in a [different venue].'" *Fed. Ins. Co. v. Chicago Ins. Co.*, 281 Ga. App. 152, 154-55 (2006) *overruled on other grounds by Wang v. Liu*, 292 Ga. 568 (2013). Defendants, as movants to transfer venue of the case, have the burden to show that the factors set forth in OCGA § 9–10–31.1(a) support the transfer. *R.J. Taylor Mem'l Hosp., Inc. v. Beck*, 280 Ga. 660, 662 (2006).

In determining whether to grant Defendants' motion, the Court has considered to the seven factors set out in O.C.G.A. § 9-10-31.1 (a). Those factors are addressed sequentially below.

**(1) The Relative Ease of Access to Sources of Proof.**

For the reasons stated-in-his-place by Defendant Allen's counsel in support of her motion the Court finds that that this factor weighs in her favor.

**(2) The Availability and Cost of Compulsory Process for Attendance of Unwilling Witnesses.**

This Court has the authority to compel the presence of the plaintiffs, the defendants, and all other Georgia witnesses – i.e., the same authority as the courts of Bulloch County (or Chatham County). Moreover, Defendant Allen did not identify any

2

unwilling witnesses residing outside of Gwinnett County. *See Woodard Events, LLC v. Coffee House Indus., LLC*, 341 Ga. App. 526 (2017); *Hawkins v. Blair*, 334 Ga. App. 898 (2015).

Therefore, the Court finds the second factor of O.C.G.A §9-10-31.1 (a) weighs in favor of Plaintiff.

**(3) The Possibility of Viewing of the Premises, if Viewing would be Appropriate to the Action.**

According to Defendant Allen, "[t]he venous ultrasound machine as well as other medical equipment that would be helpful to a jury in understanding the medical treatment Lonon received lie in Bulloch County." (Defendant Allen's Reply Brief in Support of Motion to Transfer Venue Based on Forum Non Conveniens, pp. 3-4.) Defendant did not assert that a viewing of the premises would be useful or probable. This Court regularly presides over professional medical negligence cases. Never has a party requested a scene view in one of those cases. Accordingly, Defendant Allen did not meet her burden to show that the third factor of O.C.G.A §9-10-31.1 (a) weighs in her favor. The Court finds that the third factor of O.C.G.A §9-10-31.1 (a) weighs in favor of neither party.

**(4) Unnecessary Expense or Trouble to the Defendant Not Necessary to the Plaintiff's Own Right to Pursue its Remedy.**

For the reasons stated-in-his-place by Defendant Allen's counsel in support of her motion the Court finds that the fourth factor of O.C.G.A §9-10-31.1 (a) weighs in her favor.

**(5) Administrative Difficulties for the Forum Courts.**

The Court anticipates that it will experience administrative difficulties resulting from this case. During the motion hearing, counsel indicated that the trial of this case

3

would be long. Since Gwinnett County became a preferred destination for personal injury cases, this Court has labored to accommodate many two-to-four-week trials. Division 2 of the State Court of Gwinnett County has at least 38 medical malpractice cases awaiting trial. Typically, medical malpractice cases need at least a two-week calendar. This Court's resources would be taxed by the attempt to accommodate the trail of this case.

At Plaintiff's suggestion, the Court will transfer this case to Chatham County. The Census Bureau's 2018 population estimate for Chatham County was 289,195; and Chatham County's residents are served by three State Court judges. The Census Bureau's 2018 population estimate for Gwinnett County was 918,781; and Gwinnett, at the time of Defendant Allen's motion was served by six State Court judges. Thus, the ratio of State Court judges to residents was over fifty percent higher in Gwinnett than in Chatham. Accordingly, the Court finds that the fifth factor of O.C.G.A §9-10-31.1 (a) weighs in favor of Defendant.

**(6) The Existence of Local Interests in Deciding the Case Locally.**

The Court finds that that the sixth factor of O.C.G.A §9-10-31.1 (a) weighs in favor of neither party. *See generally R.J. Taylor Mem'l Hosp., Inc. v. Beck*, 280 Ga. 660 (2006).

**(7) The Traditional Deference given to a Plaintiff's Choice of Forum.**

As for the seventh factor of O.C.G.A. § 9-10-31.1, after considering the arguments of the parties and the authorities upon which each relied, the Court finds that this factor weighs in favor of Plaintiff.

4

Having found that three of the seven factors Section 9-10-31.1 (a) weigh in Defendant's favor, while only two weigh in favor of Plaintiff, the Court finds that finds that in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard in a Chatham County.

WHEREFORE, Defendant Sheri Nicole Allen R.N.'s Motion to Transfer Venue Based on Forum Non Conveniens is hereby DENIED.

SO ORDERED, this _12_ day of _Jany_ ~~2020.~~ 2023

_[signature]_

Shawn F. Bratton, Judge
State Court of Gwinnett County

5

# EXHIBIT H

| | |
|---|---|
| **From:** | Noah Abrams <NAbrams@abramslawfirm.com> |
| **Sent:** | Tuesday, June 27, 2023 6:25 PM |
| **To:** | Gieser, Caroline M. (SHB) |
| **Cc:** | Cale Conley; Davis Popper (davis@conleygriggs.com); Alex Edmonds; David Kirby; Winston Kirby; Melissa Abrams; Ali Patil; Julie Houston; Erin Mullinix |
| **Subject:** | Morton v. Audi of America, et al. |

**EXTERNAL**

Caroline,

Andrew and I enjoyed talking with you this morning.

Per our call, we'd definitely appreciate it if you could check with your client on the IDs of:

- Airbag Control Module
- Driver's seatbelt
- Driver's seat, seatback, and frame
- Driver's headrest

Also, we have the USM-94 forms, and can send out for Hague service, but if VW Group would be interested in a streamlining or service agreement, let me know and we can get an agreement conformed and sent over for review.

In the meantime, the vehicle can be inspected at Accident Reconstruction Analysis in Raleigh, NC. Just let us know some dates that your folks are available, and we'll get it lined up. We'll also work on getting a package together with medical records, bills, films, and photographs of the vehicle to assist your side in the evaluation of our client's claims.

If there is anything else that we can provide, feel free to reach out to anyone on the team.

Thanks again, and we look forward to working with you towards a resolution of this tragic matter.

Best regards,

Noah

Noah B. Abrams
Abrams & Abrams, P.A.
1526 Glenwood Avenue
Raleigh, North Carolina 27608
919-755-9166
919-755-9396 (fax)
NAbrams@abramslawfirm.com

# EXHIBIT I

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC. D/B/A AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAIRECIA AUTOMOTIVE SEATING, | ) | Civil Action File No.: |
| LLC; | ) | 23-C-03730-S2 |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC.; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| | ) | |
|     Defendants. | | |

## CERTIFICATE OF IMMEDIATE REVIEW

This Court, having entered an Order dated September 20, 2023, denying Defendant

Volkswagen Group of America's ("VWGoA") Motion to Dismiss Plaintiff's Complaint under the

Doctrine of Forum *Non Conveniens*, this Court having denied VWGoA's Motion for

Reconsideration, and this Court having found that the matters presented by the motions and the

1

resulting order are of such importance that immediate review should be had by the Georgia Court of Appeals pursuant to its Rules 30(b);

This Court finds that the requirements of O.C.G.A. § 5-6-34(b) are satisfied, and within the time required by law, herewith grants a Certificate of Immediate Review with respect to the Order of September 20, 2023.

SO ORDERED, this 28th day of September, 2023.

_____

Hon. Shawn Bratton
State Court Judge
Gwinnett County, Georgia

Presented by:
**Shook, Hardy & Bacon LLP**
Colin K. Kelly
Georgia Bar No. 781072
1230 Peachtree Street, Suite 1200
Atlanta, GA 30309

2

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; | ) | |
| VOLKSWAGEN GROUP OF AMERICA, | ) | |
| INC. D/B/A AUDI OF AMERICA, INC.; | ) | |
| AUDI AG; | ) | |
| VOLKSWAGEN AG; | ) | |
| LEAR CORPORATION; | ) | |
| FNK NORTH AMERICA, INC.; | ) | |
| FAURECIA-NHK CO., LTD; | ) | |
| FAIRECIA AUTOMOTIVE SEATING, | ) | Civil Action File No.: |
| LLC; | ) | 23-C-03730-S2 |
| NHK SEATING OF AMERICA, INC.; | ) | |
| NHK SPRING CO. LTD; | ) | |
| FAURECIA USA HOLDINGS INC; | ) | |
| BROSE NORTH AMERICA, INC.; | ) | |
| BROSE FAHRZEUGTEILE SE & CO. | ) | |
| KOMMANDITGESELLSCHAFT; | ) | |
| GRAMMER, INC.; | ) | |
| GRAMMER INDUSTRIES, LLC; | ) | |
| GRAMMER AG; | ) | |
| ASBURY AUTOMOTIVE GROUP, INC.; | ) | |
| and XYZ COMPANIES 1-4 | ) | |
| | ) | |
| Defendants. | | |

## **NOTICE OF FILING AFFIDAVITS**

COMES NOW Defendant Volkswagen Group of America's ("VWGoA") and gives notice

of filing the following affidavits:

1. Affidavit of Jesse Ramsey

2. Affidavit of Scottie Dale Proffitt

3. Affidavit of Kenny Brown

4. Affidavit of Regina Bishop

1

5. Affidavit of Ryan Thorpe

6. Affidavit of Amanda McAninch

This 28th day of September, 2023.

<div align="right">

**SHOOK HARDY & BACON, LLP**

*/s/ Colin K. Kelly*
Colin K. Kelly
Georgia Bar No. 781072
ckelly@shb.com
Caroline M. Gieser
Georgia Bar No. 167916
cgieser@shb.com
Timia A. Skelton
Georgia Bar No. 667099
tskelton@shb.com
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591
(470) 867-6012 (direct CKK)
(470) 867-6006 (direct TAS)
(470) 867-6013 (direct CMG)

***Counsel for Defendant Volkswagen
Group of America, Inc.***

</div>

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2023, I served a copy of the **DEFENDANT**

**VOLKSWAGEN GROUP OF AMERICA, INC.'S NOTICE OF FILING AFFIDAVITS**

upon all parties of record in this matter using the Odyssey E-File system and via electronic mail

as follows:

Cale Conley
Davis Popper
Alex S. Edmonds
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone: 404-467-1155
cale@conleygriggs.com
davis@conleygriggs.com
kip@conleygriggs.com
*Attorneys for Plaintiff*

Noah B. Abrams
Winston Kirby
Andrew Avram
Abrams & Abrams, P.A.
3201 Glenwood Avenue
Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 780-5400

*Attorneys for Plaintiff*


*/s/ Colin K. Kelly*
Colin K. Kelly

***Counsel for Defendant Volkswagen
Group of America, Inc.***

3

# EXHIBIT A

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | |
| | ) | NO.  23-C-03730-S2 |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC.; | ) | |
| Defendants. | | |

## **AFFIDAVIT OF JESSE RAMSEY**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Jesse Ramsey, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Accident").

4. I was involved in the Accident.

5. I was driving the vehicle in front of a white Audi I believe to be the vehicle Mr. Morton. I made a sudden stop to turn onto Hemlock Drive in Madison County, North Carolina. When I made that sudden stop, the white Audi had to stop suddenly, and a red pickup truck carrying wood rear ended the white Audi.

6. I can testify regarding the scene of the accident, my involvement in the accident, and my general knowledge from being a witness at the crash scene.

1

7. It would be inconvenient, costly, and a hardship for me to travel to Gwinnett County, Georgia.

8. I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_____
JESSE RAMSEY

STATE OF NORTH CAROLINA :

                              : SS
COUNTY OF Buncombe

The foregoing instrument was acknowledged before me this _26th_ day of _Sept._, 2023, by _Jesse Daren Ramsey_ who is personally known to me or produced _NC drivers license_ as identification.

_____
Christine Hill
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Christine Hill_

My Commission expires: _04-12-2026_



2

# EXHIBIT B

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| DOUGLAS GRANT MORTON ) | |
| ) | CIVIL ACTION FILE |
|     Plaintiff, ) | |
| ) | NO. 23-C-03730-S2 |
| v. ) | |
| ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC.; ) | |
| | |

    Defendants.

## **AFFIDAVIT OF SCOTTIE DALE PROFFITT**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Scottie Dale Proffitt, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I was a witness to the Subject Accident

5. I can testify regarding the scene of the accident and my general knowledge from being a witness at the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_Scottie Proffitt_

**SCOTTIE DALE PROFFITT**

STATE OF NORTH CAROLINA :

: SS

COUNTY OF _Madison_

The foregoing instrument was acknowledged before me this _19th_ day of _September_, 2023, by _Scottie Dale Proffitt_ who is ~~personally known to me or~~ produced _NC Drivers License_ as identification.

_Christine Hill_

NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Christine Hill_

My Commission expires: _04-12-2026_

# EXHIBIT C

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| DOUGLAS GRANT MORTON | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | |
| | ) | NO. 23-C-03730-S2 |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, LLC; VOLKSWAGEN | ) | |
| GROUP OF AMERICA, INC. d/b/a AUDI OF | ) | |
| AMERICA, INC.; AUDI AG; VOLKSWAGEN | ) | |
| AG; and ASBURY AUTOMOTIVE GROUP, INC.; | ) | |
| | | |
| Defendants. | | |

**AFFIDAVIT OF KENNY BROWN**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Kenny Brown, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I am an officer with the Marshall Police Department who responded to the Subject Accident.

5. I can testify regarding the scene of the accident and my general knowledge from being a respondent to the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_____
KENNY BROWN

STATE OF NORTH CAROLINA :

                  : SS

COUNTY OF  Madison

    The foregoing instrument was acknowledged before me this __20__ day of
__Sept__, 2023, by , who is personally known to me or produced
_____ as identification.

_____
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: Michelle Massey

My Commission expires: __3/30/25__

# EXHIBIT D

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

DOUGLAS GRANT MORTON )
)
    Plaintiff, )
)
v. )
)
AUDI OF AMERICA, LLC; VOLKSWAGEN )
GROUP OF AMERICA, INC. d/b/a AUDI OF )
AMERICA, INC.; AUDI AG; VOLKSWAGEN )
AG; and ASBURY AUTOMOTIVE GROUP, INC.; )

    Defendants.

CIVIL ACTION FILE

NO. 23-C-03730-S2

### AFFIDAVIT OF REGINA BISHOP

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Regina Bishop, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I am the chief of the Marshall Fire Department who responded to the Subject Accident.

5. I can testify regarding the scene of the accident and my general knowledge from being a respondent to the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_____
REGINA BISHOP

STATE OF NORTH CAROLINA :

: SS

COUNTY OF

The foregoing instrument was acknowledged before me this ⟨20th⟩ day of ⟨September⟩ , 2023, by , who is personally known to me or produced ⟨Driver's License⟩ as identification.

_____
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: ⟨Chesney M Bishop⟩

My Commission expires: ⟨7-23-2028⟩

# EXHIBIT E

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DOUGLAS GRANT MORTON )
)                    CIVIL ACTION FILE
    Plaintiff, )
)                    NO. 23-C-03730-S2
v. )
)
AUDI OF AMERICA, LLC; VOLKSWAGEN )
GROUP OF AMERICA, INC. d/b/a AUDI OF )
AMERICA, INC.; AUDI AG; VOLKSWAGEN )
AG; and ASBURY AUTOMOTIVE GROUP, INC.; )

    Defendants.

## **AFFIDAVIT OF RYAN THORPE**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Ryan Thorpe, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I was a wrecker driver who responded to the Subject Accident with Haynie Towing & Recovery Wrecker.

5. I can testify regarding the scene of the accident and my general knowledge from being a respondent to the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter.  It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_____
RYAN THORPE

STATE OF NORTH CAROLINA  :

                         : SS

COUNTY OF

The foregoing instrument was acknowledged before me this 20th day of September, 2023, by , who is personally known to me or produced Drivers License as identification.

_____
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: Chesney M Bishop

My Commission expires: 7-23-2028

# EXHIBIT F

STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DOUGLAS GRANT MORTON          )
                             )    CIVIL ACTION FILE
        Plaintiff,           )
                             )    NO.  23-C-03730-S2
v.                           )
                             )
AUDI OF AMERICA, LLC; VOLKSWAGEN    )
GROUP OF AMERICA, INC. d/b/a AUDI OF )
AMERICA, INC.; AUDI AG; VOLKSWAGEN   )
AG; and ASBURY AUTOMOTIVE GROUP, INC.;  )

        Defendants.

**AFFIDAVIT OF AMANDA MCANINCH**

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments, personally appeared, who after being duly sworn, states as follows:

1. I, Amanda McAninch, am over eighteen (18) years of age and fully competent to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct to the best of my knowledge.

2. I live and work in Madison County, North Carolina.

3. My understanding is that the above lawsuit stems from an automobile accident that occurred on or about September 25, 2021, on US 25, near SR 1394 in Madison County, North Carolina, involving the plaintiff, DOUGLAS MORTON ("Subject Accident").

4. I was a witness to the Subject Accident

5. I can testify regarding the scene of the accident and my general knowledge from being a witness at the crash scene.

6. It would be inconvenient, and a hardship, for me and I would be unwilling to voluntarily travel to Gwinnett County, Georgia, and back in order to testify as a witness in hearings or at trial in the above-captioned matter. It would be more

convenient for me and would permit me to more easily carry out my duties if the trial was conducted in Madison County, North Carolina.

_Amanda mcaninch_
AMANDA MCANINCH

STATE OF NORTH CAROLINA  :

COUNTY OF _Madison_       : SS

The foregoing instrument was acknowledged before me this _19th_ day of _September_, 2023, by _Amanda mcaninch_ who is ~~personally known to me or~~ produced _NC drivers license_ as identification.

_Christine Hill_
NOTARY PUBLIC, STATE OF NORTH CAROLINA

Print Name: _Christine Hill_

My Commission expires: _04-12-2026_

CHRISTINE HILL
NOTARY
PUBLIC
BUNCOMBE COUNTY, NC