## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **DOUGLAS GRANT MORTON,** | ) |
| | ) |
| **Plaintiff,** | ) **CIVIL ACTION FILE** |
| | ) |
| v. | ) **No. 1:23-cv-04420-TWT** |
| | ) |
| **AUDI OF AMERICA, LLC, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT LEAR CORPORATION'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND

Defendant Lear Corporation ("Defendant" or "Lear") files this Response to Plaintiff Douglas Grant Morton's ("Plaintiff" or "Mr. Morton") Motion to Remand, respectfully asking the Court to deny Plaintiff's Motion.

## I.  INTRODUCTION

Defendant Asbury Automotive Group, Inc. ("Asbury Auto") is fraudulently joined to defeat diversity removal. The doctrine of fraudulent joinder exists to prevent a plaintiff from naming an in-state defendant to prevent removal when there is no reasonable possibility a court would find the in-state defendant liable. That is exactly what happened here.

Asbury Auto is fraudulently joined because there is no reasonable possibility Plaintiff can prevail on his breach of warranty or his negligence claims. First, Asbury Auto sold the car to non-party Lynn Love, not to Plaintiff. This means Plaintiff's warranty claims fail as a matter of law for lack of privity, even if Asbury

23261976.1

Auto had not otherwise disclaimed all warranties, which it did. Plaintiff's Motion essentially admits his warranty claim fails by presenting no evidence or argument trying to save it.

Second, there is no reasonable possibility Plaintiff can succeed on his negligence claim against Asbury Auto. The only defect alleged by Plaintiff is a latent, hidden defect in the strength of the 2020 Audi A6's (the "Subject Vehicle") front seat during crashes. Plaintiff's Motion ignores the nature of the alleged defect because it shows he has no claim against Asbury Auto. Car dealerships like Asbury Auto have no duty or capability to crash test vehicles or assess these vehicles for latent crashworthiness defects. In fact, Lear is unaware of any court, anywhere, requiring a car dealership to crash test cars to find latent, hidden defects in the strength of a vehicle's seats during a crash. Certainly no such duty exists under North Carolina law, which governs Plaintiff's tort claims.

Moreover, Asbury Auto did not assume any duty to evaluate seat strength and crashworthiness through its standard pre-sale inspection or post-sale warranty work of fixing a starter and providing a software update. These activities by Asbury Auto have no connection whatsoever to the alleged defect. Looking the car over before selling it, changing the starter generator, and providing a software update do not amount to undertaking a duty to assess the performance of the Subject Vehicle's

seat strength in crashes. Plaintiff's conclusory assertion that these actions constitute such an undertaking is absurd.

Not surprisingly, Plaintiff makes no effort to support his claims with any evidence of his own, or to even try to explain why the evidence Lear submitted is insufficient. Plaintiff barely mentions the allegations of his own Complaint, as they confirm he is alleging a latent crashworthiness defect and cement the propriety of removal.

Instead, Plaintiff relies solely on the conclusory assertion that Asbury Auto knew of the latent defect, despite the fact that this allegation contradicts Plaintiff's own factual allegations, Lear's uncontested declaration, and the documentary evidence attached to the declaration. Plaintiff simply asks this Court to dismiss Lear's evidence entirely by claiming it is "self-serving."

The Andre Young Declaration squarely meets Plaintiff's allegations against Asbury Auto with facts, including pages of sales and maintenance records Plaintiff ignores. Under clear Eleventh Circuit law, Plaintiff's refusal to support his Motion with any evidence at all and his reliance solely on unsupported, self-contradictory allegations in his Complaint are fatal to his Motion to Remand.

Lear acknowledges the standard governing fraudulent joinder is high. However, if Asbury Auto is not fraudulently joined here, it is hard to imagine any

case where a defendant could make such a showing. The Court should deny Plaintiff's Motion to Remand.

## II.    FACTS AND ALLEGATIONS AGAINST ASBURY AUTO

Plaintiff is a California citizen, injured in a North Carolina automobile accident, while driving the Subject Vehicle. [Dkt. 1-3, Amended Complaint at ¶¶ 1, 2, 46, 47]. Plaintiff sued seventeen Defendants allegedly involved in the design, manufacture, and sale of the Subject Vehicle or its components.[1] None of the seventeen defendants are citizens of California. *Id.* at ¶¶ 3, 6, 9, 12, 15, 18, 19–23, 27, 30, 33–35, 39. Defendant Asbury Auto is the only Georgia citizen. *Id.* at ¶ 39.

### A. Plaintiff Does Not Contest A Lack Of Privity

Plaintiff did not buy the Subject Vehicle and was not its owner at the time of the crash. Rather, Asbury Auto sold the Subject Vehicle to non-party Lynn Love. *See* Declaration of Andre Young, General Manager of Asbury Automotive Group, Inc. ("Young Decl."), attached hereto as **Exhibit 1**, at ¶ 5;[2] *see also* Sales Agreement, attached to Young Decl. as Exhibit A.

---

[1] Lear Corporation, which removed this case, is organized under the laws of the State of Delaware, with its principal place of business in Southfield, Michigan. [Dkt. 1-3, Amended Complaint at ¶ 15].

[2] Mr. Young's Declaration was previously attached to the Notice of Removal By Defendant Lear Corporation. *See* [Dkt. 1, 1-1].

4

23409080.1

Although Plaintiff certainly knows he did not own or buy the Subject Vehicle, both Plaintiff's Amended Complaint and his Motion refuse to concede these facts. Rather, Plaintiff alleges the Subject Vehicle was purchased "by a consumer" on approximately January 31, 2020 from Asbury Auto. [Dkt. 1-3, Amended Complaint at ¶ 55]. Plaintiff never names the "consumer" who bought the Subject Vehicle. Plaintiff's silence aside, the absence of contractual privity between Plaintiff and Asbury Auto means Plaintiff's breach of warranty claim fails as a matter of law.[3] Plaintiff's Motion ignores his breach of warranty claim and seeks remand based solely on his negligence claim that Asbury Auto owed or assumed a duty to test for the latent, hidden defects Plaintiff alleges exist in the front driver's seat.

## B. Plaintiff's Complaint Repeatedly Admits the Alleged Defects Are Latent

Plaintiff repeatedly alleges the Subject Vehicle contained latent defects in its driver side occupant restraint system that only reveal themselves during crashes. According to Plaintiff, the Subject Vehicle's front driver seat occupant restraint system failed to provide sufficient or "crashworthy" protection, containment, and restraint to Plaintiff in "[w]hat was a foreseeable level of crash forces." [Dkt. 1-3, Amended Complaint at ¶ 63]; *see also id.* at ¶¶ 76 (vehicle lacked adequate

---

[3] This lack of privity distinguishes this case from the vast majority of automotive products liability cases where the selling dealer is a proper defendant.

23409080.1

"crashworthiness"), 88 (same). Indeed, every time Plaintiff describes the alleged defect, he does so in the context of the seat's strength and performance in a crash. *See, e.g.*, *id.* at ¶¶ 76 (front driver seat lacked "sufficient strength and structural integrity" to hold Plaintiff in a "[s]table position in this foreseeable **rear-end collision**."), 81 (alleged defect enhanced "[s]pinal cord injuries for persons **in rear-end crashes**"),  48 ("the driver occupant restraint system failed to properly contain Mr. Morton's body **during the collision**…"), 53 (driver occupant restraint system failed to provide adequate containment protection causing injurious contact **during the collision**), 71, 77, 87 (emphases added).

Because he cannot, Plaintiff does not allege or assert in his Motion, that these alleged defects in seat strength and performance during a crash can be seen while looking at the Vehicle in the dealer's lot or shop. **Plaintiff actually alleges the opposite, expressly describing the defects as "latent"**.  [Dkt. 1-3, Amended Complaint at ¶¶ 146 (alleging Asbury Auto failed to warn Plaintiff of the "latent defects"), 147 (same)]. At least six different times, Plaintiff alleges the defects in seat strength and crashworthiness were hidden from view, not patent, open, or obvious. *Id.* at ¶¶ 82, 94, 106, 118, 130, 143. Plaintiff's allegations of latency are express as to all Defendants, including Asbury Auto:

- "The risks to which Audi exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge." *Id.* at ¶ 82.

- "The risks to which Lear exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge." *Id.* at ¶ 94.

- "The risks to which Defendant Asbury exposed Mr. Morton were neither open nor obvious, and they were not a matter of common knowledge to a lay person like Mr. Morton who lacked the knowledge about vehicle restraint systems that the Audi Defendants and Defendant Asbury possessed." *Id.* at ¶ 143.

### C. Asbury Auto is a Seller of Automobiles, Not an Automobile Designer Like Audi, And Has No Duty To Conduct Crash Tests On the Vehicles It Sells

Asbury Auto is a car dealership, not a vehicle designer or manufacturer like Audi. Unlike Audi, Asbury Auto: (a) is not an expert in vehicle design, manufacture, assembly or safety, and does not employ engineers or other professionals charged with designing, manufacturing, or assembling automobiles; and (b) does not possess the expertise, tools, facilities, or materials required to test or evaluate how a vehicle's driver seat and headrest might respond to various crash scenarios. Young Decl. at ¶¶ 10–14. Plaintiff does not allege otherwise. Car dealerships do not crash test cars – car manufacturers and designers do. Instead, Asbury Auto, like all dealerships, relies on reputable manufacturers, like Audi, to design, manufacture, and assemble automobiles in compliance with federal, industry, or other applicable standards. *Id.*

7

These standards include those affecting the crashworthiness of a vehicle's front seats. *Id.*

### D. Plaintiff Does Not Allege How Asbury Auto Assumed A Duty To Discover The Latent Crashworthiness Defects

Plaintiff's specific factual allegations as to Asbury Auto are incredibly sparse and almost entirely conclusory. The only specific facts alleged against Asbury Auto relate to (a) its selling the car to an unidentified "consumer"; and (b) Asbury Auto allegedly conducting "numerous inspections, service and maintenance", both before and after the Subject Vehicle was sold. [Dkt. 1-3, Amended Complaint at ¶¶ 55, 135, 58 (alleging post sale maintenance)]. Plaintiff makes no allegation regarding what these alleged "inspections, service and maintenance" consisted of or how they would have placed Asbury Auto on notice of the alleged defects.

While, in his negligence count, Plaintiff alleges in conclusory fashion that Asbury Auto knew of the alleged defects, he omits Asbury Auto from his listing of all the Defendants with knowledge of the defect generally. *Compare* [Dkt. 1-3, Amended Complaint at ¶ 137 (conclusory allegation that inspection would reveal defect) *with* ¶ 67 (listing those that allegedly knew of the latent defects but excluding Asbury Auto from the list)]. And Plaintiff's conclusory allegation of Asbury Auto's knowledge is contradicted by his repeated allegations of latency. *Id.* at ¶¶ 82, 94,

106, 118, 130, 143, 146, 147 (alleging defects were not "open or obvious" and were "latent").

As a matter of undisputed fact, nothing Asbury Auto did before or after the sale was intended to discover a latent defect in the strength of the front seat during a crash, or could have. First, Asbury Auto performed no post-sale maintenance at all on or to the Subject Vehicle's seats, occupant restraint system, or headrests. Young Decl. at ¶ 8. Its post-sale work was limited to the "starter generator" and providing a "software update." *Id.* at ¶ 9.

Asbury Auto also performed a pre-sale inspection, which it calls the "Pre-Delivery Inspection" ("PDI"). Only 3 of the 89 items on the PDI checklist even arguably relate to the driver's seat: (a) "verify operation of all seat belts and latches"; (b) "check operation of window, lock and seat controls"; and (c) "verify operation of heated/ventilated and massaging seats (if equipped)." Young Decl. at ¶ 7 and Exhibit C at 1.[4] The PDI checks related to the driver seat have nothing to do with and could not possibly reveal any alleged crashworthiness problem related to the front seat strength. *Id.* at ¶ 7, 14, 15. Finally, Mr. Young states that:

---

[4] Asbury also did a new vehicle detail before it delivered the Subject Vehicle to non-party Lynn Love. The new vehicle "detail" is a cosmetic cleaning of the car. Young Decl. at ¶ 7.

23409080.1

- Asbury Auto received no recall notices or service bulletins related to an alleged defect or problem with the seat or headrest in the 2020 Audi A6 before selling it to non-party Lynn Love. *Id.* at ¶ 15.

- Inspecting a headrest visually and verifying its operability (raising and lowering it) would not disclose whether it complied with the applicable FMVSS or was otherwise crashworthy. *Id.* at ¶ 14.

- Asbury Auto knows of no pre-sale or pre-accident information that would have led it to believe the seat and headrest were defective. *Id*.

Plaintiff puts forth no evidence whatsoever disputing any aspect of Mr. Young's testimony. Mr. Young's Declaration stands wholly uncontested by Plaintiff. Plaintiff instead relies solely on unsupported, conclusory allegations of Asbury Auto's supposed knowledge, which are directly contradicted by Plaintiff's own allegations of latency.

### III.   ARGUMENT AND CITATION OF AUTHORITY

While there is complete diversity in this case, the presence of Asbury Auto, a forum defendant, would prevent removal unless Asbury Auto is fraudulently joined. *See* 28 U.S.C. § 1441(b)(2) (forum defendant rule). While removal statutes are to be construed narrowly, "[a]t the same time, district courts play an important role in protecting defendants' right to remove." *Manley v. Ford Motor Co.,* 17 F. Supp. 3d 1375, 1380 (N.D. Ga. 2014). A plaintiff's right to avoid federal jurisdiction through

their pleading is not unlimited – the method of avoidance cannot be fraudulent. *Id.*

Indeed, federal courts should be as vigilant in protecting their own jurisdiction as

they are in permitting state courts to retain theirs. *Id.* (citing 14 Charles Alan Wright

et. al., Federal Practice and Procedure § 3641 at 173 (3d ed. 1998)).

> To establish fraudulent joinder, "the removing party has the burden of
> proving [by clear and convincing evidence] that either: (1) there is no
> possibility the plaintiff can establish a cause of action against the
> resident defendant; or (2) the plaintiff has fraudulently pled
> jurisdictional facts to bring the resident defendant into state court."

*Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (quoting *Crowe*

*v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)) (alteration in original). Although

Plaintiff is entitled to resolve all "contested facts" in his favor, there must still be a

"reasonable basis" to predict state law might impose liability on the facts involved.

*Crowe,* 113 F.3d at 1542.

## A. Plaintiff Cannot Rely Solely On Unsupported, Conclusory Allegations Contradicted By Evidence And His Other Allegations

The sufficiency of Plaintiff's claim and the "facts involved" are not assessed

under a Motion to Dismiss standard as Plaintiff suggests. *See* Plaintiff's Motion at 8

(citing two Georgia Court of Appeals cases deciding Motions to Dismiss). The

Eleventh Circuit requires courts to assess fraudulent joinder in a manner "similar to

that used for ruling on a motion for summary judgment", *Legg v. Wyeth*, 428 F.3d

1317, 1323 (11th Cir. 2005) (quoting *Crowe*, 113 F.3d 1538), although it cautions

that the jurisdictional inquiry must not "subsume substantive determinations." *B,*

*Inc. v. Miller Brewing Co.,* 663 F.2d 545, 550 (5th Cir. Unit A 1981). Contrary to Plaintiff's contentions, it is completely appropriate for the Court to evaluate the facts involved using affidavits and other evidence submitted by the parties. *Crowe,* 113 F. 3d. at 1538.

Indeed, in most cases assessing fraudulent joinder, plaintiffs rely on evidence to support remand because "there must be some question of fact before the district court can resolve that fact in plaintiff's favor." *Legg,* 428 F.3d at 1323. When, as here, Defendant's evidence is "undisputed by the Plaintiffs, the court cannot then resolve the facts in Plaintiffs' favor based solely on unsupported allegations in Plaintiffs' complaint." *Id.* Plaintiff must contest Defendant's evidence with at least some evidence of his own:

> "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when **both** parties have submitted *evidence* of contrary facts. **We do not, however, in the absence of proof, assume that the nonmoving party could or would prove the necessary facts**." . . . In the case at bar, the Defendants submitted sworn affidavits that were undisputed and, in such a case, a court cannot resolve the question of fraudulent joinder by refusing to consider the defendants' submissions.

*Id.* at 1323 (quoting *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 393-394 (5th Cir. 2000) (emphasis in original)). *Legg* went on to find the defendant was fraudulently joined because there was no evidence supporting the plaintiff's allegation that the defendant knew of the alleged risks. *Id.* at 1324. Indeed, where, as here, "[s]ome set of easily ascertainable facts establishes that the plaintiff's claim against the resident

defendant fails as a matter of law, district courts should find the joinder of that defendant fraudulent, thereby protecting the right of removal." *Manley,* 17 F. Supp. 3d at 1384 (negligent inspection of tire case where remand was denied for lack of proximate cause).

In the face of this authority, relying on *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888 (11th Cir. 2011), Plaintiff supplies no evidence whatsoever in support of remand. He asks the Court to ignore the uncontested facts in Mr. Young's testimony in favor of conclusory, unsupported allegations in Plaintiff's Complaint (which are contradicted by Plaintiff's own factual allegations of latency). Plaintiff asserts this is proper because Mr. Young's Declaration is self-serving and implicates his credibility. Plaintiff's Motion at 10.

*Taylor Newman Cabinetry* does not support the wholesale disregard of any evidence. It certainly does not say undisputed evidence may be defeated by self-contradictory, conclusory allegations in a complaint. *Taylor Newman Cabinetry* involved claims against a manager for negligently installing electrical devices, overseeing safety training, and instructing others. *Taylor Newman Cabinetry, Inc.*, 436 F. App'x at 891. There, the defendant relied on deposition testimony focused only on installation, claiming this proved the manager "did not personally participate in the tort." *Id*. The Eleventh Circuit found the limited testimony about installation did not squarely address the manager's participation in the tort by overseeing or

instructing others. *Id.* at 891–92. In *dicta*, the Court also said, given the evidence and allegations, whether the manager participated in the tort depended on the manager's credibility. *Id.* However, in that case, the plaintiff did not rely solely on unsupported allegations but on other deposition testimony from the manager himself. *Id.* at 892 (pointing to deposition testimony that the manager oversaw operations and was last to leave facility that burned).[5]

Here, Mr. Young's Declaration squarely meets Plaintiff's allegations that Asbury Auto should have warned Plaintiff about the alleged hidden defects. The only actions Asbury Auto is alleged to have undertaken are the pre-sale inspection and post-sale maintenance. Mr. Young describes the only pre-sale inspection and post-sale maintenance Asbury Auto performed, confirming his testimony with the relevant business records. He testifies about receiving no recalls or service bulletins about a problem with the front seat. He discusses Asbury Auto's inability to crash

---

[5]  None of the other cases Plaintiff cites excuse his reliance solely on unsupported allegations either. S*ee* Plaintiff's Motion at 10–11. In all these cases, unlike here, the plaintiff supported the claims with some evidence. *Hampton v. Georgia-Pacific, LLC*, 2011 WL 5037403, at *6 (S.D. Ala. 2011) (plaintiff pointed to other aspects of witnesses testimony); *Smith v. Smithkline Beecham Corp.*, No. 10-73, 2010 WL 3432594 at *4–5 (E.D. Ky. Aug. 30, 2010) (plaintiff disputed defendant's affidavit with his own affidavit and pharmacy records); *Mattress Warehousing, Inc. v. Power Mrktg. Direct, Inc.,* No. 08-cv-141-LRR, 2009 WL 395162, at * 6 (N.D. Iowa Feb. 17, 2009) (parties submitted counter affidavits); *Strode v. General Motors, LLC*, No. 13-213-KSF, 2014 WL 1168829, at *3 (E.D. Ky. Mar. 21, 2014) (plaintiff submitted some evidence beyond mere allegations showing defendant was operating as a joint venture).

23409080.1

test cars or assess crash tests done by others. He discusses Asbury Auto's reliance on Audi to determine crashworthiness. Based on these facts, Mr. Young's uncontested testimony establishes that the only actions undertaken by Asbury Auto did not relate to and had no possibility of revealing alleged latent defects in the seat's strength or performance in a crash such that Asbury Auto could warn Plaintiff. Plaintiff contests none of this, relying solely on his conclusory allegations about what Asbury Auto supposedly knew.

However, when, as here, Lear's evidence is "undisputed by the Plaintiffs, the court cannot then resolve the facts in Plaintiffs' favor based solely on unsupported allegations in Plaintiffs' complaint." *Legg*, 429 F.3d at 1323 (in the absence of some evidence, the court should not assume plaintiff would or could prove necessary facts); *Duffy v. St. Paul Fire and Marine Ins., Co.*, No. 1:05-CV-1445-GET, 2005 WL 3095682, at *2 (N.D. Ga. Nov. 14, 2005) (defendant was improperly joined when affidavit showing no respondeat superior liability was undisputed by plaintiff).[6] The uncontested facts show no reasonable possibility Asbury Auto could be liable under either a breach of warranty or negligence claim. The Court should not remand this case.

---

[6] Plaintiff's reliance on *Fee v. Volvo Group North America, LLC* is also misplaced because there, unlike here, the defendant's declaration did not entirely rebut Plaintiff's maintenance allegations. No. 1:20-CV-02802-LMM, 2020 WL 6865777, at *4 (N.D. Ga. Oct. 20, 2020).

15

**B.  Plaintiff Has No Breach of Warranty Claim Against Asbury Auto**

Georgia law controls Plaintiff's breach of warranty claims because the Subject Vehicle was sold in Georgia, pursuant to a contract signed in Georgia. *Gen. Tel. Co. v. Trimm*, 252 Ga. 95, 96 (1984) (contracts governed by law of the place where the contract was made); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 135 F.3d 750, 752 (11th Cir. 1998). The Sales Contract also contains a Georgia choice of law provision, which Georgia courts enforce. Young Decl., Ex. A at 2; *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998).

Georgia law requires privity with the defendant to sustain a breach of express or implied warranty claim. *Stewart v. Gainesville Glass Co., Inc.,* 131 Ga. App. 747, 751–52 (1974) (granting summary judgment on express and implied warranty claims for lack of privity); *Lamb v. Georgia Pacific Corp.*, 194 Ga. App. 848, 850 (1990) (implied warranty claim fails where no privity between plaintiff and seller); *Keaton v. A.B.C. Drug Co.,* 266 Ga. 385, 386 (1996) (privity with seller required to recover under implied warranty of merchantability); *Bodymasters Sports Indus. v. Wimberley,* 232 Ga. App. 170, 174 (1998) (privity required to recover under implied warranty of fitness for a particular purpose).

It is undisputed that Plaintiff is not in privity with Asbury Auto – Plaintiff did not buy the Subject Vehicle; Lynn Love did. Young Decl. at Ex. A. Moreover, Plaintiff has not alleged the existence of any privity exceptions, let alone made any

23409080.1

showing that an exception applies. *See* O.C.G.A. § 11-2-318 (recognizing limited exceptions to privity where plaintiff is a third-party beneficiary, a member of purchaser's family, or a guest in purchaser's home).[7]

Finally, even if there had been privity, Asbury Auto disclaimed all warranties when it sold the car to Lynn Love. Young Decl., Ex. A at 1 ("The Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose."); *see Davenport v. Ford Motor Co.,* 2006 WL 2048308 at *3–4 (N.D. Ga. July 20, 2006) (denying remand when express exclusion of implied warranties precluded plaintiff from any breach of warranty claim against resident dealer defendant). While Plaintiff will not admit his warranty claim fails, his Motion abandons it by not even discussing it or trying to explain how a court could rule in his favor on it.

### C. Asbury Auto Had No Duty To Discover The Latent Defects Plaintiff Alleges

North Carolina law governs Plaintiff's negligence claim because the injury occurred in North Carolina. [Dkt. 1-3, Amended Complaint at ¶1]; *Auld v. Forbes,*

---

[7] North Carolina law is consistent with Georgia law and would also find Plaintiff's breach of warranty claim fails for lack of privity. *Nicholson v. American Safety Utility Corp.*, 124 N.C. App. 59, 68 (1996) (differentiating between the seller of the gloves and the manufacturer of the gloves in affirming summary judgment for the seller and reversing summary judgment for the manufacturer on the basis of privity), *aff'd as modified*, 346 N.C. 767, 488 S.E.2d 240 (1997).

17

309 Ga. 893, 894 (2020) (Georgia uses doctrine of *lex loci delicti*, the law of the place where the injury was sustained, to determine which substantive law governs a tort claim). The alleged tort is committed where the injury is sustained. *Auld*, 309 Ga. at 894; *see also Hughes v. Kia Motors Corp*., 766 F.3d 1317, 1327 n.9 (11th Cir. 2014) (applying Tennessee law to products liability case brought in Georgia because the car accident occurred in Tennessee).

Asbury Auto is a "seller" under North Carolina law, not a product manufacturer or designer. N.C. Gen. Stat. § 99B-1(4) (seller includes a retailer, wholesaler, or distributor); [Dkt. 1-3, Amended Complaint at ¶ 135]. As a seller, Asbury Auto has no duty to inspect and test a product made by a reputable manufacturer like Audi unless Asbury Auto knows or has reason to know of the defect. *Nicholson*, 124 N.C. App. at 65–66; *Davis v. Siloo, Inc.*, 47 N.C. App. 237, 248 (1980) ("[T]he seller of a product is ordinarily not liable for his failure to discover, through tests and inspections, product defects which are latent, even where the product is not sold in its original package."). If, and only if, a product seller undertakes a duty to test for a latent defect, it must perform the testing non-negligently. *Nicholson*, 124 N.C. App. at 65–66 (reversing summary judgment for seller where it performed dielectric testing to determine if gloves worn by electrical linemen were safe).

18

Plaintiff's negligence claim against Asbury Auto fails because Asbury Auto had no duty to crash test the cars to discover the latent defects in the Subject Vehicle's seat strength. Asbury Auto also did not undertake any such duty either though the pre-sale inspection, or the post-sale work on the starter generator and software updates:

> The general rule in North Carolina is that a non-manufacturing seller who is acting as a "mere conduit" of the product has no affirmative duty to inspect and test a product made by a reputable manufacturer, unless the seller knows or has a reason to know of the product's dangerous propensity. North Carolina courts are particularly apt to apply this rule where the alleged defect in the product is latent.

*McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 601 (E.D.N.C. 2009) (internal citations omitted), *aff'd sub nom., McLaurin v. Vulcan Threaded Prod., Inc.*, 410 F. App'x 630 (4th Cir. 2011). In *McLaurin*, the plaintiff sought to hold the seller responsible for alleged defects in U-bolts it was selling. *Id.* Noting that North Carolina law does not impose on a seller any duty to detect latent defects, the Court found no liability for the seller. *Id.* at 601–02. The Court noted the seller, like Asbury Auto here, did not undertake any inspection designed to reveal the latent defects and therefore could not be liable for failing to discover them. *Id.*

Asbury Auto simply has no duty to run crash tests to assess how well the front driver's seat responds to various crash scenarios. Moreover, as in *McLaurin*, there is no evidence whatsoever that that Asbury Auto undertook a duty to discover the latent

crashworthiness defects in seat strength when it conducted the pre-sale inspection, fixed the starter, or downloaded software.

The authorities Plaintiff cites do not show otherwise. Plaintiff cites *Nicholson*, a case involving injuries to a lineman when his gloves failed to withstand certain electrical voltages. 124 N.C. App. at 65–66. In that case, unlike here, the seller undertook both visual and "dielectric tests" to determine whether the gloves could actually withstand these voltage levels.[8] *Id.* at 66. *Nicholson* holds only that having taken on the responsibility of testing the gloves for these specific issues in the case, the seller had a duty to do so in a reasonable manner. *Id.* at 65.

*Nicholson* stands for the proposition that if Asbury Auto did undertake a hypothetical (and non-existent) inspection to determine crashworthiness and did so negligently (which Plaintiff does not allege), it could be liable. However, based on the undisputed facts, Asbury Auto did not undertake to test the Subject Vehicle's seat strength or crashworthiness—it is absurd on its face to think that any car dealership would engage in such an undertaking. As explained by *McLaurin*, *Nicholson* would not permit Plaintiff's claims here. *See McLaurin*, 666 F. Supp. 2d at 602 ("In this case, Grand Rapids did not take on the responsibility of testing the

---

8 Plaintiff's Motion mischaracterizes *Nicholson* as involving only visual inspections, ignoring the specific dieletric tests the defendant ran. Plaintiff's Motion at 12.

U-bolts, perhaps because, unlike *Nicholson*, it is not 'standard' in the industry for middlemen to do so. In any event, Plaintiffs cannot hold Grand Rapids responsible for something it had no duty to do: test the U-bolts for latent defects."); *Crews v. W.A. Brown & Son*, 106 N.C. App. 324, 329–30 (1992) (seller's installation, inspection, and determination that everything worked properly were insufficient to hold seller liable for failing to discover a latent defect as a matter of law).

Plaintiff also cites two Georgia cases – *Holman Motor Co. v. Evans*, 169 Ga. App. 610 (1984), and *Parks v. Hyundai Motor America, Inc.*, 258 Ga. App. 876 (2002). Plaintiff's Motion at 13. *Holman* involved an alleged failure to notice a patent defect in a visual inspection, not a latent one. 169 Ga. App. at 613 (defect noticeable by visual inspection because there was evidence of fluid leaking from strut shell over a long period of time). Here, Plaintiff does not allege a visual inspection would reveal insufficient strength or crashworthiness of the front seat in a crash, let alone provide any evidence that this is true. Similarly, in *Parks*, unlike here, the plaintiff had evidence Hyundai knew of the alleged defect before selling the car to the plaintiff. 258 Ga. App. at 879 (pointing to prior complaint received by Hyundai).

In fact, while the negligence claims are controlled by North Carolina law, Georgia law is wholly consistent with North Carolina law and would not impose liability on Asbury Auto either. *See Gen. Motors Corp. v. Davis*, 141 Ga. App. 495,

21

499 (1977) (although dealer performed state safety inspection and routine pre-delivery inspection, negligence claim failed because dealer was not required by law to inspect the allegedly defective alternator and did not voluntarily assume inspection of alternator); *Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc.*, 321 Ga. App. 563, 566 (2013) (Georgia law imposes no duty on dealer to disclose a latent defect of which it had no knowledge, and imposes no duty to test for purpose of discovering latent defects – only that it non-negligently perform any inspection it assumes); *Federal Ins. Co. v. Farmer's Supply Store, Inc.*, 252 Ga. App. 17, 19 (2001) (opening box and demonstrating how to operate generator does not impose duty on seller to discover and disclose every hazard inherent in operating machines). There is no reasonable possibility Plaintiff can prevail on his negligence claim against Asbury Auto under North Carolina or Georgia law.

## IV.  <u>CONCLUSION</u>

The Court should deny Plaintiff's Motion to Remand. Lear has shown by clear and convincing evidence, undisputed by any evidence from Plaintiff, that there is no reasonable basis a court would find Asbury Auto liable for breach of warranty or negligence.

23409080.1

1. Plaintiff lacks privity of contract to support a breach of warranty claim. Plaintiff acknowledges this by failing to discuss the breach of warranty claim at all in his Motion to Remand.

2. Plaintiff's negligence claim fails because Asbury Auto, a car dealership, had no duty to crash test the Subject Vehicle to discover alleged latent defects in how the front seat responds into various crash scenarios. Asbury Auto also did not undertake such a duty, and its pre-sale inspection and post-sale maintenance had nothing to do with and could not possibly have revealed the alleged latent defect at issue.

Respectfully submitted this 26th day of October, 2023.

23409080.1

*/s/ James L. Hollis*
_____

James L. Hollis
Georgia Bar No. 930998
Email: jhollis@balch.com
Hugh Peterson III
Georgia Bar No. 574212
Email: hpeterson@balch.com

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, GA 30308
Telephone:  (404) 261-6020
Facsimile:   (404) 261-3656

Jena C. Lombard
Georgia Bar No. 213734
Email: jlombard@balch.com

**BALCH & BINGHAM LLP**
801 Broad Street, Suite 800
Augusta, GA 30901
Telephone:  (706) 842-3718
Facsimile:   (866) 501-9962

*Attorneys for Defendant Lear Corporation*

## <u>CERTIFICATE OF COUNSEL REGARDING FONT SIZE</u>

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D).

This 26th day of October, 2023.

*/s/ James L. Hollis*
James L. Hollis
Georgia Bar No. 930998

23409080.1

## CERTIFICATE OF SERVICE

I certify that on October 26, 2023, a copy of the foregoing **Defendant Lear Corporation's Response to Plaintiff's Motion to Remand** was served upon the following by electronic service:

Cale Conley
Davis Popper
Alex S. Edmonds
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, GA 30327
cale@conleygriggs.com
davis@conleygriggs.com
alex@conleygriggs.com
*Attorneys for Plaintiff*

Winston S. Kirby
Andrew Avram
**EDWARDS KIRBY, LLP.**
3201 Glenwood Avenue
Suite 100
Raleigh, NC 27612
wkirby@cdwardskirby.com
aavram@edwardskirby.com
*Attorneys for Plaintiff*

Noah B. Abrams
**ABRAMS & ABRAMS, P.A.**
1526 Glenwood Avenue
Raleigh, NC 27608
nabrams@abramslawfirm.com
*Attorneys for Plaintiff*

C. Bradford Marsh
Myrece R. Johnson
**SWIFFT, CURRIE, MCGHEE & HIERS, LLP**
1420 Peachtree Street NE, Suite 800
Atlanta, GA 30309
brad.marsh@swiftcurrie.com
myrece.johnson@swiftcurrie.com
*Attorneys for NHK Seating of America, Inc.*

23409080.1

Michael R. Boorman
**WATSON SPENCE LLP**
999 Peachtree Street, N.E., Suite 1130
Atlanta, Georgia, 30309
mboorman@watsonspence.com
*Attorney for Defendant Faurecia USA Holdings, LLC, Faurecia USA Holdings, Inc. and FNK North American, Inc.*

Colin K. Kelly
Caroline M. Gieser
Timia A. Skelton
**SHOOK HARDY & BACON, LLP**
1230 Peachtree Street NE, Suite 1200
Atlanta, GA 30309-3591
ckelly@shb.com
cgieser@shb.com
tskelton@shb.com
*Attorneys for Volkswagen Group of American, Inc., Audi of America, LLC, and Asbury Automotive Group, Inc.*

Christopher S. Anulewicz
**BRADLEY ARANT BOULT CUMMINGS LLP**
Promenade Tower
1230 Peachtree St. NE
Atlanta, GA 30309
canulewicz@bradley.com
*Attorney for Brose North America, Inc.*

R. Thomas Warburton
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
twarburton@bradley.com
*Attorney for Brose North America, Inc.*

LeeAnn Jones
Stephanie Capezzuto
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
ljones@taylorenglish.com
scapezzuto@taylorenglish.com
*Attorneys for Defendants Grammer, Inc. and Grammer Industries, LLC*

/s/ James L. Hollis
James L. Hollis
Georgia Bar No. 930998